Robert H. Tyler, Esq., CA Bar No. 179572
rtyler@faith-freedom.com
Nada Higuera, State Bar No. 299819
nhiguera@faith-freedom.com
Mariah Gondeiro, State Bar No. 323683
mgondeiro@faith-freedom.com
ADVOCATES FOR FAITH & FREEDOM
25026 Las Brisas Road
Murrieta, California 92562
Telephone:   (951) 600-2733
Facsimile:    (951) 600-4996

Attorneys for **Plaintiffs**

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| **UNIFYSCC**, an unincorporated California association on behalf of employees in Santa Clara County; **TOM DAVIS**, an individual; and **MARIA RAMIREZ**, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>**SARA H. CODY**, in her official capacity as the Santa Clara County Public Health Officer; **JAMES WILLIAMS**, in his official capacity as the County Counsel of Santa Clara County; **JEFFREY SMITH**, in his official capacity as the County Executive of Santa Clara County; and **SANTA CLARA COUNTY**;<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES** |

**NATURE OF ACTION**

1. In early 2020, the world discovered a novel coronavirus, COVID-19. Governments responded with unprecedented restrictions on freedom. They closed schools and shut down industries. They banned travel and prosecuted churches. They decided which activities were "essential" and which were not.

2. Many of these orders started in Santa Clara County (the "County"). Indeed, Santa Clara County Counsel James Williams and Health Officer Dr. Sara Cody take credit for the first lockdown.

3. During 2020, several experimental vaccines were developed to help limit the effects of COVID-19. They were developed quickly to protect those who are at highest risk of getting seriously ill from COVID-19, especially the elderly and those with multiple co-morbidities. However, government officials now admit that vaccinated people can contract and transmit COVID-19. Many fully vaccinated and fully boosted people have fallen ill with the Omicron variant during the winter of 2021.

4. Nevertheless, in response to the spread of Omicron and other variants, the Defendants ordered that all workers in "high-risk" settings in Santa Clara County get the COVID-19 shots plus the most recent boosters.

5. The Defendants have the sole authority to enforce COVID-19 mandates in the county and retain the discretion to exempt anyone from their mandates at any time.

6. Plaintiffs are "high-risk" employees whose religious beliefs prevent them from taking the COVID-19 vaccine or booster. They have requested a religious accommodation, but instead of engaging in good faith negotiations to determine a reasonable accommodation, Defendants have relegated Plaintiffs to unpaid leave and stripped them of their employment benefits. By contrast, Defendants have offered reasonable accommodations to similarly situated employees for medical reasons.

7. Accordingly, this Action seeks injunctive and declaratory relief and damages related to Santa Clara County's recent vaccine orders and policies that have nullified California's

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

Fair Employment and Housing Act (FEHA) and deprived dozens of employees of their rights to free exercise of religion and equal protection of the law.

## PARTIES – PLAINTIFFS

8. Plaintiff UNIFYSCC is a California unincorporated association comprised of employees who are subject to the County's vaccine orders and policies. These employees have been relegated to unpaid leave and/or stripped of employment benefits because of their unwillingness to take the COVID-19 vaccine or COVID-19 booster. The members sincerely held religious beliefs have been approved, but they have not been granted a reasonable accommodation because they are in a "high-risk" job setting. UnifySCC is committed to promoting medical freedom and defending employees' constitutional rights.

9. Plaintiff TOM DAVIS resides in Alameda County and is a member of UnifySCC. He works for Facilities and Fleet in the County, and his specific duties involve maintaining and troubleshooting the air conditioning equipment across the County. He was placed on unpaid leave because he did not take the COVID-19 vaccine.

10. Plaintiff MARIA RAMIREZ resides in Santa Clara County and is a member of UnifySCC. She is a registered nurse at Santa Clara Valley Medical Center which is part of the Santa Clara Health System. She was placed on unpaid leave because she did not take the COVID-19 vaccine.

## PARTIES – DEFENDANTS

11. Defendant SARA H. CODY, M.D. is the Public Health Officer for Santa Clara County, California and is sued in her official capacity. She promulgated Santa Clara County's health orders and guidelines and specifically the challenged vaccine orders and policies.

12. Defendant JAMES WILLIAMS is the County Counsel of Santa Clara County, California and is sued in his official capacity. He is charged with enforcing the County's public health orders and as alleged below, helped promulgate the challenged vaccine orders and policies.

13. Defendant JEFFREY SMITH is the County Executive of Santa Clara County, California and is sued in his official capacity. He is charged with enforcing the County's vaccine policies.

14. Defendant COUNTY OF SANTA CLARA is a municipal organization formed under the laws of the State of California. It is sued herein based on the actions of the Defendants as final policymakers.

**JURISDICTION AND VENUE**

15. This civil rights action arises under the First and Fourteenth Amendments to the United States Constitution and state law.

16. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

17. This Court has supplemental jurisdiction over the state claim pursuant to 28 U.S.C. § 1367.

18. This Court has authority to grant the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, implemented through Rule 57 of the Federal Rules of Civil Procedure. This Court is also authorized to grant injunctive relief and damages under 28 U.S.C. § 1343, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and reasonable attorney's fees and costs under 42 U.S.C. § 1988.

19. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1)–(2) because all Defendants are situated in this judicial district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

**ASSOCIATIONAL STANDING**

20. An entity may establish associational standing to bring suit on behalf of its members when: (1) "its members would otherwise have standing to sue in their own right;" (2) "the interests it seeks to protect are germane to the organization's purpose;" and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343(1977). Here:

(1) All employees represented by UnifySCC have standing to sue in their individual capacities because they are subject to the same vaccine orders and policies that have relegated them to unpaid leave and/or deprived them of employment benefits because of their unwillingness to take the COVID-19 vaccine or a COVID-19 booster;

(2) UnifySCC is committed to defending employees' constitutional rights. Indeed, UnifySCC's website states that its mission "is to advocate for and protect medical and religious freedoms for all workers within Santa Clara County." The stated purpose of UnifySCC is to "support those who have had their careers, families, and livelihoods disrupted by the discriminatory 'Risk Tier System' that was created and is being implemented by Santa Clara County's politicians and leaders."

(3) UnifySCC is fully capable of representing the interests of each of its members. The constitutional claims alleged herein do not require individualized proof and can be properly resolved by UnifySCC.

## FACTUAL BACKGROUND

**A.    Santa Clara County's Vaccine Orders and Policies**

21.    On August 5, 2021, County Executive Jeffrey Smith and County Counsel James Williams, as ratified by Dr. Sara Cody, issued a policy requiring all County employees to be vaccinated or to request an exemption by August 20, 2021. County employees who are allowed to apply for an accommodation pursuant to the policy include employees who (1) have a contraindication recognized by the Center for Disease Control (CDC), (2) have a disability, or (3) have a sincerely held religious belief, practice, or observance that prevents them from getting the vaccine. A true and correct copy of the August 5, 2021, letter is attached hereto as **Exhibit A.**

22.    The Defendants created a risk tier system that classified employees as low-risk, intermediate-risk, and high-risk ("Risk Tier System"). The Defendants considered the following factors: "the nature of contact an employee has with others and risks posed to vulnerable

populations served by the County; the risk posed to persons at serious risk of illness and death from COVID-19; the risk posed to employees; the risk of COVID-19 outbreaks in the work setting; and the essential job functions the employees must perform with or without accommodations." A true and correct copy of the Frequently Asked Questions from the Office of the County Executive is attached hereto as **Exhibit B**.

23. County employees classified as low risk have minimal contact with the public, as determined by the Defendants. Unvaccinated employees in this tier must wear a surgical mask or more protective mask while working and must test and report their COVID-19 tests weekly.

24. County employees classified as intermediate risk include carpenters, roofers, locksmiths, employment counselors, and managers. Unvaccinated workers in this tier must wear an N95 mask and take specific COVID-19 tests twice a week.

25. High-risk employees include social workers, registration clerks, ultrasound technicians, protective services officers, nurses, firefighters, doctors, electricians, plumbers, and probation counselors. Unvaccinated workers in high-risk roles cannot continue to work if they remain unvaccinated.

26. On December 28, 2021, Santa Clara County issued a health order ("Vaccine Order") requiring up-to-date vaccination for all workers in specific high-risk settings in Santa Clara County (i.e., both fully vaccinated and boosted against COVID-19 if eligible for a booster) by January 24, 2022. A true and correct copy of the Vaccine Order is attached hereto as **Exhibit C.** The Vaccine Order does not provide an exemption.

27. The higher risk settings include skilled nursing facilities, healthcare delivery facilities, jails and other correctional facilities, medical first responders, and workers who interact with the aforementioned facilities, such as firefighters.

28. On January 22, 2022, Santa Clara County issued a directive establishing a limited waiver process ("Waiver Order") for implementation of the Vaccine Order. The waiver is available to entities facing critical staffing shortages and applies to personnel who receive a bona fide medical and/or religious exemption and who follow specific safety protocols.  A true and

correct copy of the Waiver Order is attached hereto as **Exhibit D.** Most of the Plaintiffs' respective employers have sought for and been denied a waiver.

29. Pursuant to the Waiver Order, "the waiver will be acknowledged and granted upon receipt, but is subject to revocation."

30. The Plaintiffs have a sincerely held religious belief that prevents them from receiving a COVID-19 vaccine or booster. Some members of UnifySCC object to the COVID-19 vaccines because they employ fetal cell lines derived from procured abortion in testing, development, or production of the vaccines. These members oppose abortion under any circumstances, as they believe that abortion is murder, and thus they oppose the use of abortion-derived fetal cell lines for medical purposes and abortion-derived fetal stem cell research.

31. Some members also have sincerely held religious beliefs, rooted in Scripture, that their bodies are temples of the Holy Spirit and that they cannot place a pharmaceutical substance into their temples without confirmation and conviction from the Holy Spirit.

32. The Plaintiffs believe that they must conform their lives, including their decisions relating to medical care, to the commands and teaching of their faith. All members have the common conviction that taking the COVID-19 vaccine would create a conflict with and be in violation of their sincerely held religious beliefs.

33. The Plaintiffs' respective employers within the County, as ratified by the Defendants, failed to offer Plaintiffs a reasonable accommodation. The only options provided to Plaintiffs were to be placed on unpaid leave or to apply to a completely different position within the County.

34. Neither the employers nor the Defendants engaged in negotiations to determine whether reasonable accommodations were available such as weekly testing, teleworking, reassignment, working a modified shift, or requiring employees wear an N95 mask.

35. However, the County does make efforts to accommodate employees with medical exemptions.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

36. Indeed, the Equal Opportunity Division ("EOD") within the Office of the County Counsel, as ratified by the Defendants, informed an employee via email that employees with medical exemptions were given priority.

37. Specifically, a member of UnifySCC asked the EOD to assist her in finding a new job and emphasized that the lack of assistance from the EOD, along with the lack of communication, did not amount to a good faith effort to effectuate a reasonable accommodation. In response, the EOD emailed the employee the following: "Religious exemption is not part of the reasonable accommodation process, we are not placing you, just helping you through the recruitment process. Only medical is part of Reasonable Accommodation and you would work directly with the EOD." A true and correct copy of this email is attached hereto as **Exhibit E**.

38. The County helps place employees with medical exemptions. However, as reiterated in an email to another member of UnifySCC, the County does not place employees with religious exemptions but helps them "identify other positions they may apply for that may be low or intermediate risk." This could result in a "demotion" or "probation." A true and correct copy of this email is attached hereto as **Exhibit F**.

39. UnifySCC filed a complaint with FEHA and the Equal Employment Opportunity Commission (EEOC). UnifySCC received a "Right to Sue" letter from FEHA.[1]

**B.  The Defendants' Vaccine Policies and Orders Are Not Congruent with Their Interest in Slowing the Spread of COVID-19**

40. The CDC has conceded that the COVID-19 vaccines do not prevent transmission or infection.

41. The vaccinated can infect the unvaccinated, the unvaccinated can infect the vaccinated, and both the vaccinated and the unvaccinated can infect each other. Indeed, the CDC has recommended that fully vaccinated Americans wear masks indoors if they are in an area of substantial or high coronavirus transmission because of the overwhelming evidence that fully vaccinated individuals can still transmit COVID-19.

---

[1] The Vaccine Order, Waiver Order, Risk Tier System, and other vaccine-related policies and orders issued by the Defendants during the pendency of this lawsuit are hereinafter collectively referred to as "vaccine policies and orders."

42. Further, the CDC has also informed the public that it is not aware of how long protection lasts for those who are vaccinated.

43. However, those who recover from COVID-19 infection possess immunity as robust and durable (or more) as that acquired through vaccination. The existing clinical literature overwhelmingly indicates that the protection afforded to the community from natural immunity is at least as effective and durable as the efficacy levels of the most effective vaccines to date.

44. Any policy regarding vaccination that does not recognize natural immunity is irrational, arbitrary, and counterproductive to community health. This is certainly true of the County's vaccination policies and orders, which do not provide for an exemption for naturally immune individuals.

45. The individuals placed in high risk are more likely to have contracted COVID-19 in the past, which is especially true for the medical community. Thus, the County's policies and orders are irrational because they do not consider natural immunity.

46. In sum, now that every American adult, teenager, and child age five and above has free access to the vaccines, the case for a vaccine mandate is weaker than it once was. Since the successful vaccination campaign already protects the vulnerable population, the unvaccinated—especially recovered COVID-19 patients—pose a small threat to the vaccinated because the vaccine reduces the likelihood of hospitalization or death after infections to near zero. At the same time, natural immunity provides benefits that are equal to, if not stronger than, the protection provided by vaccines.

## FIRST CAUSE OF ACTION

### Violation of the Free Exercise Clause of the First Amendment to the United States Constitution

**(42 U.S.C. § 1983)**

47. Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs 1 through 46, as if fully set forth herein.

48. The First Amendment's Free Exercise Clause provides that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof."

49. Defendants' vaccine orders and policies, on their face and as applied, violate Plaintiffs' First Amendment right to free exercise of religion because they put Plaintiffs to the choice of either violating their religious beliefs or losing their jobs. In short, the vaccine orders and policies substantially interfere with Plaintiffs' free exercise of religion.

50. The Defendants' vaccine orders and policies, on their face and as applied, are not generally applicable because as the Supreme Court recently reaffirmed, a policy that provides a "mechanism for individualized exemptions" is not generally applicable. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021).

51. Here, the Defendants' vaccine orders and policies provide medical and religious exemptions on an individualized basis, and the Defendants maintain the right to extend exemptions in whole or in part or grant a "provisional" exemption. For this reason, the policies are not generally applicable. And as a result, the Defendants' vaccine orders and policies must survive strict scrutiny. *Id.* at 1881.

52. The Defendants' vaccine orders and policies are also not neutral because they prioritize medical exemptions.

53. Defendants' vaccine orders and policies fail strict scrutiny because they are not narrowly tailored to meet any compelling government interest.

54. As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiffs have suffered, and will suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief. Additionally, Plaintiffs are entitled to nominal damages, compensatory damages in an amount to be proven at trial, and attorneys' fees under 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION

### Violation of California's Fair Employment and Housing Act

**(Cal. Gov't Code § 12940)**

55. Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs 1 through 54, as if fully set forth herein.

56. FEHA makes it unlawful "[f]or an employer, because of the . . . religious creed . . . of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940(a).

57. FEHA requires employers to reasonably accommodate an employee's religious beliefs and practices.

58. Defendants subjected members of UnifySCC to religious discrimination by failing to act in good faith before relegating them to unpaid leave and/or stripping them of employment benefits. The Defendants failed to engage in reasonable negotiations.

59. Defendants did not offer Plaintiffs reasonable accommodations such as weekly testing or requiring the employees wear an N95 mask.

60. As a direct and proximate result of Defendants' violation of FEHA, Plaintiffs have suffered, and will suffer harm in the loss of their employment and/or employment benefits, entitling them to declaratory and injunctive relief and damages.

## THIRD CAUSE OF ACTION

**Violation of the Equal Protection Clause of the**

**Fourteenth Amendment to the United States Constitution**

**(42 U.S.C. § 1983)**

61. Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs 1 through 60, as if fully set forth herein.

62. The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs' right to equal protection of the law.

63. The Defendants' vaccine policies and orders, on their face and as applied, are an unconstitutional abridgement of Plaintiffs' right to equal protection.

64. The Defendants' vaccine policies and orders, on their face and as applied, create a system of classifications that improperly accommodate exemptions for employees concerned

with bodily health while denying exemptions or granting "provisional" exemptions to employees seeking to exercise their sincerely held religious beliefs.

65. The Defendants' vaccine policies and orders discriminate between religion and nonreligion.

66. There is no rational, legitimate, or compelling interest in applying different requirements to similarly situated groups.

67. As a direct and proximate result of Defendants' violation of the Fourteenth Amendment, Plaintiffs have suffered, and will suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief. Additionally, Plaintiffs are entitled to nominal damages, compensatory damages in an amount to be proven at trial, and attorneys' fees under 42 U.S.C. § 1988.

## FOURTH CAUSE OF ACTION

### Deprivation of Civil Rights Under 42 U.S.C. § 1983 (*Monell*)

68. Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs 1 through 67, as if fully set forth herein.

69. The unlawful actions carried out by the Defendants, as alleged in the First through Third Causes of Action, were carried out by individuals who sit at the top of their departments within the County and who qualify as final policymakers under *Monell v. Department of Social Services*.

70. Furthermore, the County's Risk Tier System, although distributed by County Counsel James Williams and County Executive Jeffrey Smith, was ratified by Dr. Sara Cody. Other departments within the County, such as the EOD, were directed by the Defendants to prioritize medical exemptions over religious exemptions. Therefore, the County is liable for any damages that may be awarded against the Defendants for their unlawful actions.

71. Plaintiffs are also entitled to recover their costs and attorneys' fees under 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for relief as follows:

1. Nominal damages for violation of their civil rights;

2. For damages in an amount to be proven at trial;

3. For a declaratory judgement that the County's vaccine orders and policies are unconstitutional;

4. For a declaratory judgement that the County's vaccine orders and policies violate FEHA;

5. For temporary, preliminary, and permanent injunctive relief enjoining Defendants from enforcing the County's vaccine orders and policies and taking any adverse employment action against the Plaintiffs based upon their refusal to take the COVID-19 vaccine or booster;

6. For costs, attorneys' fees and interest, as allowed by law; and

7. For such other relief the Court determines is proper.

Respectfully submitted,

Advocates for Faith & Freedom

Dated: February 18, 2022

/s/ Mariah Gondeiro, Esq.
Mariah Gondeiro
Attorney for Plaintiffs