Robert H. Tyler, Esq., CA Bar No. 179572
rtyler@faith-freedom.com
Nada Higuera, State Bar No. 299819
nhiguera@faith-freedom.com
Mariah Gondeiro, State Bar No. 323683
mgondeiro@faith-freedom.com
ADVOCATES FOR FAITH & FREEDOM
25026 Las Brisas Road
Murrieta, California 92562
Telephone:    (951) 600-2733
Facsimile:    (951) 600-4996

Attorneys for **Plaintiffs**

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **UNIFYSCC,** an unincorporated California association on behalf of employees in Santa Clara County; **TOM DAVIS,** an individual; and **MARIA RAMIREZ,** an individual; | Case No. 5:22-cv-01019-SVK |
| | *[Honorable Beth L. Freeman]* |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| **SARA H. CODY,** in her official capacity as the Santa Clara County Public Health Officer; **JAMES WILLIAMS,** in his official capacity as the County Counsel of Santa Clara County; **JEFFREY SMITH,** in his official capacity as the County Executive of Santa Clara County; and **SANTA CLARA COUNTY;** | Date:      June 23, 2022 |
| | Time:      9:00 a.m. |
| | Courtroom: 3 |
| Defendants. | |

**TO THE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 23, 2022, at 9:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 3, 5th Floor, United States District Court, Northern District of California, San Jose Courthouse located at 280 South 1st Street, San Jose, California 95113, Plaintiffs Unify Santa Clara County ("UnifySCC"), Tom Davis, and Maria Ramirez (collectively, "Plaintiffs") will and hereby do move for a preliminary injunction against Defendants Sara H. Cody, James Williams, Jeffrey Smith, and Santa Clara County (collectively, "Defendants") as follow:

1.      Defendants, as well as their agents, employees, and successors in office, shall be restrained from enforcing, attempting to enforce, or threatening to enforce a vaccine/booster mandate against Plaintiffs or otherwise requiring Plaintiffs to receive the COVID-19 vaccine or booster as a condition of employment.

2.      Defendants, as well as their agents, employees, and successors in office, shall be restrained from taking any adverse action against Plaintiffs based on their refusal to take the COVID-19 vaccine, including relegating Plaintiffs to unpaid leave, and stripping Plaintiffs of their employment benefits.

Plaintiffs make this Application pursuant to the Federal Rules of Civil Procedure Rule 65(a) and Civil Local Rule 65-1. Plaintiffs will likely succeed on the merits of their First Amendment and Fourteenth Amendment claims, they will suffer irreparable harm absent immediate injunctive relief, the balance of equities tips sharply in their favor, and the relief sought is in the public interest.

Good cause exists to issue the requested order to preserve Plaintiffs' constitutional rights under the United States Constitution and to avoid irreparable harm to those rights. This motion is supported by the accompanying Memorandum of Points and Authorities and supporting declaration attached thereto, the Complaint and exhibits attached thereto, and by such other argument and evidence that may be adduced at any hearing on this matter.

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION**

As reflected in the accompanying declaration of Mariah Gondeiro, Plaintiffs have notified Defendants' counsel of their intention to file this motion. *See* Gondeiro Decl. ¶ 7.

Respectfully submitted,

ADVOCATES FOR FAITH & FREEDOM

Dated: April 1, 2022

/s/ Mariah Gondeiro, Esq.
Mariah Gondeiro
Attorney for Plaintiffs

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

### I. INTRODUCTION

Since March 2020, Santa Clara County (the "County") has issued unconstitutional "health orders" in the name of COVID-19. These orders impacted fundamental freedoms by identifying whether a job was essential and limiting freedom of movement. Despite frequent changes, one constant remained the same: religious people were treated differently and unconstitutionally discriminated against. Indeed, the Supreme Court admonished the County for its ban on religious services because it treated churches harsher than secular activities and entities. *See Gateway City Church v. Newsom*, 141 S. Ct. 1460 (2021).

By spring 2021, the County lifted its health orders as several experimental vaccines were circulated throughout the community. The vaccines were developed quickly to protect those who are at highest risk of getting seriously ill from COVID-19, especially the elderly and those with multiple co-morbidities. In response to the spread of Omicron and other variants, Defendants ordered that all workers in "high-risk" settings in the County get the shots plus the most recent boosters. Defendants have the sole authority to enforce the COVID-19 mandates and retain the discretion to exempt anyone from their mandates at any time.

Plaintiffs are "high-risk" employees whose religious beliefs prevent them from taking the COVID-19 vaccine or booster. Like the previous "health orders," Defendants have disregarded sincerely held religious beliefs when applying their vaccine orders and policies. Notably, Defendants never engaged in good faith negotiations to determine whether reasonable accommodations were available to Plaintiffs and instead forced them to take unpaid leave. They did, however, provide accommodations to similarly situated employees for medical reasons.

Defendants' policies and orders violate the Free Exercise Clause because they grant Defendants sole discretion to determine whether an individualized exemption will be granted. Defendants also violate the Free Exercise Clause and Equal Protection Clause because they discriminate against similarly situated individuals by prioritizing medical exemptions over

1

religious exemptions. Employees with religious objections pose no greater threat of transmitting COVID-19 than employees with medical objections.

Further, a preliminary injunction is warranted because Plaintiffs will suffer irreparable harm absent immediate relief. The violation of Plaintiffs' First Amendment rights constitutes irreparable harm. The balance of hardship also weighs strongly in favor of Plaintiffs. Any harm to Defendants is belied by the fact that they grant reasonable accommodations to similarly situated employees. Thus, this Court should preliminarily enjoin Defendants from taking any adverse action against Plaintiffs until it adjudicates this Action.

## II. FACTS

Plaintiffs are employees who work in the County and are subject to its vaccine policies and orders. Compl., ¶ 8, ECF No. 1. They have sincerely held religious beliefs that prevent them from taking the COVID-19 vaccine. *Id.* Because the Plaintiffs are classified as high-risk employees, the Defendants relegated them to unpaid leave and stripped them of employment benefits. *Id.*

On August 5, 2021, Defendants issued a policy requiring all employees take the COVID-19 vaccine or request a medical and/or religious exemption. *Id.*, ¶ 21, Ex. A. Defendants' policy also created a risk tier system that classified employees as low risk, intermediate risk, or high risk ("Risk Tier System"). *Id.*, ¶ 22. Employees in low risk and intermediate risk positions with religious objections can continue to work if they wear a mask and take specific COVID-19 tests. *Id.*, ¶¶ 23-24. Employees in high-risk positions include social workers, registration clerks, nurses, firefighters, doctors, electricians, plumbers, and probation counselors. *Id.*, ¶ 25. These employees cannot continue to work if they remain unvaccinated. *Id.*

On December 28, 2021, the County issued a health order ("Vaccine Order") "requiring up-to-date vaccination for all workers in specific high-risk setting in [the County] (i.e., both fully vaccinated and boosted against COVID-19 if eligible for a booster) by January 24, 2022." *Id.*, ¶ 25, Ex. C. On January 22, 2022, the County issued a directive establishing a waiver process ("Waiver Order"). *Id.*, ¶ 28, Ex. D. "The waiver is available to entities facing

critical staffing shortages and applies to personnel who receive a bona fide medical and/or religious exemption and who follow specific safety protocols." *Id.* Defendants have the authority to revoke any waiver. *Id.*, ¶ 29.

Plaintiffs' sincerely held religious beliefs have been approved, "but they have not been granted a reasonable accommodation because they are in a 'high risk' job setting." *Id.*, ¶ 8. Defendants did not offer reasonable accommodations to Plaintiffs such as weekly testing, teleworking, reassignment, working a modified shift, or requiring employees to wear an N95 mask. *Id.*, ¶ 34. Defendants do offer reasonable accommodations to employees with medical exemptions. *Id.*, ¶ 35. Indeed, an employee with the Equal Opportunity Division within the Office of the County Counsel sent the following email confirming medical exemptions receive priority over religious exemptions: "Religious exemption is not part of the reasonable accommodation process, we are not placing you, just helping you through the recruitment process. Only medical is part of Reasonable Accommodation and you would work directly with the EOD." *Id.*, ¶ 37, Ex. E.

## III. ARGUMENT

In determining whether to issue a preliminary injunction, this Court must consider the following four factors: (1) whether the movant has shown a likelihood of success on the merits, (2) whether there is a likelihood the movant will suffer irreparable harm in the absence of a preliminary injunction, (3) whether the balance of the equities tips in the movant's favor, and (4) the injunction is in the public's interest. *Planned Parenthood Arizona, Inc. v. Humble* 753 F.3d 905, 911 (9th Cir.2014); *see Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008) (setting out factors). Movant can obtain a preliminary injunction if she can show "serious questions" going to the merits and that the balance of hardships "tips sharply" towards the movant. 753 F.3d at 911. Plaintiffs easily satisfy these factors here.

### A. Plaintiffs Are Likely To Succeed On The Merits

Plaintiffs will likely succeed on the merits because Defendants' vaccine orders and policies violate the Free Exercise Clause and Equal Protection Clause.

1.   <u>Defendants' Vaccine Policies and Orders Violate the Free Exercise Clause</u>

The Defendants' policies and orders violate the Free Exercise Clause because they are not neutral and generally applicable and fail strict scrutiny. Specifically, the policies and orders are not neutral because the Defendants have sole discretion to grant or deny religious exemptions or exempt any one from their orders and policies at any time. The Defendants also discriminate against religion by prioritizing medical exemptions over religious exemptions. The Defendants' policies and orders fail strict scrutiny because employees with medical contraindications pose no greater threat of spreading COVID-19 than employees with religious objections.

     (a)   The Defendants' Vaccine Policies and Orders Burden Plaintiffs' Religious Exercise.

"The principle that government, in pursuit of legitimate interests, cannot in a selective manner impose burdens only on conduct motivated by religious belief is essential to the protection of the rights guaranteed by the Free Exercise Clause." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1990) ("*Lukumi*"). Under the Free Exercise Clause, neutral laws of general applicability are subject to "rational basis" scrutiny if they only incidentally burden religious activity. *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 878 (1990). But, when burdensome laws are discriminatory against religious practices, i.e., not generally applicable or neutral, strict scrutiny applies, and the government's actions must be both justified by a compelling interest and narrowly tailored to advance that interest. *Lukumi,* 508 U.S. at 553.

The Plaintiffs have alleged that their religious beliefs prevent them from taking the COVID-19 vaccine. The Defendants' vaccination orders and practices burden Plaintiffs' religious exercise by threatening loss of employment if they refuse vaccination. There is no debate the Plaintiffs' religious beliefs are sincere because the County has granted them religious exemptions. And, for the reasons discussed below, the Defendants' policies and orders are not neutral and fail strict scrutiny.

(b)     Defendants' Policies and Orders Are Not Neutral Because They Create a Formal Mechanism for Granting and Denying Exemptions

Defendants' vaccine orders and policies trigger strict scrutiny under the Free Exercise Clause because they are not neutral and generally applicable. "A law is not generally applicable if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021) (quoting *Smith*, 494 U.S. at 884). A policy that provides a "mechanism for individualized exemptions," as is the case here, is not generally applicable. *Fulton*, 141 S. Ct. at 1877 (citation omitted).

In *Fulton*, the City of Philadelphia refused to enter into a full foster care contract with Catholic Social Service, a foster care agency, because they would not consider prospective foster parents in same-sex marriages. *Id.* at 1875-76. The City claimed CSS's practices violated a city ordinance and a provision in its contract and refused to refer children to the organization. *Id*. at 1876. CSS challenged the referral freeze under the Free Exercise Clause, and the Court held the "creation of a formal mechanism for granting exceptions renders a policy not generally applicable, *regardless of whether any exceptions have been given*, because it 'invite[s]' the government to decide which reasons for not complying with the policy are worthy of solicitude..." *Id*. at 1876, 1879 (citing *Smith,* 494 U.S. at 884) (emphasis added).

Following *Fulton*, the Sixth Circuit Court of Appeals affirmed a preliminary injunction in favor of student athletes who refused to take the COVID-19 vaccine and were thereafter denied a reasonable accommodation for their religious beliefs. *Dahl v. Bd. of Trustees of W. Mich. Univ.*, 15 F.4th 728 (6th Cir. 2021). In reaching this decision, the Sixth Circuit held the university's policy was not neutral and generally applicable because it evaluated whether to grant religious exemptions on an individualized basis. *Id.* at 733. A court in Arizona reached a similar conclusion, holding the "Defendant's process for reviewing religious accommodations appears to be the type of individualized mechanism that triggers strict scrutiny under *Fulton*." *Thoms v. Maricopa Cnty. Cmty. Coll. Dist.*, 2021 WL 5162538, at *9 (D. Ariz. Nov. 5, 2021).

Here, the County denied Plaintiffs' religious accommodations because they are considered "high-risk" employees, as determined by the County's Risk Tier System. Compl., ¶¶ 8, 22-25. On December 28, 2021, Defendants issued the Vaccine Order which prevented employees in high-risk setting from requesting an accommodation altogether. *Id.*, ¶ 26, Ex. C. Then, on January 10, 2022, the County created a system wherein they can waive employment settings they deem are necessary based on staffing shortages. *Id.*, ¶ 28, Ex. D. Defendants also reserve the right to revoke a waiver. *Id.*, ¶ 29.

In sum, Defendants have the authority to decide who is affected by their policy, who must comply with their policy, and who is exempted from their policy. Defendants' policies and orders, combined with their ability to exercise sole discretion to exempt anyone at any time, triggers strict scrutiny.

          (c)     Defendants' Vaccine Policies and Orders Are Also Not Neutral Because They Favor Employees with Medical Exemptions over Religious Exemptions.

Defendants' policies and orders are also not neutral because they discriminate against religion. A regulation is not a neutral burden on religion if it discriminates against a religious practice on its face, or if in its real operation it targets a religious practice. *Lukumi*, 508 U.S. at 534. Additionally, a regulation is not generally applicable where it "treat[s] *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (April 9, 2021) (emphasis in original). And "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue," including activities that "could . . . present [] similar risks" of "spread[ing] COVID-19." *Id.* (internal quotations omitted).

Here, Defendants' vaccine policies and orders purportedly provide for both medical and religious exemptions. Compl., ¶ 21. However, in application, Defendants discriminate against religion by prioritizing medical accommodations over religious accommodations. Defendants never accommodated Plaintiffs but instead relegated them to unpaid leave. *Id.*, ¶

33. Defendants do accommodate employees with medical exemptions. *Id.*, ¶¶ 35-37. Therefore, Defendants must satisfy strict scrutiny.

(d)     The Defendants Cannot Survive Strict Scrutiny

Because Defendants' vaccine policies and orders are not neutral and generally applicable, they trigger strict scrutiny under the First Amendment. *See Fulton*, 141 S. Ct. at 1877; *Lukumi*, 508 U.S. at 531–32. Defendants can offer "no compelling reason why it has a particular interest in denying an exception [to these particular Plaintiffs] while making them available to others." *Id.* at 1882. There is no compelling interest in denying Plaintiffs' religious accommodations while granting similarly situated individuals accommodations for medical reasons notwithstanding the government's supposed interest in stopping the spread of COVID-19.

For related reasons, Defendants falter on the narrowly tailored prong. As the Supreme Court recently put it with respect to the government's "interest in reducing the spread of COVID," "[w]here the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied." *Tandon*, 141 S. Ct. at 1297. That is exactly what the government cannot do here. Defendants cannot show that an unvaccinated religious adherent undermines their asserted interests any more than an unvaccinated employee with medical contraindications to vaccination. *See Dahl,* 15 F.4th at 735 ("One need not be a public health expert to recognize that the likelihood that a student-athlete contracts COVID-19 from an unvaccinated non-athlete with whom she lives, studies, works, exercises, socializes, or dines may well meet or exceed that of the athlete contracting the virus from a plaintiff who obtains a religious exemption to participate in team activities."); *Thoms*, 2021 WL 5162538, at *10 ("Plaintiffs are equally likely to spread COVID-19 as those students whose clinical sites do not require vaccination, who are nonetheless excluded from the Policy").

2.     Defendants' Vaccine Policies and Orders Violate the Equal Protection Clause

Plaintiffs also allege a claim for relief under the Equal Protection Clause. The Equal Protection Clause provides that "[n]o State shall…deny to any person within its jurisdiction

the equal protection of the laws." U.S. Const. amend. XIV. Equal protection requires the state to govern impartially – not draw distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objection. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 466 (1985). For the reasons explained above, Defendants' policies and orders discriminate against religion by creating a system of classifications that improperly accommodate exemptions for employees concerned with bodily health while denying accommodations to employees seeking to exercise their sincerely held religious beliefs. Compl., ¶ 64. There is no rational, legitimate, or compelling interest in applying different standards to similarly situated groups. *See Romer v. Evans*, 517 U.S. 620, 633 (1996) ("A law declaring that in general it shall be more difficult for one group of citizens than for all others to seek [protection] from the government is itself a denial of equal protection of the laws in the most literal sense.").

Plaintiffs show they are likely to succeed on the merits of their claims, and, at a bare minimum, demonstrate serious questions about them.

**B.    Plaintiffs Satisfy The Remaining Factors For A Preliminary Injunction**

Plaintiffs easily satisfy the remaining three factors for a preliminary injunction: (1) irreparable harm; (2) balance of hardships; and (3) public interest.

Plaintiffs can demonstrate irreparable harm because the loss of a constitutional right, "for even [a] minimal period [] of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Here, Plaintiffs must either receive the vaccine in direct violation of their religious beliefs or refuse the vaccine and face imminent loss of employment. Because the County's vaccine policy results in the threatened infringement of First Amendment rights, this Court must find irreparable harm. *See Cuviello v. City of Vallejo*, 944. F.3d 816 (9th Cir. 2019).

Furthermore, where the government is the opposing party, the balance of harm and the public interest merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Defendants' vaccine orders and policies violate the First Amendment, and "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990,

1002 (9th Cir. 2012) (quoting *Elrod*, 427 U.S. at 373). As the U.S. Supreme Court recently affirmed, "even in a pandemic, the Constitution cannot be put away and forgotten." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020).

Further, any argument of irreparable harm is belied by the fact that Defendants grant reasonable accommodations to similarly situated employees for medical reasons. Plaintiffs pose no greater threat of spreading COVID-19 than individuals concerned with bodily health. However, Plaintiffs are being deprived of their constitutional rights and their livelihood is at stake. In weighing the harms, they tip sharply in favor of Plaintiffs.

The public undoubtedly has considerable interest in maintaining the service of healthcare workers, social workers, and other public servants who have provided critical care to COVID-19 patients and individuals suffering from mental health issues during the pandemic. *See* Battacharya Decl., ¶ 44. Thus, injunctive relief is in the public interest.

### IV. CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion to preliminary enjoin Defendants' vaccine policies and orders.

Respectfully submitted,

ADVOCATES FOR FAITH & FREEDOM

Dated:  April 1, 2022

/s/ Mariah Gondeiro, Esq.
Mariah Gondeiro
Attorney for Plaintiffs