Robert H. Tyler, Esq., CA Bar No. 179572
rtyler@faith-freedom.com
Nada Higuera, State Bar No. 299819
nhiguera@faith-freedom.com
Mariah Gondeiro, State Bar No. 323683
mgondeiro@faith-freedom.com
Nathan W. Kellum (*Pro Hac Vice*)
nkellum@faith-freedom.com
ADVOCATES FOR FAITH & FREEDOM
25026 Las Brisas Road
Murrieta, California 92562
Telephone: (951) 600-2733
Facsimile: (951) 600-4996
Attorneys for **Plaintiffs**

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **UNIFYSCC,** an unincorporated California association on behalf of employees in Santa Clara County; **TOM DAVIS,** an individual; and **MARIA RAMIREZ,** an individual;<br><br>Plaintiffs,<br>vs.<br><br>**SARA H. CODY,** in her official capacity as the Santa Clara County Public Health Officer; **JAMES WILLIAMS,** in his official capacity as the County Counsel of Santa Clara County; **JEFFREY SMITH,** in his official capacity as the County Executive of Santa Clara County; and **SANTA CLARA COUNTY;**<br>Defendants. | Case No. 5:22-cv-01019-SVK<br><br>*[Honorable Beth L. Freeman]*<br><br>**REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: June 23, 2022<br>Time: 9:00 a.m.<br>Courtroom: 3 |

## I. INTRODUCTION

While one would never know from reading Defendants'[1] opposition, the issues here turn on Defendants' uniliteral discretion to grant or deny exemptions and accommodations and their disparate treatment of religion. Despite having approved sincerely held religious beliefs, Defendants have relegated Plaintiffs to unpaid leave because they work in "high-risk" settings. Yet the County gives similarly situated employees with medical objections preferential treatment by allowing the Equal Opportunity Division ("EOD") to assist with transfers. Defendants' actions and policies violate the Free Exercise Clause and Equal Protection Clause.

Unable to defend their actions under the First Amendment, Defendants attempt to change the subject to whether the vaccinated were treated differently than the unvaccinated and whether Plaintiffs' accommodations were reasonable. The disparate treatment of the vaccinated over the unvaccinated is not part of the analysis under the First Amendment. Rather, the focus is on the differential treatment of religious objectors as compared to medical objectors. Further, although Plaintiffs will argue unpaid leave is not a reasonable accommodation after discovery, this is not at issue in Plaintiffs' motion.

This motion is simple. Defendants maintain sole discretion to grant or deny exemptions and accommodations, exercising an authority that triggers strict scrutiny under the Free Exercise Clause, as established in *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021). Defendants have abused their discretion, discriminating against religion as a matter of course. They readily concede they have granted medical objectors' preferential consideration, offering no compelling reason for stripping Plaintiffs of their employment while assisting medical objectors with transfers. Surely, Defendants could have imposed less restrictive measures, like mandatory testing, masks, and social distancing – measures imposed during the height of the pandemic – but they treat religious objectors less favorably.

Aside from succeeding on the merits, Plaintiffs will also suffer irreparable harm absent injunctive relief because of the continued violation of their First Amendment rights. The equities

---

[1] Defendants Sara H. Cody, James Williams, Jeffrey Smith and Santa Clara County are collectively referred to as "Defendants" or "the County."

1
REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

weigh strongly in Plaintiffs' favor because the pandemic is winding down and the County has lifted most COVID-19 orders. Given the diminishing threat from COVID-19, Plaintiffs should be allowed to continue their chosen vocations and provide for their families while their claims are litigated. This Court should preliminarily enjoin Defendants from taking any adverse employment action against Plaintiffs until it adjudicates this action.

**A.      The Record Is Replete With Credible, Undisputed Facts Supporting A Preliminary Injunction.**

Defendants assert Plaintiffs have not produced credible evidence in support of their motion. Defs' Opp'n at 8. The record reveals otherwise. Plaintiffs offer exhibits of the relevant vaccine orders and policies and emails outlining the County's accommodation process. Compl., Exs A-F. And Defendants confirm these facts in their opposition and declarations. Thus, the cases Defendants rely on to support their argument are distinguishable.

For instance, in *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, the Ninth Circuit held the record did not support a finding of irreparable harm because plaintiff's affidavits were conclusory and without sufficient support in facts. 750 F.2d 1470, 1473 (9th Cir. 1985). Similarly, in *Hicks v. Neal*, this court held that the plaintiff did not produce any competent and credible evidence, and he failed to "demonstrate, not merely allege, his entitlement to a preliminary injunction." No. C 12-2207 SI PR, 2012 WL 3791399, at *3 (N.D. Cal. Aug. 31, 2012).

Here, in contrast, there is no dispute about Defendants' policy. As shown in the unrebutted emails attached to the complaint, the County treats employees with religious exemptions differently than employees with medical exemptions. In one email, the County informed an employee that, "[r]eligious exemption is not part of the reasonable accommodation process, we are not placing you, just helping you through the recruitment process. Only medical is part of the Reasonable Accommodation and you would work directly with the EOD." Compl. ¶ 37, Ex. E. The County does not dispute the veracity of this email, or the policy reflected in this email, but concedes they are prioritizing medical exemptions over religious exemptions. Indeed, Miguel Márquez, the Chief Operating Officer for the County, avers in his declaration that, "[d]epartments connected those with disability or medical contraindication vaccination exemptions with EOD to assist them with transfers

and give them 'preferential consideration'...." Márquez Decl. ¶ 41. Therefore, the record is now complete with undisputed, credible evidence of discrimination.

B.  **Defendants' Vaccine Policies And Orders Violate The Free Exercise Clause**

Defendants' claim the vaccine policies do not violate Plaintiffs' free exercise rights because they do not burden Plaintiffs' religious practice and that they are neutral and generally applicable. Defs' Opp'n at 9-13. As to religious burden, the Defendants' say, "Plaintiffs do not (and could not) contend that the County has forced them to be vaccinated." Defs' Opp'n at 10. But Defendants gloss over the point. Plaintiffs have alleged, and Defendants have confirmed, that the County relegated the Plaintiffs with unpaid leave (not transfers) because they declined to take the COVID-19 vaccine. Compl. ¶¶ 30-32; Márquez Decl. ¶¶ 37-38. Defendants admit Plaintiffs were granted a provisional exemption because they "articulated a claimed religious belief on the face of the exemption request form, rather than, for example, a political objection or a personal non-religious belief that vaccines are dangerous." *Id.* ¶ 38. The vaccine policies burden Plaintiffs' religious beliefs because they threaten Plaintiffs with loss of employment for not taking a religiously objectionable vaccine. *See Fulton*, 141 S. Ct. at 1871 ("The City's actions burdened CCS's religious exercise by forcing it to curtail its mission or to certify same-sex couples as foster parents in violation of its religious beliefs.")

As to neutrality, Plaintiffs assert two separate theories under the Free Exercise Clause. First, Plaintiffs claim the policies and orders are not neutral because Defendants have sole discretion to grant or deny religious exemptions and accommodations or exempt any one from their orders and policies at any time. Second, Plaintiffs argue the vaccine policies and orders violate the Free Exercise Clause because they are not operationally neutral.

Because Defendants' policies and orders are neither neutral nor generally applicable, they must satisfy strict scrutiny. Defendants cannot satisfy this exacting standard. They cannot demonstrate the employees with religious exemptions pose a greater risk to their colleagues and the public than employees with medical contraindications or disabilities. Further, Defendants cannot demonstrate that they employed the least restrictive measures to satisfy their interest in protecting the workforce and the public from COVID-19.

1. *Defendants' Policies and Orders are Not Neutral Because They Create a Formal Mechanism for Granting and Denying Exemptions*

Defendants contend their policies and orders are generally applicable because they only afford the government some discretion to grant or deny exemptions. Defs' Opp'n at 13. They rely on a distinguishable case called *Stormans, Inc. v. Wiesman*, where the Ninth Circuit held that "[t]he mere existence of an exemption that affords some minimal governmental discretion does not destroy a law's general applicability." 794 F.3d 1064, 1082 (9th Cir. 2015). In *Stormans*, the plaintiffs claimed the Delivery Rule contained discretionary text like "substantially similar" and "good faith compliance." *Id.* at 1081. However, the phrase "substantially similar" was tied to five specific enumerated exemptions, and "good faith compliance" was tied directly to the "objective standard of meetings patients' needs by providing a representative assortment of drugs…." *Id.* Therefore, the court concluded "that the rules d[id] not afford unfettered discretion that could lead to religious discrimination because the provisions [were] tied to particularized, objective criteria." *Id.* at 1081-82.

Here, the County's operative policy is devoid of particularized, objective criteria to guide the County. The policy states employees may request a reasonable accommodation to the vaccination requirement if they: "1. Have a contraindication recognized by the U.S. Centers for Disease Control and Prevention (CDC) or by the vaccine's manufacturer….; 2. Have a disability and are requesting an exception as a reasonable accommodation; or, 3. Object to COVID-19 vaccination based on their sincerely held religious belief, practice, or observance." Compl. ¶ 21, Ex. A; Márquez Decl. ¶ 35, Ex. 10. The County relies on their sole "discretion" to determine if an employee has a sincerely held religious belief. *Id.* ¶ 38. Thus, *Stormans* is inapt.

The case that controls is *Fulton*, where the Supreme Court held that "[a] law is not generally applicable if it invite[s] the government to consider the particular reasons for a persons conduct by providing a mechanism for individualized exemptions." 141 S. Ct. 1868, 1877 (2021) (cleaned up). *Fulton* stands for the proposition that whenever a government imposes a system of individualized exemptions, "it may not refuse to extend that system to cases of religious hardship without compelling reason." *Id.* 141 at 1877 (citing *Smith*, 494 U.S. at 884) (internal citations omitted). In other words, strict scrutiny applies, "*regardless of whether any exceptions have been given*, because it 'invite[s]' the government to decide which reasons for not complying with the policy are worthy of

solicitude…." *Fulton*, 141 S. Ct. at 1879 (citing *Smith*, 494 U.S. at 884) (emphasis added).

Several courts have extended *Fulton* to vaccine mandates. For instance, the Sixth Circuit held a university's reasonable accommodation process was unconstitutional because it granted exemptions on an individualized basis. *Dahl v. Bd. of Trustees of W. Michigan Univ.*, 15 F.4th 728, 733 (6th Cir. 2021). A court in Arizona reached a similar conclusion, holding the "Defendant's process for reviewing religious accommodations appears to be the type of individualized mechanism that triggers strict scrutiny under *Fulton*." *Thoms v. Maricopa Cnty. Cmty. Coll. Dist.*, No. CV-21-01781-PHX-SPL, 2021 WL 5162538, at *9 (D. Ariz. Nov. 5, 2021).

Here, the County exercised their discretion in determining whether to grant an exemption or accommodation on a case-by-case basis. Marquez Decl. ¶ 38. The County also granted waivers to certain entities exempting them from the order issued on December 28, 2021, if they could verify that they "could not maintain operations without the waiver, [and] had undertaken a good faith, individualized exemption process…." *Id.* ¶ 50. On March 7, 2022, the County amended the December 28, 2021, order to allow unvaccinated employees with an approved religious or medical exemption to work in higher-risk settings. *Id.* ¶ 52. Then, on April 1, 2022, the County decided to revert back to the requirements in place before the December 28, 2021 order. *Id.* ¶ 54. The County has the sole discretion to exempt anyone from the vaccine mandate or amend the vaccine mandate at any time. This scheme triggers strict scrutiny – a scrutiny the scheme cannot bear.

    2.    *Defendants' Vaccine Policies and Orders are also Not Neutral Because They Favor Employees with Medical Exemptions over Religious Exemptions.*

Contrary to Defendants' suggestion, Plaintiffs do not question whether the vaccine policies are facially neutral. The issue concerns the disparate operation of the vaccine policies and orders. As to operational neutrality, Defendants, again, misapprehend the argument. Defs' Opp'n at 11-12. Plaintiffs do not contend the vaccine policies and orders are not neutral because they treat the vaccinated differently from the unvaccinated or that they do not provide exemptions for religious objectors. Thus, *We The Patriots USA, Inc. v. Hochul*, the case Defendants rely on to support their position, is distinguishable. 17 F.4th 266, 281 (2d Cir. 2021) (*per curiam*).

In *Hochul*, the plaintiffs there claimed the government intended to target religious objectors

5
REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

because the August 18, 2021, order contained a religious exemption, and a subsequent order did not. *Id.* The Second Circuit held that the subsequent order, Section 2.61, did not target religious because it "applie[d] whether an employee is eager to be vaccinated or strongly opposed, and it applies whether an employee's opposition is due to philosophical or political objections to vaccine requirements . . . or religious beliefs." *Id.* at 282-83. The court also held that the historical background of Section 2.61, without further discovery, did not raise an inference that "the regulation was intended to be a covert suppression of particular religious beliefs." *Id.* at 282 (internal citation omitted).

Similarly, the court in *Wise v. Inslee* found Governor's Inslee's proclamation concerning mandatory vaccination was neutral and generally applicable because it applied with equal force to all workers and provided religious exemptions. No. 2:21-CV-0288-TOR, 2021 WL 4951571, at *3 (E.D. Wash. Oct. 25, 2021). The court further held that plaintiffs could not demonstrate a discrimination "solely because they disagree with the availability of accommodations." *Id.*

On the other hand, here, the vaccine policies favor secular conduct over religious conduct. A regulation is not generally applicable where it "treat[s] *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (emphasis in original). And "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue," including activities that "could . . . present similar risks" of "spreading COVID-19." *Id.* (cleaned up).

Defendants' vaccine policies purportedly provide for both medical and religious exemptions. But in application, Defendants discriminate against religion by favoring employees with medical contraindications and disabilities. This is not disputed. Defendants concede their vaccine policies give employees with medical exemptions "preferential consideration." Márquez Decl. ¶ 41. Employees with religious exemptions were relegated to unpaid leave while employees with medical exemptions were connected "with the EOD to assist them with transfers…." *Id.* ¶¶ 40-41.

Finally, although unpaid leave is not a reasonable accommodation, the reasonableness of the accommodation is not relevant to the analysis here.[2] The court in *Wise* discussed the reasonableness of

---

[2] Defendants dedicate seven pages of their argument to the reasonableness of Plaintiffs' accommodations under Title VII – an issue that was not raised in Plaintiffs' motion. Defs' Opp'n at 16-23. Plaintiffs' First Amendment claims turn on Defendants' unilateral discretion to grant or

the plaintiffs' accommodations because that was the lynchpin of their argument. 2021 WL 4951571, at *3. Plaintiffs, though, argue the vaccine policies and orders are not operationally neutral because they favor medical objectors over religious objectors. This allegation is undisputed. *See* Márquez Decl. ¶ 41. Thus, the vaccine policies and orders must survive strict scrutiny.

3.  *Defendants Cannot Survive Strict Scrutiny*

Defendants argue the vaccine policies would satisfy either rational basis or strict scrutiny because the COVID-19 vaccine is the most effective way to guard against the virus. Defs' Opp'n at 13-15. But, once again, Defendants focus on the wrong issue. Because the vaccine policies trigger strict scrutiny, Defendants must demonstrate they have a compelling interest in relegating Plaintiffs to unpaid leave, and whether their conduct is narrowly tailored to achieve that interest. *Fulton*, 141 S. Ct. at 1881.

Defendants can offer "no compelling reason why it has a particular interest in denying an exception [to these particular Plaintiffs] while making them available to others." *Id*. at 1882. In other words, Defendants have no compelling reason to give employees with medical exemptions preferential treatment. For related reasons, Defendants falter on the narrowly tailored prong. Defendants cannot show that an unvaccinated religious adherent undermines their asserted interests any more than an unvaccinated employee with a medical exemption. *See Dahl,* 15 F.4th at 735 ("One need not be a public health expert to recognize that the likelihood that a student-athlete contracts COVID-19 from an unvaccinated non-athlete with whom she lives, studies, works, exercises, socializes, or dines may well meet or exceed that of the athlete contracting the virus from a plaintiff who obtains a religious exemption to participate in team activities."); *Thoms*, 2021 WL 5162538, at *10 ("Plaintiffs are equally likely to spread COVID-19 as those students whose clinical sites do not require vaccination, who are nonetheless excluded from the Policy").

Furthermore, Defendants cannot explain why naturally immune religious objectors cannot continue to work in high-risk positions. Dr. Jayanta Bhattacharya, a Professor of Health Policy at Stanford, demonstrates in his declaration that natural immunity provides durable protection against COVID-19 reinfection. Bhattacharya Decl. ¶¶ 19-38. Dr. Battacharya concludes "the evidence to date

deny exemptions and accommodations and their disparate treatment of religious objectors over medical objectors.

strongly suggests that while vaccines – like natural immunity – protect against severe disease, they, unlike natural immunity, provide only short-lasting protection against subsequent infection and disease spread." *Id.* ¶ 38.

Other less restrictive measures are available, including routine testing, masking, and social distancing. Defendants fail to explain why these measures would not work now when the County aggressively imposed these measures for the first 18 months of the pandemic. Because Defendants cannot demonstrate their policies are narrowly tailored, Plaintiffs will prevail on the merits of their free exercise claims.

*Does 1-6 v. Mills*, 16 F.4th 20 (1st Cir. 2021) does not support a different conclusion. There, Maine's vaccine law only exempted workers from vaccination when it was medically inadvisable "to protect the immunocompromised who will never achieve the immunities needed to protect them and who rely on their neighbors' vaccinations." *Id.* at 24-25 (cleaned up). Maine changed its vaccination laws to eliminate religious exemptions before the COVID-19 pandemic. *Id.* at 25. The First Circuit found that exempting employees with medical objections did not undermine Maine's asserted interests of ensuring healthcare workers remain healthy and able to provide care to an overburdened healthcare system, protecting the most vulnerable and protecting the health and safety of all Mainers, patients, and healthcare workers. *Id.* at 31. The court also concluded the case was different than the previous COVID-19 cases because "Maine's rule [did] not rest on assumptions about the public health impacts of various secular or religious activities. Instead, it require[d] all health workers to be vaccinated as long as the vaccination is not medically contraindicated – that is as long as it furthers the state's health-based interests in requiring vaccination." *Id.* at 31-32.

*Mills* is distinguishable for several reasons. First, the stated purpose of the August 5, 2021 policy is to protect County personnel and the community members with whom County personnel interact with. Compl. ¶ 21, Ex. A; Márquez Decl. ¶ 35, Ex. 10. The policy affects *all* county workers (not just healthcare workers) and provides exemptions for employees with medical contraindications or disabilities *and* religious exemptions. *Id.* The County does not have evidence employees with medical disabilities will never achieve the antibodies needed to protect their colleagues. Further, the County has no evidence that employees with religious exemptions in general pose a greater threat to

their colleagues and the public than employees with medical exemptions. Thus, "the comparability concerns the Supreme Court flagged in the *Tandon* line of cases are [] present here." *Mills*, 16 F.4th at 32; *see Tandon*, 141 S. Ct. at 1296 ("Comparability [for free exercise purposes] is concerned with the risks various activities pose….").

4. *Defendants' Vaccine Policies and Orders Violate the Equal Protection Clause*

Defendants' argument on the Equal Protection Clause is unavailing as it is brief. County Opp'n at 23. *Mills* is distinguishable for the reasons stated above, so Plaintiffs' free exercise and equal protection claims will prevail on the merits. Strict scrutiny applies under the Equal Protection Clause where, as here, the classification impinges on a fundamental right, including the right to practice religion freely. *Maynard v. U.S. Dist. Court for the Cent. Dist. of California*, 701 F. Supp. 738, 742 (C.D. Cal. 1988). Defendants' policies and orders discriminate against religion by granting employees with medical exemptions preferential consideration during the accommodation process. And for the reasons stated above, Defendants cannot satisfy strict scrutiny.

## C. Plaintiffs Satisfy The Remaining Factors For A Preliminary Injunction

Plaintiffs easily satisfy the remaining three factors for a preliminary injunction: (1) irreparable harm; (2) balance of hardships; and (3) public interest.

As to irreparable harm, Defendants erroneously claim Plaintiffs will not suffer irreparable harm because loss of employment is compensable. Defs' Opp'n at 24. But loss of employment is not the source of Plaintiffs' alleged harm. Plaintiffs argue the irreparable harm is the loss of their First Amendment rights, and the Supreme Court has held that "unquestionably constitutes irreparable harm." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Here, Plaintiffs are forced to choose between violating their conscience or losing their job. The threatened infringement of First Amendment rights amounts to irreparable harm. *See Cuviello v. City of Vallejo*, 944. F.3d 816 (9th Cir. 2019).

Further, Plaintiffs' claims of irreparable harm are not belied by their short delay in seeking injunctive relief. As explained in counsel's declaration, Plaintiffs did not retain counsel until December 17, 2021. Gondeiro Decl. ¶ 2. Counsel sent Defendants a demand letter on December 22, 2021, demanding they rescind their discriminatory vaccine policies. Martinez Decl. ¶ 3, Ex. 1. From December 2021 to March 2022, the County altered their policies several times. In February 2022,

counsel became aware of emails revealing that the County prioritizes medical exemptions over religious exemptions, information that is not mentioned in the vaccine policies or orders. Gondeiro Decl. ¶ 3. The short delay was reasonable considering: (1) counsel was giving Defendants time to rescind their policies; (2) the holiday season; and (3) counsel needed time to gather facts to support Plaintiffs' causes of action.

As to the balance of equities and public interest, these interests merge when the government is a party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Contrary to Defendants' assertion, the Court does not weigh the interests advanced by the vaccine policies with Plaintiffs' interest in maintaining their job. Defs' Opp'n at 25. This Court weighs Plaintiffs' First Amendment rights against Defendants' interest in keeping the public safe. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod*, 427 U.S. at 373). As the U.S. Supreme Court recently affirmed, "even in a pandemic, the Constitution cannot be put away and forgotten." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020).

Although keeping the public safe is in the public interest, any argument of harm is undermined by the fact that Defendants help employees with medical exemptions with transfers and give them preferential treatment. Further, the public interest in achieving maximum vaccination rates is much weaker than it was several months ago. The pandemic is winding down, and COVID-19 restrictions are no longer necessary. Because COVID-19 no longer poses an imminent risk, the balance of equities tip sharply in Plaintiffs' favor.

## II. CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion to preliminary enjoin Defendants' vaccine policies and orders.

Respectfully submitted,
ADVOCATES FOR FAITH & FREEDOM

Dated: May 13, 2022     /s/ Mariah Gondeiro, Esq.
Mariah Gondeiro
Attorney for Plaintiffs