Robert H. Tyler, Esq., CA Bar No. 179572
btyler@faith-freedom.com
Mariah Gondeiro, Esq., CA Bar No. 323683
mgondeiro@faith-freedom.com
**ADVOCATES FOR FAITH & FREEDOM**
25026 Las Brisas Road
Murrieta, California 92562
Telephone:      (951) 600-2733
Facsimile:      (951) 600-4996

Rachele R. Byrd (190634)
byrd@whafh.com
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA  92101
Telephone:      (619) 239-4599
Facsimile:      (619) 234-4599

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

|  |  |
|---|---|
| **UNIFYSCC**, an unincorporated California association on behalf of employees in Santa Clara County; **TOM DAVIS**, individually and on behalf of all others similarly situated; **MARIA RAMIREZ**, individually and on behalf of all others similarly situated; and **ELIZABETH BALUYUT**, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> **SARA H. CODY**, in her official capacity as the Santa Clara County Public Health Officer; **JAMES WILLIAMS**, in his official capacity as the County Counsel of Santa Clara County; **JEFFREY SMITH**, in his official capacity as the County Executive of Santa Clara County; and **SANTA CLARA COUNTY**, <br><br> Defendants. | Case No.:  22-cv-01019-BLF <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> DATE:  TBD <br> TIME:   9:00 a.m. <br> CTRM:  3, 5th Floor <br> JUDGE: Hon. Beth Labson Freeman <br><br> **[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]** |

**DOCUMENT SUBMITTED UNDER SEAL PURSUANT TO L.R. 79-5(f)**

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

PLEASE TAKE NOTICE that on a date to be determined at 9:00 a.m. in Courtroom 3, 5th Floor of the above-entitled Court, located at 280 South 1st Street, San Jose, CA 95113, Plaintiffs UnifySCC, Tom Davis, Maria Ramirez, and Elizabeth Baluyut ("Plaintiffs") will, and hereby do respectfully move this Court for an order:

1. certifying pursuant to Federal Rules of Civil Procedure, Rule 23(b)(1)(a) and (b)(3) the following Class:

All individuals who: 1) work or worked for the County and/or are or were subject to its vaccine policies and orders, including the Risk Tier System; 2) were forced by the County to choose between taking the vaccine to maintain their jobs and/or their employment-related benefits or being placed on unpaid leave; 3) are, or have been, classified as working in high risk jobs pursuant to the County's Risk Tier System; and 4) received, or will receive, a religious exemption from the County (the "Class") between August 5, 2021 and September 27, 2022 (the "Class Period").

2. appointing Plaintiffs as Class Representatives; and

3. appointing Advocates for Faith and Freedom ("Advocates") and Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as Co-Class Counsel.

All the prerequisites and requirements for class certification are met and therefore certification is warranted. Plaintiffs base their Motion for Class Certification on: the Memorandum of Points and Authorities filed in support of this Motion; the Declaration of Mariah Gondeiro and its exhibits; the Declarations of Plaintiffs UnifySCC, Tom Davis, Maria Ramirez, and Elizabeth Baluyut; the Expert Declaration of Mr. Keith L. Mendes, CFA; all other records and papers on file in this action; any oral argument and evidence that may be presented at the hearing on this Motion; and all other matters properly before the Court.

DATED: July 14, 2023

                                   **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

                                  */s/      Rachele R. Byrd*
                                  RACHELE R. BYRD

Rachele R. Byrd
byrd@whafh.com
750 B Street, Suite 1820
San Diego, CA  92101
Telephone:     (619) 239-4599
Facsimile:     (619) 234-4599

Robert H. Tyler, Esq.
btyler@faith-freedom.com
Mariah Gondeiro, Esq.
mgondeiro@faith-freedom.com
**ADVOCATES FOR FAITH & FREEDOM**
25026 Las Brisas Road
Murrieta, California 92562
Telephone:     (951) 600-2733
Facsimile:     (951) 600-4996

*Attorneys for Plaintiffs and the Class*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ...................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.    INTRODUCTION .................................................................................. 1

II.   STATEMENT OF FACTS .................................................................... 2

III.  PROCEDURAL HISTORY .................................................................. 5

IV.  ARGUMENT .......................................................................................... 7

    A.   Standards for Class Certification ............................................... 7

    B.   The Four Prerequisites of Rule 23(a) Are Satisfied ................. 8

        1.   The Class is Numerous ..................................................... 8

        2.   Class Members Share Common Questions of Law and Fact ..................... 9

        3.   Plaintiffs are Typical ....................................................... 11

        4.   Plaintiffs are Adequate .................................................... 12

    C.   The Requirements of Rule 23(b) are Met Here ....................... 13

        1.   The Requirements of Rule 23(b)(1)(A) are Satisfied .... 13

        2.   The Requirements of Rule 23(b)(3) are also Satisfied... 14

            a.   Common Questions of Law and Fact Predominate ..... 14

                i.   Plaintiffs Will Prove Their Free Exercise Clause Claim Using Common Evidence ......................... 15

                ii.   Plaintiffs Will Use Common Evidence to Prove Their FEHA Claim ...................................... 18

                iii.   Plaintiffs Will Prove Their Equal Protection Claim Using Common Evidence .................... 19

                iv.   Common Evidence Will Prove the County Violated the Establishment Clause ................... 20

                v.   Plaintiffs Will Prove Their Title VII Claim with Common Evidence ........................................ 21

                vi.   Plaintiffs Will Prove Their *Monell* Claim Using Common Evidence ........................................ 22

            b.   A Class Action is Superior ........................................ 24

    D.   Appointment of Class Counsel ............................................... 24

V.    CONCLUSION ...................................................................................... 25

# TABLE OF AUTHORITIES

## <u>CASES</u>                                                                                                                   <u>Page(s)</u>

*Achal v. Gate Gourmet, Inc.*,
  114 F. Supp. 3d 781 (N.D. Cal. 2015) ...................................................................................18

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ...............................................................................................................12, 14

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013) ...............................................................................................................8

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001),
  *overruled on other grounds by Johnson v. California*, 543 U.S. 499 (2005) ...........................11

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) .................................................................................................12

*Burton v. Mountain West Farm Bureau Mutual Insurance Co.*,
  214 F.R.D. 598 (D. Mont. 2003) ...........................................................................................8

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993) ...............................................................................................................15

*City of Cleburne, Texas v. Cleburne Living Center*,
  473 U.S. 432 (1985) ...............................................................................................................19

*Clemons v. Norton Healthcare Inc. Retirement Plan*,
  890 F.3d 254 (6th Cir. 2018) .................................................................................................13

*Cummings v. Connell*,
  316 F.3d 886 (9th Cir. 2003) .................................................................................................12

*De La Cruz v. Tormey*,
  582 F.2d 45, 58 (9th Cir. 1978), *cert. denied*, 441 U.S. 965 (1979) ........................................20

*Doster v. Kendall*,
  54 F.4th 398 (6th Cir. 2022) ..............................................................................................9, 10, 13

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
  575 U.S. 768 (2015) ...............................................................................................................21

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .................................................................................................14

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) .................................................................................................. 15

*Everson v. Board of Ed. of Ewing*,
    330 U.S. 1 (1947) ...................................................................................................... 20

*Fobbs v. Holy Cross Health Systems*,
    29 F.3d 1439, 1447 (9th Cir. 1994), *cert. denied*, 513 U.S. 1127 (1995),
    *overruled on other grounds by*
    *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (2001) ...................... 21

*Fulton v. City of Philadelphia, Pennsylvania*,
    141 S. Ct. 1868 (2021) ................................................................................ 6, 10, 15, 16

*Gay v. Waiters' and Dairy Lunchmen's Union*,
    549 F.2d 1330 (9th Cir. 1977) .................................................................................. 22

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998), *overruled on other grounds by*
    *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................ 12, 14

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) .................................................................................... 11

*In re High-Tech Employee Antitrust Litigation*,
    985 F. Supp. 2d 1167 (N.D. Cal. 2013) .................................................................... 24

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) .................................................................................. 23

*Kennedy v. Bremerton School District*,
    142 S. Ct. 2407 (2022) ........................................................................................ 15, 16

*Leyva v. Medline Industries Inc.*,
    716 F.3d 510 (9th Cir. 2013) .................................................................................... 23

*Maynard v. U.S. District Court for the Central District of California*,
    701 F. Supp. 738 (C.D. Cal. 1988), *aff'd*, 915 F.2d 1581 (9th Cir. 1990) ................ 20

*McLean v. Crabtree*,
    173 F.3d 1176 (9th Cir. 1999) .................................................................................. 19

*M.D. ex rel. Stukenberg v. Perry*,
    675 F.3d 832 (5th Cir. 2012) .................................................................................... 11

*Monell v. Dep't of Social Services of N.Y.*
    436 U.S. 658 (1978) .................................................................................................22

*Oatis v. Crown Zellerbach Corp.*,
    398 F.2d 496 (5th Cir. 1968) ...................................................................................21

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ...................................................................................11

*Prince v. Massachusetts*,
    321 U.S. 158 (1944) .................................................................................................19

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) ..............................................................................8

*In re Rubber Chemicals Antitrust Litigation*,
    232 F.R.D. 346 (N.D. Cal. 2005) .............................................................................24

*Ruiz v. XPO Last Mile, Inc.*,
    No. 5cv2125 JLS (KSC), 2016 U.S. Dist. LEXIS 152095 (S.D. Cal. Feb. 1, 2016) ...................7

*Siino v. Foresters Life Insurance and Annuity Co.*,
    340 F.R.D. 157 (N.D. Cal. 2022) .............................................................................23

*Snipes v. Dollar Tree Distribution Inc.*,
    No. 2:15-cv-00878-MCE-DB, 2017 WL 5754894 (E.D. Cal. Nov. 28, 2017) .........................23

*Spurlock v. Fox*,
    No. 3:09-CV-00756, 2012 WL 1461361 (M.D. Tenn. Apr. 27, 2012) ....................................13

*Sterling v. Velsicol Chem. Corp.*,
    855 F.2d 1188 (6th Cir. 1988) .................................................................................23

*Stockwell v. City and County of San Francisco*,
    749 F.3d 1107 (9th Cir. 2014) .......................................................................8, 10, 14

*Stormans, Inc. v. Wiesman*,
    794 F.3d 1064 (9th Cir. 2015) .................................................................................15

*In re Tableware Antitrust Litigation*,
    241 F.R.D. 644 (N.D. Cal. Mar. 13, 2007) .............................................................14

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*,
    209 F.R.D. 159 (C.D. Cal. 2002) ............................................................................12

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ..........................................................................................14

*Upshaw v. Alameda County*,
   377 F. Supp. 3d 1027 (N.D. Cal. 2019) .................................................................22

*U.S. Navy SEALS 1-26 v. Austin*,
   594 F. Supp. 3d 767 (N.D. Tex. 2022) .................................................................10

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) .................................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .................................................................................8, 9, 11, 12

*Washington v. Davis*,
   426 U.S. 229 (1976) ..........................................................................................20

## <u>STATUTES</u>

42 U.S.C. § 1983 ............................................................................................ *passim*
42 U.S.C. § 2000e ........................................................................................... *passim*
42 U.S.C. § 2000e-2(a) .................................................................................................21
42 U.S.C. § 2000e(j) .....................................................................................................21

California Fair Employment and Housing Act, Cal. Gov't Code § 12940 ........................... *passim*
   § 12940(a) ..........................................................................................................18

U.S. Const. amend. I ......................................................................................... *passim*
U.S. Const. amend. XIV, § 1 ........................................................................................19

## <u>RULES</u>

Federal Rules of Civil Procedure
   23(a) ..........................................................................................................8, 13
   23(a)(1) .........................................................................................................8
   23(a)(2) .......................................................................................................9, 11
   23(a)(3) .........................................................................................................11
   23(a)(4) .......................................................................................................12, 24
   23(b) .........................................................................................................13, 25
   23(b)(1) .........................................................................................................13
   23(b)(1)(A) .................................................................................................2, 8, 13

23(b)(3) ................................................................................................................ *passim*

23(g)(1) ................................................................................................................24

**<u>OTHER AUTHORITIES</u>**

EEOC Religion Guidance § 12-IV-A-3 ......................................................................21

W. Rubenstein & A. Conte, *Newberg on Class Actions* § 3:58 (5th ed. 2011) ............................12

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In early 2020, the world discovered a novel coronavirus, COVID-19, and several experimental vaccines were developed to help limit its effects. The vaccines were developed quickly to protect those who are at highest risk of getting seriously ill from COVID-19, especially the elderly and those with multiple co-morbidities. In response to the spread of Omicron and other variants, Defendants Sara H. Cody, James Williams, Jeffrey Smith and Santa Clara County (the "County" and, collectively, "Defendants") ordered that all personnel in Santa Clara County who worked in what they determined to be "high-risk" settings were to take the COVID-19 vaccine plus the most recent boosters or face termination. Defendants allowed unvaccinated personnel in high-risk settings to obtain a religious and/or medical exemption, but Defendants' "accommodation" of the religiously exempt personnel was to place them on unpaid leave, forcing them to choose between taking the vaccine in violation of their sincerely held religious beliefs or lose their income and/or employment-related benefits by being placed on unpaid leave.

Plaintiffs UnifySCC, Tom Davis, Maria Ramirez, and Elizabeth Baluyut (collectively, "Plaintiffs") are County employees whom Defendants have determined work in "high-risk" positions but whose religious beliefs prevent them from taking the COVID-19 vaccine or booster. They requested a religious exemption and accommodation, but instead of engaging in good faith negotiations to determine a reasonable accommodation, Defendants relegated them to unpaid leave and stripped them of their employment benefits. By contrast, Defendants offered reasonable accommodations to similarly situated employees with medical exemptions, such as transfers and reassignments. Defendants also allowed some unvaccinated employees to work in high-risk settings. Plaintiffs bring, on behalf of themselves and others similarly situated, claims for violation of the Free Exercise Clause of the First Amendment, California's Fair Employment and Housing Act, and the Equal Protection Clause of the Fourteen Amendment, and for deprivation of civil rights under 42 U.S.C. § 1983 (*Monell*).

This action easily meets the requirements for class certification. First, the Class consists of at least 464 individuals, thereby satisfying the numerosity requirement. Furthermore, the Class

suffered the same injury, which resulted from Defendants' vaccine orders and policies, and therefore there exist numerous common questions of law and fact central to Plaintiffs' various claims and which can be answered on a class-wide basis. Also, because all Class members suffered the same injury, Plaintiffs' claims are typical of the claims of the other members of the Class. Furthermore, Plaintiffs and their counsel do not have any conflicts with the other Class members and have demonstrated that they intend to prosecute this action vigorously on behalf of the Class, making Plaintiffs adequate class representatives. Indeed, Plaintiffs already successfully obtained a preliminary injunction. *See* ECF No. 44. Moreover, certification under Federal Rules of Civil Procedure 23(b)(1)(A) and 23(b)(3) is appropriate here because: (1) different judicial outcomes in individual Class member lawsuits would impose conflicting obligations on Defendants; and (2) the questions of law and fact that are common to the Class members will predominate at trial over any questions affecting only individual members. Indeed, the evidence the Court relied upon in granting Plaintiffs' request for a preliminary injunction was common to the class, such as the County's orders, mandates, and policies. Plaintiffs and the Class will use this and similar evidence to prove their claims—the same evidence that any of the Plaintiffs individually would present to the Court to prove those same claims. Finally, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Plaintiffs' case rises and falls with common evidence, and class treatment would therefore be more manageable and efficient than over 400 individual actions litigating the same issues with nearly identical proof. Therefore, the Court should certify this action as a class action, appoint Plaintiffs as Class Representatives, and appoint Advocates for Faith and Freedom ("Advocates") and Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as Co-Class Counsel.

## II.   STATEMENT OF FACTS

Plaintiffs work or worked for the County and were subject to its COVID-19 vaccine policies and orders. ¶¶ 8-11.[1] They have sincerely held religious beliefs that prevent them from

---

[1]   All paragraph ("¶") references, unless otherwise indicated, are to Plaintiffs' Verified First Amended Class Action Complaint for Declaratory and Injunctive Relief and Damages ("FAC") (ECF No. 55).

taking the COVID-19 vaccine. *Id*. Because the County classified Plaintiffs as working in "high-risk" jobs, the Defendants relegated them to unpaid leave and stripped them of employment benefits. *Id*.

On August 5, 2021, Defendants issued a policy requiring all employees take the COVID-19 vaccine or request a medical and/or religious exemption. Declaration of Mariah Gondeiro in Support of Plaintiffs' Motion for Class Certification ("Gondeiro Decl."), Ex. E. Defendants' policy also created a risk tier system that classified employees as low risk, intermediate risk, or high risk (the "Risk Tier System"). *Id*., Ex. F. County employees would apply for vaccination exemptions, and then County Departments would determine whether the employee's role was high, intermediate, or low risk. *Id*., Ex. K at 142:10-13. County Departments made risk determinations on a position-by-position basis. *Id*. at 107:21-25; 108:1-2. Employees in low-risk and intermediate-risk positions with religious objections could continue to work if they wore a mask and took specific COVID-19 tests. *Id*. at 1. Employees in high-risk positions include social workers, registration clerks, ultrasound technicians, protective services officers, nurses, firefighters, doctors, electricians, plumbers, and probation counselors. ¶ 26. These employees could not continue to work if they remained unvaccinated even if they received a religious exemption. Gondeiro Decl., Ex. F at 2.

On December 28, 2021, the County issued a health order "requiring up-to-date vaccination of personnel in higher-risk settings" in the County (i.e., both fully vaccinated and boosted against COVID-19 if eligible for a booster) by January 24, 2022. *Id*., Ex. G. The higher risk settings included skilled nursing facilities, healthcare delivery facilities, medical first responders, and jails and other correctional facilities. *Id*. The December 28 order also expanded the number of settings and positions considered high-risk. *Id*., Ex. H. On January 10, 2022, the County issued a directive establishing a limited waiver process. *Id*., Ex. I. "The waiver process is available only to those entities that are facing critical staffing shortages" and applies to "personnel who have received a bona fide medical and/or religious exemption . . . and who follow specific safety protocols[.]" *Id*. However, the waiver was subject to revocation. *Id*. On March 28, 2022, the County issued an updated vaccination policy requiring "all County personnel [to] be fully vaccinated and up-to-date

on boosters for which they are eligible." *Id.*, Ex. J at County_Unify_000690.

The County approved the sincerely held religious beliefs of all who requested a religious exemption, including those of the three Plaintiffs and the other approximately 461 Class members, by granting them religious exemptions, but the County "accommodated" them by relegating them to unpaid leave. *Id.*, Ex. K at 131:10-15; 134:19; Ex. L at 17:9-12; 17:24-18:16; ¶¶ 8-11; Ex. Q. The County did not offer reasonable accommodations to Plaintiffs and Class members such as weekly testing, teleworking, working a modified shift, or requiring them to wear N95 masks. ¶ 36. Notably, however, County policy reflects that medically exempt employees were "entitled to priority consideration for placement in or selection for vacant positions as part of the accommodation process, consistent with disability law." *Id.*, Ex. U at County_UnifySCC_002196.02. ███████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████. *Id.*, Ex. K at 93:20-94:3; 126:2-7. In fact, the County directed medically exempt employees to work with the EOD for placement in new roles (specifically in lower risk tiers), while religiously exempt employees were directed to the Employee Services Agency ("ESA") to apply for open County positions. *Id.*, Ex. M.

Defendants' vaccination policies and orders, including the Risk-Tier System, were arbitrary and irrational and were not narrowly tailored. COVID-19 vaccines are not bulletproof at preventing COVID-19 transmission or infection. *Id.*, Ex. A, ¶ 39. The CDC has informed the public that it is not aware of how long protection lasts for those vaccinated. *Id.*, ¶ 41. However, the existing clinical literature overwhelmingly indicates that the protection afforded to the community from natural immunity is at least as effective and durable as the efficacy levels of the most effective vaccines to date. *Id.*, ¶¶ 19-38. The individuals placed in high risk were more likely to have contracted COVID-19 in the past and therefore have immunity protection. *Id.*, ¶ 44.

Moreover, the Defendants' vaccine orders and policies were arbitrary because they were not enforced equally and consistently. For instance, the County has allowed some high-risk unvaccinated and/or non-boosted employees to work. *Id.*, Exs. B-C. Moreover, some unvaccinated employees in high-risk settings worked with other individuals within six feet of distance, such as

1  correctional deputies. *Id.*, Ex. C, ¶ 7.

2      Finally, there is no evidence (as opposed to conclusory theories) that high-risk employees

3  were more likely to contract or spread COVID-19 than intermediate-risk employees. ¶ 54. There

4  is no evidence that social distancing and/or N95 masks do not limit the spread of COVID-19 to

5  the same extent as the COVID-19 vaccines. ¶ 55.

6  **III.    PROCEDURAL HISTORY**

7      Plaintiffs UnifySCC, Tom Davis and Maria Ramirez filed this action on February 18, 2022,

8  alleging claims against Defendants Sara H. Cody, James Williams, Jeffrey Smith and Santa Clara

9  County for: (1) Violation of the Free Exercise Clause of the First Amendment to the United States

10 Constitution (42 U.S.C. § 1983); (2) Violation of California's Fair Employment and Housing Act

11 (Cal. Gov't Code § 12940) ("FEHA"); (3) Violation of the Equal Protection Clause of the

12 Fourteenth Amendment to the United States Constitution (42 U.S.C. § 1983); and (4) Deprivation

13 of Civil Rights Under 42 U.S.C. § 1983 (*Monell*).

14     On March 3, 2022, Plaintiffs filed a Motion for Temporary Restraining Order and Order to

15 Show Cause ("TRO Motion"). ECF No. 21. The Court denied the TRO Motion on March 8, 2022,

16 finding that Plaintiffs had unnecessarily delayed seeking the relief requested. ECF No. 25. Then,

17 on April 1, 2022, Plaintiffs filed a Motion for Preliminary Injunction (ECF No. 27), which the

18 Court granted in part on June 30, 2022 (Order Granting in Part and Denying in Part Motion for

19 Preliminary Injunction, ECF No. 44 (the "Order")). The County admitted that "in assisting exempt

20 employees in high-risk roles with transfers to available County positions in other risk tiers, the

21 County gives 'those with disability or medical contraindication vaccine exemptions . . .

22 'preferential consideration' pursuant to California State Disability Regulations and the Americans

23 with Disabilities Act.'" Order at 16 (quoting ECF No. 31-3, ¶ 41). The Court found that "this

24 portion of the Accommodations framework likely 'operate[s] in practice' in way that 'target[s]

25 religious practices' by placing those with religious exemptions at a disadvantage behind those with

26 secular exemptions (medical and disability)." *Id.* at 16-17 (citations omitted). The Court therefore

27 held that Plaintiffs "have shown that they are likely to succeed in proving that this portion of the

28 Accommodations framework is not operationally neutral." *Id.* at 17. "Even if federal or California

disability law requires priority consideration of disabled applicants for open government positions, the County cannot grant that class of individuals priority consideration over those with religious exemptions in violation of the First Amendment." *Id*. The Court also found "that Plaintiffs have shown irreparable injury. Plaintiffs are correct that loss of Free Exercise rights 'for even minimal periods of time' is irreparable injury." *Id*. at 21 (quoting *Roman Catholic Diocese*, 141 S. Ct. at 68 (citation omitted)). The Court then enjoined "Defendants and their agents, employees, and successors in office" "from giving to employees whose current positions are in high-risk tiers any priority consideration for vacant County positions based on the type of exemption from the County's vaccine mandate that the employee received." *Id*. at 23.

Plaintiffs filed a Verified First Amended Class Action Complaint for Declaratory and Injunctive Relief and Damages (the "FAC") on August 23, 2022. ECF No. 55. The FAC added class allegations and asserts claims for: (1) Violation of the Free Exercise Clause of the First Amendment to the United States Constitution (42 U.S.C. § 1983) (FAC, ¶¶ 63-71); (2) Violation of FEHA (FAC, ¶¶ 72-78); (3) Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (42 U.S.C. § 1983) (FAC, ¶¶ 79-85); (4) Violation of the Establishment Clause of the First Amendment to the United States Constitution (42 U.S.C. § 1983) (FAC, ¶¶ 86-89); (5) Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq*.) (FAC, ¶¶ 90-93); and (6) Deprivation of Civil Rights Under 42 U.S.C. § 1983 (*Monell*) (FAC, ¶¶ 94-97). After the Court issued its preliminary injunction, the County responded by no longer providing transfers or reassignments to any employees with exemptions—religious or medical. *See* Gondeiro Decl., Ex. N. Instead, all unvaccinated employees with exemptions were required to apply for a new position. *Id.*

Plaintiffs raise several legal theories under the Free Exercise Clause. *First*, Plaintiffs allege Defendants' vaccine orders and policies, on their face and as applied, were not generally applicable because they provided a "mechanism for individual exemptions." ¶ 66 (quoting *Fulton v. City of Phila., Penn.*, 141 S. Ct. 1868, 1877 (2021)). The County had the discretion to determine the type of accommodation an employee received and was not guided by particularized, objective criteria. ¶ 67. *Second*, Plaintiffs allege that the Defendants' vaccine orders and policies were not neutral

1    and generally applicable because they prioritized medical exemptions over religious exemptions.

2    ¶ 68. For this reason, Plaintiffs allege Defendants' vaccine orders and policies also violated the

3    Equal Protection Clause. ¶ 82. *Third*, Plaintiffs allege the Defendants' Risk Tier System was not

4    neutral and generally applicable because it allowed some unvaccinated employees to continue

5    working, and there is no evidence that high-risk employees were more likely to contract or spread

6    COVID-19 than intermediate-risk employees. ¶¶ 54, 69.

7    Plaintiffs also allege violations of FEHA and Title VII of the Civil Rights Act because the

8    Defendants failed to provide reasonable accommodations. ¶¶ 72-78, 90-93. Finally, Plaintiffs

9    allege the Defendants violated the Establishment Clause because they demonstrated hostility

10   towards religion by refusing to offer reasonable accommodations like transfers or reassignments.

11   ¶¶ 86-89.

12   Plaintiffs now move the Court to certify the following Class:

13   All individuals who: 1) work or worked for the County and/or [] were subject to its

14   vaccine policies and orders, including the Risk Tier System; 2) were forced by the

15   County to choose between taking the vaccine to maintain their jobs and/or their

16   employment-related benefits or being placed on unpaid leave; 3) were [] classified

17   as working in high risk jobs, pursuant to the County's Risk Tier System; and 4)

18   received [] a religious exemption from the County [the "Class"] during the relevant

19   time period of August 5, 2021 to September 27, 2022 (the "Class Period").

20   **IV.    ARGUMENT**

21   **A.    Standards for Class Certification**

22   Rule 23 of the Federal Rules of Civil Procedure ("FRCP") permits class certification

23   where: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are

24   questions of law or fact common to the class; (3) the claims or defenses of the representative parties

25   are typical of the claims or defenses of the class; and (4) the representative parties will fairly and

26   adequately protect the interests of the class." *Ruiz v. XPO Last Mile, Inc.*, No. 5cv2125 JLS (KSC),

27   2016 U.S. Dist. LEXIS 152095, at *14 (S.D. Cal. Feb. 1, 2016). Further, the party seeking class

28   certification only needs to satisfy the requirements of one of the subsections of Rule 23(b). *Id.* at

*13. Certification under Rule 23(b)(1)(A) is appropriate in cases such as this where "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." FRCP 23(b)(1)(A). Moreover, class actions for money damages generally proceed under Rule 23(b)(3), which additionally requires that "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FRCP 23(b)(3). The Court may certify a class action if, after "rigorous analysis," it determines that Plaintiffs have met their burden. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011).

While the class certification analysis must be rigorous, a motion for class certification does not require "free-ranging merits inquiries." *Stockwell v. City and County of San Francisco*, 749 F.3d 1107, 1111-12 (9th Cir. 2014) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)). "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc.*, 568 U.S. at 459 (emphasis in original). *See also Stockwell*, 749 F.3d at 1112 ("demonstrating commonality does not require proof that the putative class will prevail on whatever common questions it identifies"). The Court may consider the merits only to the extent the class determination involves considerations enmeshed in the factual and legal issues comprising Plaintiffs' causes of action. *See Dukes*, 564 U.S. at 351.

**B.     The Four Prerequisites of Rule 23(a) Are Satisfied**

**1.     The Class Is Numerous**

Rule 23(a)(1) provides that a class should be certified if "the class is so numerous that joinder of all members is impracticable." An exact number of members is not required to adequately plead numerosity; a reasonable estimate is sufficient. *Burton v. Mountain West Farm Bureau Mut. Ins. Co.*, 214 F.R.D. 598, 608 (D. Mont. 2003) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). Courts generally find Rule 23(a)'s numerosity requirement is satisfied when a class contains at least 40 members. *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir.

2010) (citing *EEOC v. Kovacevich "5" Farms*, No. CV-F-06-165 OWW/TAG, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007)).

Here, Defendants have produced evidence that the Class is comprised of at least 464 individuals. Gondeiro Decl., Ex. O (County spreadsheet identifying 464 employees in high-risk settings to whom the County granted religious exemptions); Ex. L at 17:9-12; 17:24-18:16. Therefore, the Class satisfies the numerosity requirement.

### 2.    Class Members Share Common Questions of Law and Fact

Rule 23(a)(2) requires "questions of law or fact common to the class." Commonality is met through the existence of the "same injury" resulting in a "common contention" that is "capable of classwide resolution . . . in one stroke." *Dukes*, 564 U.S. at 350. "What matters to class certification . . . is not the raising of common 'questions' — even in droves — but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350. For example, in *Doster v. Kendall*, 54 F.4th 398 (6th Cir. 2022), the Court found that the commonality requirement was satisfied with two common questions because they "raise the 'right' type of questions" . . . implicat[ing] 'issue[s]' 'central to' the class's RFRA and free-exercise claims": (1) "Has the Air Force followed a 'de facto policy' of rejecting religious exemptions based on its generalized health and readiness interests in the vaccine mandate?" and (2) "[H]as the Air Force followed a 'discriminatory policy' of treating religious exemptions less favorably than other exemptions?" *Id*. at 433-34 (quoting *Dukes*, 564 U.S. at 350).

Here, there are numerous questions of law and fact that are common to the members of the Class, including:

1. Whether Defendants violated Plaintiffs' right to free exercise and equal protection of the law by prioritizing medical exemptions over religious exemptions in high-risk settings;

2. Whether Defendants' Risk Tier System violated the Free Exercise Clause and Equal Protection Clause because it relegated Plaintiffs and the Class members to unpaid leave but allowed some unvaccinated or non-boosted employees to continue to work;

3. Whether the County's religious exemption and/or accommodation procedure was

either non-neutral or not generally applicable such that it constitutes an individualized assessment under *Fulton*, 141 S. Ct. 1868, and is thereby subject to strict scrutiny;

4.   Whether Defendants provided Individual Plaintiffs and the Class members with reasonable accommodation as required under FEHA and Title VII; and

5.   Whether Defendants violated the Establishment Clause by demonstrating hostility towards religion.

These common questions are central to Plaintiffs' various claims and can be answered on a class-wide basis. The County's August 5, 2021 order required all County personnel to obtain the COVID-19 vaccine, but allowed employees to request a religious or medical exemption. Gondeiro Decl., Ex. E; ¶ 22. The Class is composed of individuals to whom the County granted religious exemptions. This Court has already found that there is a substantial likelihood Plaintiffs will be able to prove that a portion of Defendants' policy was unconstitutional because it prioritized medical exemptions over religious exemptions. And Defendants do not deny that all County employees and contractors were subject to the Risk Tier System, and that the system allowed workers in lower tiers to maintain employment unvaccinated while Plaintiffs and Class members were relegated to unpaid leave during the Class Period. These facts, which are common to the Class, support Plaintiffs' Free Exercise Clause and Equal Protection Clause claims. ¶¶ 69, 83-84. Plaintiffs have therefore satisfied the commonality requirement. *See Stockwell*, 749 F.3d at 1116 (denial of class certification reversed as error where a common question existed because the plaintiffs "are all challenging a single policy they contend has adversely affected them."); *Doster*, 54 F.4th at 435 ("[A] decisionmaker can answer 'yes' or 'no' to the question of whether the Air Force has followed a discriminatory policy of denying virtually all religious exemptions but broadly granting other exemptions."); *U.S. Navy SEALs 1-26 v. Austin*, 594 F. Supp. 3d 767, 779 (N.D. Tex. 2022) (certifying the class because "the potential class members have suffered the 'same injury,' arising from violations of their constitutional rights. Each has submitted a religious accommodation request, and each has had his request denied, delayed, or dismissed on appeal.")

The County may argue that there will be a need for an individualized assessment of the sincerity of the Class members' religious beliefs at trial. However, to satisfy the commonality test,

"a proposed class must prove that the claims of every class member 'depend upon a common contention . . . that is capable of class-wide resolution. . . .'" *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 838 (5th Cir. 2012) (quoting *Dukes*, 564 U.S. at 350). In other words, "Rule 23(a)(2) requires that all of the class member[s'] claims depend on a common issue of law or fact whose resolution 'will resolve an issue that is central to the validity of each one of the [class members'] claims in one stroke.' " *Id.* at 840 (quoting *Dukes*, 564 U.S. at 350). And a court's "obligation to perform a 'rigorous analysis'" of the commonality prong may "'entail some overlap with the merits of the plaintiff's underlying claim.'" *Id.* (quoting *Dukes*, 564 U.S. at 350).

Here, the County granted religious exemptions to all Class members. ¶ 56. Each Class member had to submit a religious exception request form identifying their sincerely held religious beliefs and explaining how their religious beliefs conflicted with the County's COVID-19 vaccination requirements. Gondeiro Decl., Exs. P-Q. And while the County may try to claim the criteria they used to grant a religious exemption was not sufficient under the law, that is a question that overlaps with the merits of Plaintiffs' constitutional claims and "'is capable of class-wide resolution . . . .'" *Stukenberg*, 675 F.3d at 838 (quoting *Dukes*, 564 U.S. at 350).

### 3. Plaintiffs are Typical

Rule 23(a)(3) requires that "the claims . . . of the representative parties are typical of the claims . . . of the class." FRCP 23(a)(3). Typicality is present "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (citation omitted), *overruled on other grounds by Johnson v. California*, 543 U.S. 499 (2005). *See also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.") (quotations and citation omitted). "[R]epresentative claims are typical if they are reasonably co-extensive with those of the absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).

The typicality and commonality requirements "tend to merge" because both seek to

determine "whether the named plaintiff's claim and the class claims are so interrelated that interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5. Moreover, the typicality requirement is "liberally construed." *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 164 (C.D. Cal. 2002).

Here, the named Plaintiffs' claims are typical of the class claims. For example, because the named Plaintiffs allege that their injuries are the result of the Defendants' vaccine orders and policies, including the Risk Tier System, they share claims in common with the unnamed members of the Class. ¶¶ 63-97. Accordingly, and for the same reasons the commonality requirement is met, Plaintiffs' claims are sufficiently typical of the Class' claims.

### 4.        Plaintiffs are Adequate

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." FRCP 23(a)(4). Adequacy under Rule 23(a)(4) turns on two basic questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. at 388.

To disqualify either class representatives or class counsel, perceived conflicts of interest must be "fundamental to the suit and . . . go to the heart of the litigation . . . ." and must be actual, not hypothetical. W. Rubenstein & A. Conte, Newberg on Class Actions § 3:58, at 341-42 (5th Ed. 2011); *see also Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975). Mere potential conflicts are not sufficient to defeat class certification. *See Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) ("this circuit does not favor denial of class certification on the basis of speculative conflicts"). Here, the interests of Plaintiffs and the rest of the Class are entirely aligned.

Plaintiffs are motivated advocates for the Class. They have retained legal counsel with considerable experience in the prosecution of major class and civil rights litigation. *See* Gondeiro Decl., Exs. W, X. Plaintiffs have produced documents, answered interrogatories and requests for admission and provided declarations. *See* Gondeiro Decl., ¶ 25. Plaintiffs are committed to the

---

prosecution of this action on behalf of the Class. *Id*. They easily meet the adequacy requirement, and the Court should appoint them Class Representatives.

### C.     The Requirements of Rule 23(b) are Met Here

In order for the Court to grant class certification, Plaintiffs must also show that they may maintain a class action under Rule 23(b)(1), (2), or (3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Certification is appropriate here under both Rule 23(b)(1)(A) and Rule 23(b)(3).

#### 1.     The Requirements of Rule 23(b)(1)(A) are Satisfied

Rule 23(b)(1)(A) provides: "A class action may be maintained if Rule 23(a) is satisfied and if . . . prosecuting separate actions by or against individual class members would create a risk of .  .  . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." "Rule 23(b)(1)(A) serves to prevent defendants from being legally bound by contradictory rulings. It is designed to avoid injunctive or declaratory 'whipsawing' where different courts require the same defendant to abide by incompatible or contradictory rulings." *Doster*, 342 F.R.D. at 127 (citing *Payne v. Tri-State CareFlight, LLC*, 332 F.R.D. 611, 664 (D.N.M. 2019)). "The concern under this provision is not primarily that different lawsuits would yield different results for different plaintiffs; rather, the concern is that different judicial outcomes would impose conflicting obligations on the same defendant or group of defendants." *Id*. As in *Doster*, this case presents just such a risk. Similar claims may be brought in another court. That court and this Court may arrive at incompatible conclusions with respect to County employees who obtained religious exemptions from the vaccine mandate. "One court may find that Defendants may enforce its vaccine mandate over and against religious objections, and another court may find the opposite." *Id*. Such a scenario would prevent Defendants from pursuing a uniform course of conduct towards County employees. *See, e.g.*, *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 280 (6th Cir. 2018) (affirming certification under Rule 23(b)(1)(A) for purposes of interpreting a retirement plan, because individual actions would have risked establishing incompatible standards of conduct for the defendant); *Spurlock v. Fox*, No. 3:09-CV-00756, 2012 WL 1461361, at *3 (M.D. Tenn. Apr. 27, 2012) (finding Rule 23(b)(1)(A) certification appropriate so that defendants could pursue a

uniform course of conduct regarding a re-zoning plan).

Accordingly, there exists here the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct under which Defendants would have to comply. Because this case presents a (b)(1)(A) risk, the proposed class is certifiable under that provision.

## 2. The Requirements of Rule 23(b)(3) Are Also Satisfied

Rule 23(b)(3) is satisfied when "questions of law or fact common to the class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FRCP 23(b)(3). When "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (citation and quotation omitted). The "predominance" and "superiority" factors are closely related: when common issues predominate, class actions achieve economy and efficiency by minimizing costs and avoiding the confusion that would result from inconsistent outcomes. *See In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 651 (N.D. Cal. Mar. 13, 2007).

### a. Common Questions of Law and Fact Predominate

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. 591 at 623-24. A common question is one where "the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class wide proof[,]" while an individual question is one where "members of a proposed class will need to present evidence that varies from member to member." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotations and citation omitted).

Moreover, under Rule 23(b)(3) courts should not evaluate merits issues, but should "focus[] on whether the questions presented, whether meritorious or not, were common to the members of the putative class." *Stockwell*, 749 F.3d at 1113-14; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 & n.8 (9th Cir. 2011) (district court resolves "factual disputes necessary to determine whether there was a common pattern and practice that could affect the class *as a*

*whol*e" but "not to determine whether class members could actually prevail on the merits of their claims") (emphasis in original).

"Considering whether 'questions of law or fact common to class members predominate' begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Plaintiffs will use generalized proof for each element of their claims.

> **i.      Plaintiffs Will Prove Their Free Exercise Clause Claim Using Common Evidence**

The Free Exercise Clause of the First Amendment states that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I. "[L]aws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." *Fulton*, 141 S. Ct. at 1976 (citing *Employment Div. v. Smith*, 494 U.S. 872, 878–82 (1990)); *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531–34 (1993)). If a rule is either non-neutral or not generally applicable, then it is subject to strict scrutiny and the government must "demonstrat[e] [that] its course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2422 (2022) (citing *Lukumi*, 508 U.S. at 546). On the other hand, if a rule is both neutral and generally applicable, it is subject to rational basis review in which the government action must be "rationally related to a legitimate governmental purpose." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1084 (9th Cir. 2015). A policy must be both facially and operationally neutral to avoid strict scrutiny. "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Stormans*, 794 F.3d at 1076 (quoting *Lukumi*, 508 U.S. at 533). Whether a policy is operationally neutral is usually a "more challenging" question because it concerns how a policy "operate[s] in practice" and whether it "accomplishe[s] a 'religious gerrymander'" by "target[ing] religious practices through careful legislative drafting." *Stormans*, 794 F.3d at 1076 (quoting *Lukumi*, 508 U.S. at 535–37). A policy is not generally applicable if it "'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way,' or if it provides 'a mechanism for individualized exemptions.'"

*Kennedy*, 142 S. Ct. at 2422 (quoting *Fulton*, 141 S. Ct. at 1877).

The Court in its Order separately considered whether the requirement that all County personnel be fully vaccinated and boosted against COVID-19 (the "Mandate") and the dividing of personnel granted exemptions into different accommodations based on a tiered system (the "Accommodations" or "Risk Tier System") were neutral and generally applicable, and then applied the appropriate tier of scrutiny under *Fulton*. Order at 9. Importantly, the evidence the Court relied upon in making its determination was ***common to the class***. At the time the Court heard and ruled upon Plaintiffs' motion for preliminary injunction, this action was not a class action but an individual action brought by three of the Plaintiffs. Since the Order was entered, Plaintiffs have amended their complaint to add class allegations (and an additional plaintiff). But, Plaintiffs and the Class will use the same evidence to prove their claims as any of the Plaintiffs individually would present to the Court to prove those same claims, making class certification appropriate here.

**Mandate**:  Based upon the limited evidence Plaintiffs were able to present to the Court at the time, the Court found that the Mandate was neutral and generally applicable and passes rational basis scrutiny. Order at 9. To make this determination, ***the Court relied upon the Mandate itself*** and "[a]ll the evidence before the Court" ***regarding the Mandate***. *See*, *e.g.*, Order at 10, citing the August 5, 2021 COVID-19 Vaccination Requirement for County Personnel (ECF No. 31-3 at 85) (which is also Exhibit A to the FAC). This is evidence common to the Class. There are no individualized issues surrounding the question of whether the Mandate is neutral and generally applicable and passes rational basis or strict scrutiny.  *See* Order at 9-15.

**Accommodations/Risk Tier System**: In its Order, the Court decided whether the Risk Tier System or "Accommodations framework" is both facially and operationally neutral by examining the County's Policy.[2] This is evidence that is common to the Class. Moreover, the Court found that Plaintiffs had not produced evidence "that, for example, any exempt employees in high-

---

[2]     "The Policy had two parts: (1) a COVID-19 vaccine mandate, with limited exemptions; and (2) an accommodations framework for County personnel who received exemptions to the mandate." Order at 2.

1  risk roles are allowed to remain in their high-risk position if they are unvaccinated," and that "[t]he

2  County's sworn statement that all exempt employees in high-risk roles were placed on

3  administrative leave—regardless of the basis for their exemption—remains unrebutted." Order at

4  16. The Court also noted that it had no evidence before it "that the process of sorting of exempt

5  employees' positions into risk tiers contains any exemptions." Order at 19. However, Plaintiffs

6  now have such evidence, and this evidence is also common to the Class. Gondeiro Decl., Exs. F,

7  Q.

8         Plaintiffs will demonstrate that the County's Risk Tier System is not neutral or generally

9  applicable using common evidence that demonstrates that the County allowed some "high risk"

10  unvaccinated and/or non-boosted employees to continue working, including correctional deputies.

11  *See, e.g.*, Gondeiro Decl., Exs. B-C. For example, Mr. Adam Valle, despite being unvaccinated,

12  was permitted to return to his normal job duties for a three-week period. *Id.*, Ex. B, ¶ 5. Plaintiffs

13  will also demonstrate that the County's Risk Tier System is not neutral and generally applicable

14  because non-vaccinated employees in high-risk tiers did not undermine the County's interest in

15  protecting the public health to a greater degree than lower-risk tiers.

16         The Court also looked at the County Policy—common evidence—in making its finding

17  that the County's practice of giving preferential consideration to those with disability and medical

18  exemptions over those with religious exemptions for transfers to available County positions in

19  other risk tiers is not neutral because it "likely 'operate[s] in practice' in a way that 'target[s]

20  religious practices' by placing those with religious exemptions at a disadvantage behind those with

21  secular exemptions (medical and disability)." Order at 17. Additional evidence Defendants

22  produced in discovery confirms that █████████████████████████████████████████

23  ████████████████████████████  Gondeiro Decl., Ex. K at 93:20-25, 94:1-3, 126:2-7; Exs.

24  N-M.

25         Plaintiffs will also present evidence that the County's Risk Tier System was not rationally

26  related to the interest of preventing the spread of COVID-19, nor was it narrowly tailored to

27  achieve that interest. Such evidence will include the testimony of Daniel Kacir, who the County

28  categorized as "high risk" even though his job of performing preventative maintenance for the

County only required him to interact with a few, and sometimes no, people because he mainly works on roofs. *Id.*, Ex. R, ¶¶ 2-3. *See also id.*, Ex. D (Declaration of Jorge Alvarez testifying that his job as a roofer, which the County categorized as "high risk," requires little to no contact with others.); Ex. S (Declaration of Melanie Nguyen testifying that the County designated her job—placing ankle monitors around the ankles of clients—as "high risk" even though she was in County facilities only two to three times per week and interacted with only five to ten people at a time).

The fact that the Class members work in different job settings with varying levels of contact does not defeat class certification. Plaintiffs will demonstrate that certain job settings Defendants classified as "high risk" do not pose a greater risk of COVID-19 transmission than jobs in lower-risk tiers, thereby undermining the legitimacy of the entire Risk Tier System. This and similar evidence is the same evidence that would be presented in an individual case to prove Defendants' violations of the Free Exercise Clause. Therefore, Plaintiffs' evidence in support of their Free Exercise Clause claim is common to the Class and common issues of law and fact predominate over individual ones.

### ii. Plaintiffs Will Use Common Evidence to Prove Their FEHA Claim

California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940, provides, in pertinent part, that it is an unlawful employment practice "[f]or an employer, because of the . . . religious creed . . . of any person, to refuse to hire or employ the person or . . . discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions or privileges of employment." Cal. Gov't Code § 12940(a). For Plaintiffs to prove their FEHA claim they will need to prove: "(1) [they are] member[s] of a protected class; (2) [they are] qualified for their position[s]; (3) [they] experienced an adverse employment action; and (4) other similarly situated employees outside of the protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 800–01 (N.D. Cal. 2015) (quoting *Slatkin v. Univ. of Redlands*, 88 Cal. App. 4th 1147, 1158 (2001)).

Plaintiffs will use common evidence to demonstrate that they are members of the Christian faith who were qualified for their positions and they were required either to get vaccinated in

violation of their sincerely held religious beliefs or take unpaid leave. Plaintiffs have evidence of direct discrimination, as the County explicitly stated that it was only placing employees with medical exemptions, not religious exemptions. Gondeiro Decl., Ex. T. This is evidence that each member of the Class would use to prove Defendants' violation of FEHA.

Additionally, Plaintiffs will use common evidence that the County failed to offer reasonable accommodations to Plaintiffs and the Class members like reassignment, bi-weekly testing, working a modified shift, or wearing an N95 mask while at work. *Id.*, Ex. Q. Even after Court intervention, Defendants continued to fail to offer Plaintiffs and the Class these reasonable accommodations. *See id.*, Ex. N (email from the EOD stating "[B]ased on the Court's order, we can no longer directly place you [medically-exempt employees in high risk settings] into a vacant County position but can provide you support in identifying opportunities to which you may apply and meet minimum qualifications."). Defendants cannot demonstrate that providing these accommodations would have imposed an undue burden. In any event, the evidence presented will be common to the Class.

### iii. Plaintiffs Will Prove Their Equal Protection Claim Using Common Evidence

Like the Free Exercise claim, Plaintiffs will prove their Equal Protection claim using common evidence. *See Prince v. Mass.*, 321 U.S. 158, 170 (1944) (Equal Protection claim rose and fell with Free Exercise claim because "the one is but another phrasing of the other"). The Fourteenth Amendment of the Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Equal protection requires the state to govern impartially—not draw arbitrary distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objective. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985). To establish an equal protection violation, Plaintiffs must demonstrate "that the [challenged action], either on its face or in the manner of its enforcement, results in members of a certain group being treated differently from other persons based on membership in that group." *McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir. 1999).

"Second, if it is demonstrated that a cognizable class is treated differently, the court must

analyze under the appropriate level of scrutiny whether the distinction made between the groups is justified." *Id.* (citation and quotations omitted). If the aggrieved party suffers the unequal burdening of a fundamental right, the court applies strict scrutiny. *City of Cleburne*, 473 U.S. at 439-40. One such fundamental right is the right to practice religion freely. *Maynard v. U.S. Dist. Court for the Cent. Dist. of California*, 701 F. Supp. 738, 742 (C.D. Cal. 1988), *aff'd*, 915 F.2d 1581 (9th Cir. 1990).

Finally, Section 1983 claims based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent. *See De La Cruz v. Tormey*, 582 F.2d 45, 58 (9th Cir. 1978), *cert. denied*, 441 U.S. 965 (1979); *see also Washington v. Davis*, 426 U.S. 229, 239-40 (1976) (requiring showing of intentional discrimination).

As with their Free Exercise claim, Plaintiffs will prove their Equal Protection claim using evidence common to the Class that demonstrates that Defendants prioritized medical exemptions over religious exemptions and that the high-risk tier jobs did not undermine the County's interest in curbing COVID-19 to a greater degree than the jobs in lower-risk tiers.

### iv. Common Evidence Will Prove the County Violated the Establishment Clause

The Establishment Clause requires the County to "be neutral in its relations with groups of religious believers and non-believers." *Everson v. Board of Ed. of Ewing*, 330 U.S. 1, 18 (1947). Plaintiffs will use evidence common to the Class to demonstrate that the County was not neutral in its relations with employees in the high-risk tier who requested a religious exemption.

Defendants intentionally and blatantly discriminated against employees who requested a religious exemption. Defendants had the ability to transfer or reassign employees with religious exemptions, as they did with medically exempt employees, but chose not to. Defendants also had the ability to offer other reasonable accommodations to Plaintiffs and Class members like bi-weekly testing, N95 masks, or working a modified shift. To comply with this Court's injunction, Defendants have denied all employees automatic transfers and reassignments even though Defendants have the ability to offer these accommodations to Plaintiffs and similarly situated employees. *See* Gondeiro Decl., Ex. N (email from the EOD reflecting that the County is no longer

automatically transferring or reassigning employees following Court order). By doing so, they have demonstrated hostility toward religion. Plaintiffs will prove the foregoing facts using evidence common to the Class.

> **v.**     **Plaintiffs Will Prove Their Title VII Claim With Common Evidence**

Title VII of the Civil Rights Act of 1964 prohibits Defendants from discriminating against its employees because of their sincerely held religious beliefs. *See* 42 U.S.C. § 2000e-2(a). Title VII further requires employers to engage in a good faith process to provide religious accommodations to employees and prohibits taking "an adverse employment action against an applicant or employee because of any aspect of that individual's religious observance or practice unless the employer demonstrates that it is unable to reasonably accommodate that observance or practice without undue hardship." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775-776 (2015) (Alito, J., concurring); 42 U.S.C. § 2000e(j). Under Title VI, a showing of intent is necessary at trial. *Fobbs v. Holy Cross Health Sys.*, 29 F.3d 1439, 1447 (9th Cir. 1994), *cert. denied*, 513 U.S. 1127 (1995), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (2001).

An employer's proposed religious accommodation is not reasonable if the employer provides a more favorable accommodation to other employees for non-religious reasons, including medical reasons. EEOC Religion Guidance § 12-IV-A-3 (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70-71 (1986)).[3] Likewise, a religious accommodation is not reasonable "if it requires the employee to accept a reduction in pay rate or some other loss of a benefit or privilege of employment" and there is another accommodation available that would not require such a harm. *Id.*

Employment discrimination based on race, sex, or national origin "is by definition class discrimination." *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496 (5th Cir. 1968). Since the purpose of Title VII is to eliminate such class based discrimination, class actions are favored in Title VII

---

[3]     Available     at:     https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_ftn231 (last visited July 9, 2023).

1  actions for salutary policy reasons." *Gay v. Waiters' and Dairy Lunchmen's Union*, 549 F.2d 1330,

2  1333 (9th Cir. 1977).

3        Plaintiffs will use common evidence to demonstrate that, like their FEHA claim, the

4  Defendants unjustifiably relegated Plaintiffs and the other Class members to unpaid leave because

5  they would not take the COVID-19 vaccine because it violated their sincerely held religious

6  beliefs. Plaintiffs will also use common evidence that the County failed to offer reasonable

7  accommodations to Plaintiffs and the Class members like bi-weekly testing, working a modified

8  shift, or wearing an N95 mask while at work. Even after Court intervention, Defendants continued

9  to fail to offer Plaintiffs and the Class these reasonable accommodations. Gondeiro Decl., Ex. N.

10  Defendants cannot demonstrate that providing these accommodations would have imposed an

11  undue burden.

12  ### vi.     Plaintiffs Will Prove Their *Monell* Claim Using Common Evidence

13        In order to establish a county's liability pursuant to 42 U.S.C. § 1983, "[a] plaintiff[] must

14  show that the challenged conditions were part of a policy, custom or practice officially adopted by

15  defendants." *Upshaw v. Alameda County*, 377 F. Supp. 3d 1027, 1032 (N.D. Cal. 2019) (citing

16  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978)). A plaintiff must also allege that

17  "the policy or custom 'evince[s] a "deliberate indifference" to the constitutional right and [is] the

18  "moving force behind the constitutional violation."'" *Id.* (quoting *Rivera v. County of L.A.*, 745

19  F.3d 384, 389 (9th Cir. 2014)).

20        Plaintiffs will use common evidence to demonstrate that the unlawful actions carried out

21  by County officials, as alleged in the First through Third Causes of Action, were carried out by

22  individuals who sit at the top of their departments within the County and who thus qualify as final

23  policymakers under *Monell*, 436 U.S. 658. Furthermore, common evidence will demonstrate that

24  the County Officials' actions were enabled and ratified by County supervisors and thus constituted

25  a municipal custom, policy or practice and that, therefore, the County is liable for any damages

26  that may be awarded against the County officials for their unconstitutional actions.

27  ### vii.     Damages Will Be Calculated Using a Common Method

28  "[T]he presence of individualized damages cannot, by itself, defeat class certification under

Rule 23(b)(3)." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). *See also Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017); *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988) ("No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action."). However, "a plaintiff must still proffer a common methodology for calculating damages[.]" *Siino v. Foresters Life Insurance and Annuity Co.*, 340 F.R.D. 157, 164 (N.D. Cal. 2022). "Plaintiff's damages model need neither be perfect nor 'precisely correct.'" *Snipes v. Dollar Tree Distribution Inc.*, No. 2:15-cv-00878-MCE-DB, 2017 WL 5754894, at *5 (E.D. Cal. Nov. 28, 2017) (quoting *Vaccarino v. Midland Nat'l Life Ins. Co.*, Case No. 2:11-cv-05858-CAS(MANx), 2014 WL 572365, at *10–13 (C.D. Cal. Feb. 3, 2014) ("*Comcast* requires that courts determine whether damages are susceptible of classwide measurement, not whether that measurement is precisely correct.")).

Attached as Exhibit U to the Gondeiro Declaration is the Expert Declaration of Plaintiffs' damages expert, Mr. Keith L. Mendes, CFA. Mr. Mendes is a Director with Berkeley Research Group and has experience, among other things, consulting in matters involving wage and hour class claims and issues related to wrongful termination and building complex damage models and calculation of economic damages. Gondeiro Decl., Ex. V, ¶¶ 2-4. Mr. Mendes developed a damages model that can be applied on a class-wide basis under two scenarios: (1) the fact finder determines that the Risk Tier System was a violation of law and that Class members should have been accommodated to allow them to continue to work; and (2) the fact finder determines that Class members were discriminated against relative to employees with medical exemptions in the "high-risk" category. *Id.*, ¶ 7.

Mr. Mendes demonstrates that, using evidence produced by Defendants (*id.*, ¶¶ 10-14) and using a damages equation applicable to the entire Class (*id.*, ¶ 46), he can calculate damages for each member of the Class. *See Id.*, ¶¶ 48-95 and Ex. 1; *Snipes*, 2017 WL 5754894, at *5 ("At the class certification stage, Plaintiff need only propose a valid method for calculating class wide damages such that a trier of fact could accurately calculate damages.") Therefore, calculation of Class member damages does not defeat the predominance requirement.

1

**b.    A Class Action is Superior**

2        Rule 23(b)(3) also tests whether "a class action is superior to other available methods for

3   fairly and efficiently adjudicating the controversy." FRCP 23(b)(3). "Under Rule 23(b)(3), the

4   Court must consider four non-exclusive factors in evaluating whether a class action is a superior

5   method of adjudicating plaintiffs' claims: (1) the interest of each class member in individually

6   controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation

7   concerning the controversy already commenced by or against the class; (3) the desirability of

8   concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to

9   be encountered in the management of a class action." *In re High-Tech Employee Antitrust Litig.*,

10  985 F. Supp. 2d 1167, 1227 (N.D. Cal. 2013). Superiority under Rule 23(b)(3) is demonstrated

11  where "classwide litigation of common issues will reduce litigation costs and promote greater

12  efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

13       Here, litigating the claims of each Class member on an individual basis, even if it were

14  practically feasible, is plainly not the preferable alternative. As in *High-Tech*, "Plaintiffs' case rises

15  and falls with their common evidence," and class treatment would be more manageable and

16  efficient than over 400 individual actions litigating the same issues with nearly identical proof.

17  985 F. Supp. 2d at 1228. Either the County's policies surrounding the COVID-19 vaccine and its

18  Risk Tier System were violations of law or they were not. Either the County's policy and practice

19  was to give preference to those with medical exemptions over those with religious exemptions or

20  it was not. Any trial will focus on these questions and the same evidence, whether it involves a

21  single Class member or the Class as a whole. Therefore, litigating Plaintiffs' and the other Class

22  members' claims as a class action is the superior method because it will promote efficiency, reduce

23  litigation costs, and eliminate the possibility of inconsistent results.

24  **D.  Appointment of Class Counsel**

25       The Court should appoint Advocates and Wolf Haldenstein as Co-Class Counsel.  Rule 23

26  requires the Court to appoint counsel to represent the interests of the Class. *See* FRCP 23(g)(1); *In*

27  *re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 355 (N.D. Cal. 2005). For the reasons stated

28  above in connection with the adequacy requirements of Rule 23(a)(4), Advocates and Wolf

Haldenstein are undoubtedly "well equipped" to vigorously represent the proposed Class. Wolf Haldenstein has decades of experience litigating class and other complex actions and has recovered billions of dollars for class members. Advocates has 18 years of experience litigating cases involving First Amendment constitutional issues, such as freedom of speech and the free exercise of religion. *See* Gondeiro Decl., Exs. W, X. The Court should accordingly appoint Advocates and Wolf Haldenstein as Co-Class Counsel.

## V.   CONCLUSION

Accordingly, this case meets all the requirements of Rules 23(a) and 23(b) for class certification. Plaintiffs therefore request that the Court grant their motion to certify the class action, to appoint Plaintiffs as Class Representatives, and to appoint Advocates and Wolf Haldenstein as Co-Class Counsel.

DATED:  July 14, 2023

**WOLF HALDENSTEIN ADLER**
**  FREEMAN & HERZ LLP**

*/s/      Rachele R. Byrd*
RACHELE R. BYRD

Rachele R. Byrd
byrd@whafh.com
750 B Street, Suite 1820
San Diego, CA  92101
Telephone:     (619) 239-4599
Facsimile:      (619) 234-4599

Robert H. Tyler, Esq.
btyler@faith-freedom.com
Mariah Gondeiro, Esq.
mgondeiro@faith-freedom.com
**ADVOCATES FOR FAITH & FREEDOM**
25026 Las Brisas Road
Murrieta, California 92562
Telephone:     (951) 600-2733
Facsimile:      (951) 600-4996

*Attorneys for Plaintiffs and the Class*

29306v9