1    Robert H. Tyler, Esq., CA Bar No. 179572
     btyler@faith-freedom.com
2    Mariah Gondeiro, Esq., CA Bar No. 323683
     mgondeiro@faith-freedom.com
3    **ADVOCATES FOR FAITH & FREEDOM**
     25026 Las Brisas Road
4    Murrieta, California 92562
     Telephone: (951) 600-2733
5    Facsimile: (951) 600-4996

6    Rachele R. Byrd (190634)
     byrd@whafh.com
7    **WOLF HALDENSTEIN ADLER
       FREEMAN & HERZ LLP**
8    750 B Street, Suite 1820
     San Diego, CA  92101
9    Telephone: (619) 239-4599
     Facsimile: (619) 234-4599
10

11   *Attorneys for Plaintiffs and the Proposed Class*

12              **UNITED STATES DISTRICT COURT**
              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
13                    **SAN JOSE DIVISION**

14   **UNIFYSCC**, an unincorporated California          Case No.:  22-cv-01019-BLF
     association on behalf of employees in Santa
15   Clara County; **TOM DAVIS**, individually          **PLAINTIFFS' REPLY MEMORANDUM**
     and on behalf of all others similarly situated;    **IN SUPPORT OF MOTION FOR CLASS**
16   **MARIA RAMIREZ**, individually and on             **CERTIFICATION**
     behalf of all others similarly situated; and
17   **ELIZABETH BALUYUT**, individually and            DATE:   December 20, 2023
     on behalf of all others similarly situated,        TIME:    9:00 a.m.
18                                                       CTRM:  3, 5th Floor
                                                         JUDGE: Hon. Beth Labson Freeman
19
20                     Plaintiffs,
              vs.
21
22   **SARA H. CODY**, in her official capacity as
     the Santa Clara County Public Health Officer;
23   **JAMES WILLIAMS**, in his official capacity
     as the County Counsel of Santa Clara County;
24   **JEFFREY SMITH**, in his official capacity as
     the County Executive of Santa Clara County;
25   and **SANTA CLARA COUNTY**,

26                     Defendants.

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..............................................................................................................1

II.     ARGUMENT ...................................................................................................................3

      A.      Class Members Share Common Questions of Law and
           Fact under Rule 23(a).............................................................................................3

      B.      Common Questions of Law and Fact Predominate
           Under Rule 23(b)(3)................................................................................................8

      C.      The Need for Individualized Damages Determinations Does not
           Defeat Class Certification ...................................................................................11

III.    CONCLUSION...............................................................................................................15

# TABLE OF AUTHORITIES

**CASES**                                                                                    **Page(s)**

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,*
  568 U.S. 455 (2013)...............................................................................................1, 6, 10

*Arnold v. United Artists Theatre Circuit, Inc.,*
  158 F.R.D. 439 (N.D. Cal. 1994)..................................................................................10

*Aviles-Valdez v. Umatilla Cnty.,* No. 2:16-CV-00332-SU, 2019 WL 2440091
  (D. Or. Feb. 8, 2019), *report and recommendation adopted,*
  No. 2:16-CV-00332-SU, 2019 WL 2437449 (D. Or. June 11, 2019)...........................10

*Bates v. United Parcel Serv.,*
  204 F.R.D. 440 (N.D. Cal. 2001)..................................................................1, 3, 4, 13

*Carrero v. New York City Housing Authority,*
  890 F.2d 569 (2d Cir. 1989).........................................................................................12

*Chang v. Univ. of Rhode Island,*
  606 F.Supp. 1161 (D.R.I. 1985)...................................................................................15

*Cummings v. Connel,*
  402 F.3d 936, 945 (9th Cir. 2005),
  *amended,* No. 03-17095, 2005 WL 1154321 (9th Cir. May 17, 2005) .......................14

*Dennis F. v. Aetna Life Ins.,*
  No. 12-CV-02819-SC, 2013 WL 5377144 (N.D. Cal. Sept. 25, 2013)..........................5

*Eisen v. Carlisle and Jacquelin,*
  417 U.S. 156 (1974)......................................................................................................1

*Ellis v. Costco Wholesale Corp.,*
  285 F.R.D. 492 (N.D. Cal. 2012)...............................................................................8, 10

*Everson v. Board of Educ. of Ewing TP,*
  330 U.S. 1 (1947).........................................................................................................9

*Ford Motor Co. v. E. E. O. C.,*
  458 U.S. 219 (1982).....................................................................................................12

*Gartin v. S & M NuTec LLC,*
  245 F.R.D. 429 (C.D. Cal. 2007)..................................................................................13

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir.1998) ...................................................................................3, 5

*Hanon v. Dataproducts Corp.,*
   976 F.2d 497 (1992)....................................................................................................1

*Houser v. Pritzker,*
   28 F.Supp.3d 222 (S.D.N.Y. 2014)...........................................................................13

*In re Arris Cable Modem Consumer Litig.,*
   327 F.R.D. 334 (N.D. Cal. 2018)..............................................................................15

*In re MyFord Touch Consumer Litig.,*
   No. 13-cv-03072-EMC, 2016 WL 7734558 (N.D. Cal. Sept. 14, 2016)....................15

*In re Wells Fargo Home Mortg. Overtime Pay Litig.,*
   268 F.R.D. 604 (N.D. Cal. 2010)................................................................................3

*Int'l Bhd. of Teamsters v. United States,*
   431 U.S. 324 (1977)...................................................................................................13

*Jackson v. Shell Oil Co.,*
   702 F.2d 197 (9th Cir.1983) ......................................................................................12

*Little v. Washington Metro. Area Transit Auth.,*
   249 F.Supp.3d 394 (D.D.C. 2017) .............................................................................13

*Makaeff v. Trump University, LLC,*
   No. 3:10-cv-0940-GPC-WVG, 2014 WL 688164 (S.D. Cal. 2014).........................11

*Mazur v. eBay Inc.,*
   257 F.R.D. 563 (N.D. Cal. 2009) ..............................................................................13

*Morgan v. United Parcel Serv. of Am., Inc.,*
   169 F.R.D. 349 (E.D. Mo. 1996) ..............................................................................10

*Munoz v. PHH Corp.,*
   No. 1:08-cv-0759-AWI-BAM, 2013 WL 2146925 (E.D. Cal. 2013)........................11

*Nunes v. Wal-Mart Stores, Inc.,*
   164 F.3d 1243 (9th Cir. 1999) .....................................................................................6

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
   31 F.4th 651 (9th Cir. 2022) ........................................................................................8

*Pryor v. Aerotek Scientific, LLC,*
  278 F.R.D. 516 (C.D. Cal. 2011) ..................................................................................3

*Sias v. City Demonstration Agency,*
  588 F.2d 692 (9th Cir.1978) ......................................................................................12

*Snipes v. Dollar Tree Distribution, Inc.,*
  No. 2:15-CV-00878-MCE-DB, 2017 WL 5754894 (E.D. Cal. Nov. 28, 2017).........................11

*Stockwell v. City & Cnty. of San Francisco,*
  749 F.3d 1107 (9th Cir. 2014) ...........................................................................1, 4, 6, 9

*True Health Chiropractic, Inc. v. McKesson Corp.,*
  896 F.3d 923 (9th Cir. 2018) .....................................................................................12

*TSC Industries, Inc. v. Northway, Inc.,*
  426 U.S. 438 (1976).................................................................................................3

*Tyson Foods, Inc. v. Bouaphakeo,*
  577 U.S. 442 (2016).............................................................................................8, 12

*U.S. Equal Employment Opportunity Commission v. MCJ, Inc.,*
  400 F.Supp.3d 1023 (D. Haw. 2019) ............................................................................6

*Van v. Plant & Field Service Corp.,*
  672 F.Supp. 1306 (C.D. Cal. 1987) ............................................................................15

*Ventures Edge Legal PLLC v. GoDaddy.com LLC,*
  No. CV-15-02291-PHX-GMS, 2018 WL 619723 (D. Ariz. Jan. 30, 2018) ..............................5

*Viceral v. Mistras Group, Inc.,*
  No. 15-cv-02198-EMC, 2016 WL 5907869 (N.D. Cal. 2016) ..............................................11

*Wal-Mart Stores, Inc. v. Dukes,*
  131 S.Ct. 2541 (2011)...........................................................................................3, 5

*Walters v. Reno,*
  145 F.3d 1032 (9th Cir. 1998) ..................................................................................10

*Williams v. Apple, Inc.,*
  338 F.R.D. 629 (N.D. Cal. 2021)................................................................................11

*Yokayama v. Midland Nat'l Life Ins. Co.,*
  594 F.3d 1087 (9th Cir. 2010) ..............................................................................2, 11

**STATUTES AND RULES**

Fed. R. Civ. P. 23(a) ...........................................................................................1, 3, 9
Fed. R. Civ. P. 23(a)(2)..........................................................................................1, 8
Fed. R. Civ. P. 23(b)(3)....................................................................................... *passim*

Civ. L. R. 7-2(b)...........................................................................................................8

**OTHER AUTHORITIES**

2 W. Rubenstein, Newberg on Class Actions
    § 4:54 (5th ed. 2012)...........................................................................................11

1

## I.   INTRODUCTION

2        Defendants do not dispute that the following elements necessary for certification of the

3   Class under Fed. R. Civ. P. 23(a) and (b)(3) have been met here: the Class is numerous; Plaintiffs

4   are adequate class representatives; Plaintiffs' claims are typical of the claims of the Class; the

5   superiority requirement has been met; and Plaintiffs' counsel are qualified and should be appointed

6   Class Counsel. Defendants only dispute: (1) the existence of common questions of law and fact

7   (Rule 23(a)(2)); and (2) that common issues predominate over any individualized issues (Rule

8   23(b)(3)).[1] *See* Defs.' Opp. to Pltffs.' Mtn. for Class Cert., ECF No. 105 ("Opp.") at 9.

9        Defendants spend a significant portion of their Opposition inappropriately arguing the

10  merits of their defenses rather than focusing on the requirements for class certification. For

11  example, Defendants' argument that "the County provided *equal* job transfer assistance to all

12  employees" (Opp. at 1), although contrary to overwhelming evidence of a policy and practice of

13  discrimination, is a merits argument not appropriate for decision at this stage of the litigation. *See*

14  *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 443 (N.D. Cal. 2001) (whether the defendant has or

15  has not "engaged in any pattern or practice of discrimination" "is the sort of merits-based inquiry

16  that the Supreme Court rejected in *Eisen*") (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497,

17  509 (1992) and *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177-78 (1974)). Similarly,

18  Defendants' request that the Court "give deference" to the decisions made by the County's public

19  health officials (Opp. at 1, 8-9) is a merits argument that has nothing to do with class certification.

20  *See Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013) ("Merits

21  questions may be considered to the extent—but only to the extent—that they are relevant to

22  determining whether the Rule 23 prerequisites for class certification are satisfied."); *Stockwell v.*

23  *City & Cnty. of San Francisco*, 749 F.3d 1107, 1111-12 (9th Cir. 2014) ("[W]hether class members

24  could actually prevail on the merits of their claims" is not a proper inquiry in determining "whether

25  common questions exist.").

26       Defendants' remaining arguments suffer from several flaws. First, Defendants are

27  misguided in their arguments that Plaintiffs will need to establish that each Class member sought

28

---

[1]        Plaintiffs withdraw their request for certification under Fed. R. Civ. P. 23(b)(1)(A).

a job transfer and did not secure it because of preferential treatment given to another medically-exempt employee to establish their discrimination claims. Substantial evidence demonstrates that the County's policy was to prioritize personnel with medical exemptions by transferring them into new positions while requiring religiously exempt personnel to apply for new positions. It was this common evidence that led the Court to partially grant Plaintiffs' motion for preliminary injunction.

Second, Defendants are likewise incorrect that Plaintiffs will need to demonstrate that every member of the Class was misclassified as "high-risk" in order to prove the County's Risk Tier System was not facially and/or operationally neutral and generally applicable. Plaintiffs do not challenge Defendants' conduct towards some employees, but rather a County policy they contend has adversely affected the entire Class. The evidence will show that some employees classified as high-risk were permitted to return to work, and some employees were classified as high-risk even though their jobs required little to no interaction with the public. This is evidence common to each Class member. And the question of whether strict scrutiny applies to Plaintiffs' free exercise claims is also a common question.

Third, the question of whether the County's accommodation policy was reasonable does not require individualized inquiries as Defendants argue. Instead, the common evidence will be the County's vaccine mandate, Risk Tier System, and accommodations policy.

Finally, whether Defendants violated the Establishment Clause by demonstrating hostility toward religion is a question common to the Class. Defendants' attempt to refute this by making a merits argument regarding what constitutes hostility towards religion is inappropriate.

These common questions will drive the litigation and will predominate over any individualized issues. Moreover, Defendants' argument that the need to make individualized damages determinations defeats class certification is contrary to Ninth Circuit authority. Individual class member damages calculations are permissible in a certified class under Rule 23(b)(3). *See Yokayama v. Midland Nat'l Life Ins. Co*., 594 F.3d 1087, 1094 (9th Cir. 2010).

## II.     ARGUMENT

### A.     Class Members Share Common Questions of Law and Fact under Rule 23(a).

"The Ninth Circuit construes the commonality requirement under [Rule 23(a)]

---

'permissively,' . . . ." *Bates*, 204 F.R.D. at 445 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011)). "Indeed, the Ninth Circuit considers the requirements for finding commonality under Rule 23(a)(2) to be 'minimal.'" *Id.* (quoting *Hanlon*, 150 F.3d at 1020).

Plaintiffs have produced evidence of the County's policies and practices that applied to all Class members. For this reason, Defendants' cases are distinguishable. Opp. at 9. In *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 604, 611 (N.D. Cal. 2010), the plaintiff failed to produce "(or even alleg[] the existence of) any policy" that would apply uniformly to the class members and instead proposed to use random sampling to establish liability. And *Pryor v. Aerotek Scientific*, LLC, 278 F.R.D. 516, 536 (C.D. Cal. 2011) was a wage and hour case that required examination of each employee's individual time records and testimony to establish liability. Those circumstances are not present here.

Plaintiffs have proposed five common questions of law and fact, all of which will generate common answers apt to drive the resolution of this litigation.

***First***, whether Defendants violated Plaintiffs' and the Class' right to free exercise of religion and equal protection of the law with its policy of prioritizing the accommodation of individuals with medical exemptions over those with religious exemptions is a question that generates a common answer. Without citation to any authority, Defendants argue this issue is not a common one because "an individual plaintiff would need to establish that he or she sought a job transfer and did not secure it because of preferential treatment given to another employee" and that "many proposed class members either never sought, or refused, a job transfer." Opp. at 10. But this argument misstates the requirements for proving each of Plaintiffs' claims.

Whether Defendants did prioritize medical exemptions is "objective" and "can be proved through evidence common to the class." *See TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 445 (1976). Indeed, when partially granting Plaintiffs' motion for a preliminary injunction, this Court looked at the County's policy of giving "'those with disability or medical contraindication vaccine exemptions . . . "preferential consideration" . . . .'" ECF No. 44 at 16 (quoting Marquez Decl. ¶ 41). The Court issued a preliminary injunction enjoining this policy and practice because

it is "a practice the County has admitted occurs." ECF No. 44 at 7. Contrary to Defendants' argument that all proposed Class members received the same job transfer assistance, Plaintiffs have presented substantial evidence that it was the County's policy and practice to prioritize personnel with medical exemptions by providing them with job transfers and reassignments, but that Class members with religious exemptions were instead required to apply and go through the competitive process for new positions, just like any member of the public not already employed by the County. *See* Decl. of Mariah Gondeiro in Support of Pltffs.' Mtn. for Class Cert., ECF No. 81-1 ("Gondeiro Decl."), Ex. U; Supp. Decl. of Mariah Gondeiro in Further Support of Pltffs.' Mtn. for Class Cert. ("Supp. Gondeiro Decl."), Exs. A-E, R-S. For instance, the County, via email, consistently informed employees that if they chose a medical/disability exemption from the County's vaccination requirements, the County would give them priority consideration. *Id*. The County referred only employees with medical exemptions to the Equal Opportunity Division. *Id*., Exs. P, R-S. Therefore, Plaintiffs will use common evidence to demonstrate the County prioritized employees with medical exemptions over those with religious exemptions.

**Second**, whether Defendants' Risk Tier System violated the Free Exercise Clause and Equal Protection Clause because it relegated Plaintiffs and the Class members to unpaid leave but allowed some unvaccinated or non-boosted employees to continue to work is a common question. While Defendants contend that this analysis relies on "highly individualized inquiries" (Opp. at 11), Plaintiffs do not need to demonstrate, as Defendants suggest, that every member of the Class was misclassified as "high-risk" to prove the County's Risk Tier System was not facially and/or operationally neutral and generally applicable and that it does not pass strict scrutiny. Plaintiffs do not challenge Defendants' conduct towards *some* employees, but "a [] policy they contend has adversely affected them." *Stockwell*, 749 F.3d at 1116; s*ee also Bates*, 204 F.R.D. at 448–49 ("Thus, liability . . . depends on questions of law and fact common to the class" "relate[d] to the policies and practices [defendant] employed . . . and whether those policies and practices comply with the ADA and California laws.").

The evidence will show that some employees classified as high-risk were permitted to return to work, and some employees were classified as high-risk even though their job required

---

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

little to no interaction with the public. Supp. Gondeiro Decl., Exs. W-X, AA; Gondeiro Decl., Exs. B-D. Thus, resolution of this question "'will resolve an issue that is central to the validity of each one of the [class members'] claims in one stroke.'" *Dukes*, 131 S.Ct. 2551.

**Third**, to rule on Plaintiffs' free exercise claims, the Court must determine what level of scrutiny is appropriate. Whether the County's religious exemption and/or accommodation procedure is subject to strict scrutiny is a common question, the resolution of which will be critical in "driv[ing] the resolution of the litigation." *Dukes*, 131 S.Ct. 2562.

Defendants cite no authority for the argument that because this common question is only a "preliminary" legal question that would not resolve an entire claim it cannot serve as an important and unifying common question. Opp. at 12. *Dukes*, 131 S.Ct. 2541 does not so hold, and the other cases Defendants cite are inapposite. The court in *Dennis F. v. Aetna Life Ins*., No. 12-CV-02819-SC, 2013 WL 5377144, at *4 (N.D. Cal. Sept. 25, 2013) denied class certification because the plaintiffs' claims were predicated upon "medical necessity determinations that [were] unique to each individual class member," a circumstance not present here. And *Ventures Edge Legal PLLC v. GoDaddy.com LLC*, No. CV-15-02291-PHX-GMS, 2018 WL 619723 (D. Ariz. Jan. 30, 2018) involved individualized issues of reliance that are not present here.

**Fourth**, whether Defendants provided Plaintiffs and the Class members with reasonable accommodation as required under FEHA and Title VII is a common question subject to proof using common evidence. While Defendants, again, contend that this analysis requires individualized inquiry (Opp. at 13), the County's vaccine mandate, Risk Tier System, and accommodations policy was applicable to all personnel. Gondeiro Decl., Ex. E. Plaintiffs will only need to prove that the County's accommodations policy was unreasonable. This is a shared legal issue amongst proposed Class members, even if "divergent factual predicates" occur. *Hanlon*, 150 F.3d at 1019-20. Therefore, it does not matter that Class members held different jobs, reacted to the vaccine mandate differently, or reacted to the accommodation process differently.

Plaintiffs will use common evidence to show that the County's implementation of its Risk Tier System was irrational and unjustified. For instance, the County implemented its vaccination policy even though most employees were vaccinated and COVID-19 cases were declining. Supp.

1    Gondeiro Decl., Exs. F-I. The County's Risk Tier System was also irrational because many
2    employees were classified as high-risk even though their jobs required little to no interaction with
3    the public. Gondeiro Decl., Exs. B-D; Supp. Gondeiro Decl., Exs. W-X, AA.

4         Moreover, Plaintiffs will use common evidence to show that the only accommodation the
5    County provided to unvaccinated employees in high-risk settings was administrative leave and
6    depletion of the employees' leave banks. *Id*., Exs. W-Z. While the County did assist employees
7    placed on leave with their job search, this does not negate the fact that administrative leave was
8    the exclusive accommodation provided to unvaccinated employees in high-risk settings.
9    Accordingly, no individualized inquiry need occur here.

10        Defendants' cited cases do not support a different conclusion. Opp. at 13. For instance,
11   *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243 (9th Cir. 1999) and *U.S. Equal Employment*
12   *Opportunity Commission v. MCJ, Inc.*, 400 F.Supp.3d 1023 (D. Haw. 2019) were not class actions
13   and concerned whether the accommodations provided under the circumstances of those cases were
14   reasonable under the ADA. The accommodations in this case were governed by the County's
15   policies and applied class-wide and therefore will be common to all Class members.

16        ***Fifth***, whether Defendants violated the Establishment Clause by demonstrating hostility
17   towards religion is a question common to the Class. To refute this, Defendants attempt to make a
18   merits argument regarding what constitutes hostility towards religion. Opp. at 14-15. Again, merits
19   arguments are inappropriate at the class certification stage. *See Amgen Inc.*, 568 U.S. at 465-66
20   ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification
21   stage."); *Stockwell*, 749 F.3d at 1111-12 ("[W]hether class members could actually prevail on the
22   merits of their claims" is not a proper inquiry in determining "whether common questions exist.").

23        Additionally, Defendants assert that Plaintiffs omitted "directly relevant contrary
24   evidence" pertaining to this common question. Opp. at 14. However, the fact that the County
25   provided a religious exemption to its vaccination requirement is irrelevant. *Id.* Plaintiffs do not
26   allege Defendants discriminated against them by not providing religious exemptions, but by
27   treating employees without religious exemptions more favorably than employees with religious
28   exemptions. ECF No. 55, ¶ 88. It is also disingenuous and irrelevant for the County to claim it

1   "granted all requested religious exemptions where an employee provided any statement of

2   religious belief . . . ." Opp. at 14. Even though this Court does not need to address this issue at this

3   stage, the County did deny some religious exemptions. *See* Supp. Gondeiro Decl., Exs. K-O.

4   Moreover, the County did not dedicate "human resources professionals to work with all

5   interested exempted employees to find alternative positions." Opp. at 14. Email correspondence

6   from the County reveals that employees with medical exemptions were referred to the Equal

7   Opportunity Division, while employees with religious exemptions were referred to a different

8   department. Supp. Gondeiro Decl., Exs. P-T.

9   Finally, it is misleading for the County to claim it "placed more religious- than medical-

10   exempted personnel in alternative positions." Opp. at 14. Approximately 463 employees were

11   provided with religious exemptions in high-risk settings, and 52 were provided with medical

12   exemptions. Gondeiro Decl., Ex. O; Supp. Gondeiro Decl., Ex. V; Decl. of Megan Doyle in

13   Support of Defs.' Opp. to Pltffs.' Mtn. for Class Cert. ("Doyle Decl."), ECF No. 101, Ex. 9. The

14   County placed four employees with medical/disability exemptions in alternative positions and

15   sixteen employees with religious exemptions in alternative positions. Doyle Decl. Ex. 9.

16   Statistically, the County placed more than twice as many medically exempt employees in

17   alternative positions (7.69% versus 3.45%).

18   In any event, Defendants ignore the common evidence applicable to this contention.

19   Plaintiffs will demonstrate that after this Court granted Plaintiffs' preliminary injunction,

20   Defendants refused to offer religious accommodations to Plaintiffs, such as transfers or

21   reassignments, even though they had the ability to do so. *See id.*, Ex. EE.

22   Thus, the proposed Class shares sufficient factual commonality to satisfy the minimal

23   requirements of Rule 23(a)(2).

24       **B.   Common Questions of Law and Fact Predominate Under Rule 23(b)(3).**

25   The Court should certify the Class under Rule 23(b)(3) because common issues of law and

26   fact predominate over individualized issues.

27   **Free Exercise Clause.** Contrary to the County's argument, Plaintiffs' free exercise claim

28   does not involve highly individualized inquiries. Opp. at 17. The Class members' claims are based

1    upon the same policy: they were subject to the unlawful Risk Tier System, and that system allowed

2    workers in lower-risk tiers to maintain employment unvaccinated while Plaintiffs and Class

3    members were relegated to unpaid leave. If the County had not issued its vaccination policies (and

4    associated Risk Tier System), Class members would not have been forced to seek job transfers,

5    modifications, and job assistance. Rather, they would have remained in their current positions – as

6    they had during the height of the pandemic. Accordingly, here, "the same evidence will suffice for

7    each member to make a prima facie showing" under Rule 23(b)(3). *Tyson Foods, Inc. v.*

8    *Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted); *see also Olean Wholesale Grocery*

9    *Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022).

10        Defendants' argument that Plaintiffs violated Civ. L. R. 7-2(b) by purportedly referencing

11   arguments and evidence presented to the Court in support of their motion for preliminary

12   injunction is baseless. Opp. at 17. Plaintiffs cited to this Court's order granting in part Plaintiffs'

13   motion to demonstrate the types of common evidence the Court will evaluate in ruling on the

14   merits of Plaintiffs' claims.

15        Defendants erroneously assert that the attacks Plaintiffs made "on vaccine efficacy during

16   the preliminary injunction phase of this case are irrelevant to Plaintiffs' motion for class

17   certification." *Id.* at 18. Plaintiffs attached the declaration of Dr. Battacharya to their motion for

18   class certification to show this Court the type of common evidence they will raise to prove their

19   claims. Gondeiro Decl., Ex. A. Therefore, it is disingenuous for Defendants to claim Plaintiffs

20   have not presented to this Court the legal theories they intend to pursue. Opp. at 18.

21        **FEHA.** "Individualized issues" do not predominate Plaintiffs' FEHA claim either. Opp. at

22   19. All proposed Class members were subject to the County's vaccination orders and policies,

23   which prohibited all unvaccinated employees from working in high-risk settings and Defendants

24   placed these employees on unpaid administrative leave. Gondeiro Decl. Ex. E. Additionally,

25   pursuant to County policy, medically exempt employees were prioritized for placement into

26   alternative positions, while religiously exempt employees were required to apply for open

27   positions through the competitive process. Gondeiro Decl., Ex. U; Supp. Gondeiro Decl., Exs. A-

28   E, R-S. *See also Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 510 (N.D. Cal. 2012) ("[W]ith

---

respect to the Plaintiffs' disparate treatment claim, Plaintiffs have provided 'significant proof' that Defendant operates under a general policy of discrimination and that Defendant's management utilizes a 'common mode of exercising discretion,'" satisfying Rule 23(a).).

Again, Defendants manipulate the data to make the improper merits argument that they "placed many more employees with medical exemptions." Opp. at 19. Defendants ignore that there were significantly more religiously exempt personnel (463) than medically exempt personnel (52). *See* Gondeiro Decl., Ex. O; Supp. Gondeiro Decl., Ex. V; Doyle Decl. Ex. 9 (County placed approximately 16 out of 463 religiously exempt employees into alternate positions while placing 4 out of 52 medically exempt employees). The County placed nearly **twice** the percentage of medically exempt employees in high-risk settings (7.69%) into alternate positions as religiously exempt employees (3.4%). *Id.* Plaintiffs challenge discrete County-wide policies guided and supervised by County executives, which will predominate over individualized issues.

**Equal Protection.** Defendants once more argue that Plaintiffs' Equal Protection claim is subject to individualized issues. Opp. at 20. For the same reasons Plaintiffs' Free Exercise claim does not involve individualized inquiries, neither does Plaintiffs' Equal Protection claim.

**Establishment Clause.** The Establishment Clause requires the County to "be neutral in its relations with groups of religious believers and non-believers." *Everson v. Board of Educ. of Ewing TP*, 330 U.S. 1, 18 (1947). Plaintiffs will use evidence common to the Class to demonstrate that the County was not neutral in its relations with employees in the high-risk tier who requested a religious exemption.

Defendants argue that the County treated religious- and medical-exempted personnel equally. Opp. at 20. Any argument concerning whether the Defendants demonstrated hostility towards religion is an inappropriate merits-based argument. *See Amgen Inc.*, 568 U.S. at 465–66; *Stockwell*, 749 F.3d at 1111–12. Nevertheless, in both policy and practice, the County gave preferential consideration for alternate positions to medically exempt employees in high-risk settings. *See* Gondeiro Decl., Ex. T; Supp. Gondeiro Decl., Exs. A-E.

**Title VII.** Similar to their FEHA claim, Plaintiffs will prove their Title VII claim using common evidence showing the County failed to offer reasonable accommodations to Plaintiffs and

the Class members. *Id.*, Supp. Gondeiro Decl., Exs. W-X, AA, Gondeiro Decl., Exs. B-D.

In sum, the legality of the County's vaccination orders, policies and practices is the common issue that will predominate over any individualized issues. *See Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (INS case explaining that a common allegation of illegal procedures is sufficient to find commonality, even when subsequent complex individualized proceedings will be necessary to resolve individual class members' claims); *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (the existence of common discriminatory practices satisfies commonality even when the practices affect each class member differently).

**Monell**. Defendants mistakenly assert that "County personnel who made risk tier determinations consisted of heads of the County's more than 70 agencies/departments . . . ." Opp. at 22. However, common evidence demonstrates that the policies and practices at issue were adopted and guided by top County officials. For instance, the County's August 5, 2021 vaccine mandate was signed by County Executive Jeffrey Smith and County Counsel James Williams and it was strongly recommended by County Health Officer Sara Cody. Gondeiro Decl., Ex. E. Similarly, the County's Risk Tier System was implemented based upon the guidance of Dr. Sara Cody. *Id.*, Ex. F. Email correspondence also confirms that the vaccine mandate and Risk Tier System were implemented at the direction of the Public Health Department, County Executive Office, and County Counsel Office. Supp. Gondeiro Decl., Exs. BB-DD; *see also Ellis*, 285 F.R.D. at 509 (finding common questions where "Plaintiffs identify specific practices and a common mode of guided discretion directed from the top levels of the company."); *Aviles-Valdez v. Umatilla Cnty.*, No. 2:16-CV-00332-SU, 2019 WL 2440091, at *7 (D. Or. Feb. 8, 2019), *report and recommendation adopted*, No. 2:16-CV-00332-SU, 2019 WL 2437449 (D. Or. June 11, 2019) (allowing *Monell* claims to proceed due to allegations of custom or practice and because County Counsel was a final policymaker regarding defendant's decisions); *Morgan v. United Parcel Serv. of Am., Inc.*, 169 F.R.D. 349, 356 (E.D. Mo. 1996) (certifying classes because "UPS personnel policies are uniform throughout the country and are promulgated by the national corporate office" including "the subjective, decentralized system of decisionmaking which the plaintiffs allege is discriminatory"). This evidence demonstrates an actionable policy under *Monell*.

### C.     The Need for Individualized Damages Determinations Does not Defeat Class Certification

"Courts in every circuit have . . . uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations." 2 W. Rubenstein, Newberg on Class Actions § 4:54, p. 206 (5th ed. 2012). *See also Yokayama*, 594 F.3d at 1094 ("In this circuit, however, damages calculations alone cannot defeat certification.'"); *Snipes v. Dollar Tree Distribution, Inc.*, No. 2:15-CV-00878-MCE-DB, 2017 WL 5754894, *5 (E.D. Cal. Nov. 28, 2017) ("Plaintiff need only propose a valid method for calculating class wide damages such that a trier of fact could accurately calculate damages."); *Viceral v. Mistras Group, Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869, *4 (N.D. Cal. 2016) ("The fact that damages among individual class members may have to be determined individually does not defeat certification."); *Makaeff v. Trump University, LLC*, No. 3:10–cv–0940–GPC–WVG, 2014 WL 688164, *16 (S.D. Cal. 2014) ("When adjudication of questions of liability common to the class will achieve economies of time and expensed the predominance standard is generally satisfied even if damages are not provable in the aggregate."); *Munoz v. PHH Corp.*, No. 1:08-cv-0759-AWI-BAM, 2013 WL 2146925, *24 (E.D. Cal. 2013) ("The *Comcast* decision does not infringe on the long-standing principle that individual class member damage calculations are permissible in a certified class under Rule 23(b)(3).").

Plaintiffs' damages expert, Mr. Keith L. Mendes, CFA, developed a damages model that, using damages equations applicable to the entire Class, will calculate damages for each member of the Class. Gondeiro Decl., Ex. V, ¶¶ 46, 48-95 and Ex. 1. The model can be applied on a class-wide basis under two scenarios: (1) the fact finder determines that the Risk Tier System was a violation of law and that Class members should have been accommodated to allow them to continue to work ("Scenario 1"); and (2) the fact finder determines that Class members were discriminated against relative to employees with medical and disability exemptions in the "high-risk" category ("Scenario 2"). *Id*., ¶ 7.

Defendants attack Mr. Mendes' damages model by first arguing that he failed to consider mitigation, an affirmative defense. However, as this Court noted in *Williams v. Apple, Inc.*, "a court may certify a Rule 23(b)(3) class 'even though [ ] important matters will have to be tried

separately, such as some affirmative defenses peculiar to some individual class members.'" 338 F.R.D. 629, 648 (N.D. Cal. 2021), quoting *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018). *See also Tyson Foods, Inc.*, 577 U.S. at 453 (class certification proper even though "affirmative defenses peculiar to some individual class members" will have to be tried separately) (citation omitted).

Under Title VII, Defendants bear the burden of proving Plaintiffs and Class members failed to mitigate their damages. *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir.1978). Defendants cite *Ford Motor Co. v. E. E. O. C.*, 458 U.S. 219 (1982), which simply held that when an employee is *wrongfully terminated* in violation of Title VII, "[a]lthough the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, he forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied." *Id.* at 231-32. First, *Ford* is distinguishable because Plaintiffs and Class members were not wrongfully terminated; they were placed on administrative leave without pay. "To require a plaintiff in a Title VII litigation to risk whatever job security she retains . . . in order to preserve a claim for backpay puts her in the same spot as the sailor caught between the devil and the deep." *Carrero v. New York City Housing Authority*, 890 F.2d 569, 580 (2d Cir. 1989). Class members were therefore not required to take even a substantially equivalent job outside the County in order to preserve their claims for backpay under Title VII.

Furthermore, Defendants do not contend they offered Messrs. Nguyen, Valle and Luna jobs that were substantially equivalent to the ones they held. In fact, Messrs. Luna and Valle testified that they did not apply for other jobs the County had available because they would lose all of the benefits afforded to them by their current positions. *See* Gondeiro Decl., Ex. 3, ¶ 3; *Id.*, Ex. 4, ¶ 4; ECF No. 96, Ex. 8 at 54 (21:16-22:5) (the only available jobs did not offer comparable pay or benefits). *See also Jackson v. Shell Oil Co.*, 702 F.2d 197, 202 (9th Cir.1983) (where "savings plans of the two companies were different [or] significantly better," jobs were not substantially equivalent); *Carrero*, 890 F.2d at 580 (plaintiff was not required to take a demotion to mitigate her Title VII damages).

Even if Defendants prove that they offered particular Class members jobs that they refused

and that those jobs were substantially equivalent to the ones they held when they were placed on administrative leave (which is unlikely), or that certain Class members earned income outside the County during the Class Period that should serve to offset their Title VII damages, Mr. Mendes can incorporate those mitigating factors into his damages model. *See e.g.*, ECF No. 96, Ex. 18 at 121-22 (66:22-68:2) (Mr. Mendes testified that he could incorporate any job change information (a potential form of mitigation) into his damages model); Supp. Gondeiro Decl., Ex. FF (Supp. Expert Decl. of Mr. Keith L. Mendes, CFA in Support of Pltffs.' Motion for Class Cert.), ¶¶ 7-12.

Also, if necessary, the Court can bifurcate the trial into a liability phase followed by a damages phase. *See Bates*, 204 F.R.D. at 448-49 (certifying the class but finding "the issues of liability and damages to be separable" and therefore bifurcating liability and damages); *Little v. Washington Metro. Area Transit Auth.*, 249 F.Supp.3d 394, 410 (D.D.C. 2017) ("To the extent individual determinations are necessary in a Title VII class action to allow a defendant to present individual defenses or calculate individual damages, the court can conduct individual *Teamsters* hearings after general liability has been established.") (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977)). "The Court may also 'exercise its discretion under Rule 23(c)(4)'" to isolate the liability question, certify a single class under Rule 23(b)(2) to address that issue, "'and leave damages calculations for individualized hearings.'" *Id.*, quoting *Houser v. Pritzker*, 28 F.Supp.3d 222, 241 (S.D.N.Y. 2014).

Defendants' cases are distinguishable. The plaintiffs in *Mazur v. eBay Inc.*, 257 F.R.D. 563 (N.D. Cal. 2009) did not retain a damages expert and their only proposal for calculating damages was a 20% inflation assumption based entirely upon a press release. And in *Gartin v. S & M NuTec LLC*, 245 F.R.D. 429, 441 (C.D. Cal. 2007), the Court found that the "[d]efendant's affirmative defenses . . . 'require an individualized determination for each putative class member because these defenses turn, in large part, on each class member's knowledge and conduct.'" Defendants' liability in this case does not turn on each Class members' knowledge or conduct.

Defendants next fault Mr. Mendes for not deducting vacation and sick time Class members would have taken had they not been placed on administrative leave without pay. Defendants cite no authority requiring Plaintiffs to assume that a Class member would have taken vacation time or

sick time. In any event, if given appropriate data, Mr. Mendes, is able to factor that in to his damages model. Supp. Gondeiro Decl., Ex. FF, ¶ 15.

Defendants also imply through their expert's declaration that the Class Period should begin on September 30, 2021 rather than August 23, 201, and that the Class is overbroad because 205 or more Class members purportedly have no damages. *See* Decl. of Karl Erik Volk, ECF No. 99, ¶¶ 12-17. However, August 23, 2021 was the beginning of the pay period immediately following the date required for employees to be partially vaccinated or to submit a request for exemption, so it is the appropriate Class Period start date. Supp. Gondeiro Decl., Ex. FF, ¶ 4. Moreover, Defendants ignore that Class members with zero ($0) damages will still have a claim for nominal damages if the fact finder determines Defendants violated Plaintiffs' and the Class' Constitutional rights. *See Cummings v. Connell*, 402 F.3d 936, 945 (9th Cir. 2005), *amended*, No. 03-17095, 2005 WL 1154321 (9th Cir. May 17, 2005) ("An award of nominal damages is intended to serve as a symbol that defendant's conduct resulted in a technical, as opposed to injurious, violation of plaintiff's rights.") This includes the Class members who became vaccinated under duress in order to provide for their families. *See, e.g.*, Gondeiro Decl., Ex. B, ¶ 6 (In spite of his sincerely held, religious beliefs that mandated that he not take the vaccine, Mr. Valle vaccinated "to provide for my wife and six-year-old daughter"). Therefore, the Class is not overbroad.

Finally, Defendants argue that Mr. Mendes' Scenario 2 model "has nothing to do with Plaintiffs' liability theory," which Defendants characterize as "giving employees with medical and disability exemptions in high-risk roles preferential treatment in seeking job transfers." Opp. at 24. This argument too is baseless. Mr. Mendes understood that Plaintiffs allege "that employees with medical and disability exemptions in high-risk roles were prioritized over employees with religious exemptions in high-risk roles" and developed a damages model for two different scenarios, the second of which is where "[t]he fact finder determines that employees in the 'high-risk' category who received religious exemptions were discriminated against relative to employees with medical exemptions in the "high-risk" category." Gondeiro Decl., Ex. V, ¶¶ 6, 7(b); *see also id.*, ¶ 34. "Approximations of what the discriminated group might have earned can be based on the earnings of a group of employees, not injured by the discrimination, comparable in size, ability, and length

---

of employment to the plaintiff or class member." *Van v. Plant & Field Service Corp.*, 672 F.Supp. 1306, 1319 (C.D. Cal. 1987). *See also Chang v. Univ. of Rhode Island*, 606 F.Supp. 1161, 1273 (D.R.I. 1985) ("the starting stipends of men hired in the department at the rank and in the year in question can be averaged and that product used as a benchmark"). Mr. Mendes' model uses the yardstick approach to measure the impact on Class members of Defendants' unlawful discrimination by comparing data for the Class "with respect to dates of leave, any paid leave banks used, base monthly wages, and overall monthly earnings" with the same data for the medical/disability exemption population. Gondeiro Decl., Ex. V, ¶ 34; Supp. Gondeiro Decl., Ex. FF, ¶ 20. Furthermore, job change data is part of Mr. Mendes' Scenario 2 damages model. Gondeiro Decl., Ex. V, ¶ 44. Therefore, contrary to Defendants' contention, the model does incorporate job transfers data.

At bottom, Defendants' criticisms of Mr. Mendes' model are "merits argument[s] about the proper amount of damages, not a mismatch between Plaintiffs' damages model and theory of liability." *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 370 (N.D. Cal. 2018), citing *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2016 WL 7734558 at *19 (N.D. Cal. Sept. 14, 2016) (declining to resolve factual dispute about whether damages theory properly accounted for a certain repair that mitigated damages—and thus affected the amount of damages).

## III.     CONCLUSION

For all of the reasons stated above and in Plaintiffs' opening memorandum, this case meets all the requirements for class certification. Plaintiffs therefore request that the Court grant their motion to certify the class action, to appoint Plaintiffs as Class Representatives, and to appoint Advocates for Faith and Freedom and Wolf Haldenstein Adler Freeman & Herz LLP as Co-Class Counsel.

DATED:  December 1, 2023

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**

  */s/     Rachele R. Byrd*
       RACHELE R. BYRD

Rachele R. Byrd
byrd@whafh.com
750 B Street, Suite 1820

---

San Diego, CA  92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599

Robert H. Tyler, Esq.
btyler@faith-freedom.com
Mariah Gondeiro, Esq.
mgondeiro@faith-freedom.com
**ADVOCATES FOR FAITH & FREEDOM**
25026 Las Brisas Road
Murrieta, California 92562
Telephone: (951) 600-2733
Facsimile: (951) 600-4996

*Attorneys for Plaintiffs and the Class*

30170v5