**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

|  |  |
|---|---|
| UNIFYSCC, et al., | Case No.  22-cv-01019-BLF |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART CLASS CERTIFICATION** |
| SARA H. CODY, et al., | [Re:  ECF No. 81, 86] |
| Defendants. | |

Before the Court is Plaintiffs UnifySCC, Tom Davis, Maria Ramirez, and Elizabeth Baluyut's Motion for Class Certification.  ECF No. 81 ("Mot."); ECF No. 86 ("Amended Notice").  Defendants Sara Cody, James Williams, Jeffrey Smith, and Santa Clara County[1] oppose the motion.  ECF No. 105 ("Opp.").  Plaintiffs filed a reply in support of the motion.  ECF No. 114.  The Court heard a hearing on the motion on December 20, 2023.  ECF No. 119.

For the reasons discussed below, the Court GRANTS IN PART and DENIES IN PART the motion and will certify a class only with respect to liability issues.

## I.    BACKGROUND

Beginning in March 2020, COVID-19 began to spread rapidly throughout the United States.  ECF No. 95 ("Rudman Decl.") ¶ 7.  COVID-19 proved to be highly contagious and deadly, claiming the lives of over 1 million Americans in just over two years.  *See id.*

On August 5, 2021, "based on the strong recommendation of the Health Officer

---

[1] The Court will refer to the Defendants collectively as the "County" throughout this Order.

United States District Court
Northern District of California

[Defendant County Health Officer Dr. Sara Cody], to stem the "significant rise of COVID-19 cases and hospitalizations among the unvaccinated due to the Delta variant," and "[t]o protect County personnel, the community members with whom County personnel interact, and all residents of the County," Defendant County Executive Jeffrey Smith and Defendant County Counsel James Williams issued a policy regarding COVID-19 vaccinations. ECF No. 81-6 ("Aug. 5 Mem.") at 1.  The Policy had two parts: (1) a COVID-19 vaccine mandate, with limited exemptions; and (2) an accommodations framework for County personnel who received exemptions to the mandate.

### A.    Vaccine Mandate

First, the Policy mandated that all County personnel (including employees, interns, volunteers, and certain types of contractors) be fully vaccinated and boosted against COVID-19 (the "Mandate").  Aug. 5 Mem. at 1.  County personnel had to become at least partially vaccinated or submit a request for exemption by August 20, 2021, and become fully vaccinated by September 30, 2021.  *Id.* at 2.  The Mandate contained three "limited exemptions" that allowed County employees to request an exemption and "a reasonable accommodation to the vaccination requirement" if they had:

- "a contraindication recognized by the U.S. Centers for Disease Control and Prevention (CDC) or by the vaccine's manufacturer to *every* approved COVID-19 vaccine"—i.e., "a condition that makes vaccination inadvisable" (the "medical exemption");

- "a disability" that requires a "reasonable accommodation" (the "disability exemption"); or

- an "[o]bject[ion] to COVID-19 vaccination based on their sincerely-held religious belief, practice, or observance" (the "religious exemption").

*Id.* at 3.  Employees seeking exemptions were instructed to contact their department head to obtain a copy of one of two forms based on the type of exemption they were seeking: (1) a "Medical Exemption and/or Disability Accommodation Request Form," or (2) a "Religious Accommodation Request Form."  *Id.*  The exemption request forms were submitted to the County's Equal Opportunity Division, which then informed employees and their departments if the exemptions were approved or denied.  *Id.*

2

As to the requests for religious exemptions, the County exercised minimal discretion in determining whether to grant the requests.  ECF No. 101 ("Doyle Decl.") ¶ 6.  The County considered only whether the request "articulated a claimed religious belief on the face of the exemption request form," rather than some other belief, "such as a political objection or personal non-religious belief that vaccines are dangerous."  *Id.*

### B.    Accommodations for Exempt Employees

Second, the Policy provided employees granted exemptions from the Mandate different accommodations based on a tiered system ("Risk Tier System").  Based on guidance from the County Department of Public Health, each County department designated a position occupied by an employee seeking an exemption into one of three tiers based on the level of COVID-19 transmission risk presented by that position.  ECF No. 81-7 ("Gondiero Decl. Ex. F") at 2. Positions were sorted into lower-, intermediate-, or high-risk tiers.  *Id.*  To determine the risk level of a position, departments considered factors such as the quantity and nature of contact the employee had with others; the risk posed to vulnerable populations that the County served; the risk posed to persons at serious risk of illness or death from COVID-19; the risk of a COVID-19 outbreak in the job setting; and the essential job functions that position entailed with or without accommodations.  *Id.*  This analysis also considered where the employee worked.  *Id.*  For example, "employees who work in office settings and have minimal contact with the public are generally determined to be in lower-risk roles," while "[e]mployees who work in health care settings where they have contact with patients, employees who work with young children, and employees who work in other particularly high-risk sites (shelters, custodial facilities, etc.) are in high-risk roles."  *Id.*

The risk tier determined what accommodations the County offered to employees.  Exempt employees in lower-risk roles were permitted to wear a surgical mask and receive a COVID-19 test each week in lieu of vaccination.  Gondiero Decl. Ex. F at 2.  Exempt employees in intermediate-risk roles were permitted to wear an N95 mask and obtain two COVID-19 tests per week in lieu of vaccination.  *Id.*  "[B]ased on the significant health and safety risks to and posed by unvaccinated employees in high-risk roles," the County determined that it could not safely

allow exempt employees to remain in high-risk roles.  *Id.*  The County thus offered those employees leave (including option of using available leave banks) "during which the County would assist [the employee] in seeking reassignment or transfer to a lower- or intermediate-risk position."  *Id.*; Doyle Decl. ¶ 8; *see also* ECF No. 81-22 ("Gondiero Decl. Ex. U") at 4.

Beginning on November 1, 2021, exempt employees in high-risk roles were placed on administrative leave while the County worked with them to determine if reassignments or transfers were possible.  Gondiero Decl. Ex. U at 3–4.  The County's Equal Opportunity Division and Employee Services Agency were enlisted to help employees in this process.  *Id.* at 4; ECF No. 81-14 ("Gondiero Decl. Ex. M").  Exempt employees with disability or medical exemptions were told that they may be entitled to "priority consideration" for vacant positions consistent with the Americans with Disabilities Act and the California Fair Employment and Housing Act.  Gondiero Decl. Ex. U at 4; ECF No. 80-2 ("Gondiero Decl. Ex. K") at 126:2–7.

As of April 15, 2022, 138 exempt employees in high-risk roles remained on leave, about 30 of whom were on leave for reasons unrelated to their vaccination status (such as family, medical, or other personal leave).  Doyle Decl. ¶ 7 & Ex. 2.  In September 2022, the County amended the Policy to permit unvaccinated individuals in high-risk roles to work if they had an approved exemption and successfully completed certain safety measures.  *See* Doyle Decl. ¶ 16 & Ex. 10.

### C.    Procedural History

On February 18, 2022, Plaintiffs UnifySCC, Tom Davis, and Maria Ramirez filed their initial complaint in this case.  ECF No. 1 ("Compl.") ¶¶ 8–10.  The initial complaint asserted four claims: (1) a claim under 42 U.S.C. § 1983 for violation of the Free Exercise Clause of the First Amendment, Compl. ¶¶ 47–54; (2) violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940, Compl. ¶¶ 55–60; (3) a § 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment, Compl. ¶¶ 61–67; and (4) a § 1983 claim pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), Compl. ¶¶ 68–71.

On March 3, 2022, almost two weeks after filing the Complaint, Plaintiffs moved for a temporary restraining order.  ECF No. 22.  The Court denied Plaintiffs' motion for a temporary

4

restraining order on the grounds that they waited "two days short of seven months after the issuance of the [P]olicy" to seek the TRO.  ECF No. 25 at 3.  On April 4, 2022, Plaintiffs filed a motion for a preliminary injunction.  ECF No. 27.  The Court granted in part the motion and enjoined the County's accommodations framework to the extent that it gave priority consideration for vacant County positions based on the type of exemption from the County's vaccine mandate that the employee received.  ECF No. 44 at 23.  The Court denied the motion with respect to the Mandate.  *Id.*  After the Court's order, the Chief Operating Officer of the County directed staff facilitating accommodations for exempt employees that they should not prioritize any employee seeking alternative placement on the basis of the employee's exemption.  Doyle Decl. ¶ 15; ECF No. 81-15 ("Gondiero Decl. Ex. N").

On August 23, 2022, Plaintiffs filed an amended complaint.  ECF No. 55 ("FAC").  The amended complaint added Baluyut as a named plaintiff.  *Id.* ¶ 11.  It also added two additional claims: (1) a claim under 42 U.S.C. § 1983 for violation of the Establishment Clause of the First Amendment, FAC ¶¶ 79–85; and (2) a claim under Title VII of the Civil Rights Act of 1964, FAC ¶¶ 90–93.  Finally, the amended complaint added class allegations.  FAC ¶¶ 65–62.  Plaintiffs now move to certify a class, defined as follows:

> All individuals who: 1) work or worked for the County and/or [] were subject to its vaccine policies and orders, including the Risk Tier System; 2) were forced by the County to choose between taking the vaccine to maintain their jobs and/or their employment-related benefits or being placed on unpaid leave; 3) were [] classified as working in high risk jobs pursuant to the County's Risk Tier System; and 4) received [] a religious exemption from the County (the "Class") between August 5, 2021 and September 27, 2022 (the "Class Period").

Mot. at 7 (alterations in original).[2]

---

[2] The Court observes that Plaintiffs have defined the Class differently between their First Amended Complaint, Notices of Motion, and Motion.  *Compare* FAC ¶ 56, *with* Mot. at Notice, *and* ECF No. 86, *and* Mot. at 7.  Because the Policy was amended in September 2022 to permit exempt employees in high-risk roles to return to work, after Plaintiffs filed the First Amended Complaint, it appears that Plaintiffs have chosen to modify the Class definition consistent with current policies.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs class certification.  "The party seeking class certification has the burden of affirmatively demonstrating that the class meets the requirements of [Rule] 23."  *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1066 (9th Cir. 2021) (internal quotation marks and citation omitted).  "As a threshold matter, a class must first meet the four requirements of Rule 23(a):  (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation."  *Id.*

"In addition to Rule 23(a)'s requirements, the class must meet the requirements of at least one of the three different types of classes set forth in Rule 23(b)."  *Stromberg*, 14 F.4th at 1066 (internal quotation marks and citation omitted); *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022).  "To qualify for the third category, Rule 23(b)(3), the district court must find that 'the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *Olean*, 31 F.4th at 664 (quoting Rule 23(b)(3)).

"Before it can certify a class, a district court must be satisfied, after a rigorous analysis, that the prerequisites of both Rule 23(a) and 23(b)(3) have been satisfied."  *Olean*, 31 F.4th at 664 (internal quotation marks and citation omitted).  "[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence."  *Id.* at 665.  "In carrying the burden of proving facts necessary for certifying a class under Rule 23(b)(3), plaintiffs may use any admissible evidence."  *Id.*

## III.   DISCUSSION

### A.   Rule 23(a) Requirements

Rule 23(a) requires a party seeking class certification to meet four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  *See Stromberg*, 14 F.4th at 1066.  Plaintiffs argue that they meet each requirement of Rule 23(a).  *See* Mot. 7–13.  The County has not raised any arguments challenging Plaintiffs' showing under the numerosity, typicality, and adequacy requirements.  Instead, the County's argument is focused on

United States District Court
Northern District of California

the commonality requirement.  The Court considers each of the requirements of Rule 23(a) in turn.

### i.    Numerosity

Rule 23(a)(1) requires that the size of the proposed class be "so numerous that joinder of all the class members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "No exact numerical cut-off is required; rather, the specific facts of each case must be considered."  *Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA (PJWx), 2015 WL 4698475, at *3 (C.D. Cal. Apr. 27, 2015).  "[N]umerosity is presumed where the plaintiff class contains forty or more members."  *Id.*

Plaintiffs argue that the Class consists of at least 463 individuals and point to evidence from a County spreadsheet that identifies individuals in high-risk settings to whom the County granted religious exemptions.  Mot at 8–9; *see also* ECF No. 81-16 ("Gondiero Decl. Ex. O").  The County has not argued against numerosity.  The Court finds that Plaintiffs' evidence and the County's non-opposition support that the Class easily meets the numerosity requirement.

### ii.    Commonality

Rule 23(a)(2) requires the plaintiff to show that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The requirement cannot be satisfied by any common question, however.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Id.* at 349–50 (internal quotation marks and citation omitted).  The claim of common injury must depend on a common contention "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* at 350.

Plaintiffs argue that the County's policies and practices, including the Mandate, the Risk Tier System, and accommodations framework, applied to all Class members in the same way.  *See* Mot. at 10.  Similarly, Plaintiffs argue that common questions of law or fact include:

1. Whether Defendants violated Plaintiffs' right to free exercise and equal protection of the law by prioritizing medical exemptions over religious exemptions in high-risk settings;
2. Whether Defendants' Risk Tier System violated the Free Exercise Clause and Equal Protection Clause because it relegated Plaintiffs and the Class members to unpaid leave but allowed some unvaccinated or non-boosted employees to continue to work;

3. Whether the County's religious exemption and/or accommodation procedure was either non-neutral or not generally applicable such that it constitutes an individualized assessment under *Fulton*, 141 S. Ct. 1868, and is thereby subject to strict scrutiny;

4. Whether Defendants provided Individual Plaintiffs and the Class members with reasonable accommodation as required under FEHA and Title VII; and

5. Whether Defendants violated the Establishment Clause by demonstrating hostility towards religion.

*Id.* at 9–10.

The County argues that these questions cannot generate common answers.  On the first question, the County argues that different class members will be in different positions based on whether they actually sought job transfers or actually received a job transfer or modification.  Opp. at 10.  On the second question, the County argues that the constitutional challenge to the Risk Tier System requires individualized inquiries into Class members' classification to see if they were misclassified and that Plaintiffs cannot rely on evidence of some misclassified individuals to prove class-wide injury.  *Id.* at 11.  The County also argues that two examples of exempt employees in high-risk roles who were allowed to work despite the Mandate are insufficient evidence that the Risk Tier System is irrational.  *Id.* at 12.  On the third question, the County argues that whether its policies are subject to strict scrutiny is a preliminary legal question that would not resolve any claims on a class-wide basis.  *Id.*  On the fourth question, the County argues that whether an accommodation is reasonable under the FEHA and Title VII is a fact-specific, individualized inquiry.  *Id.* at 13.  On the fifth question, the County argues that Plaintiffs' theory of how its policies violated the Establishment Clause is contrary to the evidence.  *Id.* at 14.

The Court finds that Plaintiffs have sufficiently identified common questions of law or fact to meet their burden under Rule 23(a)(2).  The first three of Plaintiffs' common questions concern their claims under the Free Exercise and Equal Protection Clauses.  Plaintiffs' claims against the Risk Tier System and the prioritization of medical and disability exemptions are against the County's Policy—which applied to every member of the class in the same way—rather than against the County's conduct toward certain employees.  *See* FAC ¶¶ 50–55, 63–71, 79–85.  In arguing that Plaintiffs' common questions require individualized inquiries, the County either

United States District Court
Northern District of California

1    makes merits arguments or construes Plaintiffs' claims too narrowly.  Even if the County is

2    correct that it did not in practice treat medical and disability exemptions differently than religious

3    exemptions and that the suggestion that some roles were misclassified as high-risk is insufficient

4    to show that the Risk Tier System with respect to all 463 employees violated the Constitution,

5    these arguments go to the merits of Plaintiffs' claims rather than commonality.  *See Ellis v. Costco*

6    *Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011) (noting that a court deciding whether

7    common questions exist need not determine "whether class members could actually prevail on the

8    merits of their claims").  Moreover, Plaintiffs' Free Exercise and Equal Protection Claims do not

9    require the level of individualized proof suggested by the County.  For example, to determine

10   whether the prioritization of medical and disability exemptions over religious exemptions violated

11   the Free Exercise and Equal Protection Clauses, the finder of fact need not determine whether each

12   Class member sought a job transfer and did not secure it because of preferential treatment.  *See*

13   Opp. at 10.  It is sufficient that Plaintiffs are challenging a policy that adversely affected the Class.

14   *See Stockwell*, 749 F.3d at 1116; *see also Doster v. Kendall*, 54 F.4th 398, 434–35 (6th Cir. 2022)

15   (finding a common question where "[a] decisionmaker can answer 'yes' or 'no' to the question of

16   whether the Air Force has followed a policy of denying religious exemptions based on its generic

17   health and readiness justifications regardless of a service member's circumstances."), *cert.*

18   *granted, judgment vacated on other grounds*, No. 23-154, 2023 WL 8531840 (U.S. Dec. 11,

19   2023).  Similarly, Plaintiffs need not show that every Class member's role was misclassified as

20   high-risk to show that the Risk Tier System was arbitrary or irrational and thus in violation of the

21   Constitution.  It is sufficient that the Risk Tier System affected Class members in the same way—

22   by putting them on leave because their roles were classified as high-risk.  Finally, the County is

23   correct that whether any aspect of the Policy is subject to strict scrutiny is a preliminary legal

24   question, but this question is answered for the same way with respect to every member of the

25   Class and when considered with the other two common questions on Plaintiffs' Free Exercise and

26   Equal Protection claims, would "drive the resolution of the litigation" by resolving these claims on

27   a class-wide basis.  *Wal-Mart*, 564 U.S. at 350.

28        Plaintiffs' fourth question concerns their FEHA and Title VII claims.  In this case, every

9

United States District Court
Northern District of California

member of the class received the same accommodation under the Policy—they were put on leave and offered assistance finding positions in low- or intermediate-risk roles. *See* Gondiero Decl. Ex. F at 2. The County argues that whether accommodations are reasonable is a fact-specific inquiry that requires analysis of each individual Class members' circumstances, including roles, reaction to the Mandate, variety of accommodations provided, and the duration of leave taken. Opp. at 13. However, Plaintiffs' argument is not that the County's conduct toward individual employees is unreasonable but that the accommodation provided in the Policy is unreasonable, especially when considering alternatives such as bi-weekly testing and requiring employees to wear masks. *See* FAC ¶¶ 77, 92; 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1763.1 (4th ed. 2021) (noting that a common question includes "whether there is a common unlawful policy that has injured the class as a whole").

Plaintiffs' fifth question concerns their Establishment Clause claim. Plaintiffs' theory for their claim is that the County demonstrated hostility to religion because it had the ability to transfer or reassign employees with religious exemptions but chose not to do so. FAC ¶ 88. The County responds that this claim is unsupported by law or fact. Opp. at 14–15. Although the County has presented an argument that might be persuasive at summary judgment, that argument goes to the merits, rather than the commonality question. *See Ellis*, 657 F.3d at 983 n.8.

Given the showing discussed above and the permissive construction of Rule 23(a)(2), the Court finds that the commonality requirement has been satisfied. *See Kumandan v. Google LLC*, No. 19-CV-04286-BLF, 2023 WL 8587625, at *8 (N.D. Cal. Dec. 11, 2023).

### iii. Typicality

Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The purpose of this requirement is to "ensure[] that the interest of the class representative aligns with the interests of the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks and citation omitted). "The requirement is permissive, such that representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Id.* (internal quotation marks and citation omitted). However, "[a] court

United States District Court
Northern District of California

1   should not certify a class if there is a danger that absent class members will suffer if their

2   representative is preoccupied with defenses unique to it." *Id.* (internal quotation marks and

3   citation omitted).

4          Plaintiffs argue that their claims are typical of the Class for the same reasons that the

5   commonality requirement is met.  Mot. at 12.  The County has not argued against typicality.

6          The Court finds that Plaintiffs UnifySCC, Davis, Ramirez, and Baluyut have claims for

7   violations of the Free Exercise Clause, FEHA, Equal Protection Clause, Establishment Clause,

8   Title VII, and *Monell* that are typical of Class members' claims.  UnifySCC is an unincorporated

9   association of County employees in high-risk positions with religious exemptions, and thus

10  overlaps significantly with the Class.  *See* FAC ¶ 8.  Davis, Ramirez, and Baluyut similarly are

11  County employees that were in high-risk positions and were granted religious exemptions.  *See*

12  FAC ¶¶ 9–11.  In light of the permissive nature of the typicality requirement and for the reasons

13  discussed in the Court's commonality analysis, the Court concludes that Plaintiffs have satisfied

14  the typicality requirement.  *See Wal-Mart*, 564 U.S. at 338 n.5 ("The commonality and typicality

15  requirements of Rule 23(a) tend to merge." (alteration omitted) (quoting *General Telephone Co. of*

16  *Southwest v. Falcon*, 457 U.S. 147, 157 (1982))).

17         **iv.    Adequacy**

18         Courts generally resolve two questions in determining whether plaintiffs will adequately

19  represent the class: "(1) do the named plaintiffs and their counsel have any conflicts of interest

20  with other class members and (2) will the named plaintiffs and their counsel prosecute the action

21  vigorously on behalf of the class?"  *Ellis*, 657 F.3d at 985. "An absence of material conflicts of

22  interest between the named plaintiffs and their counsel with other class members is central to

23  adequacy and, in turn, to due process for absent members of the class."  *Rodriguez v. W. Publ'g*

24  *Corp.*, 563 F.3d 948, 959 (9th Cir. 2009).

25         Plaintiffs argue that their interests are "entirely aligned" with that of the Class and they

26  have retained legal counsel with considerable experience in major class actions and civil rights

27  litigation.  Mot. at 12.  Baluyut, Davis, and Ramirez have also submitted declarations affirming

28  that they are not aware of any conflicts of interest with the Class and that they will vigorously

1    represent the Class with the assistance of their counsel.  *See* ECF No. 81-26 ("Baluyut Decl.") ¶ 7;

2    ECF No. 81-27 ("Ramirez Decl.") ¶ 7; ECF No. 81-28 ("Davis Decl.") ¶ 7.  Counsel for Plaintiffs

3    have also submitted their firm resumes.  *See* ECF No. 81-24 ("Gondiero Decl. Ex. W") (firm

4    resume of Advocates for Faith & Freedom); ECF No. 81-25 ("Gondiero Decl. Ex. X") (firm

5    resume of Wolf Haldenstein Adler Freemen & Herz LLP).  The County has not argued against

6    adequacy.

7         The record does not reflect any conflicts of interest on the part of Plaintiffs or Plaintiffs'

8    counsel.  The Court is further satisfied that Plaintiffs and their counsel have demonstrated their

9    ability and intention to prosecute this action vigorously on behalf of the Class.  Accordingly, the

10   Court finds the adequacy requirement is satisfied.

11        **B.    Rule 23(b)(3) Requirements**

12        "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must

13   show that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Amchem Prod., Inc. v.*

14   *Windsor*, 521 U.S. 591, 614 (1997).  Plaintiffs' opening brief argued for certification under Rule

15   23(b)(1)(A) and 23(b)(3).  Mot. at 13–24.  However, in their reply, Plaintiffs withdrew their

16   request for certification under Rule 23(b)(1)(A).  A class may be certified under Rule 23(b)(3)

17   only if "the court finds that the questions of law or fact common to class members predominate

18   over any questions affecting only individual members, and that a class action is superior to other

19   available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

20   23(b)(3).

21             **i.    Predominance**

22        "When one or more of the central issues in the action are common to the class and can be

23   said to predominate, the action may be considered proper under Rule 23(b)(3) even though other

24   important matters will have to be tried separately, such as damages or some affirmative defenses

25   peculiar to some individual class members."  *Olean*, 31 F.4th at 668 (internal quotation marks and

26   citation omitted).  The plaintiffs need not show that they are likely to succeed on the common

27   issues in the case.  *See id.* at 667.  Courts typically analyze predominance on a claim-by-claim

28   basis.  *Moreno v. JCT Logistics, Inc.*, No. EDCV172489JGBKKX, 2019 WL 3858999 (C.D. Cal.

United States District Court
Northern District of California

May 29, 2019); *see also Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018).  "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

As discussed in the following sections, the Court finds that common questions predominate with respect to the County's liability for violations under the Free Exercise Clause, the FEHA, the Equal Protection Clause, Title VII, the Establishment Clause, and *Monell*.  However, common questions do not predominate over the variety of individualized inquiries required to determine Class members' damages.  Accordingly, the Court will certify the Class for the resolution of the County's liability but not for damages.

a. Free Exercise Claim

The Free Exercise Clause of the First Amendment states that "Congress shall make no law . . . prohibiting the free exercise [of religion]."  U.S. Const. amend. I.  "[L]aws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." *Fulton v. City of Phila., Penn.*, 141 S. Ct. 1868, 1976 (2021) (citing *Employment Div. v. Smith*, 494 U.S. 872, 878–82 (1990)); *see also Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 531–34 (1993)).  If a rule is both neutral and generally applicable, it is subject to rational basis review in which the government action must be "rationally related to a legitimate governmental purpose." *Stormans, Inc. v. Wiseman*, 794 F.3d 1064, 1084 (9th Cir. 2015); *accord Kane v. De Blasio*, 19 F.4th 152, 164 (2d Cir. 2021).  If a rule is either non-neutral or not generally applicable, then it is subject to strict scrutiny and must be "narrowly tailored" to serve a "compelling" state interest. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022) (citing *Lukumi*, 508 U.S. at 546); *Fulton*, 141 S. Ct. at 1881.

Plaintiffs argue that when the Court ruled on Plaintiffs' motion for a preliminary injunction, it relied on evidence common to the class in analyzing whether Plaintiffs were likely to succeed on the merits of their Free Exercise claim.  Mot. at 16–17.  Similarly, Plaintiffs argue, their claims will rely on evidence common to the class, including evidence of the Policy itself, evidence of exempt employees in high-risk positions continuing to work, and evidence of County

13

United States District Court
Northern District of California

employees describing their high-risk roles.  *Id.* at 17–18.  The County argues that Plaintiffs' Free Exercise claim requires individualized inquiries into each Class members' circumstances, that Plaintiffs reliance on the Court's prior order is contrary to this District's Local Rules, and that the Plaintiffs have failed to brief and thus cannot rely on legal theories about the efficacy of COVID-19 vaccines in their motion for class certification.  Opp. at 17–18.

Whether the prioritization of certain exemptions or the Risk Tier System are non-neutral or generally applicable and whether they survive rational basis review or strict scrutiny are questions capable of resolution with generalized, class-wide proof.  As the Court held above, Plaintiffs have identified three common questions regarding their Free Exercise claim: (1) Whether the County's prioritization of medical exemptions over religious exemptions in high-risk settings violated the Free Exercise Clause; (2) Whether the Risk Tier System violated the Free Exercise Clause because it allowed some unvaccinated employees to continue to work; and (3) Whether the Policy's religious exemption or accommodations were non-neutral or not generally applicable such that they would be subject to strict scrutiny.  Mot. at 9–10.  As discussed above, the answer to the first question can be determined with evidence of the Policy and the County's practices with respect to prioritization of medical or disability exemptions.  The answer to the second question can be determined with evidence that some roles were misclassified as high-risk and does not, as the County argues, require a showing that all 463 employees were classified as high-risk.  To the extent that the County argues that Plaintiffs' examples are insufficient evidence to prove their claim, this is a merits argument that is not dispositive of predominance.  *See Olean*, 31 F.4th at 667.  Finally, the answer to the third question can be determined with evidence of the Policy, the accommodations framework, and the County's practices with respect to the Policy and accommodations.  The individualized inquiries to which the County points such as whether a Class member sought a job transfer, actually received a job transfer or modification, or received transfer assistance but lacked qualifications for relevant positions are all relevant to the question of whether Class members suffered damages as the result of any constitutional violation but not whether the County's Risk Tier System or accommodations framework violated the Free Exercise

Clause.[3]  *See Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 943 (9th Cir. 2019)

("Damages may well vary, and may require individualized calculations.  But 'the rule is clear: the

need for individual damages calculations does not, alone, defeat class certification.'" (quoting

*Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016))).

Accordingly, Plaintiffs have satisfied their burden of showing predominance as to the

question of the County's liability under the Free Exercise Clause.

### b.   FEHA Claim

The FEHA makes it an unlawful employment practice "[f]or an employer, because of the

. . . religious creed . . . of any person, to refuse to hire or employ the person or . . . discharge the

person from employment . . . or to discriminate against the person in compensation or in terms,

conditions, or privileges of employment."  Cal. Gov't Code § 12940(a).  To establish a prima facie

claim of employment discrimination, a plaintiff must demonstrate that "(1) he is a member of a

protected class; (2) he was qualified for his position; (3) he experienced an adverse employment

action; and (4) similarly situated individuals outside his protected class were treated more

favorably, or other circumstances surrounding the adverse employment action give rise to an

inference of discrimination."  *Hittle v. City of Stockton, California*, 76 F.4th 877, 887 (9th Cir.

2023) (quoting *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004)).

The FEHA also makes it an unlawful employment practice for an employer "to

discriminate against a person . . . because of a conflict between the person's religious belief and

observance and any employment requirement, unless the employer . . . demonstrates that it has

also explored any available reasonable alternative means of accommodating the religious belief or

observance . . . but is unable to reasonably accommodate the religious belief or observance

without undue hardship."  Cal. Gov't Code § 12940(*l*).[4]  "[A] successful section 12940(*l*) claim

---

[3] On Defendants' other arguments, the Court finds Plaintiffs' reference to the Court's order on the preliminary injunction illustrative rather than evidentiary.  Moreover, although Plaintiffs did not raise any argument about their legal theory based on the efficacy of COVID-19 vaccines in their opening brief, the Court finds that it need not consider this legal theory, which would be common to the Class, because the other common questions already predominate.

[4] Although Plaintiffs did not cite § 12940(*l*) in the First Amended Complaint, the Court reasonably infers that Plaintiffs' Second Cause of Action includes § 12940(*l*) based on paragraphs 74, 76, and 77.

requires that a plaintiff show (1) the employee sincerely held a religious belief; (2) the employer was aware of that belief; and (3) the belief conflicted with an employment requirement." *Achal v. Gate Gourmet, Inc.*, 114 F.Supp.3d 781, 802 (N.D. Cal. 2015). "Once the employee establishes a prima facie case with sufficient evidence of the three elements, the burden shifts to the employer to establish that 'it initiated good faith efforts to accommodate or no accommodation was possible without producing undue hardship.'" *California Fair Emp. & Hous. Com. v. Gemini Aluminum Corp.*, 122 Cal.App.4th 1004, 1011 (2004) (quoting *Johnson Controls, Inc. v. Fair Emp. & Hous. Com.*, 218 Cal.App.3d 517, 531 (1990)).

Plaintiffs argue that they will establish the elements of their FEHA claim using evidence common across the Class. Mot. at 18. Plaintiffs also argue that they will use common evidence to show that the County did not offer reasonable accommodations to the Class. *Id.* at 19. The County responds that Plaintiffs' theory of an FEHA violation is demonstrably false, whether any employee was disadvantaged by preferential treatment depends on individualized inquiries, and that the FEHA requires Plaintiffs to show that each Class member exhausted their claims. Opp. at 19–20.

The Court finds that whether the County discriminated against employees with religious exemptions in high-risk roles in violation of the FEHA is subject to general, class-wide proof. The primary dispute on Plaintiffs' FEHA discrimination claim under § 12940(a) appears to be over whether the circumstances surrounding the Policy give rise to an inference of discrimination. This issue is subject to proof common to the class because it can be resolved with evidence of the Policy and the County's practices regarding the Policy. Similarly, and as noted above, the question of whether the County offered reasonable accommodations under § 12940(*l*) can be decided on a class-wide basis because the accommodations at issue are specified in the Policy and applied to all Class members in the same way. To the extent that the County suggests that individualized inquiries predominate—including whether the employe sought a job transfer, whether the employee received a job transfer or modification, and the nature of the particular assistance that the County provided to the employee—these questions go to individual damages rather than liability under the FEHA. *See Senne*, 934 F.3d at 943.

United States District Court
Northern District of California

The County's other arguments are similarly unavailing.  Although the County argues that Plaintiffs' theory of discrimination is demonstrably false because the County treated all exempt employees the same in practice, this is a merits argument that is not appropriate at class certification.  *See Olean*, 31 F.4th at 667.  To the extent that the County argues that individualized proof that each Class member satisfied the exhaustion requirement is required, this assertion is incorrect.  *See* Cal. Gov't Code § 12961 (noting that a complaint may be filed and investigated as a group or class complaint); *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1137 (9th Cir. 2012) (holding that one class member's filing of an administrative complaint is sufficient to establish exhaustion for the class under the FEHA).

Accordingly, Plaintiffs have satisfied their burden of showing predominance as to the question of the County's liability under the FEHA.

### c.   Equal Protection Claim

The Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "The Equal Protection Clause . . . prohibits the Government from impermissibly discriminating among persons based on religion."  *Washington v. Trump*, 847 F.3d 1151, 1167 (9th Cir. 2017).  Plaintiffs must show first that an action "results in members of a certain group being treated differently from other persons based on membership in that group."  *McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir. 1999), *as amended on denial of reh'g and reh'g en banc* (Apr. 17, 1999) (quoting *United States v. Lopez-Flores*, 63 F.3d 1468, 1472 (9th Cir. 1995)).  "Second, if it is demonstrated that a cognizable class is treated differently, the court must analyze under the appropriate level of scrutiny whether the distinction made between the groups is justified."  *Id.* (quoting *Lopez-Flores* 63 F.3d at 1472).

Plaintiffs argue that, in a similar way as their Free Exercise claim, they will prove their Equal Protection claim using evidence common to the class.  Mot. at 20.  The County responds that Plaintiffs' Equal Protection claim does not meet the predominance requirement for the same reasons as Plaintiffs' Free Exercise claim.  Opp. at 20.

Whether the prioritization of certain exemptions or the Risk Tier System resulted in Class

1   members being treated differently than other exempt employees based on their religious beliefs

2   and whether the distinction survives the appropriate level of scrutiny are issues that are capable of

3   resolution on class-wide proof.  As with Plaintiffs' Free Exercise claim, Plaintiffs have identified

4   common questions that can be answered using evidence of the Policy, the County's practices with

5   respect to prioritization of medical or disability exemptions, and evidence of roles that were

6   arguably misclassified as high-risk.  *See Prince v. Mass.*, 321 U.S. 158, 170 (1944) (noting that an

7   Equal Protection claim rose and fell with a Free Exercise claim because "the one is but another

8   phrasing of the other").

9        Accordingly, Plaintiffs have satisfied their burden of showing predominance as to the

10   question of the County's liability under the Equal Protection Clause

11                    d.   Establishment Clause Claim

12        The Establishment Clause states that "Congress shall make no law respecting an

13   establishment of religion . . . ."  U.S. Const. amend. I.  The Establishment Clause requires that the

14   state "to be . . . neutral in its relations with groups of religious believers and non-believers."

15   *Everson v. Bd. of Ed. of Ewing Twp.*, 330 U.S. 1, 18 (1947).  In light of the Supreme Court's

16   overruling of the *Lemon* test, and with it much of Establishment Clause case law, "lower courts

17   must now interpret the Establishment Clause by 'reference to historical practices and

18   understandings.'"  *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 888 (9th Cir. 2022)

19   (quoting *Kennedy*, 597 U.S. at 535).

20        Plaintiffs argue that they will use evidence common to the Class to demonstrate that

21   Defendants acted with hostility toward religion.  Mot. at 20.  The County argues that in practice, it

22   treated all exempt employees in the same way and that Plaintiffs fail to cite evidence of hostility

23   toward religion.  Opp. at 20–21.

24        The Court finds that whether the Policy or the County's practices violated the

25   Establishment Clause is an inquiry that can be resolved with facts common to the Class and does

26   not require individualized inquiries.  For example, Plaintiffs point to the fact that the County

27   prioritized medical and disability exempt employees for job placements and the fact that after the

28   Court's injunction the County denied all employees automatic transfers and reassignments.  The

United States District Court
Northern District of California

County may be correct that it treated all exempt employees equally, but this is an argument that is more appropriate at summary judgment, rather than at class certification. *See Olean*, 31 F.4th at 667.

Accordingly, Plaintiffs have satisfied their burden of showing predominance as to the question of the County 's liability under the Establishment Clause.

### e.   Title VII Claim

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).  To establish a prima facie case for a failure to accommodate claim under Title VII, the plaintiff must establish that "(1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement." *Bordeaux v. Lions Gate Ent., Inc.*, No. 222CV04244SVWPLA, 2023 WL 8108655, at *8 (C.D. Cal. Nov. 21, 2023) (quoting *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006)).  The burden then shifts to the defendant to show that "it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Id.* (quoting *Berry*, 447 F.3d at 655).  "The analysis of a religious discrimination claim is the same under FEHA and Title VII." *U.S. Equal Emp. Opportunity Comm'n v. Abercrombie & Fitch Stores, Inc.*, 966 F.Supp.2d 949, 961 (N.D. Cal. 2013).

Plaintiffs argue that, like their FEHA claim, they will use common evidence to show that the County discriminated against the Class for their religious beliefs and that the County failed to offer the Class reasonable accommodations.  Mot. at 22.  The County responds that individualized inquiries into the circumstances of each Class member are required to determine whether each Class member was injured by preferential treatment.  Opp. at 21.

For the same reasons as Plaintiffs' FEHA claim, the Court finds that the common questions predominate.  Whether the County discriminated against employees with religious exemptions can

be addressed by looking to the Policy and the County's practices with respect to the Policy. Similarly, because the accommodations at issue are specified in the Policy and offered to all Class members, whether those accommodations were reasonable can be addressed on a class-wide basis. Again, the County points to individualized inquiries that are relevant to damages, rather than liability, and thus do not preclude a finding of predominance with respect to the County's liability under Title VII. *See Senne*, 934 F.3d at 943.

Accordingly, Plaintiffs have satisfied their burden of showing predominance as to the question of the County's liability under Title VII.

### f.   *Monell* Claim

To establish municipal liability under § 1983, plaintiffs "must show that the challenged conditions were part of a policy, custom or practice officially adopted by defendants." *Upshaw v. Alameda Cnty.*, 377 F.Supp.3d 1027, 1032 (N.D. Cal. 2019). "They must also establish that the policy or custom evinces a deliberate indifference to the constitutional right and is the moving force behind the constitutional violation." *Id.* (cleaned up) (quoting *Rivera v. County of L.A.*, 745 F.3d 384, 389 (9th Cir. 2014)).

Plaintiffs argue that they will use common evidence to show that the alleged unlawful actions were carried out by County officials that qualify as final policymakers under *Monell* and that unlawful actions by County officials constituted municipal custom, policy, or practice. Mot. at 22. The County argues that risk tier determinations were made by the heads of different agencies and departments, that job transfers were assisted by County employees in the Employee Services Agency and the Equal Opportunity Division, and that none of these employees would qualify as a final policymaker under *Monell*. Opp at 22.

In this case, Plaintiffs challenge the County's Risk Tier System and its prioritization of medical and disability exempt employees for job transfers and placements over employees with religious exemptions. Whether these conditions were part of a custom, policy, or practice officially adopted by the County is a question subject to class-wide proof. This question can be answered by looking to the Policy, evidence of communications and guidance from County executives, and evidence of County practices regarding the Policy. Although Defendants suggest

1   that individual risk tier determinations and employee placements were made by employees that

2   would not qualify as final policymakers under *Monell*, this argument is inapposite because

3   Plaintiffs do not challenge individual risk tier determinations or employee placements.  Moreover,

4   even if Defendants were correct that the challenged conditions included individual risk tier

5   determinations and placements and that the relevant decisionmakers were not final policymakers

6   under *Monell*, this would answer the question of the County's liability under *Monell* for the entire

7   Class and thus demonstrates that common questions predominate over individualized inquiries.

8         Accordingly, Plaintiffs have satisfied their burden of showing predominance as to the

9   question of the County's liability under *Monell*.

10             g.  Damages

11        "Rule 23(b)(3)'s predominance requirement takes into account questions of damages."

12  *Just Film*, 847 F.3d at 1120.  The Supreme Court has held that absent an appropriate methodology

13  for measuring damages on a classwide basis, "[q]uestions of individual damage calculations will

14  inevitably overwhelm questions common to the class."  *Comcast Corp. v. Behrend*, 569 U.S. 27,

15  34 (2013).  "Calculations need not be exact."  *Id.* at 35.  In fact, the Ninth Circuit has made clear

16  both before and after *Comcast* that "damage calculations alone cannot defeat certification."  *Leyva*

17  *v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (quoting *Yokoyama v. Midland Nat'l Life*

18  *Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)).  However, "at the class-certification stage (as at

19  trial), any model supporting a plaintiff's damages case must be consistent with its liability case."

20  *Comcast*, 569 U.S. at 35 (internal quotation marks and citation omitted).  "If the plaintiffs cannot

21  prove that damages resulted from the defendant's conduct, then the plaintiffs cannot establish

22  predominance."  *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016).

23        The County argues that the damages model developed by Plaintiffs' expert, Keith L

24  Mendes, does not establish that damages can be measured across the entire class in a way that is

25  consistent with Plaintiffs' theory of liability.  Opp. at 22–23.  The County argues that Mendes's

26  "Scenario 1" damages model (regarding the Risk Tier System) ignores individualized inquiries

27  such as whether a Class member mitigated damages and whether voluntary leave taken was caused

28  by the Mandate or for other reasons.  Opp. at 23–24.  The County also argues that Mendes's

United States District Court
Northern District of California

United States District Court
Northern District of California

"Scenario 2" damages model (regarding prioritization of medical and disability exemptions) is unreliable and thus fails to satisfy Rule 23(b)(3) and should be excluded under Federal Rule of Evidence 702.  The County notes that Mendes did not understand Plaintiffs' theory of discrimination in his deposition.  *Id.* at 24.  Finally, the County argues that Mendes's Scenario 2 model ignores facts including whether a Class member refused to seek a job transfer, was actually provided a job transfer or modification, was provided assistance equal to medical or disability exempt employees, or applied for jobs for which the Class member was not qualified.  *Id.* at 25.  Plaintiffs respond that mitigation is an affirmative defense that does not defeat predominance, that Mendes can amend his report to incorporate any missing factors in his damages model, that Mendes's Scenario 2 model is based on Plaintiffs' theory of discrimination and compares data for religious exempt employees with data for medical and disability exempt employees, and that the County's arguments against Mendes's model go to the merits.  Reply at 11–15.  Plaintiffs also argue that the Court may either bifurcate the liability and damages issues or certify only a liability class.  *Id.* at 13.

The Court finds that Mendes's damages models are consistent with Plaintiffs' theories of liability and thus satisfy *Comcast*.  *Comcast* requires that an expert's damages "model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory."  *Comcast*, 569 U.S. at 35.  Here, Mendes's Scenario 1 damages model accounts for any damages from the Risk Tier System by calculating damages for each individual employee as a result of being put on administrative leave.  *See* ECF No. 81-23 ("Gondiero Decl. Ex. V") ("Mendes Report") ¶¶ 15, 46.  These damages include among other things lost wages, depletion of leave banks, depletion of CalPERS service credits, out of pocket health coverage costs, depletion of paid leave, and differences in income due to job changes.  *See id.* ¶¶ 17–33.  This damages model is consistent with Plaintiffs' theory of liability—if the Risk Tier System is unconstitutional, then Class members were harmed when they were placed on administrative leave as a result of an unconstitutional system.  Similarly, Mendes's Scenario 2 damages model compares wage, leave, leave bank, and other financial data for religiously exempt employees to similar data for medically or disability exempt employees.  *See id.* ¶¶ 34–44.  This damages model is consistent with

Plaintiffs' theory of liability—if the County treated religious exempt employees differently than medical or disability exempt employees in job transfers or placements, then the extent to which they were treated differently would be their damages.

Although the Court finds that Plaintiffs' damages model satisfies *Comcast*, Defendants have identified significant individualized issues on the question of damages. Notably, Mendes's damages calculations present formulas for calculating each individual Class members' damages that require consideration of factors unique to each individual, including the Class member's wages, the amount of paid leave taken, the amount of time on unpaid leave, out of pocket healthcare costs, and the like. *See* Mendes Report ¶¶ 17–44. Whether a particular Class member satisfied the duty to mitigate damages and whether the Class member obtained other employment that would entitle Defendants to an offset are also individualized issues. Plaintiffs have not identified any aspect of damages that might be subject to class-wide proof. Instead, they argue in their briefs that Mendes's damages model can factor in additional information and suggested at oral argument that the Court could certify subclasses. *See* Reply at 13–14; ECF No. 124 at 21:24–25. But the Court will not speculate as to what Mendes's revised damages model might look like or what appropriate subclasses might be. From the evidence and argument submitted, it appears that there would be multiple subclasses consisting of one Class member. Thus, before the Court are individualized determinations that predominate over any common questions with respect to Class damages. *See Little v. Washington Metro. Area Transit Auth.*, 249 F.Supp.3d 394, 425 (D.D.C. 2017) (denying class certification under Rule 23(b)(3) where an expert's damages formula would require evaluating individualized defenses and calculating individualized damages)

The Court acknowledges that individualized questions with respect to a particular Class member's damages do not alone defeat class certification for liability issues. *See Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 539 (N.D. Cal. 2012) (collecting cases supporting the proposition that individualized damages questions need not defeat class certification on the issue of liability). As such, the Court will exercise its discretion to certify the Class only with respect to liability issues and not with respect to damages issues. *See* Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular

United States District Court
Northern District of California

1    issues."); *see also Ellis*, 285 F.R.D. at 544 (collecting cases certifying classes on only liability

2    issues); *Little*, 249 F.Supp.3d at 425 (describing ways in which liability can be efficiently litigated

3    on a class-wide basis without certifying a class for monetary damages).

### ii.    Superiority

5    To satisfy Rule 23(b)(3), Plaintiffs must demonstrate that "a class action is superior to

6    other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

7    23(b)(3).  Rule 23 lists the following factors that courts should consider in making this

8    determination: "(A) the class members' interests in individually controlling the prosecution or

9    defense of separate actions; (B) the extent and nature of any litigation concerning the controversy

10   already begun by or against class members; (C) the desirability or undesirability of concentrating

11   the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a

12   class action."  Fed. R. Civ. P. 23(b)(3).

13   Plaintiffs argue that, because the Class members' claims will rise and fall with common

14   evidence, class treatment would be more efficient than litigating individual actions based on

15   identical proof.  Mot. at 24.  The County has not raised any arguments against Plaintiffs'

16   superiority showing.

17   The Court finds that the Rule 23(b)(3) factors support that a class action is a superior

18   method of adjudicating Plaintiffs' claims with respect to the County's liability, but not for

19   damages.  As the Court found above, common questions can be answered on a class-wide basis in

20   the liability stages of this matter.  Given these common questions and given that Class members

21   can opt out of the class and/or pursue their damages individually, Class members have a

22   diminished interest in individually controlling the common portions of this action.  No party has

23   identified any litigation concerning this controversy that has already begun by or against class

24   members.  The Court finds that concentrating litigation in this forum is appropriate because the

25   relevant events occurred in this forum.  Finally, the Court finds that class-wide disposition of

26   liability issues before proceeding to individual hearings on damages is more manageable, would

27   favor judicial economy, and would prevent inconsistent verdicts when compared to individual

28   litigation on all issues.  *Ellis*, 285 F.R.D. at 540.

United States District Court
Northern District of California

1    Accordingly, the Court finds that the superiority requirement is met.

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.    Plaintiffs UnifySCC, Tom Davis, Maria Ramirez, and Elizabeth Baluyut's Motion for Class Certification (ECF No. 81) is GRANTED IN PART and DENIED IN PART.  The Court CERTIFIES the following class:

> All individuals who: 1) work or worked for the County and/or [] were subject to its vaccine policies and orders, including the Risk Tier System; 2) were forced by the County to choose between taking the vaccine to maintain their jobs and/or their employment-related benefits or being placed on unpaid leave; 3) were [] classified as working in high risk jobs pursuant to the County's Risk Tier System; and 4) received [] a religious exemption from the County (the "Class") between August 5, 2021 and September 27, 2022 (the "Class Period").

This Class is certified with respect to the following common questions regarding Defendants' liability:

> 1.  Whether Defendants violated Plaintiffs' right to free exercise and equal protection of the law by prioritizing medical exemptions over religious exemptions in high-risk settings;
> 2.  Whether Defendants' Risk Tier System violated the Free Exercise Clause and Equal Protection Clause because it relegated Plaintiffs and the Class members to unpaid leave but allowed some unvaccinated or non-boosted employees to continue to work;
> 3.  Whether the County's religious exemption and/or accommodation procedure was either non-neutral or not generally applicable such that it constitutes an individualized assessment under *Fulton*, 141 S. Ct. 1868, and is thereby subject to strict scrutiny;
> 4.  Whether Defendants provided Individual Plaintiffs and the Class members with reasonable accommodation as required under FEHA and Title VII; and
> 5.  Whether Defendants violated the Establishment Clause by demonstrating hostility towards religion.

The Class is NOT certified with respect to questions of damages.

2.    The Court APPOINTS Plaintiffs UnifySCC, Tom Davis, Maria Ramirez, and Elizabeth Baluyut as class representatives.

3.    The Court APPOINTS Advocates for Faith & Freedom and Wolf Haldenstein Adler Freemen & Herz LLP as class counsel.

1    4.    Lead Plaintiffs SHALL file a proposed notice plan by February 14, 2024.

2

3  Dated:  January 29, 2024

4                                                    _____

5                                                    BETH LABSON FREEMAN
                                                     United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28