1  Robert H. Tyler, CA Bar No. 179572
   btyler@faith-freedom.com
2  Bethany Onishenko (*Pro Hac Vice*)
   bonishenko@faith-freedom.com
3  **ADVOCATES FOR FAITH & FREEDOM**
   25026 Las Brisas Road
4  Murrieta, California 92562
   Telephone:    (951) 600-2733
5  Facsimile:     (951) 600-4996

6  Rachele R. Byrd (190634)
   byrd@whafh.com
7  **WOLF HALDENSTEIN ADLER**
   **FREEMAN & HERZ LLP**
8  750 B Street, Suite 1820
   San Diego, California 92101
9  Telephone:    (619) 239-4599
   Facsimile:     (619) 234-4599
10
   *Plaintiffs' Class Counsel*
11

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| **UNIFYSCC**, an unincorporated California association on behalf of employees in Santa Clara County; **TOM DAVIS**, individually, and on behalf of all others similarly situated; **MARIA RAMIREZ**, individually, and on behalf of all others similarly situated; **ELIZABETH BALAYUT**, individually, and on behalf of all others similarly situated;<br><br>                          Plaintiffs,<br><br>vs.<br><br>**SARA H. CODY**, in her official capacity as the Santa Clara County Public Health Officer; **JAMES WILLIAMS**, in his official capacity as the County Counsel of Santa Clara County; **JEFFREY SMITH**, in his official capacity as the County Executive of Santa Clara County; and **SANTA CLARA COUNTY**;<br><br>                          Defendants. | Case No.:  22-cv-01019 BLF<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>DATE:          October 24, 2024<br>TIME:           9:00 a.m.<br>CTRM:         3, 5th Floor<br>JUDGE:        Hon. Beth Labson Freeman |

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. STATEMENT OF FACTS ................................................................................................... 2

    A.    The County's COVID-19 Orders and March 7, 2022, Order ................................ 2

    B.    Unreasonable Accommodations Process For Religiously Exempt Employees ............... 5

    C.    Plaintiffs and Class Members Accommodations ................................................. 5

III. ARGUMENT ...................................................................................................................... 6

    A.    Plaintiffs And Class Members Are Entitled To Summary Judgment, Particularly For The Latter Half Of The Class Period ........................................ 6

    B.    The County's COVID-19 Orders Violated Title VII And FEHA By Failing To Reasonably Accommodate Plaintiffs' And The Class's Religious Beliefs ................ 7

        1.    The County took adverse action against Plaintiffs and the Class ......................... 8

        2.    The County did not engage in good faith efforts to reasonably accommodate and cannot show undue hardship ................................. 10

            (a)    The County failed to offer reasonable accommodations ........................ 10

            (b)    The County cannot prove undue hardship ................................................. 14

    C.    Plaintiffs Will Prevail on Their Constitutional Claims .................................... 17

        1.    *Monell* ................................................................................................... 17

        2.    Free Exercise Clause ................................................................................. 19

            (a)    Neutrality and general applicability ........................................................ 19

            (b)    The County's COVID-19 orders cannot survive any level of scrutiny ... 20

        3.    Establishment Clause ................................................................................. 24

        4.    Equal Protection Clause ............................................................................. 25

IV. CONCLUSION .................................................................................................................. 25

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No.:  22-cv-01019 BLF

-i-

# TABLE OF AUTHORITES

Page(s)

**Cases**

*Adeyeye v. Heartland Sweeteners, LLC,*
 721 F.3d 444 (7th Cir. 2013) ...................................................................................11

*Allen v. Int'l Tel. & Tel. Corp.,*
 164 F.R.D. 489 (D. Ariz. 1995) ...............................................................................13

*Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n,*
 38 F.4th 68 (9th Cir. 2022) ......................................................................................23

*Anderson v. Gen. Dynamics Convair Aerospace Div.,*
 589 F.2d 397 (9th Cir. 1978) .............................................................................10, 12

*Barrington v. United Airlines, Inc.,*
 566 F.Supp.3d 1102 (2021) .....................................................................................13

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,*
 520 U.S. 397 (1997)..................................................................................................18

*Biden v. Missouri,*
 595 U.S. 87 (2022)........................................................................................11, 16, 22

*Carrero v. New York City Housing Authority,*
 890 F.2d 569 (2d Cir. 1989)....................................................................................24

*Cermetek, Inc. v. Butler Avpak, Inc.,*
 573 F.2d 1370 (9th Cir.1978) ..................................................................................13

*Christian Medical and Dental Association v. Bonta,*
 625 F.Supp.3d 1018 (C.D. Cal. 2022) ......................................................................6

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
 508 U.S. 520 (1993)............................................................................................19, 21

*Cloutier v. Costco Wholesale Corp.,*
 390 F.3d 126 (1st Cir. 2004) ...................................................................................14

*Dawson v. Akal Sec. Inc.,*
 660 F. App'x 504 (9th Cir. 2016) ..............................................................................8

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.,*
 575 U.S. 768 (2015)............................................................................................15, 18

*E.E.O.C. v. AutoNation USA Corp.,*
 52 F. App'x 327 (9th Cir. 2002) ........................................................................12, 14

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No.:  22-cv-01019 BLF

-ii-

*E.E.O.C. v. Texas Hydraulics, Inc.*,
   583 F.Supp.2d 904 (E.D. Tenn. 2008) ................................................................................. 7

*Ellins v. City of Sierra Madre*,
   710 F.3d 1049 (9th Cir. 2013) ........................................................................................... 17

*Equal Employment Opportunity Comm'n v. Manufacturers and Traders Tr. Co.*,
   429 F.Supp.3d 89 (D. Md. 2019) ......................................................................................... 9

*Everson v. Bd. of Ed. of Ewing Twp.*,
   330 U.S. 1 (1947) ............................................................................................................... 24

*Fulton v. City of Philadelphia, Pennsylvania*,
   141 S. Ct. 1868 (2021) ....................................................................................................... 19

*Groff v. DeJoy*,
   600 U.S. 447 (2023) ...................................................................................................... 8, 14

*Health Freedom Def. Fund, Inc. v. Carvalho*,
   104 F.4th 715 (9th Cir. 2024) ............................................................................................ 21

*Jackson v. Shell Oil Co.*,
   702 F.2d 197 (9th Cir.1983) .............................................................................................. 24

*Jacobson v. Commonwealth of Massachusetts*,
   197 U.S. 11 (1905) ............................................................................................................. 21

*Lee v. Weisman*,
   505 U.S. 577 (1992) ........................................................................................................... 24

*Mauck v. McKee*,
   No. 18-CV-04482-NC, 2019 WL 11585408 (N.D. Cal. Aug. 2, 2019) ............................ 17

*McGinn v. Hawaii Symphony Orchestra*,
   No. CV 23-00415 JMS-RT, 2024 WL 1348639 (D. Haw. Mar. 29, 2024) ....................... 13

*Mois v. Wynn Las Vegas LLC*,
   715 F. App'x 600 (9th Cir. 2017) ........................................................................................ 8

*Monell v. Department of Social Services of the City of New York*,
   436 U.S. 658 (1978) ............................................................................................................. 2

*Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*,
   166 Cal.App.4th 952 (2008) .............................................................................................. 12

*Peterson v. Hewlett-Packard Co.*,
   358 F.3d 599 (9th Cir. 2004) ..................................................................................... 6, 8, 10

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
   592 U.S. 14 (2020) ....................................................................................................... 18, 20

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No.:  22-cv-01019 BLF

-iii-

*S. Bay United Pentecostal Church v. Newsom,*
    141 S. Ct. 716 (2021) ............................................................................................... 1, 22

*Sambrano v. United Airlines, Inc.,*
    45 F.4th 877 (5th Cir. 2022) ............................................................................................... 8

*Sias v. City Demonstration Agency,*
    588 F.2d 692 (9th Cir. 1978) ............................................................................................. 24

*Steenmeyer v. Boeing Co.,*
    92 F.Supp.3d 1024 (W.D. Wash. 2015) ............................................................................. 9

*Stormans, Inc. v. Wiesman,*
    794 F.3d 1064 (9th Cir. 2015) ........................................................................................... 19

*Tandon v. Newsom,*
    593 U.S. 61 (2021) ............................................................................................................ 18

*Van Orden v. Perry,*
    545 U.S. 677 (2005) .......................................................................................................... 24

*Zimmerman v. PeaceHealth,*
    701 F. Supp. 3d 1099 (W.D. Wash. 2023) ..................................................................... 9, 14

**Statutes**

U.S. Const. art. VI, cl. 2 ............................................................................................................ 23

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No.:  22-cv-01019 BLF

-iv-

# I. INTRODUCTION

Defendant the Santa Clara County ("the County") granted to Plaintiffs and Class members religious exemptions to its vaccination mandate. Rather than honoring these exemptions, the County chose not to fire exempt personnel who refused the vaccine, but instead put them on indefinite unpaid leave, and made clear that the only way they could return to their jobs was to be vaccinated. It did so for one simple reason: to coerce its personnel into violating their religious beliefs—and to do so irrevocably and permanently. In so doing, the County rendered the religious exemptions meaningless. A true religious "exemption" would have relieved exempt personnel from the County's vaccination orders and policies, allowing personnel to continue in their positions (subject to masking and testing requirements).

There is no legitimate justification for the County's actions. Rather, the County's conduct violated Title VII, California's Fair Employment and Housing Act ("FEHA"), the Free Exercise and Establishment Clauses of the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment. The County is not entitled to summary judgment on these claims for three reasons.

First, the County's conduct is particularly unreasonable for the latter half of the Class Period – March 7, 2022, through September 27, 2022. Even after the County Health Officer, on March 7, 2022, amended its order to permit unvaccinated and exempt individuals across Santa Clara County to return to their (even high-risk) jobs with testing and masking requirements, the County did not permit its own unvaccinated, exempt personnel to return to their jobs. County officials have been unable to articulate any justification for treating the County's own personnel in this manner, despite it being their burden to do so. "It has never been enough for the State to insist on deference or demand that individual rights give way to collective interests." *S. Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 718 (2021).

Second, there is no genuine issue of material fact that the County's placement of Plaintiffs and the Class on involuntary and indefinite unpaid leave was not a reasonable accommodation under Title VII and FEHA. Title VII and FEHA grant religious employees the right to maintain their employment without having to violate their religious beliefs. Yet, the County forced Plaintiffs and the Class to choose

between their livelihoods or adherence to their religious beliefs, despite ample alternative means of accommodation and a lack of undue hardship.

Third, the County is not entitled to summary judgment on Plaintiffs' and Class members' constitutional claims. Plaintiffs have established that the County's policies and customs were the "moving force" behind their constitutional injuries sufficient to establish municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Additionally, the County's Risk Tier System ("RTS") and other "accommodations" framework violated the Free Exercise Clause because the policies lacked neutrality and general applicability and failed to withstand any level of scrutiny. The County's conduct also violated the Establishment Clause because the County failed to act in a neutral manner towards religious belief. Finally, because Plaintiffs' have shown that the County's vaccination policies and orders violated the Free Exercise claim, the County is similarly not entitled to summary judgment on Plaintiffs' equal protection claim.

Accordingly, Plaintiffs and Class members respectfully request that this Court deny Defendants' Cross-Motion for Summary Judgment ("County's MSJ", ECF No. 143), and grant Plaintiffs' Partial Motion for Summary Judgment ("MSJ", ECF No. 141).

## II. STATEMENT OF FACTS

### A.     The County's COVID-19 Orders and March 7, 2022, Order

On August 5, 2021, the California State Health Department issued an order requiring all workers who provided services to or worked in health care facilities to be vaccinated by September 30, 2021 (the "State Order"). The State Order allowed for exemptions from the vaccine requirement for individuals with sincerely health religious beliefs or qualifying medical reasons and who were permitted to continue to work if they complied with certain testing and masking requirements. Ex. 4[1] at 52-53 [header pp. 113-114]; Ex. 16 at 3; Ex. 15 at 21:19-23:20. On that same day, the County issued a Memorandum re COVID-19 Vaccination Requirement for County Personnel requiring all County personnel to be vaccinated against COVID-19, but allowed for exemptions for individuals with medical

---

[1] All citations, unless otherwise specified, are to the Declaration of Bethany Onishenko in Support of Plaintiffs' Motion for Partial Summary Judgment, filed on July 11, 2024 (ECF No. 141-4).

contraindications, disability, and sincerely held religious belief, practice, or observance. Ex. 5; Ex. 15 at 23:24-24:11, 27:25-28:11; Ex. 17 at 85-88 [header pp. 200-203].

In the weeks following issuance of the vaccine mandate, Defendants created a Risk Tier System that classified employees as working in low-risk, intermediate-risk, or high-risk positions. Ex. 10. County employees would apply for and receive vaccination exemptions, and then County department heads would determine whether the employee's role was high, intermediate, or low risk. Ex. 3 at 45:8-23; Ex. 6 at 2; Ex. 11 at 142:10-13; Ex. 15 at 48:23-50:19; 99:22-100:22; Ex. 21 at 17:5-17:15; Ex. 27 at 54:21-56:14; Ex. 28 at 1. The determinations were made on a case-by-case basis and did not require consulting with a medical professional. Ex. 15 at 50:14-19; Ex. 14 at 2; Ex. 3 at 28:11-29:23, 51:5-52:2. For example, department heads categorized roofers, HVAC mechanics, and other personnel with limited public interaction or contact with inmates or patients as high-risk. Ex. 43, ¶ 3; Ex. 44, ¶ 3; Ex. 45, ¶ 4; Ex. 47, ¶ 4; Exs. 52-54; Declaration of Tom Davis in Support of Motion for Partial Summary Judgment (ECF No. 141-2) ("Davis Decl."), ¶ 4. Employees categorized as working in high-risk positions could not continue to work if they remained unvaccinated, even with an "exemption." Ex. 6 at 2; Ex. 48; Ex. 10 at 1.

On December 28, 2021, the County Health Officer issued a health order "requiring up-to-date vaccination for workers in certain high-risk settings" in the County "(i.e., both fully vaccinated and boosted against COVID-19 if eligible for a booster)" by January 24, 2022. Ex. 4 at 67-73 [header pp. 128-134]. The higher risk settings included skilled nursing facilities, healthcare delivery facilities, medical first responders, jails and other correctional facilities. *Id.* at 69.

On March 7, 2022, the County Public Health Department modified its health order to permit unvaccinated, exempt individuals within the County to return to work in higher-risk settings subject to masking and testing requirements. Ex. 17, ¶ 52; Ex. 4 at 75-83 [header pp. 136-144]. Despite this modification, the County did not permit its own unvaccinated, exempt personnel to return to work. Ex. 15 at 95:2-96:2; 97:9-99:17; Ex. 17 at 113-118 [header pp. 228-233]. The County's conduct created confusion amongst unvaccinated County personnel and the Board of Supervisors, since the March 7 Order permitted unvaccinated personnel to return to work. Declaration of Bethany Onishenko In Support of Plaintiffs' Opposition to Defendants' Cross-Motion for Summary Judgment ("Onishenko

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No.:  22-cv-01019 BLF

-3-

Decl. ISO MSJ Opp."), Ex. 61 at 1-2; *id.*, Ex. 62; *id.*, Ex. 63 at n. 1; *id.*, Ex. 64 at 1; *id.*, Ex. 80; Declaration of Jeffrey V. Smith in Support of Defendants' Cross Motion For Summary Judgment ("Smith Decl."), ECF No. 144, Ex. 3 (Board of Supervisors requested a report following the March 7 Order regarding "the number of employees remaining on unpaid leave status related to County employee vaccination requirements and how many individuals have returned to work"). Indeed, unvaccinated Santa Clara County firefighters, among many other workers, were permitted to return to work as of March 7, 2022. Plaintiffs' Request for Judicial Notice In Support Of Opposition To Defendants' Motion For Summary Judgment, Ex. 1 at 11. No County official has or can explain why the County did not permit their own unvaccinated, exempt personnel to return to the workplace until September 27, 2022, nearly 6 months after the County's own Health Department permitted their return. Ex. 9; Ex. 3 at 84:8-19, 88:4-17.

Instead, on March 28, 2022, the County announced that it had made "updates" to its vaccination policy, but it is unclear what those updates were, since it still required "all County personnel [to] be fully vaccinated and up to date on boosters for which they are eligible," and which still provided that unvaccinated workers, even if exempt, could not return to work. Ex. 17 at 113-118 [header pp. 228-233]; Declaration of Elizabeth Baluyut in Support of Motion for Partial Summary Judgment (ECF No. 141-1) ("Baluyut Decl.") at ¶ 2. Board Vice President Susan Ellenberg found this updated policy "puzzling" in light of the March 7, 2022, Public Health Order and requested an immediate "explanation of why the County's requirements regarding risk [were] different from those of other local hospitals (private for profit and nonprofit alike)." Onishenko Decl. ISO MSJ Opp., Ex. 80 at 1-2. Finally, on September 27, 2022, the County Health Department issued an updated policy, rescinding the vaccination requirement for all County employees and risk tiers, relying heavily on the high County vaccination rate. Ex. 3 at 84:8-19, 88:4-17; Ex. 9. Notably, the vaccination rate amongst County residents was the same in March of 2022, as it was in September of 2022. *See* Ex. 49 (identifying that as of March 1, 2022, 90.5% of individuals ages 5 and up in the County were vaccinated); Declaration of Dr. Sarah Rudman in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Rudman Decl."), ECF No. 25, ¶ 26 ("as of August 2022 the rate of vaccination of County residents was nearly 90% for the initial series of vaccinations").

**B.      Unreasonable Accommodations Process For Religiously Exempt Employees**

Employees with religious exemptions were referred to work with the County's Employment Services Agency ("ESA"), who created a VaxJobReview Team. Ex. 13 at 18:11-15; Ex. 14; Ex. 21 at 42:16-19; Ex. 23 at 1; Ex. 27 at 25:12-20; Ex. 32 at 3; Ex. 48 at 1-2. This team assisted religiously exempt employees in identifying open County positions. Ex. 14; Ex. 27 at 36:14-38:14; Exs. 30-31; Ex. 32 at 3; Ex. 48 at 1-2. However, the assistance provided was minimal and largely unhelpful, as employees waited months to hear back from the ESA and most were never able to obtain another position within the County. Onishenko Decl. ISO Oppo., Ex. 66 (reflecting that a County employee still had not obtained a County position after nearly three months of communicating with the County); *id.* at Ex. 67 (reflecting that a County employee "applied to more than 16 internal non high risk (clerical) job openings. 10 automatic rejections because I do not meet their requirements. 4 other applications, I was passed over to experienced qualified applicants."); Baluyut Decl., ¶ 7, Davis Decl., ¶¶ 8-9; Ex. 26 (identifying only three unvaccinated, high-risk, religiously exempt employees who obtained new positions within the County). The employee was required to apply for the position themselves and engage in a competitive recruitment process to obtain the position. Exs. 30-32 (outlining vaxjobreview process); Ex. 32 at 3 ("This still does not guarantee [religiously exempt employees] a job, they still have to be in the top 10 and be chose[n]."). Religiously exempt employees did not know the risk tier of the position they were applying for until they applied for the new position. Ex. 28 at 1; Davis Decl., ¶ 8; Baluyut Decl., ¶ 7. Religiously exempt employees were not granted automatic placement/transfer, preferential treatment, or any alternative form of accommodation. Ex. 6 at 3, ¶ 4; Ex. 13 at 27:11-20, 31:18-22; Ex. 27 at 51:22-54:18; Ex. 29 at 1. After the Court issued a preliminary injunction enjoining this practice, the County responded by no longer providing transfers or reassignments to any employees with exemptions—religious or medical. Ex. 19.

**C.      Plaintiffs and Class Members Accommodations**

Class representatives Maria Ramirez and Elizabeth Baluyut are employed by the County as registered nurses. Declaration of Maria Ramirez in Support of Motion for Partial Summary Judgment (ECF No. 141.3) ("Ramirez Decl.") at ¶ 2; Baluyut Decl., ¶ 2. While the County granted both of their religious exemption requests, the County nevertheless placed both women on unpaid leave. Ramirez

1   Decl., ¶ 2; Baluyut Decl., ¶ 2. Plaintiff Ramirez ultimately found another nursing position that granted

2   her a true exemption, allowing her to continue working as a nurse in a hospital setting. Onishenko Decl.

3   ISO MSJ Opp., Ex. 68 at 10; *id.*, Ex. 75 at 2. Plaintiff Baluyut applied for 12 positions within the County

4   over a period of approximately 6 months. Baluyut Decl., ¶ 7. She was unable to obtain a position within

5   the County. *Id.*

6       Class representative Tom Davis and declarants Daniel Kacir and Jorge Alvarez were employed

7   by the County in the Fleet and Facilities Department ("FAF"), where they primarily worked on roofs

8   and outdoors on HVAC units. Davis Decl., ¶ 4; Ex. 43, ¶ 1-3; Ex. 47, ¶ 1. Despite holding valid

9   exemptions, the County labeled these individuals "high-risk" and placed them on unpaid leave because

10  "[t]he work required by their positions could not be limited to lower-risk facilities given the service

11  demand of the 24/7 high-risk facilities." County's MSJ at 7. However, these individuals accessed the

12  high-risk facilities without having to interact with any other individual. Davis Decl., ¶ 4.

### III. ARGUMENT

#### A.   Plaintiffs And Class Members Are Entitled To Summary Judgment, Particularly For The Latter Half Of The Class Period

15      Defendants have failed to demonstrate the existence of a genuine issue of material fact as to the

16  latter half of the Class Period, March 7, 2022, to September 27, 2022. On March 7, 2022, the County

17  Public Health Department amended its order to permit unvaccinated employees working in the County

18  of Santa Clara with exemptions from the vaccination requirements to return to work, even if they

19  worked in higher-risk settings, subject to certain masking and testing requirements. Ex. 4 at 75-83

20  [header pp. 136-144]; Ex. 17, ¶ 52. Despite this modification, the County did not change its policy to

21  permit its unvaccinated, exempt personnel to return to work. Ex. 3 at 78:21-84:1; Ex. 15 at 95:2-96:2;

22  97:9-99:17; Ex. 17 at 113-118 [header pp. 228-233].

23      Under the Free Exercise Clause, it is the County's burden to demonstrate that its policy was

24  narrowly tailored or rational. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004) (Title

25  VII burden shifts to employer to prove that "it initiated good faith efforts to accommodate the

26  employee's religious practices or that it could not reasonably accommodate the employee without undue

27  hardship."); *Christian Medical and Dental Association v. Bonta*, 625 F.Supp.3d 1018 (C.D. Cal. 2022)

28

(Government's burden to prove narrow tailoring under the First Amendment). Additionally, under Title VII, the duty to provide reasonable accommodation is not a one-time effort; it requires continuous and active engagement in accommodating an employee's religious needs as circumstances may evolve. U.S. Equal Emp. Opportunity Comm'n, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, § L.6[2] ("The obligation to provide religious accommodations absent undue hardship is a continuing obligation that allows for changing circumstances."); *see also E.E.O.C. v. Texas Hydraulics, Inc.*, 583 F.Supp.2d 904 (E.D. Tenn. 2008) (same). Thus, the obligation to accommodate remains as long as the employment continues, and the religious observance remains relevant.

The County has not articulated any rationale, including any scientific basis, for why it did not permit its unvaccinated, exempt personnel to return to the workplace with masking and testing requirements until September 27, 2022, nearly 6 months after the County's own Health Department permitted their return. Ex. 9; Ex. 3 at 84:8-19, 88:4-17. The County's own Board of Supervisors were "puzzl[ed]" by this discrepancy. Onishenko Decl. ISO MSJ Opp., Ex. 80 at 1-2. Notably, the vaccination rate amongst County residents was the same in March of 2022, as it was in September of 2022. *See* Ex. 49 (as of March 1, 2022, vaccination rate was 90.5%); Rudman Decl., ECF No. 25, ¶ 26 (as of August 2022 vaccination rate was nearly 90%). The County's only argument is that Plaintiffs' assertion is supposedly based on attorney argument rather than evidence (County's MSJ at 25), but Plaintiffs cited uncontroverted evidence and expert testimony. Ex. 3 at 78:21-84:1, 84:8-19, 88:4-17; Ex. 9; Ex. 15 at 95:2-96:2; 97:9-99:17; Ex. 17 at 113-118 [header pp. 228-233]. Therefore, at a minimum, Plaintiffs are entitled to partial summary judgment as to the latter half of the Class Period.

**B.    The County's COVID-19 Orders Violated Title VII And FEHA By Failing To Reasonably Accommodate Plaintiffs' And The Class's Religious Beliefs**

In violation of Title VII and FEHA, the County failed to accommodate Plaintiffs' and Class members' religious beliefs prohibiting COVID-19 vaccination and instead relegated them to indefinite

---

[2]    Available at: https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L (last visited August 28, 2024).

and involuntary unpaid leave.[3] Courts employ a two-part burden-shifting framework to analyze Title VII and FEHA failure to accommodate claims. First, a plaintiff must show that "(1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement." *Peterson*, 358 F.3d at 606. Once a plaintiff has established a prima facie case, the employer must then "establish that it initiated good faith efforts to accommodate the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Id.* (citation omitted). Undue hardship means "substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 600 U.S. 447, 470 (2023). The County does not dispute that Plaintiffs and Class members hold bona fide religious beliefs that conflicted with the County's policy, nor does the County dispute that it knew of the conflict. Accordingly, all that remains for the Court to determine is whether the County took adverse action against Plaintiffs and the Class, whether the County initiated good faith efforts to accommodate, or whether the County has proven undue hardship. The County has failed to raise a genuine issue of material fact as to these issues.

      *1.*    *The County took adverse action against Plaintiffs and the Class*

      The County's vaccination policies included a Risk Tier System that relegated Plaintiffs and Class members to involuntary and indefinite unpaid administrative leave upon grant of a religious exemption. Ex. 6 at 2, ¶ 1; Ex. 10 at 1; Ex. 11 at 129:17-24; Ex. 15 at 67:6-68:2; Ex. 48. Indefinite and involuntary unpaid leave is an adverse action under Title VII. *Sambrano v. United Airlines, Inc.*, 45 F.4th 877, 879 (5th Cir. 2022) (Ho, J., concurring) ("Being placed on indefinite unpaid leave because your employer doesn't like your religious beliefs is obviously an adverse employment action and an actionable claim under Title VII of the Civil Rights Act of 1964."); *Dawson v. Akal Sec. Inc.*, 660 F. App'x 504, 506 (9th Cir. 2016) (unpublished) (involuntary unpaid leave may be an adverse employment action); *Mois v. Wynn Las Vegas LLC*, 715 F. App'x 600, 601 (9th Cir. 2017) (unpublished) (unpaid

---

[3] The County argues that they are entitled to summary judgment on Plaintiffs' Title VII disparate treatment claim. Plaintiffs do not make a disparate treatment claim under Title VII.

leave was not a reasonable accommodation under ADA where light duty work was an option); *Zimmerman v. PeaceHealth*, 701 F. Supp. 3d 1099 (W.D. Wash. 2023) (indefinite unpaid leave was an adverse employment action and not a reasonable accommodation); *cf. Steenmeyer v. Boeing Co.*, 92 F.Supp.3d 1024, 1031 (W.D. Wash. 2015) (unpaid leave may be a reasonable accommodation when it is requested).

The County argues that Plaintiffs fail to show adverse action because "[t]he County provided exempt employees with masking and testing for low- and intermediate-risk roles, and paid leave, unpaid leave, and job transfers or modifications for exempt employees in high-risk roles." County's MSJ at 20. This assertion is misleading for several reasons. First, the accommodations the County provided to employees in low- and intermediate-risk roles are irrelevant to this issue because they were not Plaintiffs or Class members. Second, the County did not provide "paid" leave to exempt employees in high-risk roles. Rather, they had to use their already-earned vacation and sick time to be "paid." Ex. 6, at ¶¶ 1, 4; Ex. 10 at 2; Ex. 57 ("Leave Type" column); Ex. 51 (spreadsheet identifying all Class members); Ex. 58 at 13. While unpaid leave may be a reasonable accommodation when it is requested or it is for a limited period of time (*Equal Employment Opportunity Comm'n v. Manufacturers and Traders Tr. Co.*, 429 F.Supp.3d 89 (D. Md. 2019)), neither was the case here. Third, the County provided very few job transfers and modifications to religiously exempt employees in high-risk roles, and these few transfers and modifications were provided only *after* the County placed them on unpaid leave. Ex. 26 (three unvaccinated, high-risk, religiously exempt employees obtained new positions); Ex. 28 at 1. Finally, the County admittedly prioritized medically exempt personnel for placement, while religiously exempt personnel had to apply for open County positions through the competitive recruitment process. *See* Ex. Ex. 6; Ex. 15 at 54:20-55:7; Ex. 17, ¶ 41; Ex. 21 at 42:16-19, 59:12-60:20; Ex. 27 at 51:22-54:18, 54:5-18; Ex. 29 at 1.

The County further claims that "205 Class members did not need any form of accommodation because they never went on leave." County's MSJ at 20. However, the County conveniently omits that it threatened these individuals with unpaid leave for an indefinite period of time, and the only way for these employees to reclaim their jobs was to abandon their religious convictions. Accordingly, the County fails to controvert that it took adverse action against Plaintiffs and Class members when it

relegated Plaintiffs and Class members to involuntary and indefinite unpaid administrative leave upon grant of a religious exemption.

2. *The County did not engage in good faith efforts to reasonably accommodate and cannot show undue hardship*

Once plaintiffs establish a prima facie case, the burden shifts to defendant to show that it offered a reasonable accommodation, or, if not, that doing so would have resulted in undue hardship. *Peterson*, 358 F.3d at 606.

(a) The County failed to offer reasonable accommodations

Consistent with Title VII, Plaintiffs and Class members in good faith requested a reasonable accommodation to the vaccine mandate by applying for exemptions. Although the County granted the exemptions, it then placed them on unpaid administrative leave and required them to apply for new jobs. The County also did not offer to accommodate Plaintiffs and Class members with COVID-19 testing or masking even though the County had successfully carried out its operations during the height of the pandemic adopting these same mitigation efforts. Ex. 6 at 2, ¶ 1; Ex. 10 at 2 ("the County cannot safely accommodate [unvaccinated employees working in high-risk roles] in their high-risk positions, duties, and work environments, but can reasonably accommodate them through providing them a temporary leave of absence"); Ex. 48 at 1; Ex. 37 at 29:19-31:18; Ex. 38 at 15; Ex. 58 at 13; Davis Decl., ¶ 6; Baluyut Decl., ¶ 5; Ramirez Decl., ¶ 5; Ex. 11 at 29:22-30:9. Instead, despite peddling an accommodation process ostensibly to feign compliance with Title VII, the County refused to even consider the Plaintiffs' and Class members' religious beliefs and informed them that they were being placed on administrative leave. Ex. 6 at 2, ¶ 1; Ex. 10; Ex. 37 at 29:19-31:18; Ex. 38 at Ex. 1, p. 15; Ex. 48 at 1; Ex. 58 at 13. The County "cannot excuse [its] failure to accommodate by pointing to deficiencies in [the employee's] suggested accommodation." *Anderson v. Gen. Dynamics Convair Aerospace Div.,* 589 F.2d 397, 401 (9th Cir. 1978).

The County's purported accommodation with involuntary and indefinite unpaid leave was patently unreasonable, given that Plaintiffs and Class members should not have been subject to the vaccine orders and policies to begin with because the County granted them religious exemptions. *Cf.* Ex. 37 at 20:18-29:17; Exs. 39-42. The County has not presented any evidence that it considered

possible accommodations other than unpaid leave. It simply rejected the Plaintiffs' and Class members' accommodation requests without a thorough examination of "any and all" alternatives in violation of Title VII and FEHA. *See Adeyeye v. Heartland Sweeteners*, LLC, 721 F.3d 444, 455 (7th Cir. 2013); EEOC guidance ("an employer's proposed accommodation will not be "reasonable" if the accommodation requires the employee to accept a reduction in pay or some other loss of a benefit or privilege of employment (for example, if unpaid leave is the employer's proposed accommodation) and there is a reasonable alternative accommodation that does not require that."). Even Plaintiffs' and Class members' who proposed specific, alternative accommodations were denied. Davis Decl., ¶ 7; Onishenko Decl. ISO MSJ Opp., Ex. 67 at 2; *id.*, Ex. 71 at 1, 4; *id.*, Ex. 72 at 1; *id.*, Ex. 73.

Yet, ample alternative accommodations were available but unexplored by the County, including masking, testing, and remote work, among others. The County's own experts admit that masking and social distancing help limit the spread of COVID-19, and these types of accommodations incur de minimis cost to the County. Ex. 3 at 117:24-118:21; Ex. 37 at 14:6-19; Ex. 38 at Ex. 1, p. 9. Notably, prior to the vaccine mandate and throughout the height of the COVID-19 pandemic, the County permitted all employees to mask and test. Ex. 11 at 29:22-30:9; Davis Decl., ¶ 6; Baluyut Decl., ¶ 5; Ramirez Decl., ¶ 5. Even after implementation of the vaccination mandate, exempt personnel in low- and intermediate-risk settings were permitted to mask and test. Ex. 10.

Notably, Defendants' policy ignores that both state and federal mandates, which were based on the same scientific consensus, expressly allowed for religious accommodations, including masking and testing, even in high-risk settings. Ex. 3 at 61:3-21; Ex. 4 at 52-53 [header p. 113-114]; Ex. 16 at 3. The Supreme Court cited the allowance of religious exemption in upholding a similar vaccination regulation. *See Biden v. Missouri*, 595 U.S. 87, 89 (2022) ("[P]articipating facilities must ensure that their staff— unless exempt for medical or religious reasons—are vaccinated against COVID-19."); *id.* at 91 ("The rule requires providers to offer medical and religious exemptions ...."). The County was aware that its orders concerning exempt employees in high-risk settings were stricter than State guidance and other counties' practices, both of which permitted exempt employees to continue working in high-risk settings if the employees remained in compliance with masking and testing requirements. Ex. 3 at 23:24-24:11, 28:11-29:23, 61:3-21, 122:7-123:21; Ex. 15 at 98:25-99:17. Additionally, after March 7, 2022, the

County's policy towards its own personnel was stricter than the County's policy towards employees across Santa Clara County. Ex. 4 at 75-83 [header pp. 136-144]; Ex. 17, ¶ 52.

The County nevertheless argues that it attempted to accommodate in good faith when "each department identified reassignments and transfers within the department during the interactive process and the County dedicated a team of human resources specialists with the Employee Services Agency (ESA) to work with all exempt employees seeking a job transfer within the County." County's MSJ at 21. However, the accommodations process for religious exempt personnel was not so straightforward. While "Title VII is premised on bilateral cooperation," the County admits that it must "'take [] the initial step' toward accommodations." *Id.* (citing *E.E.O.C. v. AutoNation USA Corp.*, 52 F. App'x 327, 329 (9th Cir. 2002) (internal citations omitted)). The County failed to take this initial step and instead "delay[ed] [and] obstruct[ed] the process." *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal.App.4th 952, 984-85 (2008). *See also Anderson*, 589 F.2d at 401 ("The burden was upon the [employer and union], not Anderson, to undertake initial steps toward accommodation.")

Here, the County placed religiously exempt personnel on administrative leave and then put them through an unreasonable process, namely providing exempt personnel with a link to County job postings for which exempt employees could apply. Ex. 6 at 2, ¶ 1; Ex. 10 at 1; Ex. 11 at 129:17-24; Ex. 15 at 67:6-68:2; Exs. 30-32 (outlining vaxjobreview process); Ex. 48. The County placed the onus on the exempt employee to contact the ESA so that the ESA could assist the religiously exempt employee in identifying open County positions. Ex. 14; Ex. 27 at 36:14-38:14; Ex. 32 at 3; Exs. 30-31; Ex. 48 at 1-2. The employee was required to apply for the position themselves and engage in a competitive recruitment process to obtain the position. Exs. 30-31; Ex. 32 at 3 ("This still does not guarantee [religiously exempt employees] a job, they still have to be in the top 10 and be chose[n]."). Religiously exempt employees did not know the risk tier of the position they were applying for until after they applied for the new position. Ex. 28 at 1 ("Currently there is no list for 'high, low, or intermediate risk' positions, when you apply for a position and you are accepted at that time we will find out if it is high, low or intermediate risk."); Davis Decl., ¶ 8; Baluyut Decl., ¶ 7. Essentially, the County made applicants go through the process of applying for a position even if the employee couldn't work there due to the risk tier rating. Onishenko Decl. ISO MSJ Opp., Ex. 70. Religiously exempt employees were not granted

1    automatic placement/transfer, preferential treatment, or any alternative form of accommodation such as

2    masking or testing. Ex. 29 at 1 ("The County cannot place people into positions based on their religious

3    beliefs or give them preferential treatment based on religion or religious beliefs, even though the County

4    may be able to provide preferential treatment in some circumstances based on disability."); Ex. 6 at 3,

5    ¶ 4; Ex. 13 at 27:11-20, 31:18-22; Ex. 27 at 51:22-54:18. This process was unreasonable, as employees

6    waited months to hear back from the ESA while they remained on leave and unable to provide for their

7    families. Onishenko Decl. ISO MSJ Opp., Ex. 66; *id.* at Ex. 67; Baluyut Decl., ¶ 7, Davis Decl., ¶¶ 8-

8    9; Ex. 26 (identifying only three unvaccinated, high-risk, religiously exempt employees who obtained

9    new positions within the County).

10       For the County to place exempt personnel on administrative leave and then require them to apply

11   for a new job is not a good faith effort to accommodate. *Barrington v. United Airlines, Inc.*, 566

12   F.Supp.3d 1102 (2021) (holding that employers are expected to make a good faith effort to seek

13   accommodations, which could involve some form of interactive process). The County should have

14   engaged in the interactive process *prior* to placing exempt personnel on administrative leave. Its failure

15   to do so constitutes evidence of discriminatory animus. *McGinn v. Hawaii Symphony Orchestra*, No.

16   CV 23-00415 JMS-RT, 2024 WL 1348639, at *14 (D. Haw. Mar. 29, 2024) ("Although a failure to

17   engage in an interactive process is not an independent claim in a Title VII case, it may constitute

18   evidence of discriminatory animus.").

19       The County claims that 309 class members are barred by their failure to cooperate in the

20   County's efforts to provide transfers and reassignments, relying upon the Declaration of Michelle Quon.

21   County's MSJ at 21. First, Plaintiffs object to and move to strike the Quon Declaration, specifically

22   paragraph 5 as lacking in personal knowledge. Ms. Quon betrays her lack of personal knowledge in

23   paragraph 5 by testifying "upon information and belief." "It is not enough that an affiant assert that he

24   or she has personal knowledge of the facts recited; the facts themselves must show that they are matters

25   known to the affiant personally and are not based upon hearsay or upon 'information and belief.'" *Allen*

26   *v. Int'l Tel. & Tel. Corp.*, 164 F.R.D. 489, 492 (D. Ariz. 1995), aff'd, 111 F.3d 137 (9th Cir. 1997)

27   (citing *Cermetek, Inc. v. Butler Avpak*, Inc., 573 F.2d 1370, 1377 (9th Cir.1978) ("Those facts alleged

28   on 'understanding' like those based on 'belief' or on 'information and belief', are not sufficient to create

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No.:  22-cv-01019 BLF

-13-

1  a genuine issue of fact.")). Moreover, even if the Court were to disregard Ms. Quon's lack of personal

2  knowledge, her declaration does not create a material issue of fact because the County had already

3  informed these individuals that they were being placed on unpaid leave and placed the onus upon the

4  employee to "take the initial step" towards accommodation, contrary to law. *AutoNation USA Corp.*,

5  52 F. App'x at 329; Ex. 6 at 2, ¶ 1; Ex. 10 at 1; Ex. 11 at 129:17-24; Ex. 15 at 67:6-68:2; Ex. 48.

6      (b)    <u>The County cannot prove undue hardship</u>

7      The County has failed to offer any evidence that accommodating Plaintiffs and Class members

8  with anything other than unpaid leave would have created an undue hardship for the County, especially

9  as to the second half of the Class Period.

10      In a recent decision, the U.S. Supreme Court clarified what constitutes an undue hardship. *See*

11  *Groff*, 600 U.S. 447. Prior to *Groff*, an employer established an undue hardship by showing that an

12  accommodation would pose "more than a de minimis cost." *Cloutier v. Costco Wholesale Corp.*, 390

13  F.3d 126, 134 (1st Cir. 2004). *Groff* clarified that the standard is more rigorous than that: a successful

14  undue hardship defense requires the employer to show that "the burden of granting an accommodation

15  would result in substantial increased costs in relation to the conduct of its particular business." *Groff*,

16  600 U.S. at 470. This requires courts to take "into account all relevant factors in the case at hand,

17  including the particular accommodations at issue and their practical impact in light of the nature, size

18  and operating cost of an employer." *Id*. at 470-71 (cleaned up). All the out-of-circuit cases the County

19  cites were decided prior to *Goff*. County's MSJ at 23-24.

20      The County argues that because "vaccines are the most effective means of preventing serious

21  illness, death, and transmission of COVID-19—more effective than masking, testing, and social

22  distancing," it has demonstrated undue hardship. County's MSJ at 24. But "more effective" is not the

23  standard. The fact-specific inquiry required by *Goff* is not satisfied "by pointing to the scientific

24  consensus that justified vaccine mandates *with religious exemptions* to prove in every circumstance that

25  any religious accommodation beyond indefinite unpaid leave was an undue hardship." *Zimmerman*, 701

26  F.Supp.3d at 1114 (emphasis in original). "Such an interpretation would render the availability of

27  religious accommodations meaningless, as it makes little practical difference to an employee losing

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No.:  22-cv-01019 BLF

-14-

their income whether their employer denies their accommodation request and fires them or "grants" their accommodation request but places them on indefinite unpaid leave." *Id*.

The problem with the County's undue hardship reasoning is that the County's vaccination policy specifically outlined a process by which Plaintiffs and Class members could apply for a religious exemption, it granted those exemptions, and then it subsequently refused to honor them in practice. Ex. 5 at 3; Ex. 15 27:25-28:11. Accommodating Plaintiffs and Class members could not pose an undue hardship when the policy itself expressly provided for religious exemptions. *Id*. "Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices," but instead gives religious employees "favored treatment, affirmatively obligating employers not 'to fail or refuse to hire or discharge any individual . . . because of such individual's' 'religious observance and practice.'" *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015). Giving credence to the County's hardship argument would in effect allow it to fasten a "for health and safety" button to any discriminatory employment policy.

Moreover, accommodations such as permitting Plaintiffs and Class members to test regularly, and mask were already employed by the County for the entirety of 2020 and 2021 (until implementation of the vaccination mandate). Ex. 6 at 2, ¶ 1; Ex. 11 at 29:22-30:9; Davis Decl., ¶ 6; Baluyut Decl., ¶ 5; Ramirez Decl., ¶ 5. The County's own experts testified that masking and social distancing are effective at limiting the spread of COVID-19, and these types of accommodations incur de minimis cost to the County. Ex. 3 at 117:24-118:21; Ex. 38 at 1 (pdf 5), 9 (pdf 13); Ex. 37 at 14:6-19. The County presents no *evidence* that permitting the relatively few Plaintiffs and Class members to continue working with masking and testing would have "compromise[d] the health and safety of vulnerable residents," as it is its burden to do, but simply falsely argues that this contention is "undisputed." County MSJ at 25. In fact, the County permitted at least three employees to temporarily return to work after their requests for accommodation were denied, mitigating any undue hardship claim. Ex. 45, ¶¶ 5-6; Ex. 46, ¶ 7; Ex. 55, ¶ 4. Furthermore, the County labeled HVAC technicians and roofers as "high-risk" and placed them on unpaid leave because "[t]he work required by their positions could not be limited to lower-risk facilities given the service demand of the 24/7 high-risk facilities." County's MSJ at 7. However, placing these employees on unpaid leave does not serve the "service demand" interest any more than permitting these

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No.: 22-cv-01019 BLF

-15-

individuals to work solely in lower-risk facilities. The only thing it does is coerce them into violating their religious beliefs.

Additionally, considering the County's high vaccination rates and that the Class made up only 2 percent of the County's overall workforce, the County has no justification for excluding Plaintiffs and Class members from the workplace, especially after March 7, 2022, when unvaccinated personnel in high-risk settings constituted only 0.6% of the County's workforce. The County argues that this is "attorney argument" (County's MSJ at 24-25), but Plaintiffs cited to *evidence*. *See* Ex. 59 (reflecting that when the vaccination mandate was implemented, 81.7% of County residents were vaccinated); Ex 49 (identifying that as of March 1, 2022, 90.5% of individuals ages 5 and up in the County were vaccinated, while only 4.1% remained unvaccinated); Ex. 15 at 16:20-21 (the County had 23,000 employees); ECF No. 137, Ex. 1, ¶ 3 (461 Class members); Smith Decl., ECF No. 144, Ex. 3 (identifying 138 employees in high-risk roles who remained unvaccinated as of April 2022). Again, the County has the burden of demonstrating undue hardship, not Plaintiffs.

The County cannot demonstrate that allowing the relatively few religiously exempt individuals to continue working in their jobs would have posed an undue hardship when rules promulgated by the federal government requiring medical facilities to ensure their staff were vaccinated allowed for religious exemptions. *See, e.g., Biden*, 595 U.S. at 89 ("[P]articipating facilities must ensure that their staff—unless exempt for medical or religious reasons—are vaccinated against COVID-19."); *id.* at 91 ("The rule requires providers to offer medical and religious exemptions . . . ."). Moreover, other hospitals and jails in the State exempted workers with religious objections to the vaccine from their vaccination mandates. Ex. 3 at 61:3-21; Ex. 4 at 52-53 [header p. 113-114]; Ex. 16 at 3; Onishenko Decl. ISO MSJ Opp., Ex.76 at 2; *id.*, Ex. 80 at 1-2. Indeed, the guidance relied upon by the County's own expert, Professor Arthur Reingold, that recommended the implementation of vaccine mandates also allowed for religious exemptions, with no strings attached. Ex. 37 at 20:18-29:17; Exs. 39-42.

It is the County's burden to demonstrate undue hardship, and it has failed to do so, especially as to the period after March 7, 2022. Ironically, it is the County's implementation of its vaccination policy that resulted in hardship to the County's operations, as County hospitals and jail facilities

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No.:  22-cv-01019 BLF

-16-

suffered critical staffing shortages due to the vaccination mandate. Onishenko Decl. ISO MSJ Opp., Ex. 76 at 2; *id.*, Ex. 77; *id.*, Ex. 78.

In sum, the County failed to provide meaningful religious exemptions to its vaccine mandate, failed to reasonably accommodate those with religious objection to its vaccination mandate, and cannot prove that doing so would have resulted in undue hardship, especially as to the second half of the Class Period. Accordingly, Plaintiffs and Class members are entitled to summary judgment on their Title VII claims.

## C.   Plaintiffs Will Prevail On Their Constitutional Claims

Plaintiffs are entitled to summary judgment on their *Monell* and Free Exercise claims because Defendants have failed to demonstrate there is a triable issue of material fact; and Defendants are not entitled to summary judgment on Plaintiffs' Establishment Clause claim because there are disputed issues of material fact.

### 1.   *Monell*

"Under *Monell*, municipalities are subject to damages under § 1983 in three situations: when the plaintiff was injured pursuant to an expressly adopted official policy, a long-standing practice or custom, or the decision of a final policymaker." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013) (quotations omitted). Plaintiffs' *Monell* claims are brought under the first prong.[4]

The County argues that Plaintiffs cannot meet the requirements of *Monell* because they cannot establish that "the County had a policy to (1) permit violations of the vaccination mandate by allowing unvaccinated employees to work in high-risk roles or (2) mis- designate jobs with a low risk of infection as high-risk." County's MSJ at 10. This entirely misconstrues Plaintiffs' *Monell* argument. Plaintiffs' argument is that the County's policies themselves – i.e. the vaccination policies, RTS, and accommodations policies – were the "moving force" behind Plaintiffs' constitutional claims. Mot. at

---

[4] *Mauck v. McKee*, No. 18-CV-04482-NC, 2019 WL 11585408, at *8 (N.D. Cal. Aug. 2, 2019) is therefore distinguishable because the plaintiff "hinge[d] his *Monell* claim" under the second or third prongs.

17-18. In other words, the Plaintiffs' constitutional challenges are to the policies themselves, not on any alleged violations by the County of its own orders.[5]

Additionally, the requirements of *Monell* are met with respect to the County's accommodations policies and practices. Disability law is not at issue here, nor are Plaintiffs contending that the County should have "disregard[ed] those laws, or … deem[ed] them unconstitutional." County's MSJ at 10. Therefore, the County's cases on this point are irrelevant. Regardless of what state and federal law required regarding the accommodation of disabled employees, both Title VII and the Free Exercise Clause placed an identical burden on the County to accommodate Class members' religious beliefs, at a minimum on equal footing with those with disability exemptions. *See Abercrombie and Fitch Stores, Inc.*, 575 U.S. at 774 ("Title VII does not demand mere neutrality regarding religious practices – that they be treated no worse than other practices. Rather, it gives them favored treatment . . .. Title VII requires otherwise-neutral policies to give way to the need for accommodation."); *see also Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (holding that the government may not "treat *any* comparable secular activity more favorably than religious exercise.") (citing *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020)) (emphasis in original). As this Court already held, "[e]ven if federal or California disability law requires priority consideration of disabled applicants for open government positions, the County cannot grant that class of individuals priority consideration over those with religious exemptions in violation of the First Amendment." ECF No. 44 at 17. Therefore, there is no genuine dispute of material fact regarding Plaintiffs' *Monell* claim and the Court should grant summary judgment on this claim.

---

[5] For this reason, the County's citation to *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397 (1997) is misplaced. In that case, the plaintiff argued that "a single facially lawful hiring decision" "launch[ed] a series of events that ultimately cause[d] a violation of federal rights," and that therefore the county was liable under a theory of *respondeat superior*. *Id*. at 403-05. Here, in contrast, Plaintiffs' *Monell* claims are premised on "a municipal 'policy' or 'custom' that caused the plaintiff[s'] injury." *Id*. at 403.

2. *Free Exercise Clause*

The County's RTS and other accommodations framework violated the Free Exercise Clause because the policies were not neutral and generally applicable and cannot survive any level of scrutiny.[6] The County has failed to raise a genuine issue of material fact as to these issues.

(a) <u>Neutrality and general applicability</u>

**The Risk Tier System**. The County's RTS lacked neutrality and general applicability because it involved "individualized governmental assessment," pursuant to which state actors were given "unfettered discretion" unrestricted by "particularized, objective criteria." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1082 (9th Cir. 2015); *see also Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct. 1868 (2021). Timing is a crucial component here. Risk tier determinations were made after an employee requested an exemption – allowing department heads to inject their own subjective beliefs and opinions regarding whether religiously exempt personnel's roles were "high-risk." Ex. 28 at 1 ("Currently there is no list for 'high, low, or intermediate risk' positions, when you apply for a position and you are accepted at that time we will find out if it is high, low or intermediate risk."); Davis Decl., ¶ 8; Baluyut Decl., ¶ 7; *see Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993) ("The [Free Exercise] Clause forbids subtle departures from neutrality, and covert suppression of particular religious beliefs. Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality."). This resulted in the County classifying some religiously exempt employees as high-risk even though the employee's job required little to no interaction with the public or what the County considered "vulnerable" populations. Ex. 43, ¶ 3; Ex. 44, ¶ 3; Ex. 45, ¶ 4; Ex. 47, ¶ 4; Exs. 52-54; Davis Decl., ¶ 4.

Additionally, the County alleges that County departments determined risk levels "based on objective factors," without identifying any such factors. See County's MSJ at 12 (citing Smith Decl., ¶ 14; Declaration of Bryan K. Anderson in Support of Defendants' Cross-Motion for Summary Judgment ("Anderson Decl."), at 009, 11-13). Moreover, Chief Administrative Officer Miguel Marquez testified

---

[6] *Plaintiffs do not challenge the neutrality and general applicability of the entire vaccination mandate. County's MSJ at 11.*

that department heads did not consult a medical professional when making risk determinations and often "tasked their subordinates" with this responsibility. Ex. 15 at 50:4-19. Dr. Sarah Rudman similarly testified that department heads did not consult with public health when determining whether roles were high-risk. Ex. 3 at 28:11-29:23, 51:5-52:2. Notably, Plaintiffs are challenging the RTS as a whole, not individual risk classifications, so it is irrelevant whether the Department heads were final policy makers, as County officials implemented the RTS as official County policy. See County's MSJ at 12-13; Ex. 10.

**Accommodations Framework**. The accommodation framework also lacked neutrality and general applicability, as this Court already held at the preliminary injunction phase. See ECF No. 044 at 16-19. The Court found that the accommodations framework likely "operates in practice in way that targets religious practices by placing those with religious exemptions at a disadvantage behind those with secular exemptions (medical and disability)." *Id*. at 16-17 (internal citations and quotations omitted). Discovery has further revealed that the accommodations framework placed personnel with religious exemptions at a disadvantage, as those with religious exemptions were provided less assistance in the job search process by the ESA and were required to compete for open County positions. Personnel with medical exemptions were provided additional assistance by the EOD in the job search process and were given "priority consideration" for open County positions, meaning the County would transfer or directly place the religiously exempt employee into a position. This resulted in only 0.6% (3/461) of the Class obtaining new positions in the County, while 3.84% (2/52) of medically exempt employees were directly placed into new positions. Ex. 26 (identifying two unvaccinated, high-risk, medically exempt employees who were placed into positions and three unvaccinated, high-risk, religiously exempt employees who obtained new positions); Ex. 61 (identifying 52 employees with medical exemptions in high-risk settings); ECF No. 137, Ex. 1, ¶ 3 (461 Class members). For the reasons discussed below, this framework cannot pass First Amendment muster.

(b)  The County's COVID-19 orders cannot survive any level of scrutiny

Plaintiffs recognize that "[s]temming the spread of COVID is unquestionably a compelling interest." *Roman Catholic Diocese of Brooklyn*, 592 U.S. at 18. Rather, Plaintiffs challenge whether the County had any basis, rational or otherwise, for its adoption of the RTS and accommodations

framework, and whether alternatives were available. Because Plaintiffs have established that both the RTS and accommodations framework lacked neutrality and general applicability, the County must satisfy strict scrutiny – which requires that the County's actions must be both justified by a compelling interest and narrowly tailored to advance that interest. *Church of the Lukumi Babalu Aye, Inc.*, 508 U.S. at 553. However, even if the Court finds that the RTS was operationally neutral, it does not survive rational basis scrutiny because the RTS is not rationally related to an important government interest, particularly after March 7, 2024.

**Risk Tier System**. The County has not raised a genuine issue of material fact as to the lack of basis for the RTS. Rather, the County argues that their vaccination policy as whole survives both rational basis and strict scrutiny. County's MSJ at 13-16. But the Plaintiffs are challenging the RTS, not the vaccination requirement. MSJ at 19-20. Under the RTS, the County (and its department heads) labeled the roles of exempt personnel as low-, intermediate-, or high-risk. Ex. 6 at 2; Ex. 11 at 142:10-13; Ex. 15 at 50:4-14; Ex. 21 at 17:5-17:15; Ex. 28 at 1; Ex. 27 at 54:21-56:14. Those in low- and intermediate-risk roles could continue working subject to masking and testing requirements, while the County placed personnel in high-risk roles on administrative leave. Ex. 10. To date, the County has failed to produce any evidence, scientific or otherwise, to support the implementation of its RTS. Its own expert, Professor Reingold, did not opine on the appropriateness of the County's RTS. Ex. 79 at 14:20-16:12. Additionally, all case law cited by the Defendants to support the RTS deal with vaccination requirements, not systems of classification like the RTS. County's MSJ at 13-14. Even still, the Ninth Circuit struck down a COVID-19 vaccination policy on rational basis review. *See Health Freedom Def. Fund, Inc. v. Carvalho*, 104 F.4th 715, 725 (9th Cir. 2024) (holding that *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 27 (1905) does not extend "beyond its public health rationale— government's power to mandate prophylactic measures aimed at preventing the recipient from spreading disease to others—to also govern "forced medical treatment" for the recipient's benefit.").

The question before this Court is whether the County demonstrated that "clearly nothing short" of placing the unvaccinated, exempt personnel who worked in what department heads determined were high-risk jobs on administrative leave pursuant to the RTS "would reduce community spread of COVID-19 . . . to the same extent as . . . the restrictions [it enforced] with respect to other activities,"

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No.:  22-cv-01019 BLF

-21-

such as the low- and intermediate-risk tiers. *S. Bay United Pentecostal Church*, 141 S. Ct. at 716. The County has not and cannot demonstrate that religiously exempt personnel in high-risk settings pose a greater threat of COVID-19 transmission than exempt personnel working in low and intermediate risk settings. Yet, exempt personnel in low and intermediate risk settings were permitted to continue working subject to masking and testing requirements. Ex. 10. The County's own experts already testified on behalf of the County that masking and social distancing help limit the spread of COVID-19, and these types of accommodations incur de minimis cost to the County. Ex. 3 at 117:24-118:21; Ex. 38 at 9; Ex. 37 at 14:6-19.

Entities at the federal, state, and local levels all recognized the importance of the free exercise of religious beliefs in this regard and permitted unvaccinated religiously exempt personnel to continue working – even in high-risk settings – subject to masking and testing requirements. Ex. 3 at 23:24-24:11, 28:11-29:23, 61:3-21, 122:7-123:21; Ex. 15 at 98:25-99:17; *see also Biden*, 595 U.S. at 91. The County argues that this guidance "set a floor, not a ceiling, for COVID-19 vaccination requirements." County's MSJ at 16. However, this ignores the mandatory obligations of the First Amendment to protect religious belief and practice, including in this context.

Notably, the County permitted at least three exempt employees in high-risk roles to remain in their high-risk position unvaccinated. Ex. 45, ¶¶ 5-6; Ex. 46, ¶ 7; Ex. 55, ¶ 4. The County brushes these individuals aside by stating that these examples "benefited employees with religious exemptions." County's MSJ at 12. However, this argument entirely ignores the point. That these three individuals were permitted to return to their high-risk roles in congregate settings shows that employees in high-risk roles could safely work in high-risk settings subject to masking and testing requirements. Id.

Additionally, the County's RTS is particularly unreasonable after March 7, 2022, as the County's RTS at that point was not even arguably narrowly tailored or rationally related to the County's interest in stemming the spread of COVID-19. *See supra*, § III.A.

**Accommodations Framework**. This Court already found that the accommodations framework is subject to strict scrutiny. ECF 044, at 20. The Court noted that "giving priority consideration to employees in high-risk roles for secular exemptions over those with religious exemptions is likely to fail strict scrutiny," as "an employee exempt from the Mandate for medical reasons presents the same

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No.:  22-cv-01019 BLF

-22-

risk of COVID-19 transmission in a high-risk role as does an employee exempt from the Mandate for religious reasons." *Id*. at 20. The County nevertheless argues that it cannot be held liable for its accommodation's framework for three reasons. Each will be addressed in turn.

First, the County argues that County had no discretion to disregard federal and state disability law and thus cannot be held liable under *Monell*. County MSJ at 18. However, as previously mentioned, disability law is not at issue here. The County implemented an accommodations framework that was the "moving force" behind Plaintiffs' Constitutional claim and injuries, and pursuant thereto, the Court may hold the County liable under *Monell*.

Second, the County argues that it cannot be held liable because it "acted in good faith by complying with state and federal [disability] law." County MSJ at 18. The cases cited in support of this contention are irrelevant, as the County did not rely on a presumptively valid state law that was later determined to be unconstitutional. *See, e.g., Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*, 38 F.4th 68 (9th Cir. 2022). Rather, the County had obligations under both the ADA and the First Amendment/Title VII to accommodate and give special consideration to both medical disabilities and religious liberties. Yet, the County chose to selectively enforce disability law, while disregarding expansive protections afforded by the Free Exercise Clause for religious belief and conduct. As this Court correctly found, "under the Supremacy Clause, the edicts of the federal Constitution trump any obligation to comply with federal or state statutory or regulatory requirements. U.S. Const. art. VI, cl. 2. Even if federal or California disability law requires priority consideration of disabled applicants for open government positions, the County cannot grant that class of individuals priority consideration over those with religious exemptions in violation of the First Amendment." ECF No. 44 at 17.

Finally, the County irrelevantly argues that most Class members never applied for lower-risk jobs and thus most Class members cannot establish injury. County's MSJ at 18. However, the Court certified the Class as to liability only, so the County's mitigation defense and the amount of damages are irrelevant at this stage of the litigation. *See* ECF No. 125. Additionally, this ignores the fact that the County put religiously exempt personnel in high-risk settings to an ultimatum: get vaccinated in violation of your sincerely held religious beliefs or lose your source of livelihood. That the County successfully coerced some portion of the Class to take the vaccine is not a defense.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No.:  22-cv-01019 BLF

-23-

In any event, under Title VII, Defendants bear the burden of proving Plaintiffs and Class members failed to mitigate their damages. *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir. 1978). Plaintiffs and Class members were not required to apply for or take jobs that did not offer comparable pay or benefits. *See Jackson v. Shell Oil Co*., 702 F.2d 197, 202 (9th Cir.1983) (where "savings plans of the two companies were different [or] significantly better," jobs were not substantially equivalent); *Carrero v. New York City Housing Authority*, 890 F.2d 569, 580 (2d Cir. 1989) (plaintiff was not required to take a demotion to mitigate her Title VII damages). Defendants have failed to carry their burden.

In sum, the County's RTS and accommodations framework were neither neutral nor generally applicable. Because the County cannot satisfy strict scrutiny's exacting standard or show that it had a rational basis for its policies, the RTS and accommodations framework violated the Free Exercise Clause.

### 3.   Establishment Clause

The County is not entitled to summary judgment on Plaintiffs' Establishment Clause claim. The Establishment Clause requires the County to "be neutral in its relations with groups of religious believers and non-believers." *Everson v. Bd. of Ed. of Ewing Twp*., 330 U.S. 1, 18 (1947). The Establishment Clause specifically prohibits "forms of state intervention in religious affairs" and rejects government hostility towards religion. *Lee v. Weisman*, 505 U.S. 577, 591 (1992); *see also Van Orden v. Perry*, 545 U.S. 677, 699 (2005) (Breyer, J., concurring in the judgment). The Establishment Clause does not compel the County to "purge" any practice that objective observers could reasonably infer as endorsement or "partak[ing] of the religious." *Van Orden*, 545 U. S. at 699.

Here, the County has not remained neutral in its relations with Plaintiffs in violation of the Establishment Clause. Rather, the County has demonstrated unequivocal hostility towards religion. Defendants initially and blatantly discriminated against employees who requested a religious exemption by refusing to transfer or reassign them, while simultaneously allowing medical objectors to continue working in their current roles or be transferred/reassigned. *See MSJ*, § II.B. at 6-7. Defendants further displayed hostility towards religion by forcing religious objectors in high-risk settings into a differing and less favorable accommodation process than the accommodation process offered to medically

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No.:  22-cv-01019 BLF

-24-

exempt, high-risk employees. *Id*. Defendants feared that accommodating Plaintiffs' religious beliefs would constitute an endorsement of religion, but the County has now violated the Establishment Clause by preferencing accommodations for secular objectors over religious objectors, resulting in explicit hostility towards religious practice. Then, to comply with this Court's injunction, Defendants denied all employees automatic transfers and reassignments even though Defendants had the ability to offer these accommodations to Plaintiffs and similarly situated employees. Ex. 19. Even if the class representatives testified that "they have not experienced hostility to their religion while at the County"[7] (County's MSJ at 19), this lay person testimony does not negate the County's legal liability for its failure to act neutrally towards religion. Thus, Plaintiffs have raised a genuine issue of material fact as to the County's liability under the Establishment Clause.

4.    *Equal Protection Clause*

"Plaintiffs' equal protection claim rises or falls with their free exercise claim." County's MSJ at 11. For the aforementioned reasons, the County is not entitled to summary judgment on this claim.

## IV. CONCLUSION

The County's COVID-19 vaccine policies and orders violated Constitutional and statutory protections. Therefore, Class members are entitled to partial summary judgment on their Title VII, FEHA, *Monell,* and Free Exercise Clause claims. Additionally, the County is not entitled to summary judgment on Plaintiffs' Establishment Clause and Equal Protection claims.

Respectfully submitted,

DATED:  September 5, 2024          **ADVOCATES FOR FAITH & FREEDOM**

*/s/ Bethany Onishenko*
Bethany Onishenko, Esq.

---

[7] Plaintiffs object to the Court's consideration of Plaintiffs' deposition testimony, specifically Plaintiffs' responses to the question, "Have you experienced any hostility to your religion while working for the County" (or similar), as it is vague and calls for a legal conclusion. Anderson Decl. at 0742:14-19, 0797:1-9, 0808:18-25.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Robert H. Tyler, Esq.
Bethany Onishenko, Esq.
25026 Las Brisas Road
Murrieta, California 92562
Telephone:     (951) 600-2733

Rachele R. Byrd
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA  92101
Telephone:     (619) 239-4599

*Plaintiffs' Class Counsel*