TONY LOPRESTI, County Counsel (S.B. #289269)
BRYAN K. ANDERSON, Deputy County Counsel (S.B. #170666)
NATHAN A. GREENBLATT, Deputy County Counsel (S.B. #262279)
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street, East Wing, Ninth Floor
San José, California  95110-1770
Telephone: (408) 299-5900
Facsimile:  (408) 292-7240
Bryan.Anderson@cco.sccgov.org
Nathan.Greenblatt@cco.sccgov.org

Attorneys for Defendants
COUNTY OF SANTA CLARA, SARA H. CODY,
JAMES WILLIAMS and JEFFREY SMITH

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(San José Division)

| | |
|---|---|
| UNIFYSCC, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>SARA H. CODY, et al.,<br><br>        Defendants. | No. 22-CV-01019 BLF<br><br>**DEFENDANTS' MOTION FOR CLASS DECERTIFICATION**<br><br>Date:     March 13, 2025<br>Time:    9:00 a.m.<br>Ctrm:   3, 5th Floor<br>Judge:  The Honorable Beth Labson Freeman |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on **March 13, 2025**, at **9:00 a.m.**, or as soon thereafter as the matter may be heard, in **Courtroom 3, 5th Floor** of the above-entitled Court, located at 280 South 1st Street, San José, California 95113, Defendants will, and hereby do, respectfully move this Court under Federal Rule of Civil Procedure 23 for class decertification.

Dated:  December 4, 2024

Respectfully submitted,

TONY LOPRESTI
COUNTY COUNSEL

By:    /s/ *Bryan K. Anderson*
BRYAN K. ANDERSON
Deputy County Counsel

Attorneys for Defendants
COUNTY OF SANTA CLARA, SARA H.
CODY, JAMES WILLIAMS, and JEFFREY
SMITH

1

# **TABLE OF CONTENTS**

Page

2

3    I.     INTRODUCTION ........................................................................................................ 1

4    II.    STATEMENT OF FACTS ......................................................................................... 2

5    III.   LEGAL STANDARD ................................................................................................. 6

6    IV.    ARGUMENT .............................................................................................................. 6

7           A.     THE BASIC PREMISE THAT LED TO CERTIFICATION IS INCORRECT .... 7

8           B.     THE CLASS IS NOT ASCERTAINABLE ......................................................... 7

9           C.     NO COMMON INJURY ..................................................................................... 8

10          D.     CONFLICTING EVIDENCE AND INDIVIDUALIZED INQUIRIES ..............11

11   V.     THE IMPACT OF DECERTIFICATION ON SUMMARY JUDGMENT .....................12

12   VI.    UNIFYSCC LACKS STANDING .................................................................................14

13   VII.   CONCLUSION .............................................................................................................16

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Motion for Decertification                                          22-CV-01019 BLF

# TABLE OF CONTENTS

Page

Cases

*Abdullah v. U.S. Sec. Assocs., Inc.*
731 F.3d 952 (9th Cir. 2013)..................................................................................... 9

*Andre-Rodney v. Hochul*
618 F.Supp.3d 72 (N.D.N.Y. 2022) .......................................................................8, 10

*Arizona Alliance for Retired Americans v. Mayes*
No. 22-16490, 2024 WL 4246721 (9th Cir. Sept. 20, 2024)....................................14

*Donovan v. Biden*
603 F.Supp.3d 975 (E.D. Wash. 2022)..................................................................8, 10

*Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ......14

*Fulton v. City of Philadelphia, Pennsylvania*
593 U.S. 522 (2021)................................................................................................. 9

*Gannon v. Potter*
No. C 05-2299SBA, 2006 WL 3422215 (N.D. Cal. Nov. 28, 2006) ........................ 8

*Garcia v. Spun Steak Co.*
998 F.2d 1480 (9th Cir. 1993)...................................................................................15

*Gen. Tel. Co. of Sw. v. Falcon*
457 U.S. 147 (1982) ................................................................................................ 6

*Green v. Safeway Stores*
No. C 96-03471 CRB, 1998 WL 898366 (N.D. Cal. Dec. 14, 1998) ....................... 8

*Guilfoyle v. Beutner*
No. 221CV05009VAPMRWX, 2021 WL 4594780 (C.D. Cal. Sept. 14, 2021) .....................13

*Havens Realty Corp. v. Coleman*
455 U.S. 363 (1982) ................................................................................................14

*Heredia v. Eddie Bauer LLC*
No. 16-CV-06236-BLF, 2020 WL 127489 (N.D. Cal. Jan. 10, 2020)............................passim

*Hovsepian v. Apple, Inc.*
No. 08-5788 JF (PVT), 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ................... 7

*Hunt v. Washington State Apple Advert. Comm'n*
432 U.S. 333 (1977) ................................................................................................passim

*In re Autozone, Inc. Wage and Hour Employment Practices Litig.*
No. 3:10-md-02159-CRB, 2016 WL 4208200 (N.D. Cal. Aug. 10, 2016) ............................. 7

/ /

*In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*
  289 F.R.D. 526 (N.D. Cal. 2012) ................................................................................. 8

*Jimenez v. Allstate Ins. Co.*
  765 F.3d 1161 (9th Cir. 2014) ..................................................................................... 9

*Kheriaty v. Regents of Univ. of California*
  No. SACV2101367JVSKESX, 2021 WL 4714664 (C.D. Cal. Sept. 29, 2021) ...................... 13

*Lake Mohave Boat Owners Ass'n v. Nat'l Park Serv.*
  78 F.3d 1360 (9th Cir. 1995) ..................................................................................... 15

*Longmire v. City of Oakland*, No. C 10-01465 JSW
  2011 WL 5520958 (N.D. Cal. Nov. 14, 2011) ........................................................... 8, 10

*Morales, et al. v. Kraft Foods Grp., Inc.*
  2017 WL 2598556 (C.D. Cal. June 9, 2017) ................................................................. 6

*Nunes v. Wal-Mart Stores, Inc.*
  164 F.3d 1243 (9th Cir. 1999) ................................................................................... 10

*Ramirez v. Trans Union, LLC*
  No. 12-CV-00632-JSC, 2016 WL 6070490 (N.D. Cal. Oct. 17, 2016) ................................ 6

*Ries v. Ariz. Beverages USA LLC*
  No. 10–01139 RS, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) ...................................... 6

*Roman Cath. Diocese of Brooklyn v. Cuomo*
  592 U.S. 14 (2020) ................................................................................................... 12

*Seaplane Adventures, LLC v. Cnty. of Marin*
  71 F.4th 724 (9th Cir. 2023) ..................................................................................... 12

*Ser Lao v. H&M Hennes & Mauritz, L.P.*
  No. 5:16-CV-00333-EJD, 2019 WL 7312623 (N.D. Cal. Dec. 30, 2019) ............................. 6

*Soares v. Flowers Foods, Inc.*
  320 F.R.D. 464 (N.D. Cal. 2017) ........................................................................... 11, 12

*U.S. Equal Emp. Opportunity Comm'n v. MJC, Inc.*
  400 F. Supp. 3d 1023 (D. Haw. 2019) ......................................................................... 10

*United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*
  919 F.2d 1398 (9th Cir. 1990) ................................................................................... 15

*Wal-Mart Stores, Inc. v. Dukes*
  564 U.S. 338 (2011) ......................................................................................... 6, 9, 10

*Williams v. Alameda Cnty.*
  No. 3:22-CV-01274-LB, 2024 WL 4050393 (N.D. Cal. Sept. 3, 2024) ............................... 15

/ /

/ /

# STATUTES

Federal Rules of Civil Procedure

Rule 23(a) ..................................................................................................5, 6

Rule 23(b) ................................................................................................... 6

Rule 23(b)(3).............................................................................................. 6

Rule 23(c)(1) (C).......................................................................................... 6

# I.    INTRODUCTION

Defendants County of Santa Clara ("County"), Sara Cody, James Williams, and Jeffrey Smith bring this motion to decertify the class, to clarify the impact of such decertification on the pending motions for summary judgment, and to dismiss UnifySCC from this matter, as discussed at the October 25, 2024 hearing on the cross-motions for summary judgment.  ECF 173 at 4:2-21, 10:21-11:6, 14:19-15:8, 16:11-17:22, 20:10-17, 23:16-24:8, 55:10-56:13, 71:14-72:22, 78:2-19.

This case currently involves a certified class of 463 County employees who received religious exemptions to the County's August 5, 2021 vaccination policy, and who worked in high-risk jobs.  Plaintiffs, through their class counsel, convinced the Court to certify this class based on the premise that the County put all class members on involuntary unpaid administrative leave.  ECF 81 [Class Cert. Mot.] at 4 ("[T]he County 'accommodated' [class members] by relegating them to unpaid leave."); *see also* ECF 141 [Pls.' MSJ] at 13 ("Here, involuntary unpaid administrative leave was the only accommodation offered to Plaintiffs and Class members.  The County did not provide any alternative form of accommodation.").  Based on that premise, the Court found that Plaintiffs had sufficiently identified a classwide injury, because the County's vaccination policy "applied to every member of the same class in the same way."  ECF 125 at 8-9 ("It is sufficient that the Risk Tier System affected Class members in the same way—by putting them on leave because their roles were classified as high-risk.").  However, Plaintiffs were unable to defend their incorrect assertions that "involuntary unpaid administrative leave was the only accommodation offered to" class members in the summary judgment cross-motions record or at the hearing on those motions.  ECF 141 at 13; ECF 173 at 9:12-22, 10:21-11:13 [MSJ hearing transcript].  As a result, the Court expressed concern that the fragmentation of the class illuminated by the summary judgment record impacted the Court's ability to decide the cross-motions and invited a motion for class decertification.  *Id.* at 4:2-21, 14:19-15:8, 17:4-14, 20:10-17, 23:16-24:8, 55:14-18, 56:3-7.  This motion followed.

The uncontroverted evidence shows that the majority of class members *never went on leave* due to the vaccination policy.  Those class members therefore suffered no injury.  Moreover, of the minority of class members who did go on leave, their experiences with accommodations varied

widely—many received paid leave, job modifications, and/or special assignments, and others were offered job transfers but declined to accept them.  On this record of a highly fragmented class with many lacking injury and standing, decertification is not a close call, and the Court should decertify the class.  *See Heredia v. Eddie Bauer LLC*, No. 16-CV-06236-BLF, 2020 WL 127489, at *6 (N.D. Cal. Jan. 10, 2020) (stating that "this case does not present a close call [for decertification] where the majority of the class members are not harmed").

However, the fragmentation of the class does not undermine the County's motion for summary judgment.  The County's vaccination policy was neutral, generally applicable, and easily satisfies rational basis review, based on the compelling state interest of stemming the spread of what was, at the time, a deadly new disease.  Moreover, Plaintiffs' Title VII and FEHA claims fail because no record evidence rebuts the fact that forcing vulnerable County residents to suffer from serious illness and death, if the vaccination policy had not been in place, would have imposed an undue burden on the County.  Plaintiffs further did not dispute that the individual Defendants should be dismissed from this case.

Finally, whether UnifySCC has standing is also not a close call.  UnifySCC directly admits that it has not suffered any injury—a fundamental predicate for standing.  Moreover, UnifySCC has no standing even under the questionable "representational" standing test of *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977), because the test requires the association to seek prospective relief; but here, prospective relief is not at issue because the challenged policy ended two years ago.

The Court should therefore decertify the class, dismiss the individual Defendants and UnifySCC from this case, and grant the County's motion for summary judgment.

## II.    STATEMENT OF FACTS

Plaintiffs UnifySCC, Tom Davis, and Maria Ramirez filed this lawsuit on February 18, 2022, alleging that the County's August 5, 2021 vaccination policy violated their First Amendment and other rights by not adequately accommodating their religious objections to getting vaccinated.  *See* ECF 44 at 6.

/ /

1     Plaintiffs filed an amended complaint on August 23, 2022.  The amended complaint added

2  Plaintiff Elizabeth Baluyut, added a claim under Title VII, and added class allegations to support an

3  intended motion for certification as a class action.  *See* ECF 55 at 1, 9-10, 14.

4     Plaintiffs moved for class certification on July 14, 2023.  The Court granted in part Plaintiffs'

5  motion on January 29, 2024.  *See* ECF 125 at 1, 25.  The Court certified the following class, which

6  Plaintiffs had proposed and defined:

7         All individuals who: 1) work or worked for the County and/or [] were subject to its

8         vaccine policies and orders, including the Risk Tier System; 2) were forced by the

9         County to choose between taking the vaccine to maintain their jobs and/or their

10        employment-related benefits or being placed on unpaid leave; 3) were [] classified as

11        working in high risk jobs pursuant to the County's Risk Tier System; and 4) received []

12        a religious exemption from the County (the "Class") between August 5, 2021 and

13        September 27, 2022 (the "Class Period").

14  *Id.* at 25.  The Court certified the class with respect to five common questions regarding liability.  *Id.*

15  The Court did not certify the class with respect to questions of damages.

16     Plaintiffs moved for partial summary judgment on their Title VII, FEHA, and Free Exercise

17  claims on July 11, 2024.  *See* ECF 141.  Defendants moved for summary judgment on all claims on

18  August 8, 2024.  *See* ECF 143.  The summary judgment process made clear that the certified class

19  cannot be maintained, because class members did not experience a uniform injury.  In particular, the

20  following facts were undisputed:

21        (i)     238 class members—more than half the class—never needed any accommodations,

22                because they never went on leave due to the County's vaccination policy. Anderson

23                Decl., Ex. 31 [Volk Decl.] ¶¶ 11-15 (unpaid leave data showing only 225 class

24                members could potentially have damages because they went on leave, while 238 class

25                members could not potentially have damages because they did not go on leave due to

26                policy).

27        (ii)    The County provided exempt employees who needed accommodations with various

28                accommodations, including masking and testing for low- and intermediate-risk roles,

and paid leave, unpaid leave, and job transfers or modifications for exempt employees in high-risk roles.  *Id.* Ex. 1 [Marquez Decl.], ¶ 37.

(iii)    Also, of the 463 class members, 309 never applied for any alternative lower-risk positions within the County, and many refused to accept specific lower-risk positions the County offered to them.  *Id.* Ex. 32 [Quon Decl.] ¶ 5; Ex. 6 [Fisk Decl.] ¶¶ 7-9; Ex. 7 [Grumbos Decl.] ¶¶ 7, 12; Ex. 4 [Menzies Decl.] ¶ 17.

(iv)    Individual experiences varied widely in the accommodations process.  *See, e.g., id.* Exs. 2-8, 14, 24-26, 30, 25, 31-36.

Consider the following examples of class members' diverse experiences:

- **D.A.**, a Sheriff's Deputy, was granted a religious exemption on October 20, 2021. Anderson Decl. Ex. 36 .  In the letter granting her exemption, the Sheriff informed her that she could not continue to work in her high-risk role, working inside the County's Main Jail and would need to go on leave as soon as November 1, 2021. *Ibid*.  She then vaccinated on October 27, 2021, never went on leave, and therefore needed no accommodation.  *Id.* Exs. 34, 35.  As noted, over half the class falls into this category.  *Id.* Ex. 31 [Volk Decl.], ¶¶ 11-15.

- **Declarant James Luna**, a Sheriff's Deputy, was out on worker's compensation leave during almost the entire class period for reasons unrelated to the County's vaccination policy.  *Id.* Ex. 7 [Grumbos Decl.], ¶ 9.  He returned to work for a total of four days while unvaccinated due to an administrative error, and then voluntarily retired.  *Id.* ¶¶ 8-9.  Luna therefore needed no accommodations due to his religious exemption.

- **Melanie Nguyen** worked as a Pretrial Services Officer III, which required her to work in high-risk facilities.  *Id.* Ex. 6 [Fisk Decl.], ¶¶ 5-6.  After being granted a religious exemption, she was offered an intermediate-risk job by her department as a Pretrial Services Officer II, without needing to apply.  The position would have allowed her to work unvaccinated, but she declined the offer.  *Id.,* ¶ 8.  The County also identified several other positions for which Nguyen appeared qualified, but she did not apply for any of them.  *Id.,* ¶ 9.  Nguyen therefore rejected all the offered

accommodations.

- **Plaintiff Maria Ramirez** is a clinical nurse on an acute care medical unit, who cares for significantly ill patients who are extremely vulnerable to other infections. Upon being invited to apply for lower-risk positions, she stated that "[a]pplying for open vacancies [within the County] is not an adequate accommodation." Anderson Decl. Ex. 4 [Menzies Decl.], ¶ 17 0273-274. Ramirez then never applied for any alternative lower-risk positions within her department or the County, despite the County's efforts to assist her in doing so. *Id.* ¶¶ 15-21. Ramirez thus rejected all the offered accommodations.

- **Adam Valle**, a Sheriff's Deputy, was provided with a list of vacant and available positions in the Sheriff's Office. *Id.* Ex. 7 [Grumbos Decl.], ¶ 12. He declined to pursue any of them. *Id.* Valle went on paid administrative leave on February 2, 2022. *Id.* ¶ 13. Valle was then given a three-week, special, paid assignment from February 22 to March 11, 2022, that did not require him to enter correctional facilities. *Id.* ¶ 14. Valle vaccinated and returned to work on May 31, 2022. *Id.* ¶ 15. Valle was paid during the entirety of the approximately three months he was on leave, as he was permitted to use his accrued sick leave and Safety CLC 4850 leave during that time. *Id.* Ex. 34 [Leave Banks Used spreadsheet]. Valle thus accepted the accommodations offered to him, including paid leave and a special assignment.

- **M.L.**, a social worker, was permitted to transition to low-risk office work, which allowed her to continue working. *Id.* Ex. 33 [Doyle Decl. Ex. 9] at County_Unify_032774; Ex. 35. She then vaccinated. *Ibid.*. She thus accepted the reasonable accommodations offered to her. The County provided such job modifications to other class members. *Id.* Ex. 34 [placement spreadsheet].

As a result of such diverse experiences, the majority of class members suffered no injury, and the class members who can claim injury were not all injured in the same way. Plaintiffs therefore do not meet the requirements of Rule 23(a), including the requirement that "the class members have suffered the same injury" "of such a nature that it is capable of classwide resolution—which means

1  that determination of its truth or falsity will resolve an issue that is central to the validity of each one

2  of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).

3  ### III.    LEGAL STANDARD

4  "Even after a certification order is entered, the [Court] remains free to modify it in the light

5  of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160

6  (1982); see also Fed. R. Civ. P. 23(c)(1) (C) ("An order that grants or denies class certification may

7  be altered or amended before final judgment."). "A district court may exercise its sound discretion

8  to decertify a class." *Ser Lao v. H&M Hennes & Mauritz, L.P.*, No. 5:16-CV-00333-EJD, 2019 WL

9  7312623, at *2 (N.D. Cal. Dec. 30, 2019). "The standard used by the courts in reviewing a motion

10  to decertify is the same as the standard when it considered Plaintiffs' certification motions." *Ries v.*

11  *Ariz. Beverages USA LLC*, No. 10–01139 RS, 2013 WL 1287416, at *3 (N.D. Cal. Mar. 28, 2013).

12  Certification orders, however, are not altered "'except for good cause,' such as 'discovery of new

13  facts or changes in the parties or in the substantive or procedural law.'" *Morales, et al. v. Kraft*

14  *Foods Grp., Inc.*, 2017 WL 2598556, at *20 (C.D. Cal. June 9, 2017) (quoting *Ramirez v. Trans*

15  *Union, LLC*, No. 12-CV-00632-JSC, 2016 WL 6070490, at *2 (N.D. Cal. Oct. 17, 2016)). Good

16  cause includes development of the factual record bearing on class certification. *See Heredia*, 2020

17  WL 127489, at *4–5 (decertifying class because a majority of class members were not injured).

18  Rule 23(a) requires that (1) the members of the class must be so numerous that joinder is

19  impracticable, (2) there must be questions of law or fact common to the class, (3) the

20  representative's claims and defenses must be typical of the class members' claims and defenses, and

21  (4) the representative must fairly and adequately protect the interests of the class. The class must

22  also meet one of the requirements of Rule 23(b). Here, Plaintiffs seek to maintain the Class subject

23  to Rule 23(b)(3)'s requirements that "the questions of law or fact common to class members

24  predominate over any questions affecting only individual members, and that a class action is

25  superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

26  ### IV.    ARGUMENT

27  The Court should decertify the class for four reasons: (1) the basic premise that led to

28  certification—that all class members were put on unpaid leave—is incorrect; (2) the class is not

1   ascertainable because a majority of the class members were not injured; (3) there is no common

2   injury; and (4) conflicting evidence and individualized inquiries favor decertification.

3   **A.    THE BASIC PREMISE THAT LED TO CERTIFICATION IS INCORRECT**

4        The Court certified the class based on the premise (advanced by Plaintiffs) that "Plaintiffs'

5   claims against the Risk Tier System and the prioritization of medical and disability exemptions are

6   against the county's Policy—which applied to every member of the class in the same way . . . the

7   Risk Tier System affected Class members in the same way—*by putting them on leave because their*

8   *roles were classified as high-risk*."  ECF 125 at 8 (emphasis added).

9        The record now shows that that premise is incorrect.  Namely, *238 class members (the*

10  *majority) never went on leave due to the County's vaccination policy*, while other class members

11  (the minority) declined to vaccinate and had highly individualized experiences with respect to

12  accommodations, including paid leave, unpaid leave, job modifications that allowed them to

13  continue working, and unique circumstances such as extended worker's compensation leave or

14  special assignments.  *See supra*, Section II.

15       This record supports decertification.  The fact of individualized and varied experiences, and

16  the absence of a uniform policy and practice that placed all class members on leave, means that

17  Plaintiffs have failed to demonstrate that common questions of law or fact predominate over

18  questions affecting only individual members:  "It is doubtful that the Court would have certified the

19  class [when it did] had it understood that" the key premise underlying certification was false,

20  because "[i]t is no longer accurate to say that this case involves 'a uniform policy consistently

21  applied' throughout the class period" in the manner claimed by Plaintiffs.  *In re Autozone, Inc. Wage*

22  *and Hour Employment Practices Litig.*, No. 3:10-md-02159-CRB, 2016 WL 4208200, at *10 (N.D.

23  Cal. Aug. 10, 2016) (decertifying a class because there was no common policy in place during the

24  class period); *Heredia*, 2020 WL 127489, at *4.

25  **B.    THE CLASS IS NOT ASCERTAINABLE**

26       The Court should decertify the class because the class is not ascertainable.  A class is not

27  ascertainable if it includes members who have "no injury and no standing to sue."  *Heredia*, 2020

28  WL 127489, at *5; *Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 WL 5069144, at *6 (N.D.

7

1    Cal. Dec. 17, 2009) (finding a class not ascertainable because it included members who had "no

2    injury and no standing to sue"); *In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*,

3    289 F.R.D. 526, 545 (N.D. Cal. 2012) (finding a class definition that included employees who were

4    not injured and had "no standing to sue" overbroad and thus, not ascertainable).

5           Here, over half the class lacks standing.  238 class members never went on leave (primarily

6    because they vaccinated), and therefore cannot allege any injury due to the County's policy.

7    Anderson Decl. Ex. 31 [Volk Decl.] ¶¶ 11-15; *see, e.g.*, *Donovan v. Biden*, 603 F.Supp.3d 975, 982

8    (E.D. Wash. 2022) (finding that "[p]laintiffs who have been vaccinated or provided accommodations

9    cannot allege any actual or imminent harm"), *aff'd in part*, 70 F.4th 1167 (9th Cir. 2023); *Andre-*

10   *Rodney v. Hochul*, 618 F.Supp.3d 72, 76 (N.D.N.Y. 2022) (finding plaintiffs who vaccinated and

11   returned to work lacked standing).  In addition, 309 class members never sought job transfers and

12   therefore cannot allege any injury due to any alleged "preferential consideration" in job transfers

13   given to other employees.  Anderson Decl. Ex. 32 [Quon Decl.] ¶ 5.  The precise level of job transfer

14   assistance simply did not matter for employees who never sought a job transfer.  Furthermore,

15   employees who received accommodations, such as paid leave, cannot allege injury because paid

16   leave is not an adverse employment action.  *See Longmire v. City of Oakland*, No. C 10-01465 JSW,

17   2011 WL 5520958, at *5 (N.D. Cal. Nov. 14, 2011) ("[P]aid administrative leave . . . [is] not

18   considered [an] adverse employment action[].")*, aff'd*, 584 F. App'x 623 (9th Cir. 2014); *Gannon v.*

19   *Potter*, No. C 05-2299SBA, 2006 WL 3422215, at *5 (N.D. Cal. Nov. 28, 2006) (same), *aff'd,* 298

20   F. App'x 623 (9th Cir. 2008); *Green v. Safeway Stores*, No. C 96-03471 CRB, 1998 WL 898366, at

21   *3 (N.D. Cal. Dec. 14, 1998) ("Plaintiff has not cited any case which holds that *paid* leave

22   constitutes an adverse employment action.  In fact, the case law holds to the contrary.").

23          Accordingly, the class is not ascertainable.  *See Heredia v. Eddie Bauer LLC*, No. 16-CV-

24   06236-BLF, 2020 WL 127489, at *4–5 (N.D. Cal. Jan. 10, 2020) (finding class overbroad and not

25   ascertainable, where majority of class members not injured by challenged policy).

26   **C.    NO COMMON INJURY**

27          Decertification is also warranted because claims of class members cannot be resolved "in one

28   stroke," and, again, the class includes employees who did not suffer any harm or injury.

8

"[C]ommonality requires that the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (citations and internal quotation marks omitted).  In other words, "the key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

In its certification order, the Court found that five common questions existed:

1.    Whether Defendants violated Plaintiffs' right to free exercise and equal protection of the law by prioritizing medical exemptions over religious exemptions in high-risk settings;

2.    Whether Defendants' Risk Tier System violated the Free Exercise Clause and Equal Protection Clause because it relegated Plaintiffs and the Class members to unpaid leave but allowed some unvaccinated or non-boosted employees to continue to work;

3.    Whether the County's religious exemption and/or accommodation procedure was either non-neutral or not generally applicable such that it constitutes an individualized assessment under *Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. 522 (2021), and is thereby subject to strict scrutiny;

4.    Whether Defendants provided Individual Plaintiffs and the Class members with reasonable accommodation as required under FEHA and Title VII; and

5.    Whether Defendants violated the Establishment Clause by demonstrating hostility towards religion.

ECF 125 at 25.

Under the current record, however, individualized inquiries are required to answer the first certified question because, as discussed, few (if any) Plaintiffs can even allege injury based on "preferential consideration" in job transfers given to other employees.  Plaintiffs who never went on

1 leave and needed no job transfer, Plaintiffs who never sought a job transfer or declined an offered

2 job transfer, Plaintiffs who received paid leave, and Plaintiffs with special circumstances such as

3 extended worker's compensation leave, all cannot allege any injury.  Thus, the question of whether

4 "preferential consideration" in job transfers provided to some employees, as required by state and

5 federal disability laws, injured each class member cannot be resolved in one stroke.

6        Individualized inquiries are required to answer the second certified question for similar

7 reasons.  Plaintiffs who never went on unpaid leave were obviously not injured by being "relegated .

8 . . to unpaid leave."  *See Donovan*, 603 F.Supp.3d at 982; *Andre-Rodney*, 618 F.Supp.3d at 76.  Nor

9 were other employees who received accommodations such as paid leave and job modifications so

10 relegated.  *See Longmire*, 2011 WL 5520958, at *5.

11        The third certified question regarding strict scrutiny is a preliminary legal determination that

12 would not resolve a single claim of a single class member, much less "drive the resolution of the

13 litigation" by resolving claims on a classwide basis.  *Wal-Mart*, 564 U.S. at 350.  And again, the

14 majority of class members have no standing to even seek this preliminary determination.

15        Individualized inquiries are also required to answer the fourth certified question because, as

16 discussed, class members had diverse experiences with the County's accommodations.  Most class

17 members (238) needed no accommodations at all.  Anderson Decl., Ex. 31 [Volk Decl.] ¶¶ 11-15.

18 Others received accommodations such as paid leave, job modifications, or special assignments.  *Id.*

19 Ex. 1 [Marquez Decl.] ¶ 37.  Others were offered job transfers by their departments, without needing

20 to apply, but they declined.  *Id.* Ex. 6 [Fisk Decl.] ¶¶ 5-9; Ex. 7 [Grumbos Decl.] ¶ 12.  Others were

21 offered assistance in applying to lower-risk positions, but they also declined to apply.  *Id.* Ex. 4

22 [Menzies Decl.] ¶¶ 15-21.  Others (111) resigned, retired, or left County employment for other

23 reasons.  *Id.* Ex._35.  Assessing whether the accommodations provided to these employees were

24 reasonable involves quintessentially fact-specific, individualized inquiries that cannot be resolved in

25 one stroke.  *See Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999) (finding that

26 "[d]etermining whether a proposed accommodation (medical leave in this case) is reasonable,

27 including whether it imposes an undue hardship on the employer, requires a fact-specific,

28 individualized inquiry"); *U.S. Equal Emp. Opportunity Comm'n v. MJC, Inc.*, 400 F. Supp. 3d 1023,

1   1036 (D. Haw. 2019) (same).

2       As became clear during the summary judgment process, Plaintiffs have not articulated a

3   viable claim under the Establishment Clause, much less explained how they can maintain this case as

4   a class action based on the fifth certified question.  *See*, *e.g.*, ECF 173 [MSJ transcript] at 32:2-3,

5   37:22-24.

6       Accordingly, "this case does not present a close call [regarding common injury] where the

7   majority of the class members are not harmed."  *Heredia*, 2020 WL 127489, at *6.

8   **D.    CONFLICTING EVIDENCE AND INDIVIDUALIZED INQUIRIES**

9       Finally, the fact that an individualized effort was undertaken to accommodate each class

10  member, and the possible need to resolve conflicting evidence regarding each of those individualized

11  efforts, warrant decertification.  Class actions are not appropriate where the resolution of the case

12  would require numerous mini trials.  *See, e.g., Soares v. Flowers Foods, Inc.*, 320 F.R.D. 464, 484

13  (N.D. Cal. 2017) ("Put simply, [i]f each class member has to litigate numerous and substantial

14  separate issues to establish his or her right to recover individually, a class action is not 'superior.'").

15      Here, several issues regarding individualized accommodation efforts may involve conflicting

16  and disputed evidence.  For instance, whether the County sufficiently engaged in the interactive

17  process in its communications with exempt employees may involve a factual dispute that depends on

18  the content of the County's communications with each employee.  While the County indisputably

19  took the initial step towards accommodation, the County acknowledges that after this initial step the

20  content of communications with each employee varied, based for example on the level of employee

21  engagement in the interactive process and the response time of County staff.  *See, e.g.*,  Anderson

22  Decl., Ex. 26 at 63:7-65:5 (Baluyut deposition, alleging that County staff sometimes took too long to

23  get back to respond to her job search questions, until she found an appropriate person to contact);

24  Ex. 6 [Fisk Decl.] (interactive process with Pretrial Services personnel); Ex. 7 [Grumbos Decl.]

25  (interactive process with Sheriff's deputies); Ex. 4 [Menzies Decl.] (interactive process with hospital

26  staff); Ex. 2 [Ortega Decl.] (interactive process with Fleet and Facilities personnel).  As another

27  example, for those exempt employees who applied for lower-risk jobs, the reason some employees

28  were not offered some jobs (such as the employees' lack of qualifications or quality of references)

1    may involve conflicting and disputed evidence.  As a third example, some exempt employees do not

2    appear to have sincerely held religious beliefs and sought religious exemptions for secular reasons

3    such as a belief that Covid-19 vaccines were not effective.  Anderson Decl., Ex. 8 [Luna Tr.] at

4    17:12-18:2.  The County may raise this issue on an individual basis at trial.

5        Based on the current record, at trial, the jury would necessarily have to decide whether the

6    County sufficiently engaged in the interactive process with, and offered reasonable accommodations

7    to, each exempt employees with sincerely held religious beliefs.  But class actions are not

8    appropriate where the resolution of the case would require numerous mini trials like this.  *See, e.g.,*

9    *Soares v. Flowers Foods*, Inc., 320 F.R.D. 464, 484 (N.D. Cal. 2017) ("Put simply, [i]f each class

10    member has to litigate numerous and substantial separate issues to establish his or her right to

11    recover individually, a class action is not 'superior.'"); *Heredia*, 2020 WL 127489, at *6.

12        For the above reasons, the Court should decertify the class.  Next, the County briefly explains

13    how decertification should affect the parties' pending summary judgment motions.

14    **V.    THE IMPACT OF DECERTIFICATION ON SUMMARY JUDGMENT**

15        If the Court decertifies the class, the Court should still grant summary judgment to the

16    County on all claims, for the following reasons.

17        Plaintiffs' constitutional claims present a facial challenge to the County's vaccination policy

18    (with the possible exception of the "preferential consideration" issue as noted below).  As a result,

19    how the policy applied to individual plaintiffs does not matter for purposes of summary judgment.

20    The County's vaccination policy was unquestionably rationally related to the compelling interest of

21    stemming the spread of a novel, deadly disease.  *See Seaplane Adventures, LLC v. Cnty. of Marin*,

22    71 F.4th 724, 730 (9th Cir. 2023) (finding under highly deferential rational basis review standard

23    that "[T]he actions of the County meet the rational basis standard as it took actions to mitigate the

24    damage of the COVID-19 virus. . . . Rational basis review does not require the County to behave

25    optimally, but only rationally."); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19

26    (2020) ("Stemming the spread of COVID–19 is unquestionably a compelling interest.").  The

27    opinion of Plaintiffs' expert cannot change this fact, both because he admits that vaccination

28    provides individual and group protection against COVID-19 and because he offered no opinion on

1    Plaintiffs proffered alternatives, and because even if he had not, the existence of a contrary expert

2    opinion cannot negate a rational basis.  *See Guilfoyle v. Beutner*, No. 221CV05009VAPMRWX,

3    2021 WL 4594780, at *15 (C.D. Cal. Sept. 14, 2021) (stating that "Plaintiffs' experts have little

4    bearing on the question before this Court" because the constitutional claims at issue did "not require

5    that government [actions] be supported by scientific consensus—or even the most reliable scientific

6    evidence" because the claims were subjected to rational basis review") (citation omitted); *Kheriaty v.*

7    *Regents of Univ. of California*, No. SACV2101367JVSKESX, 2021 WL 4714664, at *8 (C.D. Cal.

8    Sept. 29, 2021) ("But merely drawing different conclusions based on consideration of scientific

9    evidence does not render the Vaccine Policy arbitrary and irrational.").  Therefore, the Court should

10   grant summary judgment to the County on Plaintiffs' constitutional claims.

11          On the issue of "preferential consideration" in job transfers, the Court should grant summary

12   judgment to the County, because the County had no choice but to follow state and federal law in

13   providing such "preferential consideration" to disabled persons, and the County could not provide

14   "preferential consideration" based on religion because doing so would violate the Establishment

15   Clause.  *See* ECF 143 at 10-11, 18-19; ECF 161 at 2-4, 7-8.  If the Court declines to grant summary

16   judgment to the County, the Court should deny Plaintiffs' motion for summary judgment on that

17   issue, because no plaintiff has shown that he or she was injured as a result of that policy.  Maria

18   Ramirez declined to apply for any jobs, so the precise level of job transfer assistance simply did not

19   matter for her.  Anderson Decl. Ex. 4 [Menzies Decl.] ¶¶ 15-21.  While Tom Davis and Elizabeth

20   Baluyut applied for jobs, they admitted that they are unaware of anyone at the County with a

21   religious exemption (including themselves) who missed out on a job due to favorable treatment

22   being given to individuals with medical exemptions.  *Id.* Ex. 31 [Davis Tr.] at 40:13-41:3, 49:11-24;

23   Ex. 26 [Baluyut Tr.] at 88:17-22.  Plaintiffs submitted no evidence of such injury at summary

24   judgment.

25          Second, the Court should still grant summary judgment to the County on Plaintiffs' Title VII

26   and FEHA claims, even if the Court decertifies the class.  Plaintiffs have failed to genuinely dispute

27   that their proffered accommodations would have imposed an undue hardship on the County.

28   Namely, Plaintiffs fail to genuinely dispute the extensive evidence that their proffered

1   accommodations—masking, testing, social distancing, and ending the County's vaccine policy in

2   March 2022—would have significantly increased deaths and serious illnesses from Covid-19.  *See*

3   ECF 143 at 23-25; ECF 161 at 13-15.  Plaintiffs' sole expert submitted no opinion whatsoever on

4   those issues.  Title VII does not require compromising the health and safety of vulnerable residents

5   by forcing the County to allow hundreds of unvaccinated staff members to continue working with

6   them.  Furthermore, plaintiff Maria Ramirez's Title VII and FEHA claims are barred by her decision

7   not to pursue transfers or reassignments within the County.  *See* ECF 143 at 21; Anderson Decl. at

8   0273-274.

9        Finally, regardless of the Court's decertification decision, it is undisputed that the Court

10  should dismiss the individual defendants Sara H. Cody, James Williams, and Jeffrey Smith from this

11  lawsuit because they are redundant and unnecessary.  *See* ECF 143 at 25; ECF 161 at 15.  The Court

12  should also dismiss UnifySCC from this lawsuit, as explained next.

### VI.    UNIFYSCC LACKS STANDING

14       At the summary judgment hearing, the Court requested briefing on whether plaintiff

15  UnifySCC has standing in light of the Ninth Circuit's recent opinion in *Arizona Alliance for Retired*

16  *Americans v. Mayes*, No. 22-16490, 2024 WL 4246721 (9th Cir. Sept. 20, 2024), and the U.S.

17  Supreme Court's decision in *Food and Drug Administration v. Alliance for Hippocratic Medicine*

18  ("*FDA*"), 602 U.S. 367 (2024).  The parties agreed to brief this issue in conjunction with class

19  decertification.

20       To establish Article III standing to sue, a plaintiff must show "(i) that she has suffered or

21  likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the

22  defendant, and (iii) that the injury likely would be redressed by the requested judicial relief."  *FDA*,

23  602 U.S. at 380; *Arizona All. for Retired Americans*, 117 F.4th at 1171.  "Organizations may have

24  standing to sue on their own behalf for injuries they have sustained.  In doing so, however,

25  organizations must satisfy the usual standards for injury in fact, causation, and redressability that

26  apply to individuals."  *FDA*, 602 U.S. at 393-94 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S.

27  363, 379, n.19 (1982)).  UnifySCC indisputably lacks standing under this test.  UnifySCC admits

28  that it has not suffered an injury.  Anderson Decl. Ex. 31 [Davis Tr.] at 82:18-24 (UnifySCC

14

1   30(b)(6) representative "can't speak to" whether UnifySCC suffered an injury); UnifySCC

2   Objections to 30(b)(6) Notice at 4 ("UnifySCC is an entity and not a person and the entity itself has

3   not suffered injury."). UnifySCC therefore lacks the most basic requirement of standing and should

4   be dismissed.

5         At the summary judgment hearing, Plaintiffs asserted that UnifySCC has "representational"

6   standing under *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). ECF

7   173 at 40:7-23. Plaintiffs are incorrect. As an initial matter, *Hunt's* theory of representational

8   standing may no longer be viable in light of *FDA*. *Hunt* is based on a 1963 case holding that "[e]ven

9   in the absence of injury to itself, an association may have standing solely as the representative of its

10  members." *Id.* at 342. That holding runs contrary to the Supreme Court's decision in *FDA*, which

11  rejected a similar representational standing argument, stating that "even when we have allowed

12  litigants to assert the interests of others, the litigants themselves still must have suffered an injury in

13  fact." *FDA*, 602 U.S. at 393 n.5. As UnifySCC admits that it has not suffered an injury itself, it

14  cannot "shoehorn [it]self into Article III standing simply by showing that" its members have suffered

15  injuries. *Id.*; *see also id.* at 398 (highlighting problems with associational standing based on *Hunt*)

16  (Thomas, J., concurring).

17        Regardless, UnifySCC lacks standing even under the *Hunt* test. Under *Hunt*, "an association

18  has standing to bring suit on behalf of its members when: (a) its members would otherwise have

19  standing to sue in their own right; (b) the interests it seeks to protect are germane to the

20  organization's purpose; and (c) neither the claim asserted nor the relief requested requires the

21  participation of individual members in the lawsuit." 432 U.S. at 343. The Court elaborated on the

22  third requirement as follows: "in all cases in which we have expressly recognized standing in

23  associations to represent their members, the relief sought has been" a request for "a declaration,

24  injunction, *or some other form of prospective relief*." *Id.* (emphasis added). By contrast, "no federal

25  court has allowed an association standing to seek monetary relief on behalf of its members." *United*

26  *Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1400

27  (9th Cir. 1990); *see also Lake Mohave Boat Owners Ass'n v. Nat'l Park Serv.*, 78 F.3d 1360, 1367

28  (9th Cir. 1995); *Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1484 (9th Cir. 1993); *Williams v. Alameda*

*Cnty.*, No. 3:22-CV-01274-LB, 2024 WL 4050393, at *6 (N.D. Cal. Sept. 3, 2024).  Here, the County's vaccination policy ended in September 2022.  Doyle Decl. ¶ 16, Ex. 10.  Plaintiffs cannot and do not seek prospective relief, as they previously admitted.  *See* ECF 114 at 1 n.1; Dec. 20, 2023 Hrg. Tr. at 5:6-9, 12:4-5, 19:16-25.  This is a damages case.  Thus, even if *Hunt* remained good law, it would not provide a basis for associational standing here.

## VII.    CONCLUSION

For the above reasons, the Court should decertify the class, dismiss UnifySCC and the individual Defendants from this case, and grant the County's motion for summary judgment.

Dated:  December 4, 2024                                Respectfully submitted,

                                                                            TONY LOPRESTI
                                                                            COUNTY COUNSEL

                                                                    By:    /s/ Bryan K. Anderson
                                                                            BRYAN K. ANDERSON
                                                                            Deputy County Counsel

                                                                            Attorneys for Defendants
                                                                            COUNTY OF SANTA CLARA, SARA H.
                                                                            CODY, JAMES WILLIAMS and JEFFREY
                                                                            SMITH

3162907

16

Defendants' Motion for Decertification                                              22-CV-01019 BLF