# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

UNIFYSCC, et al.,

        Plaintiffs,

   v.

SARA H. CODY, et al.,

        Defendants.

Case No.  5:22-cv-01019-BLF

**ORDER DENYING PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

[Re:  ECF Nos. 141, 143]

United States District Court
Northern District of California

This case concerns Defendant Santa Clara County's ("the County") response to the COVID-19 pandemic.  In August 2021, after COVID-19 vaccinations became widely available, the County[1] adopted a policy requiring its employees to become vaccinated against the virus. Some employees received religious exemptions and accompanying accommodations from the vaccination mandate, but the policy's accommodations framework determined that exempt employees working in certain roles deemed "high-risk" for COVID-19 transmission could not be accommodated in a way that would permit them to continue their work in person.  Plaintiffs brought this class action lawsuit because they believe that the County's policy violated those employees' constitutional and statutory rights.

Before the Court is Plaintiffs' Partial Motion for Summary Judgment, ECF No. 141 ("Plfs.' Mot."), and Defendants' Cross-Motion for Summary Judgment, ECF No. 143 ("Defts.' Mot.").  Defendants' Cross-Motion also sets out their Opposition to Plaintiffs' Partial Motion for Summary Judgment.  ECF No. 143.  Plaintiffs filed an Opposition to Defendants' Cross-Motion

---

[1] The Court will refer to the Defendants collectively as "the County" throughout the Order.  The other named defendants are Santa Clara County Public Health Officer Sara Cody, former County Counsel James Williams, and former County Executive Jeffrey Smith.

for Summary Judgment and Reply in Support of Plaintiffs' Motion for Partial Summary Judgment, ECF No. 159 ("Plfs.' Opp."), and Defendants filed a Reply in Support of Cross-Motion for Summary Judgment, ECF No. 161 ("Defts.' Reply").  The Court heard oral argument at a joint hearing on both motions on October 25, 2024.  *See* ECF No. 167.

For the following reasons, the Court DENIES Plaintiffs' Partial Motion for Summary Judgment (ECF No. 141), and GRANTS IN PART AND DENIES IN PART Defendants' Cross-Motion for Summary Judgment (ECF No. 143).

## I.    BACKGROUND

### A.    The COVID-19 Pandemic

In late 2019, a novel coronavirus called COVID-19 was discovered circulating among humans.  ECF No. 153, Declaration of Dr. Sarah Rudman in Support of Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Rudman Decl."), Ex. 2 ¶ 7.  During the first few months of the following year, COVID-19 swept across the United States, causing widespread illness and death.  *See id.* Information about the disease was limited, so little was known regarding transmission, symptoms, treatment, long-term effects, and impacts on particular populations.  *Id.* Ex. 2 ¶ 8.  There was no COVID-19 vaccine available.  *See id.*  Many governments, including the County of Santa Clara, responded to the uncertainty by issuing health orders that imposed widespread restrictions on travel and in-person activities.  *Id.* Ex. 2 ¶ 10.

At the end of 2020, vaccine developers released the first COVID-19 vaccines.  *Id.* Ex. 2 ¶ 11.  During the following summer, there was a significant surge in COVID-19 cases, resulting from a highly contagious variant—the "Delta" variant—of the virus.  *Id.* Ex. 2, Sub-Ex. 1 ¶ 27.  On August 5, 2021, the California Department of Public Health ("CDPH") issued a State Public Health Officer Order requiring service workers and workers in healthcare facilities to be vaccinated against COVID-19.  *Id.* Ex. 2, Sub-Ex. 1 ¶ 20.

### B.    The County's Vaccination Requirement

Also on August 5, 2021, County Executive for the County of Santa Clara Jeffrey V. Smith and County Counsel James R. Williams issued a memorandum addressing the "COVID-19

United States District Court
Northern District of California

United States District Court
Northern District of California

Vaccination Requirement for County Personnel" to all County personnel. Declaration of Jeffrey V. Smith in Support of Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Smith Decl.") ¶ 10 & Ex. 2; Declaration of Bethany Onishenko in Support of Plaintiffs' Motion for Partial Summary Judgment ("Onishenko Decl."), Ex. 5. The memorandum stated that "the County w[ould] require all County personnel to be fully vaccinated subject to" certain "limited exceptions." Smith Decl., Ex. 2 at 1; Onishenko Decl., Ex. 5 at 1. The three permitted exemptions were:

- "a contraindication recognized by the U.S. Centers for Disease Control and Prevention (CDC) or by the vaccine's manufacturer to *every* approved COVID-19 vaccine," meaning "a condition that makes vaccination inadvisable" (the "medical exemption");
- "a disability" that requires a "reasonable accommodation" (the "disability exemption"); or
- an "[o]bject[ion] to COVID-19 vaccination based on their sincerely-held religious belief, practice, or observance" (the "religious exemption").

Smith Decl., Ex. 2 at 3; Onishenko Decl., Ex. 5 at 3. The County instructed employees seeking accommodations to "[c]ontact their department head or designee(s) to obtain a copy of the appropriate form"—either the "Medical Exemption and/or Disability Accommodation Request Form" or the "Religious Accommodation Request Form"—and then to complete and submit the form to the County Equal Opportunity Division. Smith Decl., Ex. 2 at 3; Onishenko Decl. Ex. 5 at 3.

### C. The Risk-Tier System and Accommodations Framework

Defendants also created a Risk Tier System to help determine how employees granted exemptions would be accommodated. *See* Smith Decl. ¶¶ 12–14 & Ex. 3; Onishenko Decl., Ex. 10 at 1. The system categorized County employees' positions as low risk, intermediate risk, or high risk for COVID-19. *See* Smith Decl., Ex. 3; Onishenko Decl., Ex. 10 at 1. The classification assessment considered "the quantity and nature of contact an employee has with others; the risk posed to vulnerable populations served by the County (e.g., young children, unhoused persons, jail inmates); the risk posed to persons at serious risk of illness and death from COVID-19 (e.g., elderly persons, persons with significant underlying medical conditions, immunocompromised persons); the risk posed to other employees; the risk of COVID-19 outbreaks in the work setting (e.g., in congregate settings); and the essential job functions the employee must perform."

United States District Court
Northern District of California

1   Onishenko Decl., Ex. 10 at 1.  Based on the classification, the County would then determine

2   whether the exempt individual could be accommodated through wearing designated personal

3   protective equipment ("PPE") and regular COVID-19 testing, for example, or whether the exempt

4   individual would instead need to take a "temporary leave of absence, during which the County

5   w[ould] assist them in seeking reassignment or transfer."  *Id.* at 1–2.

6        In practice, the Risk Tier System operated like this:  First, a County employee applied for

7   and was granted an exemption from the vaccination mandate.  Then, exempt individuals' positions

8   were evaluated for risk tier categorization on a case-by-case basis by their departments.

9   Onishenko Decl., Ex. 15 at 50:4–13.  Some department heads may have tasked their subordinates

10   with making categorization determinations.  *Id.*  Departments were not required to consult with

11   medical professionals in making the categorizations, although public health personnel and

12   resources were available to answer questions.  *Id.* at 50:14–19.  For employees whose positions

13   were categorized as low-risk, they could continue to work in that role if they wore a surgical mask

14   and took a weekly PCR or antigen COVID-19 test.  Onishenko Decl., Ex. 10 at 1.  For those

15   categorized as intermediate-risk, they could continue in their roles as long as they wore an N95

16   respirator and took two PCR or antigen COVID-19 tests weekly.  *Id.*  For employees granted

17   exemptions whose positions were categorized as high-risk, they would be placed on temporary

18   leave while seeking reassignment.  *Id.* at 2.  Their departments would first consider whether an

19   intra-department transfer to a different position was available.  Onishenko Decl., Ex. 15 at 54:1–7.

20   If not—or concurrently, if they wished to begin searching for a position in a different department

21   immediately—those individuals could search for positions in other County departments for which

22   they might be qualified.  *Id.*

23        At this point in the accommodations process, the County initially communicated to

24   employees that certain of those individuals granted exemptions might be "entitled to priority

25   consideration" for jobs elsewhere in the County government.  Onishenko Decl., Ex. 6 at 3.

26   Specifically, where a person was granted an exemption based on a disability, that person might

27   have priority for placement in an alternative position over others granted religious or non-

28   disability health-related exemptions.  The County directed individuals with exemptions to contact

United States District Court
Northern District of California

1  either the Employee Services or the Equal Opportunity Division for assistance with alternative

2  placements.  *Id.*  Although the County announced that any exempt employee could contact either

3  division, in practice some of those individuals with religious exemptions were directed specifically

4  to Employee Services' new team dedicated to placement of employees with vaccine exemptions.

5  Onishenko Decl., Ex. 23.

6  **D.  Subsequent County Policy Updates**

7  A few months after the initial vaccination policy was issued, on December 22, 2021, the

8  State Health Department updated its earlier vaccination order to require booster vaccinations.

9  Onishenko Decl., Ex. 20.  One week later, Dr. Sara Cody, the County Health Officer, issued a

10  further health order requiring workers in certain high-risk settings to ensure that they were fully

11  up-to-date on their COVID-19 vaccinations by January 24, 2022, meaning that they must also get

12  a COVID-19 booster vaccination if eligible.  Rudman Decl., Ex. 2, Sub-Ex. 1 ¶ 29; *see* Smith

13  Decl. ¶ 18.  While the December 28 Health Order mandated that employers should permit

14  religious and medical exemptions, and should comply with reasonable accommodation

15  requirements, the Order instructed that any individuals who were not "compliant with the

16  vaccination requirements [therein] cannot work in Higher-Risk Settings . . . regardless of whether

17  they have a pending exemption request or an approved exemption."  Rudman Decl., Ex. 2, Sub-

18  Ex. 1 ¶ 33; *id.* Ex. 2, Sub-Ex. 1, Sub-Sub-Ex. 6 at 4.  To comply with these further health orders,

19  the County updated its vaccination policy for county employees on January 4, 2022.  Smith Decl.

20  ¶ 18.

21  The December 28 Health Order applicable to the community at large was modified on

22  March 7, 2022 to allow unvaccinated people who had been approved for a religious or medical

23  exemption to work in high-risk settings, so long as they followed a minimum set of "public health

24  and safety measures," such as masking and testing.  Rudman Decl., Ex. 2, Sub-Ex. 1 ¶ 34; *id.* Ex.

25  2, Sub-Ex. 1, Sub-Sub-Ex. 7 at 5.  However, the updated Order declined to "limit[] the ability of a

26  business or governmental entity under applicable law to determine whether it is unable to offer a

27  reasonable accommodation to unvaccinated personnel" and to instead exclude them.  *Id.* Ex. 2,

28  Sub-Ex. 1, Sub-Sub-Ex. 7 at 6.  Although the County did make some revisions to its policy for

County personnel following March 7 modification to the December 28 Health Order, it did not permit unvaccinated, exempt County employees to return to work in high-risk positions at that time. *See* Smith Decl. ¶¶ 20–22 & Ex. 5. On September 27, 2022, the County rescinded the vaccination requirement for all County employees; at that point, County employees could return to their work positions regardless of risk categorization. Rudman Decl., Ex. 2, Sub-Ex. 1 ¶ 23; Smith Decl. ¶ 20 & Ex. 6.

**E. Plaintiffs and Class Members**

Plaintiffs and Class members in this case allege that they have sincerely held religious beliefs preventing them from receiving COVID-19 vaccinations or boosters. Plaintiffs Maria Ramirez and Elizabeth Baluyut are registered nurses for the County. Declaration of Elizabeth Baluyut in Support of Plaintiffs' Motion for Partial Summary Judgment ("Baluyut Decl.") ¶ 2; Declaration of Maria Ramirez in Support of Plaintiffs' Motion for Partial Summary Judgment ("Ramirez Decl.") ¶ 2. Plaintiff Tom Davis was a member of the County's Fleet and Facilities Department. Declaration of Tom Davis in Support of Plaintiffs' Motion for Partial Summary Judgment ("Davis Decl.") ¶ 2. Each of the class plaintiffs and class members received religious exemptions from the vaccine mandate, and worked in positions that were categorized as "high-risk" in the Risk Tier System. Baluyut Decl. ¶ 2; Ramirez Decl. ¶ 2; Davis Decl. ¶ 2; ECF No. 125 at 25. Therefore, they were not permitted to continue in-person work after their application for a religious exemption was granted. Baluyut Decl. ¶ 4; Ramirez Decl. ¶ 4; Davis Decl. ¶ 5. Instead, they were placed on leave and directed to the County's accommodations procedure. *See* Baluyut Decl., Ex. B; Davis Decl., Ex. B, Ramirez Decl., Ex. B.

**F. Procedural Background**

Plaintiffs UnifySCC, Tom Davis, and Maria Ramirez filed suit against Santa Clara County Public Health Officer Sara Cody, County Counsel James Williams, County Executive Jeffrey Smith, and Santa Clara County on February 18, 2022. ECF No. 1. On March 3, 2022, Plaintiffs filed a Motion for Temporary Restraining Order ("TRO"), ECF No. 21, which was denied on March 8, 2022 due to Plaintiffs' unnecessary delay in seeking TRO relief, ECF No. 25. Plaintiffs then filed a Motion for Preliminary Injunction on April 1, 2022. ECF No. 27. Following a

hearing on June 23, 2022, the Court granted in part and denied in part Plaintiffs' Motion for Preliminary Injunction. ECF No. 44. The Court's Order enjoined and restrained Defendants from "giving to employees whose current positions are in high-risk tiers any priority consideration for vacant County positions based on the type of exemption from the County's vaccine mandate that the employee received." *Id.* at 23.

On August 23, 2022, Plaintiffs filed a Verified First Amended Class Action Complaint. ECF No. 55 ("FAC"). The FAC asserts six claims against Defendants Sara H. Cody, James Williams, Jeffrey Smith, and Santa Clara County: (1) a 42 U.S.C. § 1983 claim for Violation of the Free Exercise Clause of the First Amendment to the U.S. Constitution; (2) a claim for violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940; (3) a 42 U.S.C. § 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; (4) a 42 U.S.C. § 1983 claim for Violation of the Establishment Clause of the First Amendment to the U.S. Constitution; (5) a claim for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; and (6) a *Monell* claim for deprivation of civil rights under 42 U.S.C. § 1983. FAC ¶¶ 63–97.

On July 14, 2023, Plaintiffs filed a Motion for Class Certification. ECF No. 81. Following a hearing on December 20, 2023, the Court granted in part and denied in part the motion to certify a class. ECF No. 125. In its Order, the Court certified the class of "[a]ll individuals who: 1) work or worked for the County and/or [] were subject to its vaccine policies and orders, including the Risk Tier System; 2) were forced by the County to choose between taking the vaccine to maintain their jobs and/or their employment-related benefits or being placed on unpaid leave; 3) were [] classified as working in high risk jobs pursuant to the County's Risk Tier System; and 4) received [] a religious exemption from the County (the 'Class') between August 5, 2021 and September 27, 2022 (the 'Class Period')." *Id.* at 25. Defendants have since filed a Motion for Class Decertification. ECF No. 176.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the evidence and all reasonable inferences in the light most favorable to

1  the nonmoving party "show that there is no genuine issue as to any material fact and that the

2  moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317,

3  322 (1986). The current version of Rule 56 authorizes a court to grant "partial summary

4  judgment" to dispose of less than the entire case and even just portions of a claim or defense. *See*

5  Fed. R. Civ. P. 56, advisory committee's note, 2010 amendments; *Ochoa v. McDonald's Corp.*,

6  133 F. Supp. 3d 1228, 1232 (N.D. Cal. 2015).

7       The moving party "bears the burden of showing that there is no material factual dispute,"

8  *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the

9  court the portions of the materials on file that it believes demonstrate the absence of any genuine

10  issue of material fact," *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630

11  (9th Cir. 1987). In judging evidence at the summary judgment stage, the Court "does not assess

12  credibility or weigh the evidence, but simply determines whether there is a genuine factual issue

13  for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006) (Roberts, J., concurring in part). A fact is

14  "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to

15  a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in

16  favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

17       Where the moving party will have the burden of proof on an issue at trial, it must

18  affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

19  party. *See Celotex*, 477 U.S. at 325; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

20  Cir. 2007). By contrast, where the moving party does not have the burden of proof on an issue at

21  trial, it "must either produce evidence negating an essential element of the nonmoving party's

22  claim or defense or show that the nonmoving party does not have enough evidence of an essential

23  element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz*

24  *Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

25       Once the moving party meets its initial burden, the nonmoving party must set forth, by

26  affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue

27  for trial." *Liberty Lobby*, 477 U.S. at 250 (internal quotation marks omitted). If the nonmoving

28  party's "evidence is merely colorable, or is not significantly probative, summary judgment may be

1    granted." *Id.* at 249–50 (internal citations omitted).  Mere conclusory, speculative testimony in

2    affidavits and moving papers is also insufficient to raise genuine issues of fact and defeat

3    summary judgment.  *See Thornhill Publ'g Co. v. General Tel. & Electronics Corp.*, 594 F.2d 730,

4    738 (9th Cir. 1979).  For a court to find that a genuine dispute of material fact exists, "there must

5    be enough doubt for a reasonable trier of fact to find for the [non-moving party]."  *Corales v.*

6    *Bennett*, 567 F.3d 554, 562 (9th Cir. 2009) (internal quotations omitted).

7    ### III.    DISCUSSION

8           Plaintiffs' Motion for Partial Summary Judgment seeks summary judgment on the Title

9    VII, FEHA, *Monell*, and Free Exercise claims.  Plfs.' Mot. at 2.  Defendants' Cross-Motion for

10   Summary Judgment seeks summary judgment on all claims.  Defts.' Mot. at 1.  The Court

11   concludes that summary judgment cannot be granted for either side on the Title VII, FEHA,

12   *Monell*, and Establishment Clause claims.  The Court also cannot grant summary judgment for

13   either side on the Free Exercise claim insofar as it pertains to the County's accommodations

14   scheme.  However, the Court grants summary judgment in favor of the County Defendants on the

15   Free Exercise claim insofar as it pertains to the County's Risk Tier System.

16         ### A.  Title VII and FEHA Claims

17          Plaintiffs' Title VII and FEHA claims operate in parallel.  Under both statutes, employers

18   must accommodate employees' religious beliefs unless it would impose an undue hardship to do

19   so.  *See* 42 U.S.C. § 2000e(j); Cal. Gov. Code § 12940(l)(1).  Courts use a burden-shifting analysis

20   to determine whether a defendant has failed to accommodate an employee's religious beliefs.

21   *Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023).  "To

22   plead a *prima facie* case of failure to accommodate religion under Title VII and FEHA, a plaintiff

23   must allege . . . that she holds 'a bona fide religious belief' that conflicts with an employment

24   requirement."  *Id.* (citation omitted).  She must also show that she "informed [her] employer of the

25   belief and conflict," and "the employer discharged, threatened, or otherwise subjected [her] to an

26   adverse employment action because of [her] inability to fulfill the job requirement."  *Peterson v.*

27   *Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004) (citation omitted).  If the employee

28   successfully sets out a *prima facie* case, "the burden shifts to the employer to show 'either that it

United States District Court
Northern District of California

United States District Court
Northern District of California

1    initiated good faith efforts to accommodate reasonably the employee's religious practices or that it

2    could not reasonably accommodate the employee without undue hardship.'" *Bolden-Hardge*, 63

3    F.4th at 1224 (citation omitted); *Peterson*, 358 F.3d at 606. "Undue hardship" means that "the

4    burden of granting an accommodation would result in substantial increased costs in relation to the

5    conduct of its particular business." *Groff v. DeJoy*, 600 U.S. 447, 470 (2023).

6           The first two elements of the *prima facie* case are not in dispute: Arguing that "the burden

7    to allege a conflict with religious beliefs is fairly minimal," Plfs.' Mot. at 11 (quoting *Bolden-*

8    *Hardge*, 63 F.4th at 1223), Plaintiffs say that their "religious beliefs regarding the COVID-19

9    vaccination are outlined in the religious exemption request forms they submitted to the County"

10   and that those forms "are sufficient under Title VII and FEHA to put the County on notice of each

11   employee's religious beliefs and their conflict with County policy," *id.* at 12 (citing *E.E.O.C. v.*

12   *Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015)). Defendants appear to concede these

13   two elements, as they do not respond to Plaintiffs' arguments. Nor did Defendants submit

14   evidence challenging whether the Plaintiffs' religious beliefs were "bona fide." The undisputed

15   facts therefore establish that: (1) the County required employees to be vaccinated against COVID-

16   19, Onishenko Decl., Exs. 5 & 10; (2) Plaintiffs asserted the existence of sincere religious beliefs

17   that prevented them from becoming vaccinated, creating a direct conflict between a job

18   requirement and a religious belief, *e.g.*, Baluyut Decl. ¶ 2; Ramirez Decl. ¶ 2; Davis Decl. ¶ 2.;

19   and (3) Plaintiffs informed Defendants of the belief and the conflict when they submitted their

20   exemption requests, *e.g.*, Baluyut Decl. ¶ 2; Ramirez Decl. ¶ 2; Davis Decl. ¶ 2; Onishenko Decl.,

21   Ex. 12. The first two elements of the *prima facie* Title VII/FEHA case are established, so the

22   Court focuses on analyzing the adverse action and accommodation components.

23          **1.  Adverse Employment Action**

24          Regarding the final element of the *prima facie* Title VII/FEHA case, Plaintiffs argue that

25   they can establish adverse action as to the entire class. *See* Plfs.' Mot. at 13. Defendants disagree,

26   saying that Plaintiffs "have failed to show 'in one stroke' that the County took adverse action

27   against the Class," rendering summary judgment in favor of Plaintiffs on the FEHA/Title VII

28   claims inappropriate. *See* Defts.' Mot. at 20.

United States District Court
Northern District of California

1    As a preliminary matter, the Parties appear to take different positions on how the Court

2    should evaluate whether adverse action was taken by the County.  Plaintiffs contend that the Court

3    should consider the County's actions with regard to Plaintiffs and Class members only.  *See* Plfs.'

4    Mot. at 13.  That is, Plaintiffs urge the Court to consider in isolation the County's treatment of

5    those employees granted religious exemptions whose positions were categorized as "high-risk."

6    *See id.*  Defendants, on the other hand, appear to suggest that the Court should take into

7    consideration the County's treatment of all exempt employees—regardless of risk tier.  *See* Defts.'

8    Mot. at 20 (calling Plaintiffs' argument that involuntary unpaid leave was the only

9    accommodation offered "patently false" because "[t]he County provided exempt employees with

10    masking and testing for low- and intermediate-risk roles . . .").

11    The Court agrees with Plaintiffs.  The question with regard to the Title VII and FEHA

12    claims is whether Plaintiffs have established the alleged statutory violations with respect to

13    themselves and the relevant class.  Here, the class includes only those employees who were

14    granted religious exemptions and ultimately classified as working in high-risk positions.  *See* ECF

15    No. 125 at 25.  As a result, the County's treatment of employees classified as low-risk or

16    intermediate-risk is not relevant in the "adverse employment action" inquiry.

17    Focusing on the exempt employees whose jobs were classified as high-risk, Plaintiffs

18    contend that they can show adverse action on a class-wide basis because "involuntary unpaid

19    administrative leave was the only accommodation offered to Plaintiffs and Class members,"

20    resulting in many Class members being placed "on leave for upwards of nine months."  Plfs.' Mot.

21    at 13 (citing Onishenko Decl., Exs. 48, 51, 57).  Involuntary and indefinite unpaid leave, Plaintiffs

22    say, qualifies as an adverse employment action.  *Id.*  Defendants vehemently protest Plaintiffs'

23    argument.  First, Defendants say that employees in high-risk jobs were informed that they could

24    use paid *or* unpaid leave and could pursue job transfers, so Plaintiffs' suggestion that involuntary

25    and indefinite unpaid leave was the only option offered is untrue.  *See* Defts.' Mot. at 20.  Second,

26    Defendants point out that, as a matter of fact, "dozens of class members went on paid leave,"

27    rather than going unpaid.  *Id.*  Third, Defendants argue that "205 Class members did not need any

28    form of accommodation because they never went on leave" at all.  *Id.*

United States District Court
Northern District of California

1    While unpaid leave can be a reasonable accommodation, that "does not mean that it cannot

2    also be an adverse action, particularly where the employee is placed on unpaid leave

3    involuntarily." *Steenmeyer v. Boeing Co.*, 92 F. Supp. 3d 1024, 1031 (W.D. Wash. 2015).

4    Placing employees, against their will, on an extended, unpaid leave is meaningfully different from

5    doing so for a very brief period of time or agreeing to placement on unpaid leave where the

6    employee requests it. *See Dawson v. Akal Sec. Inc.*, 660 F. App'x 504, 506 (9th Cir. 2016). On

7    the other hand, *paid* leave is *not* an adverse employment action. *See, e.g.*, *Longmire v. City of*

8    *Oakland*, No. C 10-01465, 2011 WL 5520958, at *5 (N.D. Cal. Nov. 14, 2011), *aff'd*, 584 F.

9    App'x 623 (9th Cir. 2014); *Gannon v. Potter*, No. C 05-2299, 2006 WL 3422215, at *5 (N.D. Cal.

10   Nov. 28, 2006), *aff'd*, 298 F. App'x 623 (9th Cir. 2008) (collecting cases).

11   In this case, the Court cannot determine the "adverse employment action" issue on a class-

12   wide basis. On the one hand, the Court finds that Plaintiffs have demonstrated that the County

13   took adverse employment action against certain named plaintiffs. Named Plaintiff Elizabeth

14   Baluyut, for example, was placed on unpaid leave after her religious exemption was granted.

15   Baluyut Decl. ¶ 4. She then proceeded to apply for twelve other positions with the County, many

16   of which would have required her to take "a significant pay reduction." *Id.* ¶ 7. She did not

17   receive any of these other positions, and ultimately returned to her position as a registered nurse

18   only after the vaccination mandate was lifted—months after she was initially placed on leave. *Id.*

19   Similarly, named Plaintiff Tom Davis was placed on unpaid leave after receiving his exemption.

20   Davis Decl. ¶ 6. Although he, too, applied for other positions in the County, he was not offered a

21   different job and instead ended up seeking outside employment at a former employer. *Id.* ¶¶ 9–10.

22   Others had similar experiences. *See, e.g.*, ECF No. 141-8, Declaration of Melanie Nguyen ¶ 4

23   (indicating that Ms. Nguyen had been on unpaid administrative leave for approximately eight

24   months, and that she "was forced to sell [her] house to make ends meet"). The Court recognizes

25   that the County was trying to preserve public health and safety in the face of uncertain and rapidly

26   evolving conditions. However, the Court agrees with Plaintiffs that indefinite, involuntary unpaid

27   leave is, as a practical matter, not much different from termination, and thus qualifies as "adverse

28   employment action."

That said, Defendants are correct that the undisputed evidence also shows that hundreds of Class members took *paid* rather than unpaid leave for at least some period of time.  Onishenko Decl., Ex. 57; ECF No. 141-8, Declaration of Jorge Alvarez ¶ 3 (indicating that declarant initially took paid leave).  And many members never went on leave at all.  Defts.' Reply at 11; Declaration of Bryan K. Anderson in Support of Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Anderson Decl."), Ex. KK at 2–3 (showing that 238 class members did not go on leave).  Moreover, any member of the class who chose to get vaccinated rather than be placed on leave did not suffer an adverse employment action.  *See Doe(s) v. Pittsburgh Reg'l Transit*, 684 F. Supp. 3d 417, 426 (W.D. Pa. 2023) (indicating that the plaintiffs' alleged distress over being coerced into getting a vaccine were "not related to Plaintiffs' 'compensation, terms, conditions, or privileges of employment'" and were thus not "adverse employment action[s]"); *Donovan v. Biden*, 603 F. Supp. 3d 975, 982 (E.D. Wash. 2022), *aff'd in part, appeal dismissed in part and remanded sub nom. Donovan v. Vance*, 70 F.4th 1167 (9th Cir. 2023) ("Plaintiffs who have been vaccinated . . . cannot allege any actual or imminent harm because they are in compliance . . . and do not face any potential adverse employment actions.").  Since the class includes members who chose to become vaccinated instead of going on leave, *see* Anderson Decl., Ex. KK at 2–3, that subset of the class cannot establish a *prima facie* Title VII or FEHA case.

In short, the County has established a dispute of material fact regarding whether it took adverse employment action against many Class members, which raises the question of whether the named Plaintiffs and Class members are similarly situated.  This question is better addressed on Defendants' now-pending Motion for Class Decertification.  *See* ECF No. 176.  The critical point at this juncture is that a ruling in favor of the named Plaintiffs regarding the adverse employment action factor does not resolve the issue of whether the entire class can establish a *prima facie* case.  Since the Court cannot find that the County took adverse employment action against the entire class, the Court proceeds only as to the named Plaintiffs.

### 2.  Good-Faith Efforts to Accommodate or Undue Hardship

The foregoing analysis—and the evidence submitted so far—suggests that most members

United States District Court
Northern District of California

United States District Court
Northern District of California

of the class may not be able to make out a *prima facie* case under Title VII and FEHA. Without that *prima facie* case, the burden does not shift to the County to show that it "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *See Bolden-Hardge*, 63 F.4th at 1224. However, given that Plaintiffs have shown a *prima facie* case for certain named Plaintiffs and declarants, the Court will proceed to consider the County's burden as to those individuals.

"[A] reasonable accommodation need not be on the employee's terms only." *Am. Postal Workers Union, S.F. Loc. v. Postmaster Gen.*, 781 F.2d 772, 777 (9th Cir. 1986); *see also We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 292 (2d Cir. 2021), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) ("Title VII does not require covered entities to provide the accommodation that Plaintiffs prefer—in this case, a blanket religious exemption allowing them to continue working at their current positions unvaccinated."). In reviewing an employer's efforts to accommodate, the question is whether the employer adequately took the "'"initial step" towards accommodating [the employee's] conflicting religious practice' by suggesting a possible accommodation." *E.E.O.C. v. AutoNation USA Corp.*, 52 F. App'x 327, 329 (9th Cir. 2002) (citing *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1440–41 (9th Cir. 1993)) (alteration in original). Thereafter, "the employee has a correlative duty to make a good faith attempt to satisfy his needs through means offered by the employer," a duty imposed based on the premise of "bilateral cooperation" underlying the statutory protections afforded by Title VII. *Am. Postal Workers*, 781 F.2d at 777.

Plaintiffs argue that "the County unilaterally determined" that unpaid administrative leave was the only available accommodation and "failed to engage in the interactive process with any Class member." Pls.' Mot. at 15–16. As evidence in support of these claims, the named Plaintiffs submitted declarations stating that as soon as they were determined to work in a high-risk role, they were placed on leave. Baluyut Decl. ¶ 6; Ramirez Decl. ¶ 6; Davis Decl. ¶ 7. They likewise state that the County declined to consider alternative accommodations. Baluyut Decl. ¶ 6; Ramirez Decl. ¶ 6; Davis Decl. ¶ 7. These assertions are concerning to the Court. However, some of Plaintiffs' evidence contradicts those assertions. For example, an exhibit attached to the declaration of one of the named Plaintiffs shows that the County clearly offered to "meet with

United States District Court
Northern District of California

1    [her] to determine whether there is a reasonable accommodation that would allow you to continue

2    working for the Department, such as a reassignment or transfer to a lower risk position."  Ramirez

3    Decl., Ex. B at 1; *see also* Onishenko Decl., Ex. 11 at 129:17–24.  It is unclear from Plaintiff

4    Ramirez's declaration how, if at all, she engaged in an iterative process with the County following

5    receipt of this letter.  Another declaration indicates that, for some employees, the County was able

6    to offer a temporary "special assignment" as an accommodation.  ECF No. 141-8, Declaration of

7    Adam Valle ¶ 5.  Moreover, the memoranda announcing the County's vaccination mandate and

8    the Risk Tier System both provide information to County employees about how to seek

9    reassignments, transfers, and new roles.  *See* Onishenko Decl., Exs. 5, 10.  The County argues

10   that, through these communications about seeking alternative placement, it "attempt[ed] to

11   accommodate in good faith," and thus it was Plaintiffs and Class members who failed to engage in

12   the iterative process as required.  Defts.' Mot. at 21.  These procedures may not have been

13   sufficient in some cases—the Court notes Plaintiff Baluyut's attestation that she unsuccessfully

14   applied for a dozen alternative positions, Baluyut Decl. ¶ 7—but, at this juncture, the Court

15   concludes only that there are disputed facts regarding the County's good-faith efforts to

16   accommodate the named Plaintiffs and declarants.  The Court thus cannot grant summary

17   judgment to either the named Plaintiffs or to Defendants.

18        For the remainder of the class members, the record likewise discloses disputed facts over

19   whether, as Defendants argue, Plaintiffs' statutory claims "are barred by their failure to engage

20   with the County's attempts to accommodate in good faith," Defts.' Mot. at 21, and whether, as

21   Plaintiffs argue, Defendants' efforts at an iterative process were insufficient, *see* Plfs.' Mot. at 16.

22   Defendants have submitted evidence showing that departments actively sought to identify

23   opportunities for reassignments and transfers, that the County created a dedicated Human

24   Resources team within the Employee Services Agency to help exempt employees apply for other

25   jobs within the County, and that 309 Class members declined to pursue transfers or reassignments

26   despite the County's efforts to assist them in doing so.  Anderson Decl., Ex. G ¶¶ 17–18 & Sub-

27   Exs. 1–3; Smith Decl. ¶ 13–16; Declaration of Michelle Quon in Support of Defendants' Cross-

28   Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Partial Summary

Judgment ("Quon Decl.") ¶ 5 & Ex. 1[2]; Onishenko Decl., Ex. 14 (describing the purpose of the VaxJobReview Team).  But Plaintiffs have submitted evidence that, at least in some cases, the County may have done little more than instruct employees placed on unpaid leave to apply for new jobs.  *See, e.g.*, Onishenko Decl., Exs. 30 at 2 & 31 at 1.

Moreover, despite Plaintiffs' assertion that unpaid leave was "patently unreasonable," Plfs.' Mot. at 14, the Court finds that this determination requires a more fact-intensive inquiry than Plaintiffs are willing to admit—which, in turn, underscores the problem with issuing class-wide relief while the motion for decertification is pending.  As Plaintiffs themselves agree, unpaid leave *can* be a reasonable accommodation under certain circumstances.  *See Steenmeyer*, 92 F. Supp. 3d at 1031.  For example, if it is requested or if it is short in duration, unpaid leave may be an appropriate accommodation.  In this case, perhaps unpaid leave would be acceptable for a brief interlude while the County coordinated an intradepartmental transfer, or helped an employee secure an interdepartmental transfer.  Making that determination will require a closer examination of the facts, which are currently in dispute, and therefore the Court cannot award summary judgment to either Plaintiffs or Defendants on the issue of Defendants' efforts to accommodate.

The same is true of the undue hardship question.  "Undue hardship" exists where "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of [the defendant's] particular business."  *Groff*, 600 U.S. at 470.  On this issue, Plaintiffs argue that there was "no justification for the County excluding Plaintiffs and Class members from the workplace" because the County had "high vaccination rates" and because vaccination mandates in other jurisdictions permitted masking and testing as a reasonable accommodation "even in high-risk settings."  Plfs.' Mot. at 15.  Plaintiffs also note that during "the period of March 7, 2022, to September 27, 2022," the County Public Health Department amended its COVID-19 Health Order to permit exempt, unvaccinated employees to return to work in the

---

[2] The Court overrules Plaintiffs' objection to the Declaration of Michelle Quon.  *See* Plfs.' Opp. at 13–14.  As Defendants explain, the "on information and belief" clause related to Ms. Quon's lack of personal knowledge of the full list of Class members.  Defts.' Reply at 12.  Given her role as Assistant Human Resources Director, Ms. Quon may authenticate a human resources record showing whether any of those individuals on a class list provided to her applied for alternative positions with the County during the class period.

1    community at large, "even if they worked in higher-risk settings, so long as they complied with

2    certain masking and testing requirements." *Id.* at 16.

3         In response, Defendants argue that it would have posed an undue hardship to accommodate

4    Plaintiffs as desired, due to the likelihood of increased COVID-19 transmission and concomitant

5    implications for public trust. Defts.' Mot. at 24. They point to other COVID-19 vaccination cases

6    finding that "materially increas[ing] the risk of spreading the disease and undermin[ing] public

7    trust and confidence in the safety of" facilities like those at issue in this case is not a *de minimis*

8    harm. *Together Emps. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 441 (D. Mass. 2021),

9    *aff'd*, 32 F.4th 82 (1st Cir. 2022); *see Does 1-6 v. Mills*, 16 F.4th 20, 36 (1st Cir. 2021). In support

10   of those arguments, Defendants have submitted evidence indicating that vaccination is more

11   effective than masking and testing in preventing serious illness, transmission, and death from

12   COVID-19, and that hospitals and jails pose a particular risk of widespread and rapid

13   transmission. Rudman Decl., Ex. 2, Sub-Ex. 1 ¶¶ 18–19; Declaration of Arthur L. Reingold in

14   Support of Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiffs'

15   Motion for Partial Summary Judgment ("Reingold Decl.") ¶¶ 30–37.

16        While Defendants' evidence does support the efficacy of vaccination, Plaintiffs have

17   brought forth enough evidence to create a dispute of material fact as to undue hardship. Plaintiffs

18   have shown that the overwhelming majority of County residents were vaccinated by March 2022,

19   and that a large majority of residents were already vaccinated at the time the County adopted the

20   vaccine mandate at the heart of this action. Onishenko Decl., Exs. 49, 59. They have also shown

21   that masking and social distancing does help prevent COVID-19 transmission, and that it was the

22   mode of transmission control utilized prior to the time that vaccines became available. Reingold

23   Decl. ¶ 30; Rudman Decl., Ex. 2 ¶ 10; Onishenko Decl., Ex. 11 at 29:22–30:9. Particularly during

24   the second half of the Class period, when the County's Health Order had been updated to permit

25   unvaccinated, exempt individuals to return to work even in higher-risk settings, *see* Onishenko

26   Decl., Ex. 9, Plaintiffs' evidence raises a dispute of fact regarding whether the County could have

27   accommodated Plaintiffs and Class members in a different way—such as with masking and

28   testing—without experiencing "undue hardship." *E.g.*, Declaration of Bethany Onishenko in

United States District Court
Northern District of California

17

1    Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("2d Onishenko

2    Decl."), Ex. 76.  Similarly, Plaintiffs' evidence creates a dispute of fact regarding whether the

3    programmatic risks and costs associated with placing exempt employees on leave, rather than

4    accommodating them with masking and testing, were significant enough to undermine the

5    County's claims that such accommodations would have created undue hardship.  *E.g.*, Onishenko

6    Decl., Ex. 8 (indicating that the County at large established a "limited waiver process for

7    implementation of the requirement" in the December 28 Health Order "in light of the rapid onset

8    of critical staffing concerns at some facilities with Higher-Risk Settings").  Given that evidence,

9    the Court finds itself unable to conclude that no reasonable trier of fact could find other than for

10   County at trial on the question of undue hardship.  *See Celotex*, 477 U.S. at 325.  Nor, however,

11   can the Court find that Plaintiffs have proven that Defendants would not be able to carry their

12   ultimate burden at trial.  *See Nissan Fire*, 210 F.3d at 1102.

         **B.    Free Exercise and Equal Protection Claims**

14          Pursuant to the First Amendment of the United States Constitution, "Congress shall make

15   no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S.

16   Const. amend. I.  The requirements of the First Amendment are made applicable to the actions of

17   municipalities through the Fourteenth Amendment.  In reviewing a policy such as the County's for

18   compliance with the Free Exercise Clause, courts assess whether the policy is religiously neutral

19   and generally applicable; if so, the policy is subject only to "rational basis" review.  *See Church of*

20   *Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993) ("[A] law that is neutral and

21   of general applicability need not be justified by a compelling governmental interest even if the law

22   has the incidental effect of burdening a particular religious practice."); *Stormans, Inc. v. Wiesman*,

23   794 F.3d 1064, 1075–76 (9th Cir. 2015).  A policy has a "rational basis" if it is "rationally related

24   to a legitimate governmental purpose."  *Stormans*, 794 F.3d at 1084.  However, if the policy is *not*

25   religiously neutral, struct scrutiny applies: the government action must be "justified by a

26   compelling governmental interest and must be narrowly tailored to advance that interest."

27   *Lukumi*, 508 U.S. at 531–32.  Since Plaintiffs' Equal Protection claim is "but another phrasing of"

28   their Free Exercise claim, the following analysis applies to both claims in tandem.  *See Prince v.*

United States District Court
Northern District of California

18

1    *Massachusetts*, 321 U.S. 158, 170 (1944).

2         As at the motion for preliminary injunction stage, the Parties separately analyzed the

3    County's vaccination mandate and its accompanying accommodations process for their

4    constitutional conformity.  However, Plaintiffs' theory has evolved somewhat over the last two

5    years.  When seeking the preliminary injunction, Plaintiffs challenged (1) the vaccination mandate

6    generally, and (2) the accommodations process insofar as it endowed preferential treatment on

7    certain exempt employees.  Now, however, Plaintiffs' first challenge focuses more narrowly on

8    the "Risk Tier System" established alongside the vaccination mandate.  *See* Plfs.' Opp. at 21

9    ("Plaintiffs are challenging the RTS, not the vaccination requirement.").  The second component

10   of their Free Exercise Claim remains the same as at the preliminary injunction stage: Plaintiffs

11   challenge the County's accommodations process because it gave employees who were exempt

12   based on a disability "priority consideration" over those who were exempt based on a religious

13   belief.  Plfs.' Mot. at 20.  The Court considers each challenged component in turn.

14        **1.  Risk Tier System**

15        Plaintiffs assert that the Risk Tier System renders the County's vaccine policies

16   unconstitutional.  Plfs.' Mot. at 18.  Specifically, Plaintiff argues that because the Risk Tier

17   System "allow[ed] department heads to evaluate the risk level of a religiously exempt employee's

18   position on an individualized basis" after that employee sought an exemption, it was not "neutral

19   and generally applicable."  *Id.* at 19.  Plaintiffs therefore assert that the Risk Tier System is subject

20   to strict scrutiny, and that it cannot satisfy that standard of review because "taking away Plaintiffs'

21   and Class members' livelihoods was not the least restrictive means of achieving" the interest of

22   "stemming the spread of COVID-19."  *Id.* at 22.  Unsurprisingly, Defendants argue that the policy

23   was neutral and generally applicable.  Defendants say that the policy "applied to all County

24   personnel and did not single out employees who declined vaccination on religious grounds."

25   Defts.' Mot. at 11.  Instead, the policy expressly accommodated employees seeking religious

26   exemptions.  *Id.*  Nor did the policy permit or encourage evaluators determining an employee's

27   risk level to consider religious belief; instead, Defendants say, the Public Health Department

28   issued guidance on the factors that could be considered to assess COVID-19 transmission risk.  *Id.*

United States District Court
Northern District of California

1  at 12. As a result, Defendants believe that the Risk Tier System is subject to rational basis review,

2  and that it can satisfy that standard. *Id.* at 11–14.

3      "The tests for neutrality and general applicability are interrelated," but each criterion has

4  its own analysis. *See Stormans*, 794 F.3d at 1076 (citing *Lukumi*, 508 U.S. at 531) (internal

5  alterations omitted). A law is not neutral if "the object of [the] law is to infringe upon or restrict

6  practices because of their religious motivation." *Id.* Such an object can appear on the law's face

7  or through its operation. *See id.* "A law lacks facial neutrality if it refers to a religious practice

8  without a secular meaning discernable from the language or context." *Id.* (quoting *Lukumi*, 508

9  U.S. at 533). It lacks operational neutrality if, "because of the way the ordinance operate[s] in

10  practice," it impermissibly targets religious practices. *Id.* "A law is not generally applicable if it,

11  in a selective manner, imposes burdens only on conduct motivated by religious belief." *Id.* at

12  1079 (quoting *Lukumi*, 508 U.S. at 543) (internal alterations omitted). The selective burdens may

13  become apparent through features like: (1) substantial underinclusion of "non-religiously

14  motivated conduct that might endanger the same governmental interest that the law is designed to

15  protect," (2) a system of "unfettered discretion that would permit discriminatory treatment of

16  religion or religiously motivated conduct," or (3) selective enforcement "against religiously

17  motivated violations but not against secularly motivated violations." *See id.* at 1079–83.

18      The Court finds that the undisputed evidence confirms that the Risk Tier System is neutral

19  and generally applicable. Plaintiff specifically challenges the Risk Tier System's general

20  applicability by pointing to its purported "individualized government assessment" based on

21  "subjective beliefs and opinions." Plfs.' Mot. at 19–20. But the Court notes that Plaintiff's cases

22  regarding situations of individualized governmental assessment are not directly on point. In both

23  *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021), and *Dahl v. Board of Trustees of Western*

24  *Michigan University*, 15 F.4th 728 (6th Cir. 2021), the problematic individualized assessment had

25  to do with whether to grant a religious exemption in the first place. *Fulton* addressed a case in

26  which a government commissioner had "sole discretion" to decide whether to grant a religious

27  exemption from a provision of a city foster care contract. *Id.* at 534–35. The city "made clear that

28  the Commissioner 'ha[d] no intention of granting an exception'" to a religious entity, and the

United States District Court
Northern District of California

1   Supreme Court found that this refusal to grant religious exemptions where other types of

2   exemptions were permitted was subject to strict scrutiny.  *Id.* at 535, 541.  Similarly, in *Dahl* the

3   concern was that the individualized approval of exemptions "invite[d] the government to decide

4   *which reasons* for not complying with the policy are worthy of solicitude."  15 F.4th at 734

5   (emphasis added).  In other words, the government entity in question had discretion to subjectively

6   evaluate whether a religious rationale was adequate to permit exemption from the applicable rule.

7   Here, in contrast, there is no allegation about individualized assessments of *whether* to grant

8   County employees religious exemptions from the vaccination mandate.  Rather, the individualized

9   assessment has to do with the level of risk presented by the position held by an employee who had

10   *already* been granted an exemption, regardless of the basis for the exemption.

11        Moreover, Plaintiffs' suggestions that the classification was entirely subjective and

12   untethered are unsupported by the evidence.  Categorization of positions into risk tiers was guided

13   by objective criteria, including "the quantity and nature of contact an employee has with others;

14   the risk posed to vulnerable populations served by the County (e.g., young children, unhoused

15   persons, jail inmates); the risk posed to persons at serious risk of illness and death from COVID-

16   19 (e.g., elderly persons, persons with significant underlying medical conditions,

17   immunocompromised persons); the risk posed to other employees; the risk of COVID-19

18   outbreaks in the work setting (e.g., in congregate settings); and the essential job functions the

19   employee must perform."  Onishenko Decl., Ex. 10.  Crucially, Plaintiffs have presented *no*

20   evidence indicating that religion—or any other criteria besides those in the above-enumerated

21   list—was a consideration in any categorization determination.  Since categorization of exempt

22   employees was "tied directly to limited, particularized, business-related, objective criteria" and no

23   evidence indicates that those individuals making the determinations departed from those criteria,

24   the Court concludes that the Risk Tier System did not "create a regime of unfettered discretion that

25   would permit discriminatory treatment of religion or religiously motivated conduct."  *Stormans*,

26   794 F.3d at 1082.  Therefore, the Risk Tier System is subject only to rational basis review.

27        The Court has no trouble concluding that the Risk Tier System passes rational basis

28   review.  The County certainly has "a legitimate government interest in preventing the spread of

COVID-19." *See Wise v. Inslee*, No. 2:21-CV-0288, 2021 WL 4951571, at *3 (E.D. Wash. Oct. 25, 2021) (citing *Slidewaters LLC v. Washington State Dep't of Lab. & Indus.*, 4 F.4th 747, 758 (9th Cir. 2021) ("There is a legitimate state interest in preventing the spread of COVID-19, a deadly contagious disease.")). And, as other courts have concluded, "increasing vaccination rates among those employees who come into regular contact with vulnerable populations . . . is a rational action to reduce the spread of COVID-19." *Id.*; *cf. Does 1-6*, 16 F.4th at 31–32 (upholding under rational basis review a law "requir[ing] all healthcare workers who can be vaccinated safely to be vaccinated"). The Risk Tier System permits the County to tailor the accommodations used by exempt employees to the level of risk of COVID-19 transmission attendant upon those employees' professional roles and is rationally related to the County's interest in preventing the spread of COVID-19.

Accordingly, the Court hereby GRANTS summary judgment in favor of Defendants on Plaintiffs' Free Exercise and Equal Protection claims insofar as the Risk Tier System is concerned. The Court DENIES Plaintiffs' motion for summary judgment on the same claims insofar as they are based on the Risk Tier System, as Plaintiffs failed to meet their initial burden to show that "no reasonable trier of fact could find other than" for Plaintiffs. *See Celotex*, 477 U.S. at 325.

### 2. Priority Consideration in the Accommodations Process

Defendants fare differently with regard to the constitutionality of their accommodations procedures. Plaintiffs point out that a policy is not neutral and generally applicable where it "treat[s] any comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021). "[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Id.* (citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18–19 (2020)). In this case, Plaintiffs say that the County "treated medically exempt employees . . . more favorably than [similarly situated] religiously exempt employees," because medically exempt employees were "entitled to priority consideration for placement in or selection for vacant positions." Plfs.' Mot. at 20. The Court found a likelihood of success on the merits for Plaintiffs on this point at the preliminary injunction stage. *See* ECF No. 44 at 17–18. Now that the Parties

United States District Court
Northern District of California

1  have reached the summary judgment stage, the Court formally concludes that the County's

2  implementation of an accommodations procedure that favored individuals with exemptions based

3  on disability over those with exemptions based on religion was not neutral and generally

4  applicable.  The undisputed evidence establishes that the County offered both religious and secular

5  bases for exemptions and categorized all exempt employees' roles using the Risk Tier System.

6  Onishenko Decl., Exs. 5 & 10.  In this sense, employees with religious exemptions were similarly

7  situated to employees with disability-based exemptions.  Then, however, the County noted that

8  those with disability-based exemptions might be entitled to "priority consideration" for transfers to

9  alternative positions.  *Id.* Ex. 6 at 2.  In practice, this "priority consideration" may have effectively

10  disfavored certain exempt employees based on religion.  Therefore, the Court must apply strict

11  scrutiny to its evaluation of that portion of the accommodations process.

12  "Stemming the spread of COVID-19 is unquestionably a compelling interest," *Roman*

13  *Catholic Diocese*, 592 U.S. at 18, but Defendants' system of preferential treatment in its

14  accommodations process is not narrowly tailored to that interest.  As the Court previously noted in

15  its order on the motion for preliminary injunction, the risk that an unvaccinated, exempt employee

16  poses with regard to transmission of COVID-19 does not differ based on whether that person

17  obtained the exemption for religious reasons or for health-related reasons.  *See* ECF No. 44 at 20.

18  The type of exemption granted also does not alter how suitable the exempt employee might be for

19  a lower-risk position to which they could potentially transfer.  *See id.*  Prioritizing employees

20  differently for transfers based on the type of exemption they received, then, is not narrowly

21  tailored to the interest of limiting COVID-19 transmission, so this accommodations policy fails

22  strict scrutiny.

23  Moreover, to the extent that the County asserts its obligation to comply with disability law

24  as the interest served, this interest is not "compelling" when the risk of non-compliance is not

25  genuine.  The Supreme Court has instructed that "in no world may a government entity's concerns

26  about phantom constitutional violations justify actual violations of an individual's First

27  Amendment rights."  *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 (2022).  This logic is

28  equally applicable to "phantom" statutory violations: where there is not an *actual* conflict with a

23

United States District Court
Northern District of California

legal right, the government entity is required to comply with both constitutional mandates and statutory ones. *Id.* Here, the County could have done so by treating employees with religious exemptions and employees with disability-based exemptions equally in the accommodations process.

However, the Court still cannot grant Plaintiffs' partial motion for summary judgment on the Free Exercise Claim insofar as it relates to this feature of the County's accommodations framework, because—as Defendants point out—many Class members cannot establish injury. *See* Defts.' Mot. at 18. Out of 463 Class members, 309 never even applied for lower-risk jobs, so they could not have experienced discrimination with regard to the placement procedures. Quon Decl. ¶ 5 & Ex. 1. And of the twenty exempt employees who received "job placement or modification accommodations," the majority—sixteen of those twenty individuals—had received religious exemptions. Defts.' Mot. at 8; *see* Onishenko Decl., Ex. 26. In fact, Defendants assert that "[n]o religious exempt employee lost out on a job, placement assistance, or any other opportunity due to preferential treatment given to other exempt employees." Defts.' Mot. at 8. Once again, then, the Court cannot resolve Plaintiff's motion for summary judgment on the Free Exercise and Equal Protection claims on a class-wide basis. Furthermore, Plaintiffs have not submitted sufficient evidence to discern whether the named Plaintiffs *themselves* were injured, since it is unclear whether any other employee received "priority consideration" over them during the accommodations process. For both reasons, the Court DENIES Plaintiffs' motion for summary judgment on the accommodations procedure portion of the Free Exercise and Equal Protection claims. Since Defendants have not "negat[ed] an essential element of" Plaintiffs' claims or shown that Plaintiffs "do[] not have enough evidence of an essential element to carry [their] ultimate burden of persuasion at trial," the Court also DENIES Defendants' motion for summary judgment on the same portion of the Free Exercise and Equal Protection claims. *Nissan Fire*, 210 F.3d at 1102.

### C. *Monell* Claim

*Monell* municipal liability arises where an unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that

1    body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

2    "A municipal defendant is liable only 'where the entity's policies evince a "deliberate

3    indifference" to the constitutional right and are the "moving force behind the constitutional

4    violation."'" *Rivera v. Cnty. of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014) (quoting *Edgerly*

5    *v. City and Cnty. of San Francisco*, 599 F.3d 946, 960 (9th Cir. 2010)).  Plaintiffs have yet to

6    prove that the named Plaintiffs or Class members suffered a constitutional violation, *see supra*

7    section III.B, so the Court cannot grant summary judgment in favor of Plaintiffs on the *Monell*

8    claim.

9         **D. Establishment Clause Claim**

10        The First Amendment of the United States Constitution states that "Congress shall make

11   no law respecting an establishment of religion."  U.S. Const. amend. I.  This prohibition is

12   incorporated against the states via the Fourteenth Amendment.  *Everson v. Bd. of Ed. of Ewing*

13   *Twp.*, 330 U.S. 1, 8 (1947).  Two years ago, the Supreme Court explained that "the Establishment

14   Clause must be interpreted by 'reference to historical practices and understandings,' drawing the

15   line between permissible and impermissible government action in a way that 'accord[s] with

16   history and faithfully reflect[s] the understanding of the Founding Fathers.'"  *Hunter v. U.S. Dep't*

17   *of Educ.*, 115 F.4th 955, 963 (9th Cir. 2024) (quoting *Kennedy*, 597 U.S. at 535–36) (alterations in

18   original).  The former, "ahistorical approach to the Establishment Clause" embodied in *Lemon v.*

19   *Kurtzman*, 403 U.S. 602 (1971), was "abandoned" along with "its endorsement test offshoot."

20   *Kennedy*, 597 U.S. at 534–35.

21        Although Plaintiffs do not seek summary judgment on the Establishment Clause Claim,

22   Defendants do.  Defts.' Mot. at 19.  Defendants say that their policies "were indisputably adopted

23   for the secular purpose of combating the COVID-19 emergency" and do not "advance [or]

24   disapprove of religion."  *Id.*  Plaintiffs respond that "the County has demonstrated unequivocal

25   hostility towards religion" by "preferencing accommodations for secular objectors over religious

26   objectors."  Plfs.' Opp. at 24–25.  Neither side clearly addresses the governing Establishment

27   Clause standard, although Defendants briefly state that "historically, providing 'preferential

28   consideration' to disabled persons has been permitted since at least the Civil War."  Defts.' Reply

at 9.

The Court is "reluctant to attribute unconstitutional motives" to the County. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1255 (9th Cir. 2007) (*quoting Am. Family Ass'n., Inc. v. City & Cnty. of San Francisco*, 277 F.3d 1114, 1121 (9th Cir. 2002)). However, on a motion for summary judgment, a moving party that does not have the burden of proof on an issue at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102. The Court finds that Defendants have fallen short of carrying this burden. Defendants offer evidence that Plaintiffs' class representatives admitted that they have not experienced hostility to their religion. *E.g.*, Anderson Decl., Ex. X at 35:14–19; *id.*, Ex. CC at 40:5–12. The Court rejects Plaintiffs' objection to this evidence, *see* Plfs.' Opp. at 25, since the Court finds that the deposition questions were not impermissibly vague and did not use the word "hostility" in order to secure a legal conclusion. However, the Court agrees with Plaintiffs that the class representatives' statements about their personal experiences bearing on hostility to religion are not enough to negate an essential element of Plaintiffs' Establishment Clause claim. Accordingly, Defendants have failed to carry their burden in moving for summary judgment on the Establishment Clause claim.

Defendants' reliance on cases supporting preferential treatment of disabled persons does not persuade the Court otherwise. Those cases are not analogous to the situation at hand, because they did not concern a policy that specifically gave disabled persons preferential treatment over similarly situated religious persons. *See Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 281 (1979) (addressing a law permitting preferential treatment of veterans that had a disproportionate effect on women); *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004) (holding that Title II of the Americans with Disabilities Act was a valid exercise of Congress's power under the Fourteenth Amendment). Accordingly, the Court hereby DENIES Defendants' motion for summary judgment on Plaintiffs' Establishment Clause Claim.

### E. Dismissal of County Official Defendants

In the final section of their Motion, Defendants argue that, at the very least, "[t]he County

United States District Court
Northern District of California

officials sued by Plaintiffs solely in their official capacities . . . should be dismissed." Defts.' Mot. at 25 (citing *Ctr. For Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008)). Plaintiffs do not respond to this argument, and the Court agrees that the individual County officials sued in their official capacities are redundant parties and are not necessary to resolution of the action. The Court therefore DISMISSES County Health Officer Sara Cody, former County Counsel James Williams, and former County Executive Dr. Jeffrey Smith.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiffs' and Defendants' respective motions for summary judgment are DENIED as to the FEHA and Title VII causes of action.

2. Defendants' motion for summary judgment is GRANTED as to the Free Exercise and Equal Protection Claims insofar as they are based on the Risk Tier System, and Plaintiffs' partial motion for summary judgment is DENIED to that extent. Both Plaintiffs' and Defendants' respective motions are DENIED as to the Free Exercise and Equal Protection Claims insofar as they are based on the accommodations procedure.

3. Plaintiffs' motion for partial summary judgment on the County's *Monell* liability for the accommodations policy is DENIED, since Plaintiffs have not yet prevailed in proving a constitutional violation.

4. Defendants' motion for summary judgment on the Establishment Clause Claim is DENIED.

5. County Health Officer Sara Cody, former County Counsel James Williams, and former County Executive Dr. Jeffrey Smith are DISMISSED as redundant defendants.

**IT IS SO ORDERED.**

Dated: January 15, 2025

BETH LABSON FREEMAN
United States District Judge