1  Robert H. Tyler, CA Bar No. 179572
   btyler@faith-freedom.com
2  Bethany Onishenko (*Pro Hac Vice*)
   bonishenko@faith-freedom.com
3  **ADVOCATES FOR FAITH & FREEDOM**
   25026 Las Brisas Road
4  Murrieta, California 92562
   Telephone:     (951) 600-2733
5  Facsimile:      (951) 600-4996

6  Rachele R. Byrd (190634)
   byrd@whafh.com
7  Stephanie Aviles (350289)
   saviles@whafh.com
8  **WOLF HALDENSTEIN ADLER**
    **FREEMAN & HERZ LLP**
9  750 B Street, Suite 1820
   San Diego, California 92101
10 Telephone:     (619) 239-4599
   Facsimile:      (619) 234-4599

11 *Plaintiffs' Class Counsel*

12              **UNITED STATES DISTRICT COURT**

13        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14                   **SAN JOSE DIVISION**

15

16 **UNIFYSCC**, an unincorporated California       Case No.:  22-cv-01019 BLF
   association on behalf of employees in Santa Clara
17 County; **TOM DAVIS**, individually, and on behalf
   of all others similarly situated; **MARIA**      **PLAINTIFFS' OPPOSITION TO**
18 **RAMIREZ**, individually, and on behalf of all   **DEFENDANT'S MOTION FOR CLASS**
   others similarly situated; **ELIZABETH**          **DECERTIFICATION**
19 **BALAYUT**, individually, and on behalf of all
   others similarly situated,                        DATE:          March 13, 2025
20                                                    TIME:          9:00 a.m.
                   Plaintiffs,                        CTRM:          3, 5th Floor
21                                                    JUDGE:         Hon. Beth Labson Freeman
   vs.
22
   **SANTA CLARA COUNTY**,
23
                   Defendant.
24

25

26

27

28
   _____
   PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR CLASS DECERTIFICATION
                                              Case No. 22-cv-01019 BLF

**TABLE OF CONTENTS**

<u>**Page(s)**</u>

I.   INTRODUCTION ...................................................................................................1

II.  BACKGROUND ..................................................................................................3

    A.  Procedural History .........................................................................................3

    B.  Statement of Facts..........................................................................................4

III. LEGAL STANDARD...........................................................................................6

IV. ARGUMENT ........................................................................................................7

    A.  Defendant Has Not Demonstrated Decertification Is Appropriate .........................7

        1.  The Basic Premise That Led to Certification is Correct ...........................7

        2.  The Class is Ascertainable and Has Standing ...........................................9

            a.  Class Members Who Vaccinated and Were Therefore Not Placed on Administrative Leave Were Nonetheless Injured and Have Standing......................9

            b.  Class Members Who Did Not Apply for Lower-Risk Jobs Nevertheless Have Standing .........................................................13

            c.  Permitting Class Members to Use Their Leave Banks Is Not "Paid" Leave.................................................................................16

        3.  The Class Shares a Common Injury.........................................................18

        4.  The County's Accommodations Policies Applied Classwide, And Mitigation Issues Have Been Bifurcated .....................................................................20

    B.  UnifySCC No Longer Has Standing.............................................................23

V.  CONCLUSION....................................................................................................23

1

2

# TABLE OF AUTHORITIES

## CASES                                                                                                                  Page(s)

*Am. Postal Workers Union, San Francisco Loc. v. Postmaster Gen.*,
    781 F.2d 772 (9th Cir. 1986) ........................................................................................22

*Andre-Rodney v. Hochul*,
    618 F. Supp. 3d 72 (N.D.N.Y. 2022) ..........................................................................12

*Arizona All. for Retired Americans v. Mayes*,
    No. 22-16490, 2024 WL 4246721 (9th Cir. Sept. 20, 2024) ......................................23

*Arnold v. United Artists Theatre Cir., Inc.*,
    158 F.R.D. 439 (N.D. Cal. 1994)..................................................................................22

*Astiana v. Kashi Co.*,
    295 F.R.D. 490 (S.D. Cal. 2013) ...................................................................................6

*Bd. of Educ. of Cent. Sch. Dist. No. 1 v. Allen*,
    392 U.S. 236 (1968) .....................................................................................................10

*Dawson v. Akal Sec. Inc.*,
    660 F. App'x 504 (9th Cir. 2016) .................................................................................17

*Doe(s) v. Pittsburgh Reg'l Transit*,
    684 F. Supp. 3d 417 (W.D. Pa. 2023) ..........................................................................11

*Donovan v. Biden*,
    603 F. Supp. 3d 975 (E.D. Wash. 2022), *aff'd in part, appeal dismissed in part and*
    *remanded sub nom. Donovan v. Vance*, 70 F.4th 1167 (9th Cir. 2023) ........................12

*Donovan v. Vance*,
    576 F. Supp. 3d 816 (E.D. Wash. 2021), *aff'd in part, appeal dismissed in part and*
    *remanded*, 70 F.4th 1167 (9th Cir. 2023) .....................................................................12

*Doster v. Kendall*,
    54 F.4th 398 (6th Cir. 2022) ...........................................................................................8

*E.E.O.C. v. Townley Eng'g & Mfg. Co.*,
    859 F.2d 610 (9th Cir. 1988) ........................................................................................11

*Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*,
    877 F.3d 487 (3rd Cir. 2017) ........................................................................................11

*Food & Drug Admin. v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024)......................................................................................................23

*Fulton v. City of Philadelphia, Pennsylvania*,
    593 U.S. 522 (2021) .....................................................................................................19

*Gage v. Mayo Clinic*,
    707 F. Supp. 3d 870 (D. Ariz. 2023) ...........................................................................10

*Gannon v. Potter,*
 No. C 05-2299SBA, 2006 WL 3422215 (N.D. Cal. Nov. 28, 2006),
 *aff'd*, 298 F. App'x 623 (9th Cir. 2008).................................................................18

*Gen. Tel. Co. of Sw. v. Falcon,*
 457 U.S. 147 (1982)..................................................................................................6

*Green v. Safeway Stores,*
 No. C 96-03471 CRB, 1998 WL 898366 (N.D. Cal. Dec. 14, 1998).........................18

*Hanlon v. Chrysler Corp.,*
 150 F.3d 1011 (9th Cir. 1998)................................................................................20

*Hanon v. Dataproducts Corp.,*
 976 F.2d 497 (9th Cir. 1992)....................................................................................6

*Heller v. EBB Auto Co.,*
 8 F.3d 1433 (9th Cir. 1993).............................................................10, 11, 16, 20, 21

*Heredia v. Eddie Bauer LLC*
 No. 16-CV-06236-BLF, 2020 WL 127489 (N.D. Cal. Jan. 10, 2020).................8, 12, 13

*Hobbie v. Unemployment Appeals Comm'n of Fla.,*
 480 U.S. 136 (1987)................................................................................................10

*Hovsepian v. Apple, Inc.,*
 No. 08-5788 JF (PVT), 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009)......................13

*Hunt v. Washington State Apple Advert. Comm'n,*
 432 U.S. 333 (1977)................................................................................................23

*In re: AutoZone, Inc., Wage & Hour Emp. Pracs. Litig.*
 No. 3:10-MD-02159-CRB, 2016 WL 4208200 (N.D. Cal. Aug. 10, 2016)....................8

*In re AutoZone, Inc., Wage & Hour Emp. Pracs. Litig.,*
 289 F.R.D. 526, 530 (N.D. Cal. 2012)......................................................................13

*Keene v. City & Cnty. of San Francisco,*
 No. 22-16567, 2023 WL 3451687 (9th Cir. May 15, 2023)......................................10

*Knight v. Kenai Peninsula Borough Sch. Dist.,*
 131 F.3d 807 (9th Cir. 1997)....................................................................................7

*Krueger v. Wyeth, Inc.,*
 310 F.R.D. 468 (S.D. Cal. 2015)................................................................................6

*Longmire v. City of Oakland,*
 No. C 10-01465 JSW, 2011 WL 5520958 (N.D. Cal. Nov. 14, 2011).........................17

*Lujan v. Defs. of Wildlife,*
 504 U.S. 555 (1992)..................................................................................................9

*Lyon v. U.S. Immigr. & Customs Enf't,*
 308 F.R.D. 203 (N.D. Cal. 2015)...............................................................................6

*Metoyer v. Chassman*,
    504 F.3d 919 (9th Cir. 2007) .................................................................................................10

*Mois v. Wynn Las Vegas LLC*,
    715 F. App'x 600 (9th Cir. 2017) ..........................................................................................17

*Ms. L. v. U.S. Immigr. & Customs Enf't ("ICE")*,
    330 F.R.D. 284 (S.D. Cal. 2019) ...........................................................................................13

*Nat'l Ass'n of Afr. Am.-Owned Media v. Charter Comm'ns, Inc.*,
    915 F.3d 617 (9th Cir. 2019) .................................................................................................10

*Opuku-Boateng v. State of Cal.*,
    95 F.3d 146 (9th Cir. 1996) ...................................................................................................11

*Palmer v. Cognizant Tech. Sols. Corp.*,
    No. CV 17-6848-DMG (PLAX), 2024 WL 4329110 (C.D. Cal. Sept. 10, 2024) .................6

*Rodriguez v. City of Chicago*,
    No. 95 C 5371, 1996 WL 22964 (N.D. Ill. Jan. 12, 1996) ....................................................11

*Roy v. Cnty. of Los Angeles*,
    No. CV 13-04416-AB (FFMx), 2018 WL 3435417 (C.D. Cal. July 11, 2018) .....................6

*Sambrano v. United Airlines, Inc.*,
    45 F.4th 877 (5th Cir. 2022) ..................................................................................................17

*Schneider v. Cnty. of San Diego*,
    285 F.3d 784 (9th Cir. 2002) .................................................................................................16

*Sch. Dist. of Abington Twp., Pa. v. Schempp*,
    374 U.S. 203 (1963) ...............................................................................................................10

*Soares v. Flowers Foods, Inc.*,
    320 F.R.D. 464 (N.D. Cal. 2017) ...........................................................................................22

*Steenmeyer v. Boeing Co.*,
    92 F. Supp. 3d 1024 (W.D. Wash. 2015) ...............................................................................17

*Stockwell v. City & Cnty. of San Francisco*,
    749 F.3d 1107 (9th Cir. 2014) .................................................................................................8

*Tilton v. Richardson*,
    403 U.S. 672 (1971) ...............................................................................................................10

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) ...............................................................................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ...........................................................................................................20

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) ...............................................................................................22

*Weigele v. FedEx Ground Package Sys. Inc.*,
    267 F.R.D. 614 (S.D. Cal. 2010) ...................................................................................7

*Zimmerman v. PeaceHealth*,
    701 F. Supp. 3d 1099 (W.D. Wash. 2023) ..............................................................10, 17

**STATUTES & RULES**                                                                **Page(s)**

California's Fair Employment and Housing Act, Government Code § 12900, *et seq*................... *passim*

Equal Protection Clause of the Fourteenth Amendment to the United States Constitution ......... *passim*

Free Exercise Clause of the First Amendment to the United States Constitution ...................... *passim*

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ........................................ *passim*

Federal Rules of Civil Procedure
    Rule 23(a)...............................................................................................................6, 23
    Rule 23(a)(2).........................................................................................................2, 18
    Rule 23(b)(3)................................................................................................................6
    Rule 23(c)(1)(C)..........................................................................................................6

I.     **INTRODUCTION**

On January 29, 2024, this Court certified a Class of 463 County personnel who received religious exemptions to Defendant Santa Clara County's ("the County" or "Defendant")) August 5, 2021 COVID-19 vaccination policy, and who worked in what the County labeled as "high-risk" jobs. *See* ECF No. 125 at 5, 25. Defendant now asks the Court to decertify the Class, asserting that the premise that led to certification – that the County put all Class members on involuntary unpaid administrative leave – is incorrect. ECF No. 176 ("Mot."). However, the County's vaccination policies and orders prove the opposite as true, rendering decertification inappropriate.

Specifically, the County informed each Class member via letter that, unless they got vaccinated by November 1, 2021, they would be placed on an indefinite unpaid leave of absence. Pursuant to County policy, Class members could utilize their already earned and accrued leave bank time (such as vacation, STO, comp time, or sick time) during their leaves of absence, after which their leave would be unpaid. The Class's injuries – whether constitutional or economic – stem from this one policy. Plaintiffs' claims concerning the County's prioritization of medical and disability exemptions for accommodation are also claims concerning the County's policy – which applied to every member of the Class in the same way – rather than against the County's conduct toward certain employees.

Additionally, the County's arguments pertaining to ascertainability rest upon the incorrect assertion that over half of the members of the Class lack standing. The 238 class members who never went on administrative leave because they took the vaccine have standing under both their Constitutional claims and their Title VII/FEHA claims. These Class members suffered constitutional injury when they were unlawfully coerced into taking the COVID-19 vaccine, only after seeking an accommodation, in violation of the sincerely held religious beliefs. And they have standing under Title VII and FEHA because in the Ninth Circuit one element of a prima facie case of failure to accommodate claim is the employer *threatened* or otherwise subjected them to an adverse employment action because of their inability to fulfill the job requirement that conflicted with their religious belief. The case the Court relied upon in its Order Denying Plaintiffs' Partial Motion for Summary Judgment, and Granting in Part and Denying in Part Defendant's Cross-Motion for Summary Judgment (ECF No. 178) (the

"MSJ Order") was from a district court in the Third Circuit, which requires a different showing that does not include threatened adverse action. But, in the Ninth Circuit, demonstrating the employer *threatened* adverse employment action is sufficient. Therefore, every member of the Class has standing and Plaintiffs' claims are typical of the Class. In any event, decertification is not the solution since the Court can narrow the Class to exclude the members who never went on leave, should the Court find they lack standing.

Moreover, Plaintiffs and the Class have standing to pursue their Free Exercise Clause claim even if they did not apply for a lower-risk job through the Employment Services Agency ("ESA"). The County unlawfully gave preferential treatment to individuals to whom the County granted medical and disability exemptions in the accommodation process over those with religious exemptions, including by accommodating the former group *before* assisting Class members. And the minimal assistance provided to Class members was not comparable or equal to the assistance the County provided to individuals with medical and disability exemptions. All Class members were subjected to these unlawful County accommodations policies and therefore have suffered constitutional injury, entitling them to, at a minimum, nominal damages. Class members are not required to somehow unwind all of the unequal treatment they received as a result the County's discriminatory process in order to prove that in a "but for" world they would have received a transfer or reassignment to a comparable position.

Moreover, the overwhelming evidence demonstrates that Class members were placed on or threatened with indefinite, involuntary and *unpaid* administrative leave. While Class members were permitted to use their *already earned and accrued* leave bank time in order to continue to receive a paycheck—and an identifiable subset of the Class did so for some portion of the Class Period—using leave bank time does not make the leave "paid", distinguishing the facts here from the cases cited by the County and the Court in its MSJ Order.

Furthermore, as this Court previously held, "Plaintiffs have sufficiently identified [five] common questions of law or fact to meet their burden under Rule 23(a)(2)." ECF No. 125 at 8. There is no change in circumstances or facts that would require the Court to amend its ruling and decertify the Class. Plaintiffs still challenge discrete County-wide policies guided and supervised by County

1    executives that predominate over individualized issues.

2        Accordingly, Plaintiffs and Class members respectfully request that this Court deny Defendant's

3    Motion for Class Decertification.

4    **II.    BACKGROUND**

5        **A.    Procedural History**

6        Plaintiffs UnifySCC, Tom Davis and Maria Ramirez filed this action on February 18, 2022,

7    alleging claims against Sara H. Cody, James Williams, Jeffrey Smith and Santa Clara County (the

8    "County" or "Defendant"). *See* ECF No. 1. Plaintiffs UnifySCC, Tom Davis, Maria Ramirez, and

9    Elizabeth Baluyut ("Plaintiffs") filed a Verified First Amended Class Action Complaint for Declaratory

10   and Injunctive Relief and Damages (the "FAC") on August 23, 2022. ECF No. 55. The FAC added

11   Plaintiff Elizabeth Baluyut and class allegations, and asserted claims for: (1) Violation of the Free

12   Exercise Clause of the First Amendment to the United States Constitution (42 U.S.C. § 1983) (FAC,

13   ¶¶ 63–71); (2) Violation of FEHA (FAC, ¶¶ 72–78); (3) Violation of the Equal Protection Clause of the

14   Fourteenth Amendment to the United States Constitution (42 U.S.C. § 1983) (FAC, ¶¶ 79–85);

15   (4) Violation of the Establishment Clause of the First Amendment to the United States Constitution (42

16   U.S.C. § 1983) (FAC, ¶¶ 86–89); (5) Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C.

17   § 2000e, *et seq.*) (FAC, ¶¶ 90–93); and (6) Deprivation of Civil Rights Under 42 U.S.C. § 1983 (*Monell*)

18   (FAC, ¶¶ 94–97).

19       On July 14, 2023, Plaintiffs moved for class certification. ECF No. 81. On January 29, 2024,

20   the Court certified the following class with respect to liability but not damages:

21       All individuals who: 1) work or worked for the County and/or [] were subject to its vaccine
         policies and orders, including the Risk Tier System; 2) were forced by the County to
22       choose between taking the vaccine to maintain their jobs and/or their employment-related
         benefits or being placed on unpaid leave; 3) were [] classified as working in high risk jobs
23       pursuant to the County's Risk Tier System; and 4) received [] a religious exemption from
         the County (the "Class") between August 5, 2021 and September 27, 2022 (the "Class
24       Period").

25   ECF No. 125 at 25.

26       In July and August 2024, the Parties filed cross-motions for summary judgment. *See* ECF No.

27   141 ("Plaintiffs' MSJ"), ECF No. 143 ("Defendant's MSJ"). The Court heard oral argument on October

28

25, 2024, and issued a ruling on January 15, 2025. ECF No. 178. The Court's MSJ Order: (1) denied Defendant's MSJ and Plaintiffs' MSJ as to the FEHA and Title VII causes of action; (2) Granted Defendant's MSJ and denied Plaintiffs' MSJ as to the Free Exercise and Equal Protection Claims insofar as they are based on the Risk Tier System, but denied Plaintiffs' MSJ and Defendant's MSJ as to the Free Exercise and Equal Protection Claims insofar as they are based on the accommodations procedure; (3) denied Plaintiffs' MSJ on the County's *Monell* liability for the accommodations policy, since Plaintiffs have not yet prevailed in proving a constitutional violation; (4) denied Defendant's MSJ on the Establishment Clause Claim; and (5) dismissed sara Cody, James Williams and Jeffrey Smith as defendants. *Id*. at 27.

At the hearing on Plaintiffs' MSJ and Defendant's MSJ, the Court invited Defendant to file a motion for decertification of the Class (the "Motion" or "Mot."). Defendant filed its Motion on December 4, 2024. ECF No. 176.

**B.    Statement of Facts**

On August 5, 2021, Defendant issued a policy requiring all employees take the COVID-19 vaccine or request a medical and/or religious exemption. Declaration of Rachele R. Byrd in Support of Plaintiffs' Opposition to Defendant's Motion for Class Decertification ("Byrd Decl."), Ex. 1. Defendant's policy also created a risk tier system that classified employees as low risk, intermediate risk, or high risk (the "Risk Tier System"). *Id.* Ex 2. Employees in high-risk settings, including all Class Members, could not continue to work if they remained unvaccinated, even if they received a religious exemption. *Id*. Ex. 2 at 2.

On December 28, 2021, the County issued a health order "requiring up-to-date vaccination of personnel in higher-risk settings" in the County (i.e., both fully vaccinated and boosted against COVID-19 if eligible for a booster) by January 24, 2022. *Id.* Ex. 3. The higher risk settings included skilled nursing facilities, healthcare delivery facilities, medical first responders, and jails and other correctional facilities. *Id.* Ex. 3 at 3. The December 28 order also expanded the number of settings and positions considered high-risk. *Id.* Ex. 4 at -4742. On March 28, 2022, the County issued an updated vaccination policy requiring "all County personnel [to] be fully vaccinated and up-to-date on boosters for which

they are eligible." *Id.* Ex. 5 at -690.

The County granted all Class members religious exemptions, but the County purported to "accommodate" them by relegating them to unpaid leave unless they received the COVID-19 vaccination in violation of their recognized religious beliefs. *Id.* Ex. 6 at 131:6–15; 134:16–19; Ex. 7 at 17:9–12; 17:24–18:16; Ex. 8. Defendant told Class members they could use their already earned leave bank time while out on administrative leave, if available, ***but no Class members were actually "paid" while on administrative leave***. *Id.* Ex. 6 at 129:17–24; Ex. 9; Ex. 10 at -7394; Ex. 11 at -25410, -26972, -28701, -174, -181 ("You may apply your applicable leave banks (such as accrued vacation, STO, comp time, and, if applicable, sick time) to this leave of absence, after which your leave will be unpaid."). Faced with the County's threat that they would be placed on administrative leave without pay if they did not vaccinate by November 1, 2021 (*id.* Ex. 11), 238 Class Members avoided being placed on administrative leave by taking the vaccine. *See* Mot. at 3 (citing Anderson Decl., Ex. 31 [Volk Decl.] ¶¶ 11–15). 225 Class members, however, were placed on administrative leave without pay because they refused to compromise their religious beliefs.

The County did not offer reasonable accommodations to Plaintiffs and Class members such as weekly testing, teleworking, working a modified shift, or requiring them to wear N95 masks. And, County policy reflects that medically exempt employees were given "priority consideration for placement in or selection for vacant positions as part of the accommodation process, consistent with disability law." Byrd Decl., Ex. 8 at -2196.02; *id.* Ex. 6 at 93:20–94:3, 126:2–7. The County's own documents demonstrate that it was the County's policy to accommodate individuals with medical and disability exemptions ***before*** assisting Class members who had religious exemptions. *Id.* Ex. 12 at -6684; *id.* Ex. 13 at -7090–921. But this assistance was nothing more than directing Class members to apply for open County positions. The County Equal Opportunity Division ("EOD") worked with medically exempt employees to place them in new roles (specifically in lower risk tiers), while the County directed employees with religious exemptions to the Employee Services Agency ("ESA"), which gave them minimal assistance in applying for open County positions. *Id.* Ex. 10 at -7396; Ex. 14. Approximately 463 employees were provided with religious exemptions in high-risk settings, and 52

were provided with medical exemptions. *Id*. Ex. 15; *id*. Ex. 16. As a result of the County's unfair process, the County placed more than twice as many medically exempt personnel in alternative positions as religiously exempt personnel (7.69% versus 3.45%). *Id*. Ex. 17 (the County placed four employees with medical/disability exemptions in alternative positions and sixteen employees with religious exemptions in alternative positions).

## III.    LEGAL STANDARD

"[C]ourts retain discretion to revisit class certification throughout the legal proceedings, and may rescind, modify, or amend the class definition in light of subsequent developments in the litigation." *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 473–74 (S.D. Cal. 2015). This authority is found in Federal Rule of Civil Procedure 23(c)(1)(C), which states, "[a]n order that grants or denies class certification may be altered or amended before final judgment[,]" and in Supreme Court case law. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). "Once a class is certified, . . . it will not be altered except for good cause." *Palmer v. Cognizant Tech. Sols. Corp.*, No. CV 17-6848-DMG (PLAX), 2024 WL 4329110, at *2 (C.D. Cal. Sept. 10, 2024) (internal quotations and citation omitted). In considering the appropriateness of modification or decertification, "the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met." *Roy v. Cnty. of Los Angeles*, No. CV 13-04416-AB (FFMx), 2018 WL 3435417, at *2 (C.D. Cal. July 11, 2018) (internal citation omitted)); *see also Lyon v. U.S. Immigr. & Customs Enf't*, 308 F.R.D. 203, 210–11 (N.D. Cal. 2015); *Astiana v. Kashi Co.*, 295 F.R.D. 490, 492 (S.D. Cal. 2013).

Rule 23(a) requires that class members demonstrate numerosity, commonality, typicality, and adequate representation of the class's interests. FED. R. CIV. PRO. 23(a); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Rule 23(b)(3) additionally requires that the court find "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. Pro. 23(b)(3).

The decision on whether to decertify lies within the court's sound discretion. *Knight v. Kenai*

*Peninsula Borough Sch. Dist.*, 131 F.3d 807, 816 (9th Cir. 1997). The party seeking class decertification bears the burden of demonstrating that the elements of Rule 23 have not been established. *Weigele v. FedEx Ground Package Sys. Inc.*, 267 F.R.D. 614, 617 (S.D. Cal. 2010).

## IV.    ARGUMENT

### A.    Defendant Has Not Demonstrated Decertification Is Appropriate

The Court should deny Defendant's Motion for Class Decertification (the "Motion" or "Mot.") for four reasons: (1) the basic premise that led to this Court's certification of the Class was correct; (2) the Class is ascertainable and class members have standing; (3) the Class shares a common injury; and (4) there may be conflicting evidence, but it is either evidence common to the class or not germane to the common liability issues.

#### 1.    The Basic Premise That Led to Certification is Correct

As this Court correctly found in granting class certification, "Plaintiffs' claims against the Risk Tier System and the prioritization of medical and disability exemptions *are against the County's Policy* – which applied to every member of the class in the same way – rather than against the County's conduct toward certain employees." ECF No. 125 at 8 (emphasis added). Defendant contends this premise, and the Court's statement that "the Risk Tier System affected Class members in the same way—by putting them on leave because their roles were classified as high-risk," are false. Mot. at 7 (citing ECF No. 125 at 8–9). But, Defendant fails to establish this. Pursuant to its vaccination policies and orders, the County labeled every Class member as working in a "high-risk" job and informed each of them that ***they would be placed on administrative leave without pay if they did not vaccinate by November 1, 2021***. Byrd Decl., Ex. 11. Under such coercion, 238 Class members ultimately chose to get vaccinated. However, regardless of what these Class members chose to do under such duress, the County's policy remained the same and adversely affected all Class members. Accordingly, there is no "absence of a uniform policy and practice." Mot. at 7.

Defendant contends that individualized issues control because Class members "had highly individualized experiences with respect to accommodations, including paid leave, unpaid leave, job modifications that allowed them to continue working, and unique circumstances such as extended

worker's compensation leave or special assignments." Mot. at 7. However, the Court already rejected this argument and individualized inquiries do not control. ECF No. 125 at 8–9. The Court found it sufficient that each Class member was adversely affected by the County's uniform vaccination policies and orders as they were consistently applied to all Class members, regardless of the County providing individualized accommodations. *See id*. at 9 ("[T]he finder of fact need not determine whether each Class member sought a job transfer and did not secure it because of preferential treatment . . . . It is sufficient that Plaintiffs are challenging a policy that adversely affected the Class."). *See also Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1116 (9th Cir. 2014) ("the officers are all challenging a single policy they contend has adversely affected them."); *Doster v. Kendall*, 54 F.4th 398, 434–35 (6th Cir. 2022) (finding a common question where "[a] decisionmaker can answer 'yes' or 'no' to the question of whether the Air Force has followed a policy of denying religious exemptions based on its generic health and readiness justifications regardless of a service member's circumstances."), *cert. granted, judgment vacated on other grounds*, No. 23-154, 2023 WL 8531840 (U.S. Dec. 11, 2023). There are no grounds for the Court to reverse that finding. As discussed further *infra*., even the Class members who were coerced into getting vaccinated suffered injury, and the County's vaccination and "accommodation" policies were uniform and impacted each and every Class member.

Defendant's cases are inapposite. *See* Mot. at 7. In *In re AutoZone, Inc. Wage and Hour Employment Practices Litigation*, a wage-and-hour case concerning rest breaks, the court granted the defendant's motion to decertify the class because it had demonstrated that the policy that the Court had based its class certification ruling upon was "not in place throughout the class period" and that there were "no audit records or any other time records of when class members took rest breaks." No. 3:10-md-02159-CRB, 2016 WL 4208200, at *9 (N.D. Cal. Aug. 10, 2016). In *Heredia v. Eddie Bauer LLC*, "[t]he Court certified the class based on the premise (supported by the record at the time) that . . . the class [members] . . . were all equally subject to the same uniform security inspection policy." The defendant moved for decertification and demonstrated that the premise was "no longer supported by the record" because the defendant's "written security inspection policy . . . is silent on whether the exit inspections should be performed on the clock or off the clock," and the record showed that class members did not

experience a uniform policy. No. 16-CV-06236-BLF, 2020 WL 127489, at *4 (N.D. Cal. Jan. 10, 2020). There has been no similar showing here of a lack of a uniform policy consistently applied.

Therefore, the basic premise Defendant is challenging was and still is correct.

### 2. The Class is Ascertainable and Has Standing

Defendant next incorrectly argues that the Class is not ascertainable because "over half the class lacks standing." Mot. at 8. Defendant cites three facts in support: (1) 238 class members never went on leave; (2) 309 class members never sought job transfers; and (3) employees who received accommodations, such as paid leave, cannot allege injury because paid leave is not an adverse employment action. *Id.* Plaintiffs address each argument in turn.

#### a. Class Members Who Vaccinated and Were Therefore Not Placed on Administrative Leave Were Nonetheless Injured and Have Standing

*First*, the fact that 238 Class members never went on administrative leave is not new evidence. Defendant opposed Plaintiffs' Motion for Class Certification by arguing that "[o]ver half [of the proposed class] (246) decided to vaccinate after initially obtaining an exemption" and "[n]early half of the proposed class members never went on leave." ECF No. 94 at 6; *see also id.* at 13 ("over half got vaccinated"). The Court already considered this evidence, Defendant's opposition, and still certified the Class. And rightly so. These 238 Class members were injured and have standing.

To establish standing in federal court, a plaintiff must demonstrate three elements: (1) plaintiff must have suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) there must be a causal connection between the injury and the challenged conduct that is fairly traceable to the defendant's actions; and (3) it must be "likely" as opposed to "speculative" that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Each member of the Class meets these standing requirements.

Class members suffered injury and have standing under the Free Exercise Clause and the Equal Protection Clause because the County forced them to choose: receive the COVID-19 vaccination in violation of religious convictions; or be placed on unpaid administrative leave. In each Class member's religious exemption letter, the County informed them that if they did not vaccinate by a certain date they would be placed on unpaid administrative leave, despite their religious convictions expressed in their

religious exemption requests, which the County accepted as sincerely held in granting them. Byrd Decl., Ex. 11. Under such coercion, and not until after they sought a reasonable accommodation, 238 Class members received the COVID-19 vaccine to the peril of their constitutional liberties. This is unlawful coercion. "[T]he forfeiture of unemployment benefits for choosing [fidelity to religious belief over continued employment] brings **unlawful coercion** to bear on the employee's choice." *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144 (1987) (emphasis added) ("[A] violation of the Free Exercise Clause is predicated on coercion."). *See also Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 223 (1963) ("[I]t is necessary in a free exercise case for one to show the coercive effect of the enactment as it operates against him in the practice of his religion."); *Tilton v. Richardson*, 403 U.S. 672, 689 (1971) (plurality) ("Appellants, however, are unable to identify any coercion directed at the practice or exercise of their religious beliefs."); *Bd. of Educ. of Cent. Sch. Dist. No. 1 v. Allen*, 392 U.S. 236, 249 (1968) ("[A]ppellants have not contended that the New York law in any way coerces them as individuals in the practice of their religion.").

These 238 Class members also have standing under Title VII and FEHA. To establish standing for a Title VII failure to accommodate claim, a plaintiff must first make out a prima facie case by demonstrating three elements: (1) the plaintiff had a bona fide religious belief that conflicts with an employment duty; (2) the plaintiff informed the employer of the belief and the conflict; and (3) the employer **threatened**, or otherwise subjected the plaintiff to an adverse employment action because of the plaintiff's inability to fulfill the job requirement. *Heller v. EBB Auto Co*., 8 F.3d 1433, 1438 (9th Cir. 1993); *Gage v. Mayo Clinic*, 707 F. Supp. 3d 870, 878 (D. Ariz. 2023); *Zimmerman v. PeaceHealth*, 701 F. Supp. 3d 1099, 1109 (W.D. Wash. 2023); *Keene v. City & Cnty. of San Francisco*, No. 22-16567, 2023 WL 3451687, at *1 (9th Cir. May 15, 2023) (applying same standard to FEHA claim) (citing *Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007) (courts evaluate FEHA claims under the Title VII framework), *abrogated on other grounds by Nat'l Ass'n of Afr. Am.-Owned Media v. Charter Comm'ns, Inc.*, 915 F.3d 617 (9th Cir. 2019)).

Each Class member had a bona fide religious belief that conflicted with the County's vaccination policies and orders, and the Class members informed the County of these beliefs when they requested

(and were granted) religious exemptions. Indeed, the Court found in its MSJ Order that "the first two elements of the *prima facie* Title VII/FEHA case are established." ECF No. 178 at 10.

With respect to the third element of the prima facie case, after granting each Class member's religious exemption request, the County then ***threatened*** each Class member with adverse employment action: involuntary unpaid leave. Byrd Decl., Ex. 11. The County's threat of adverse employment action is sufficient to confer standing under Title VII. *See E.E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 614 n.5 (9th Cir. 1988) ("The threat of discharge (or other adverse employment practices) is a sufficient penalty."); *Opuku-Boateng v. State of Cal.*, 95 F.3d 146, 1467 n.9 (9th Cir. 1996) ("The employee need not be penalized with discharge to establish a prima facie case."); *Rodriguez v. City of Chicago*, No. 95 C 5371, 1996 WL 22964, at *3 (N.D. Ill. Jan. 12, 1996) ("It is nonsensical to suggest that an employee who, when forced by his employer to choose between his job and his faith, elects to avoid potential financial and/or professional damage by acceding to his employer's religiously objectionable demands has not been the victim of religious discrimination[.]"). Therefore, even though 238 Class members succumbed to that threat and took the vaccine in violation of their sincerely held religious beliefs, they were injured and have standing under Title VII and FEHA.

Plaintiffs recognize this argument is contrary to the Court's recent holding in its MSJ Order that "any member of the class who chose to get vaccinated rather than be placed on leave did not suffer an adverse employment action." ECF No. 178 at 13. However, respectfully, the cases the Court cited are either out of Circuit and relied upon a different standard or are distinguishable, and Plaintiffs request the Court reconsider its holding.

First, in *Doe(s) v. Pittsburgh Reg'l Transit*, 684 F. Supp. 3d 417, 426 (W.D. Pa. 2023), the court relied upon the standard in the Third Circuit as expressed in *Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 490 (3rd Cir. 2017): "[U]nder Title VII, an employee must show that '. . . he was disciplined for failing to comply with the conflicting requirement.'" *Doe(s)*, 684 F. Supp. 3d at 425 (quoting *Fallon*, 877 F.3d at 490). That showing is different than the one required in the Ninth Circuit: that "the employer ***threatened*** him with or subjected him to discriminatory treatment." *Heller*, 8 F.3d at 1438.

1       Furthermore, *Donovan v. Biden*, 603 F. Supp. 3d 975 (E.D. Wash. 2022), *aff'd in part, appeal*

2  *dismissed in part and remanded sub nom. Donovan v. Vance*, 70 F.4th 1167 (9th Cir. 2023) ("*Donovan*

3  *II*") is distinguishable. That case related to President Biden's Executive Orders issued on September 9,

4  2021, and referenced "[a] detailed factual background . . . discussed in the Court's Order Denying

5  Temporary Restraining Order [the 'Order']." *Id*. at 980. As is clear from that prior Order, there were no

6  allegations in the complaint or evidence in the record that the plaintiffs faced any imminent adverse

7  employment action. *Donovan v. Vance*, 576 F. Supp. 3d 816, 824 (E.D. Wash. 2021), *aff'd in part, appeal*

8  *dismissed in part and remanded*, 70 F.4th 1167 (9th Cir. 2023) ("*Donovan I*"). These facts led the court

9  to conclude that the plaintiffs had "failed to allege a claim that is ripe for adjudication" (*id.*) and had "not

10  alleged sufficient facts demonstrating their sincerely held religious views have been affected by the

11  Executive Orders" (*id*. at 826). Then, in *Donovan II*, the court found that 307 of the 314 plaintiffs lacked

12  standing because, *inter alia*, they had already been vaccinated or provided accommodations. *Id*. at 982.

13  There was no indication, however, that the plaintiffs were facing adverse employment action when they

14  decided to get vaccinated, and the Court held, "Plaintiffs have failed to allege any facts indicating their

15  sincerely held religious beliefs have been adversely affected by the Executive Orders." *Id*. at 984.

16  *Donovan II* did not hold that anyone who has been vaccinated lacks standing and cannot allege harm.

17  Here, Plaintiffs were harmed because, as discussed above, they were all threatened with being placed on

18  unpaid administrative leave when they were forced to choose between violating their religious beliefs or

19  keeping their employment benefits.

20       Moreover, in its Motion, Defendant cites *Andre-Rodney v. Hochul*, 618 F. Supp. 3d 72, 76 n.3

21  (N.D.N.Y. 2022), which noted in a footnote that seven of the plaintiffs no longer had standing because

22  they either retired or received the vaccine and returned to work and therefore their claims were "moot."

23  But, this issue was not contested, and the case did not involve sincerely held religious beliefs or religious

24  exemptions. It is therefore entirely unhelpful on this issue.

25       Finally, while some courts discuss the standing issue in terms of ascertainability, here the Class

26  is also ascertainable. A class is ascertainable if it is "administratively feasible for the court to ascertain

27  whether an individual is a member" by reference to "objective criteria." *Heredia*, 2020 WL 12748, at \*5.

28

Unlike the circumstances in *Heredia*, 2020 WL 127489, where it was "impossible to know, without individualized inquiries, which employees have undergone exit inspections off the clock" (*id*. at \*5), here, the County has data from which it can ascertain which individuals were granted religious exemptions, which individuals were categorized as working in "high-risk" jobs, which individuals were placed on administrative leave, which Class members eventually took the vaccine and when, and which Class members used leave bank time and how much. *See* Mot. at 8 (citing Anderson Decl. Ex. 31 [Volk Decl.] ¶¶ 11–15). Similarly, unlike the facts of *Hovsepian v. Apple, Inc*., No. 08-5788 JF (PVT), 2009 WL 5069144, at \*6 (N.D. Cal. Dec. 17, 2009), where the court found "the class is not ascertainable because it includes members who have not experienced any problems with their iMac display screens," here, as discussed above, each Class member was subject to the County's uniformly applied policies and was injured. Nor is the class overbroad as it was in *In re AutoZone, Inc., Wage & Hour Emp. Pracs. Litig.*, where the proposed class included employees who never sought reimbursement for travel expenses and therefore lacked standing to sue. 289 F.R.D. 526, 545 (N.D. Cal. 2012). Here, again, every member of the Class has standing to sue and is ascertainable from Defendant's records.

In the alternative, even if the Court finds that the 238 Class members who never went on administrative leave because they took the vaccine lack standing, rather than decertify the entire Class, the Court should redefine the Class to exclude them. "There is no dispute 'courts retain discretion to revisit class certification throughout the legal proceedings, and may rescind, modify, or amend the class definition in light of subsequent developments in the litigation.'" *Ms. L. v. U.S. Immigr. & Customs Enf't ("ICE")*, 330 F.R.D. 284, 287 (S.D. Cal. 2019) (quoting *Krueger*, 310 F.R.D. at 473–74). Plaintiffs propose the following alternative class definition:

> All individuals who: 1) worked for the County; 2) were classified as working in high risk jobs pursuant to the County's Risk Tier System; 3) applied for and received from the County a religious exemption; and 4) were nevertheless placed on administrative leave for failure to vaccinate (the "Class") at any time between August 5, 2021 and September 27, 2022 (the "Class Period").

### b. Class Members Who Did Not Apply for Lower-Risk Jobs Nevertheless Have Standing

*Second*, Defendant argues—and the Court denied Plaintiffs' partial MSJ on the Free Exercise Claim related to the accommodations framework because—309 Class members never applied for lower-

risk jobs. Mot. at 8; ECF No. 178 at 24. Respectfully, the Court's finding that because "309 never even applied for lower-risk jobs, . . . they could not have experienced discrimination with regard to the placement procedures" and therefore "cannot establish injury" (ECF No. 178 at 24) fails to consider that the entire accommodations process—which every Class member was subjected to—was tainted with discrimination, including the requirement that Class members apply for a new job through NEOGOV without assistance from EOD. Andersen Decl., Ex. 32 [Quon Decl.], ¶ 5. The "assistance" the County provided to Class members was not comparable or equal to the assistance provided to the individuals with medical and disability exemptions. The County's EOD worked with medically exempt employees to place them in new roles (specifically in lower risk tiers), while the County directed employees with religious exemptions to the ESA, which gave them minimal assistance in applying for open County positions. Byrd Decl., Ex. 10 at -7394, -7396. This is why the Court granted Plaintiffs' motion for preliminary injunction on this issue: "Plaintiffs have shown irreparable injury. Plaintiffs are correct that loss of Free Exercise rights 'for even minimal periods of time' is irreparable injury." ECF No. 44 at 21 (quoting *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) (citation omitted)).

Class member Ms. Melanie Nguyen's experience serves as a good example of the minimal assistance Clas members received from ESA. Defendant submitted the Declaration of Matthew Fisk (Anderson Decl., Ex. 6), who states that he offered Ms. Nguyen a demotion (which, understandably, she did not take) and also that the County identified "several positions" for which she "appeared qualified." *Id*. ¶¶ 8–9 (citing Exhibit 3 thereto). Upon closer examination, however, Mr. Fisk's declaration illustrates how minimal this the "assistance" really was. In the email correspondence between Ms. Nguyen and Terry Chavarria of VaxJobReview, it's clear Ms. Nguyen attempted to follow the County's recommendation to visit "ESA's website" and look for "transfer, promotion, or open competitive positions" because she told Mr. Chavarria that the website had "no job opportunities that fit my descriptions/criteria for me to even apply." *Id*. at Ex. 3. Mr. Chavarria responded: "Just by looking at it you could look on the transfer/promotion or Open competitve [sic] lines for OS III, OS II, Justice System Clerk, management aide, Associate Mgmt Analyst ...??" *Id*. This is hardly an "identification" of several positions for which she "appeared qualified." Ms. Nguyen was cooperative but was placed at a

1    disadvantage because she did not receive the preferential assistance through EOD that individuals with

2    disability and medical exemptions received. And, despite engaging in the County's accommodations

3    process, she remained on leave for the entirety of the Class period. *See id*. ¶ 10.

4           Tellingly, while Ms. Quon testifies in her declaration that 309 Class members never applied for a

5    new position through NEOGOV, this is only part of the story because she does not indicate how many

6    individuals with medical and disability exemptions also did not apply for new positions through

7    NEOGOV and yet were still placed by EOD in alternative jobs. The evidence shows that the County's

8    policies favored those individuals with disability and medical exemptions over the Class members who

9    had religious exemptions by prioritizing the former "for placement or selection for vacant positions" over

10    Class members (Byrd Decl., Ex. 8 at -2196.02; *see also id*. Ex. 6 at 93:20–94:3, 126:2–7), including by

11    accommodating individuals with medical and disability exemptions ***before*** assisting Class members (*id*.

12    Ex. 12; *id*. Ex. 13 at -7090–91). And evidence common to the Class demonstrates the impact of this

13    discrimination: statistically, the County placed more than twice as many medically exempt personnel in

14    alternative positions as religiously exempt personnel (7.69% versus 3.45%). While the Court relied upon

15    evidence that the County placed four employees with medical/disability exemptions in alternative

16    positions and 16 employees with religious exemptions in alternative positions (ECF No. 178 at 24), the

17    raw numbers do not provide the entire picture since the County granted a much larger number of religious

18    exemptions than medical and disability exemptions. *See* Byrd Decl., Exs. 15–16 (approximately 463

19    employees were provided with religious exemptions in high-risk settings, and 52 were provided with

20    medical exemptions). Plaintiffs are entitled to rely upon this and other common statistical evidence to

21    demonstrate discriminatory impact under their Establishment Clause and Equal Protection claims.

22           Furthermore, since the accommodation process was so different for Class members than it was

23    for the other exempt individuals, it would be difficult if not impossible for Class members to unwind the

24    process and demonstrate that a particular individual obtained a transfer that any particular Class member

25    would have otherwise received had the County treated the two groups equally. The County should not

26    benefit because the discriminatory process it put into place makes it difficult or impossible for Class

27    members to demonstrate what would have happened in the "but for" world. Simply by virtue of the

28

discriminatory accommodations process, all Class members were injured and have constitutional standing to sue (at a minimum, for nominal damages), regardless of whether they utilized NEOGOV to look for a new job. *See Schneider v. Cnty. of San Diego*, 285 F.3d 784, 794 (9th Cir. 2002) ("'[N]ominal damages must be awarded if a plaintiff proves a violation of his [or her] constitutional rights.'") (quoting *Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir. 2000) (citations omitted)). And the issue of individual Class member damages has been bifurcated, so Defendant can make its arguments at a later date that particular Class members are only entitled to nominal damages.

Defendant seems to also argue that these same 309 Class members do not have standing to pursue their Title VII and FEHA claims but cites no authority for that proposition. Mot. at 8, As set forth *supra*, Plaintiffs will establish a prima facie case (and have already established the first two elements—*see* ECF No. 178 at 10) using common evidence that each Class member: (1) had a bona fide religious belief that conflicted with the County's vaccination policy; (2) they informed the County of the belief and the conflict; and (3) the County threatened, or otherwise subjected them to adverse employment action because of their inability to fulfill the job requirement. *Heller*, 8 F.3d at 1438. They therefore have standing to pursue their Title VII and FEHA claims, regardless of whether they "sought job transfers." Mot. at 8.

### c. Permitting Class Members to Use Their Leave Banks Is Not "Paid" Leave

*Finally*, Defendant argues that it offered "paid leave" to Class members. Mot. at 8. Indeed, the Court found in its MSJ Order that "the undisputed evidence also shows that hundreds of Class members took *paid* rather than unpaid leave for at least some period of time." ECF No. 178 at 13. Plaintiffs respectfully request the Court reconsider this finding. The Court cited to Exhibit 57 of the Onishenko Declaration, which is a table showing "Leave Type" for each Class member which included "Paid Leave" and "Leave of Absence," but the table is vague on the meaning of "Paid Leave." The Court also cited to ECF No. 141-8, the Declaration of Jorge Alvarez, ¶ 3, which says, "I chose to use my personal time to earn money, which expired on or around March 2022," clearly indicating he used his leave bank time in order to be "paid."

The evidence overwhelmingly demonstrates that whenever the County labeled the leave as "paid"

it was only because Class members used their already earned leave bank hours, which is not truly paid leave. The County informed Class members: "You may apply your applicable leave banks (such as accrued vacation, STO, comp time, and, if applicable, sick time) to this leave of absence, after which your leave will be unpaid." Byrd Decl., Ex. 11; *id*. Ex. 10 at -7394; *id*. Ex. 6 at 129:17-22. Class members were required to use their already hard-earned leave banks if they wanted to be "paid" during their otherwise unpaid, involuntary and indefinite administrative leave. Considering this to be "paid" leave is akin to considering a Class member who dipped into her savings account to pay her bills while on administrative leave as "paid." Leave bank time is already-earned compensation and its depletion cannot be properly characterized as "paid."

As the Court found in its MSJ Order, "indefinite, involuntary unpaid leave is, as a practical matter, not much different from termination, and thus qualifies as 'adverse employment action.'" ECF No. 178 at 12. *See also Sambrano v. United Airlines, Inc.*, 45 F.4th 877, 879 (5th Cir. 2022) (Ho, J., concurring) ("Being placed on indefinite unpaid leave because your employer doesn't like your religious beliefs is obviously an adverse employment action and an actionable claim under Title VII of the Civil Rights Act of 1964."); *Dawson v. Akal Sec. Inc.*, 660 F. App'x 504, 506 (9th Cir. 2016) (unpublished) (involuntary unpaid leave may be an adverse employment action); *Mois v. Wynn Las Vegas LLC*, 715 F. App'x 600, 601 (9th Cir. 2017) (unpublished) (unpaid leave was not a reasonable accommodation under ADA where light duty work was an option); *Zimmerman*, 701 F. Supp. 3d at 1110 (indefinite unpaid leave was an adverse employment action and not a reasonable accommodation); *cf. Steenmeyer v. Boeing Co.*, 92 F. Supp. 3d 1024, 1031 (W.D. Wash. 2015) (unpaid leave may be a reasonable accommodation when it is requested).

The cases Defendant cites (two of which the Court cited in its MSJ Order) for the argument that paid leave is not adverse employment action are distinguishable. The plaintiff in *Longmire v. City of Oakland*, No. C 10-01465 JSW, 2011 WL 5520958 (N.D. Cal. Nov. 14, 2011) was placed on paid administrative leave, with no indication he used his already earned vacation time in order to be "paid." *See id*. at *4–*5 ("Plaintiff admits that he did not receive a pay change or a demotion of any type . . . . [T]he Court has not found support for the position that an allegedly biased investigation which results in

1   paid administrative leave and a recommendation for, but not an actual, termination constitute adverse

2   employment actions.") Similarly, in *Gannon v. Potter*, No. C 05-2299SBA, 2006 WL 3422215 (N.D.

3   Cal. Nov. 28, 2006), *aff'd*, 298 F. App'x 623 (9th Cir. 2008), the plaintiff was placed on truly paid

4   administrative leave. *See id*. at *5 ("Gannon was placed on paid administrative leave"). And the plaintiff

5   in *Green v. Safeway Stores*, No. C 96-03471 CRB, 1998 WL 898366, at *3 (N.D. Cal. Dec. 14, 1998)

6   initially was required to take sick leave, but "defendant credited plaintiff for all the sick leave defendant

7   initially required plaintiff to take." *See id*. ("Requiring plaintiff to take sick leave might constitute an

8   adverse employment action if plaintiff's sick leave had not been restored."). Defendant does not contend

9   that the Class members' leave banks were replenished. None of these cases hold allowing employees to

10  use their already-accrued sick or vacation time in order to be "paid" while on administrative leave is not

11  an adverse employment action. Accordingly, the Class is ascertainable and has standing.

12              **3.      The Class Shares a Common Injury**

13          As this Court previously held, "Plaintiffs have sufficiently identified [five] common questions of

14  law or fact to meet their burden under Rule 23(a)(2)." ECF No. 125 at 8. Nothing has changed which

15  would require the Court to alter its ruling.

16          The first of Plaintiffs' common questions is whether the County's preferential consideration of

17  medical exemptions over religious exemptions in high-risk settings violated the Class's rights to free

18  exercise and equal protection of law. This question generates a common answer. The County regurgitates

19  the same rejected arguments it raised in opposition to Plaintiffs' Motion for Class certification, namely

20  that Plaintiffs who never went on leave and needed no job transfer, Plaintiffs who never sought a job

21  transfer or declined an offered job transfer, Plaintiffs who received "paid" leave, and Plaintiffs with

22  special circumstances such as extended worker's compensation leave cannot allege any injury. *See* ECF

23  No. 94 at 10–11. However, the County's arguments speak to whether the Class is overly broad, not to

24  whether individualized issues control. As discussed *supra*, each of these Class members claims a valid

25  injury. *See* § IV.A.2, *supra*. Additionally, as this Court found at the class certification stage, "[i]n arguing

26  that Plaintiffs' common questions require individualized inquiries, the County either makes merits

27  arguments or construes Plaintiffs' claims too narrowly." ECF No. 125 at 8–9. The County attempts to

28

make the same rejected arguments now.

Nevertheless, the first question is capable of classwide resolution; whether Defendant prioritized individuals to whom it had granted medical exemptions over those to whom it had granted religious exemptions is "objective" and "can be proved through evidence common to the class" – namely, the County's own policies. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 445 (1976). Indeed, when partially granting Plaintiffs' motion for a preliminary injunction, this Court looked at the County's policy of giving "'those with disability or medical contraindication vaccine exemptions . . . "preferential consideration" . . . .'" and enjoined this policy and practice because it is "a practice the County has admitted occurs." ECF No. 44 at 7.

As to the second question, the Court granted Defendant's MSJ as to the Free Exercise and Equal Protection Claims insofar as they are based on the Risk Tier System, therefore this question is moot. ECF No. 178 at 27.

Regarding the third common question—whether the County's religious exemption and/or accommodation procedure was either non-neutral or not generally applicable such that it constitutes an individualized assessment under *Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. 522 (2021), and is thereby subject to strict scrutiny—while the County is correct that the appropriate level of scrutiny is a preliminary legal determination, "this question is answered [] the same way with respect to every member of the Class and when considered with the other two common questions on Plaintiffs' Free Exercise and Equal Protection claims, would 'drive the resolution of the litigation' by resolving these claims on a class-wide basis" ECF No. 125 at 9.

The fourth common question—whether Defendant provided Individual Plaintiffs and the Class members with reasonable accommodation as required under FEHA and Title VII—can also be resolved in one stroke by looking to the County's vaccination policies and orders. Regardless of the Class members' "diverse experiences with the County's accommodations," Mot. at 10, Plaintiffs' argument is not that the County's conduct toward individual employees is unreasonable but that "the accommodation provided in the Policy is unreasonable, especially when considering available alternatives." ECF No. 125 at 10. The County's vaccine mandate, Risk Tier System, and accommodations policy were applicable to

all personnel. Plaintiffs only need to prove that the County's accommodations policy was unreasonable. This is a shared legal issue amongst proposed Class members, even if "divergent factual predicates" occur. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). Therefore, it does not matter that Class members held different jobs, reacted to the vaccine mandate differently, or reacted to the accommodation process differently.

Regarding the fifth common question—Whether Defendant violated the Establishment Clause by demonstrating hostility towards religion—the County makes a merits argument that goes to the merits of Plaintiffs' Establishment Clause claim but which is not relevant to decertification. Mot. at 11. Moreover, in denying Defendant's MSJ on this claim the Court relied upon Plaintiffs' evidence that "'the County has demonstrated unequivocal hostility towards religion' by 'preferencing accommodations for secular objectors over religious objectors.'" ECF No. 178 at 25 (quoting Plfs.' Opp. at 24–25). This is evidence common to the Class.

Accordingly, the County has not shown that it is entitled to decertification.

### 4. The County's Accommodations Policies Applied Classwide, and Mitigation Issues Have Been Bifurcated

The Court has already considered and rejected the County's argument that individualized factual issues regarding its accommodation of Class members will predominate. ECF No. 125 at 16. Moreover, it is the expectation that the parties will present conflicting evidence at trial, but this is not a reason for the Court to decertify the Class. As discussed *supra*, the fourth common question—whether Defendant provided Individual Plaintiffs and the Class members with reasonable accommodation as required under FEHA and Title VII—will be answered using common evidence.

Religious discrimination claims under Title VII religious are analyzed under a two-part framework. "*First*, the employee must establish a prima facie case by proving that (1) he had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer threatened him with or subjected him to discriminatory treatment, including discharge, because of his inability to fulfill the job requirements." *Heller*, 8 F.3d at 1438. "*Second*, if the employee proves a prima facie case, the employer must establish that it initiated

good faith efforts to accommodate the employee's religious practices." *Id*. (citations omitted).

Contrary to Defendant's argument, Plaintiffs' establishment of a prima facie case will not involve individualized issues. While the Court did not resolve in its MSJ Order whether the entire class can establish a prima facie case, that outcome was dependent upon its findings, discussed *supra*, that a large number of Class members were not vaccinated and a large number of Class members were put on paid administrative leave, findings Plaintiffs respectfully request the Court reconsider for the reasons discussed *supra*. *See* §§ IV.A.2.a. and IV.A.2.c., *supra*.

Moreover, Defendant argues that "whether the County sufficiently engaged in the interactive process in its communications with exempt employees" (Mot. at 11) and "offered reasonable accommodations to[] each exempt employee[]" (Mot. at 12) may involve individualized evidence. But, the County's accommodations policy was uniform: Class members were placed on unpaid administrative leave and allowed to use their leave banks. While the County did assist employees with their job search *after it placed them on leave*, the particulars of these communications are not material to the question of reasonable accommodation since any assistance the County provided was after Class members were placed on administrative leave. An employee's duty to cooperate in the accommodation process "arises only *after* the employer has suggested possible accommodation." *Heller*, 8 F.3d at 1440. Here, that duty never arose because the County had already taken adverse employment action against Class members by placing them on unpaid administrative leave. *See id*. ("Because EBB made no effort to accommodate Heller prior to his termination, his duty of cooperation never arose); Byrd Decl., Ex. 6 at 129:17–24 ("they were placed on administrative leave, they were allowed to use any of their leave banks, and *then* – and *then* they were assisted in finding another position") (emphasis added); *id*. Ex. 2 at 2 (the County cannot safely accommodate Class members in their "high-risk roles" but can "accommodate them through providing them a temporary leave of absence, *during which* the County will assist them in seeking reassignment or transfer to a lower- or intermediate-risk position") (emphasis added).

Moreover, Title VII requires an employer to accommodate an employee's religious beliefs "in a manner which will reasonably preserve that employee's employment status, *i.e.*, compensation, terms, conditions, or privileges of employment." *Am. Postal Workers Union, San Francisco Loc. v. Postmaster*

*Gen.*, 781 F.2d 772, 776–77 (9th Cir. 1986). "The determination of whether or not the employment status of the affected employee is reasonably preserved may be objectively assessed by the trier of fact." *Id.* at 777. The jury should therefore have no difficulty finding that Defendant's accommodations, which were uniform as to the entire Class, were not reasonable since indefinite unpaid administrative leave does not preserve compensation and privileges of employment. But, in any event, the question will be one that is common to the entire Class. *See Arnold v. United Artists Theatre Cir., Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (the existence of common discriminatory practices satisfies commonality even when the practices affect each class member differently).

Moreover, as this Court noted in its class certification order, "to the extent that the County argues that individualized inquiries predominate—including . . . the nature of the particular assistance that the County provided to the employee—these questions go to individual damages rather than liability under the FEHA and Title VII." ECF No. 125 at 16 (citing *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 943 (9th Cir. 2019)); *see also id.* at 20; *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (INS case explaining that a common allegation of illegal procedures is sufficient to find commonality, even when subsequent complex individualized proceedings will be necessary to resolve individual class members' claims). And the Court has already bifurcated the damages phase to be tried individually. ECF No. 125 at 25.

Defendant cites to *Soares v. Flowers Foods, Inc*., 320 F.R.D. 464, 483 (N.D. Cal. 2017), but that case is distinguishable because the issue was whether the delivery driver class members "hired sub-drivers and whether they contracted with other companies," which the court held would "require individual inquiries." *See id*. ("While the class is limited to Distributors who 'personally serviced' their routes, the determination of which Distributors did so, and when, cannot be answered in one fell swoop.") No such individualized inquiries are required here for a jury to find that the accommodations offered by the County were not reasonable as those accommodations are set forth in County policies that applied classwide.

Furthermore, the County, for the first time in this litigation, argues that some Class members do not appear to have had sincerely held religious beliefs and that it "may raise this issue on an individual

basis at trial." Mot. at 12. However, as this Court found in its MSJ Order, it is undisputed that Class members' religious beliefs were bona fide and the Court found this element of Plaintiffs' prima facie case has been established. ECF No. 178 at 10.

Finally, the County does not argue that its burden of establishing undue hardship will require individualized evidence. Indeed, it will not. The evidence the parties submitted on this issue in support of their cross-motions for summary judgment and relied upon by the Court in denying the motions on this issue was common to the Class. *See* ECF No. 178 at 16–18.

Accordingly, decertification of the Class is not appropriate.

## B.    UnifySCC No Longer Has Standing

At the summary judgment hearing, the parties agreed to brief the effect of *Arizona All. for Retired Americans v. Mayes*, No. 22-16490, 2024 WL 4246721 (9th Cir. Sept. 20, 2024), and the U.S. Supreme Court's decision in *Food & Drug Admin. v. All. for Hippocratic Med.* ("*FDA*"), 602 U.S. 367 (2024) on Plaintiff UnifySCC's standing. Those cases deal with diversion of resources and do not deal with associational standing based on the standing of the members of the association. Pursuant to *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977), an organizational plaintiff may establish standing on a representation basis by demonstrating that: (1) its members would otherwise have standing to sue in their own right, (2) the interests it seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Id.* at 343. *FDA* did not modify that standard. However, while UnifySCC had standing at the inception of the case because it sought declaratory and injunctive relief, Plaintiffs concede it no longer has standing because those claims for prospective relief have been mooted. Therefore, Plaintiffs stipulate to the dismissal of UnifySCC as a plaintiff.

## V.    CONCLUSION

Accordingly, this case continues to meet all the requirements of Rules 23(a) and (b) for class certification. Plaintiffs therefore request that the Court deny Defendant's motion to decertify the Class.

| | |
|---|---|
| 1 | Respectfully submitted, |
| 2 | DATED:  January 29, 2025                          **WOLF HALDENSTEIN ADLER** |
| 3 |                                                **FREEMAN & HERZ LLP** |

DATED:  January 29, 2025

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**

*/s/ Rachele R. Byrd*
RACHELE R. BYRD
STEPHANIE AVILES
byrd@whafh.com
saviles@whafh.com
750 B Street, Suite 1820
San Diego, CA  92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599

ROBERT H. TYLER, ESQ.
btyler@faith-freedom.com
BETHANY ONISHENKO, ESQ.
bonishenko@faith-freedom.com
**ADVOCATES FOR FAITH & FREEDOM**
25026 Las Brisas Road
Murrieta, California 92562
Telephone: (951) 600-2733
Facsimile: (951) 600-4996

*Plaintiffs' Class Counsel*