1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

UNIFYSCC, et al.,

           Plaintiffs,

    v.

SARA H. CODY, et al.,

           Defendants.

Case No.  5:22-cv-01019-BLF

**ORDER GRANTING DEFENDANT'S MOTION FOR CLASS DECERTIFICATION**

[Re:  Dkt. No. 176]

This lawsuit concerns the County of Santa Clara's (the "County") response to the COVID-19 pandemic, which included imposing a requirement on County employees to either become vaccinated against the virus or obtain an exemption from vaccination.  Plaintiffs filed this lawsuit to challenge the "Risk Tier System" that the County used to determine how an employee with an exemption could be accommodated, as well as the ensuing accommodations procedure.

On January 29, 2024, the Court certified a class of "[a]ll individuals who: 1) work or worked for the County and/or [] were subject to its vaccine policies and orders, including the Risk Tier System; 2) were forced by the County to choose between taking the vaccine to maintain their jobs and/or their employment-related benefits or being placed on unpaid leave; 3) were [] classified as working in high risk jobs pursuant to the County's Risk Tier System; and 4) received [] a religious exemption from the County . . . between August 5, 2021 and September 27, 2022."  Dkt. No. 125 at 25.  However, in subsequent briefing on the Parties' cross-motions for summary judgment, it became apparent to the Court that there were serious questions regarding whether the certified questions could be resolved on a class-wide basis.  Accordingly, the Court invited the

1    Parties' briefing on whether the case should continue to proceed as a class action.

2          Before the Court is the County's Motion for Class Decertification.  Dkt. No. 176 ("Mot.").

3    Plaintiffs oppose the motion, Dkt. No. 182 ("Opp."), and the County filed a reply in support of its

4    motion, Dkt. No. 183 ("Reply").  The Court heard oral argument on the motion on March 13,

5    2025.  Dkt. Nos. 185, 187.

6          For the following reasons, the Court GRANTS the County's motion.  The Class is

7    DECERTIFIED.  Plaintiffs Tom Davis, Maria Ramirez, and Elizabeth Baluyut may proceed on an

8    individual basis.

9    I.    **BACKGROUND**

10          **A.  Factual Background**

11          Starting in late 2019, a novel coronavirus called COVID-19 spread through the United

12   States, causing a pandemic that led to widespread illness and death.  *See* Dkt. No. 176-1,

13   Declaration of Bryan K. Anderson in Support of Defendants' Motion for Decertification

14   ("Anderson Decl."), Ex. 1 ("Márquez Decl.") ¶¶ 5–7.  At first, no vaccination against the illness

15   was available, and the virus was poorly understood.  Thus, many governments, including

16   Defendant County of Santa Clara, responded to the uncertainty by issuing health orders that

17   imposed restrictions on travel and in-person activities.  The first COVID-19 vaccines became

18   available at the end of 2020, though the pandemic continued past that time.  In fact, the summer of

19   2021 saw a surge in COVID-19 cases resulting from the highly contagious "Delta" variant of the

20   virus.  *Id.* ¶ 32.  Accordingly, on August 5, 2021, the California State Public Health Officer issued

21   an Order requiring certain workers to be vaccinated against COVID-19.  *Id.* ¶ 34.

22          That same day, the County of Santa Clara issued a policy that required all County

23   personnel to either become vaccinated against COVID-19 or request a medical, disability, or

24   religious exemption by September 30, 2021.  Declaration of Rachele R. Byrd in Opposition to

25   Defendant's Motion for Class Decertification ("Byrd Decl."), Ex. 1.  That policy made use of a

26   "Risk Tier System" that categorized exempt employees' positions as either low-, medium-, or

27   high-risk for communication of the COVID-19 virus.  *Id.*, Ex. 2.  The policy made clear that

28   employees who were determined to work in "high-risk" positions could not continue to work in

United States District Court
Northern District of California

those positions unless they received the COVID-19 vaccine.  *Id.* at 2.  Instead, they would be required to seek other accommodations, such as placement in an alternative position with the County.

The County provisionally granted most if not all of the requested religious exemptions and informed those receiving exemptions of the procedures for seeking accommodations.  Márquez Decl. ¶¶ 38–41; *see* Byrd Decl., Ex. 11.  For those working in high-risk positions, the County communicated that they might be placed on administrative leave if they did not receive the vaccine by the established compliance date.  *See* Byrd Decl., Ex. 11; Anderson Decl., Ex. 4 ("Menzies Decl. No. 1") ¶ 6.  Those individuals were permitted to use leave banks—such as vacation, sick time, etc.—in order to receive pay during the administrative leave, and the County provided instructions on how they could seek other accommodations such as transfer to a lower-risk position.  *See* Byrd Decl., Ex. 11.  The County's accommodations process information included a statement that individuals who received a disability-related exemption might be entitled to "priority consideration" for placement in alternative roles.  Byrd. Decl., Ex. 8 at 2.

**B.  Procedural Background**

This lawsuit was initially filed by Plaintiffs UnifySCC, Tom Davis, and Maria Ramirez on February 18, 2022.  Dkt. No. 1.  On August 23, 2022, Plaintiffs filed a Verified First Amended Class Action Complaint for Declaratory and Injunctive Relief and Damages, which included adding Plaintiff Elizabeth Baluyut.  Dkt. No. 55.  Approximately a year later, Plaintiffs moved for class certification.  Dkt. No. 86.  Their motion was granted in part and denied in part on January 29, 2024, with the Court ultimately certifying a class of 463 County employees based on the following definition:

> All individuals who: 1) work or worked for the County and/or [] were subject to its vaccine policies and orders, including the Risk Tier System; 2) were forced by the County to choose between taking the vaccine to maintain their jobs and/or their employment-related benefits or being placed on unpaid leave; 3) were [] classified as working in high risk jobs pursuant to the County's Risk Tier System; and 4) received [] a religious exemption from the County . . . between August 5, 2021 and September 27, 2022.

Dkt. No 125 at 25.

The Parties each filed motions for summary judgment the following summer.  Dkt. Nos.

1    141, 143.  Through the briefing on those motions, various facts were presented that drew into

2    question the appropriateness of resolving this litigation on a class-wide basis.  For example, the

3    County submitted evidence that more than half of the class members never went on leave.  In

4    addition, the County submitted evidence that out of 463 total class members, 309 never applied for

5    an alternative position as an accommodation, and some declined offers to move into lower-risk

6    positions that were offered to them by the County.  The Parties also submitted evidence of

7    individual class members' experiences during the accommodations process, which revealed that

8    those experiences varied significantly.

9            Accordingly, at the hearing on the Parties' summary judgment motions, the Court

10   requested briefing on whether the class should be decertified.  Dkt. No. 173 at 3:20–4:21.  The

11   County responded by filing the Motion for Class Decertification on December 4, 2024.  Dkt. No.

12   176.

## II.    LEGAL STANDARD

14           Federal Rule of Civil Procedure 23 governs class certification.  Under that Rule, "[a]n

15   order that grants or denies class certification may be altered or amended before final judgment."

16   Fed. R. Civ. P. 23(c)(1)(C); *accord Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)

17   ("Even after a certification order is entered, the [Court] remains free to modify it in the light of

18   subsequent developments in the litigation."); *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 473–74

19   (S.D. Cal. 2015).  Decertification will generally require a showing of good cause.  *Lao v. H&M*

20   *Hennes & Mauritz, L.P.*, No. 16-cv-00333, 2019 WL 7312623, at *2 (N.D. Cal. Dec. 30, 2019)

21   ("Decertification should not be granted except for good cause, such as discovery of new facts or

22   changes in the parties or in the substantive or procedural law." (quoting *Morales, et al. v. Kraft*

23   *Foods Grp., Inc.*, No. 14-cv-04387, 2017 WL 2598556, at *20 (C.D. Cal. June 9, 2017)) (internal

24   alterations omitted)).

25           Class decertification motions are governed by the same standard as is applied to class

26   certification motions.  *Ries v. Arizona Beverages USA LLC*, No. 10-01139, 2013 WL 1287416, at

27   *3 (N.D. Cal. Mar. 28, 2013) ("The standard used by the courts in reviewing a motion to decertify

28   is the same as the standard when it considered Plaintiffs' certification motions." (quoting

United States District Court
Northern District of California

4

United States District Court
Northern District of California

*O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 410 (C.D. Cal. 2000))). Accordingly, "[i]n considering a motion to decertify, 'a court must reevaluate whether the class continues to meet the requirements of Rule 23.'" *Cole v. CRST, Inc.*, 317 F.R.D. 141, 144 (C.D. Cal. 2016) (quoting *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 544 (C.D. Cal. 2012)). "As a threshold matter, a class must first meet the four requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1066 (9th Cir. 2021). "In addition to Rule 23(a)'s requirements, the class must meet the requirements of at least one of the three different types of classes set forth in Rule 23(b)." *Id.* at 1066 (internal quotation marks and citation omitted); *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022). "To qualify for the third category, Rule 23(b)(3), the district court must find that 'the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Olean*, 31 F.4th at 663–64 (quoting Rule 23(b)(3)).

## III.    DISCUSSION

As a preliminary matter, the Court finds that there is good cause to consider whether the certification order should be revised. "Good cause" may include "discovery of new facts." *Morales*, 2017 WL 2598556, at *20; *cf. Heredia v. Eddie Bauer LLC*, No. 16-cv-06236, 2020 WL 127489, at *10 (N.D. Cal. Jan. 10, 2020) ("[A] district court may revisit a class certification order 'in the light of subsequent developments in the litigation.'" (quoting *Plascencia v. Lending 1st Mortg.*, No. 07-cv-4485, 2012 WL 253319, at *3 (N.D. Cal. Jan. 26, 2012))). The facts submitted to the Court during the briefing on the cross-motions for summary judgment revealed that the reality underlying this litigation differs from this Court's understanding at the time of class certification. This revelation is a subsequent development during the litigation that renders the Class suspect, so the Court finds it appropriate to reexamine class certification now.

### A.  A Note About Ascertainability

Defendant first argues that the certified class is not ascertainable, arguing that a "class is not ascertainable if it includes members who have 'no injury and no standing to sue.'" Mot. at 7–

8.  Specifically, Defendant argues that "over half the class lacks standing," because 238 class members did not ever go on leave and 309 class members "never sought job transfers."  *Id.* at 8. Plaintiffs respond that the class members do have standing, "because the County forced them to choose: receive the COVID-19 vaccination in violation of religious convictions; or be placed on unpaid administrative leave."  Opp. at 9.  Plaintiffs characterize this as unlawful coercion and as a "threat" under Title VII and FEHA on the part of the County.  *Id.* at 10–12.  Plaintiffs also argue that the Class is ascertainable as an administrative matter because "the County has data from which it can ascertain which individuals were granted religious exemptions, which individuals were categorized as working in 'high-risk' jobs, which individuals were placed on administrative leave, which Class members eventually took the vaccine and when, and which Class members used leave bank time and how much."  *Id.* at 13.

Courts in this circuit previously spoke of a requirement implied by Rule 23 that "the class sought to be represented must be adequately defined and clearly ascertainable."  *See Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 211 (N.D. Cal. 2012) ("[A] class definition is sufficient if the description of the class is 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'" (quoting *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998))).  As a component of that implicit requirement, some courts— including this one—discussed the lack of standing of absent class members as indicative of an ascertainability-related overbreadth problem.  *See Heredia*, 2020 WL 127489, at *5; *Hovsepian v. Apple, Inc.*, No. 08-5788, 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) (finding a class not ascertainable because it included members who had "no injury and no standing to sue"); *In re AutoZone, Inc., Wage & Hour Emp. Pracs. Litig.*, 289 F.R.D. 526, 545 (N.D. Cal. 2012) (finding a class definition that included employees who were not injured and had "no standing to sue" overbroad and thus not ascertainable).

However, the Ninth Circuit has declined to impose a separate "threshold 'ascertainability' prerequisite to certification."  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017).  Considerations of administrative feasibility and overbreadth instead may come in under the "analysis of Rule 23's enumerated requirements."  *Id.* at 1123, 1124 n.4.  For example, "Rule

23(b)(3) requires a court certifying a class under that section to consider 'the likely difficulties in managing a class action.'"  *Id.* at 1126.  Difficulty in determining who would be included as a part of the class may thus inform a court's findings regarding predominance and superiority, rendering "a separate administrative feasibility requirement . . . largely superfluous."  *See id.*  Likewise, concerns about "overbreadth" may be considered as a part of those analyses.  *Olean*, 31 F.4th at 669 n.14 ("[A] court must consider whether the possible presence of uninjured class members means that the class definition is fatally overbroad.  When 'a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification.'" (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012))).

Therefore, the Court declines to separately address Defendant's arguments regarding "ascertainability," and instead deals with the issues raised under that heading as they apply to the relevant portions of the Rule 23 analysis below.

### B.  Article III Standing

Defendant's arguments about ascertainability involve a second preliminary issue, as well. Specifically, Defendant indirectly challenges whether class members who chose to become vaccinated or who never sought accommodations suffered an injury-in-fact sufficient to confer Article III standing.  *See* Mot. at 8.  Plaintiffs respond that they did, because they were allegedly injured as soon as they were "forced . . . to choose" between adhering to their religious convictions and keeping their jobs.  Opp. at 9.

Federal courts are courts of limited jurisdiction and may only resolve "Cases" and "Controversies"—meaning disputes in which the plaintiff has a "personal stake" sufficient to confer Article III standing.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  A plaintiff shows Article III standing by demonstrating "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and

1    'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339

2    (2016), *as revised* (May 24, 2016) (citing *Lujan*, 504 U.S. at 560). "Every class member must

3    have Article III standing in order to recover individual damages," and "[a] plaintiff must

4    demonstrate standing 'with the manner and degree of evidence required at the successive stages of

5    the litigation.'" *TransUnion*, 594 U.S. at 431.

6         In this case, the brewing dispute is over whether a majority of class members experienced

7    an actual, concrete injury. The Court agrees with Defendant that Plaintiffs have presently failed to

8    establish that they did. Plaintiffs have asserted that the concrete injury suffered was being "forced

9    . . . to choose[] [between] receiv[ing] the COVID-19 vaccination in violation of religious

10   convictions; or be[ing] placed on unpaid administrative leave." Opp. at 9. But Plaintiffs have not

11   submitted evidence that the class members *were* forced into that choice. To the contrary,

12   Plaintiffs' evidence shows that the County contacted individuals who received religious

13   exemptions to inform them of next steps regarding how to seek an accommodation. *See* Byrd

14   Decl., Ex. 11. While unpaid administrative leave was discussed as an eventual possibility, the

15   communication by the County was not in nearly such stark terms as Plaintiffs suggest. Instead,

16   the County made clear that each exempt employee was encouraged to commence discussions with

17   their Department regarding potential accommodations. *See id.*

18        Thereafter, nearly half of the class never took leave time. Anderson Decl., Ex. 31 ("Volk

19   Decl.") ¶ 12 (noting that 205 class members have no leave time recorded during the class period).

20   Many of those people simply became vaccinated before the deadline—and for the vast majority of

21   those individuals, the Court has no evidence indicating *why*. Certainly there is some evidence in

22   the record that a few County employees felt forced to become vaccinated in violation of their

23   religious beliefs, *e.g.*, Anderson Decl., Ex. 14 ("Valle Dep. Tr.") at 20:10–12, Anderson Decl., Ex.

24   24, but it is not reasonable to infer that every class member who received the vaccination did so

25   under "coercion" or "duress." In light of the rapidly evolving circumstances, it is equally

26   plausible that many of those individuals simply decided that the benefits of vaccination

27   outweighed their objections, or that becoming vaccinated would not conflict with their convictions

28   after all. In failing to submit evidence demonstrating that class members who never took leave

were *in fact* forced into the choice Plaintiffs discuss, Plaintiffs have not yet carried their burden to show an injury-in-fact for those class members. *TransUnion*, 594 U.S. at 430–31 ("As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing.").

Similarly, the County has submitted evidence that 309 members of the class never applied for alternative positions with the County. Anderson Decl., Ex. 32 ("Quon Decl.") ¶ 5 & Ex. 1. Again, Plaintiffs have not submitted evidence showing why those individuals declined to engage in the accommodations process, meaning that Plaintiffs have likewise not yet carried their burden to show that those individuals suffered a concrete injury, rather than a hypothetical one, based on the County's accommodations policy challenged in this litigation.

This motion does not directly present—and thus the Court does not decide—the question of whether all absent class members can establish Article III standing. However, standing will clearly be an issue for each Plaintiff who goes forward in the case. Moreover, the above discussion previews the following sections of this Order. That is, because the claims that Plaintiffs assert largely depend on individualized and fact-intensive inquiries, the Court has concluded that even for the class members who *do* ultimately have Article III standing, continuing to pursue those claims on a class basis is not appropriate. The Court will now address the class certification requirements of Federal Rule of Civil Procedure 23 as applied to the class members who are able to cross that jurisdictional threshold.

**C. Showing Under Rule 23(a)**

Rule 23(a) requires that (1) the members of the class must be so numerous that joinder is impracticable, (2) there must be questions of law or fact common to the class, (3) the representative's claims and defenses must be typical of the class members' claims and defenses, and (4) the representative must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)–(4). Defendant specifically challenges Plaintiffs' showing related to commonality.[1]

---

[1] As the Supreme Court has previously stated, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011) (citation omitted). Since the Parties direct their arguments at the commonality requirement, the Court discusses only that factor. However, for similar reasons as are detailed in the commonality

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Defendant argues that the claims of the class members in this case "cannot be resolved 'in

2    one stroke,'" and that therefore commonality—particularly regarding injury—is lacking.  Mot. at

3    8–9.  Walking through the five certified questions, Defendant argues that individualized inquiries

4    will be required to resolve each one because so many class members did not seek or require

5    accommodations and were never "relegated . . . to unpaid leave."  *Id.* at 9–10.  The "mini trials"

6    necessary to resolve each class member's claims, Defendant says, renders this action inappropriate

7    for class treatment.  *Id.* at 11.

8    In response, Plaintiffs argue that "the County's arguments speak to whether the Class is

9    overly broad, not to whether individualized issues control," and point to the County's policies and

10    orders as the relevant evidence, common to the entire class, that Plaintiffs think the Court must

11    assess in order to resolve the claims on a classwide basis.  Opp. at 18–20.  Plaintiffs go on to argue

12    that "the County's accommodations policy was uniform: Class members were placed on unpaid

13    administrative leave and allowed to use their leave banks."  *Id.* at 21.

14    In order for a case to proceed as a class action, there must be "questions of law or fact

15    common to the class."  Fed. R. Civ. P. 23(a)(2).  Elaborating on this requirement, the Supreme

16    Court has explained that commonality requires the plaintiff to demonstrate that the class members

17    "have suffered the same injury," such that "a class-wide proceeding [can] generate common

18    answers *apt to drive the resolution of the litigation*."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

19    338, 349–50 (2011) (emphasis added) (quoting *Falcon*, 457 U.S. at 157, and Nagareda, *Class

20    Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).  The common

21    question "must be of such a nature that it is capable of classwide resolution—which means that

22    determination of its truth or falsity will resolve an issue that is central to the validity of each one of

23    the claims in one stroke."  *Id.* at 350.  On the other hand, "an individual question is one where

24    members of a proposed class will need to present evidence that varies from member to member."

25    *Olean*, 31 F.4th at 663 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

26    This Court originally found that the commonality requirement was satisfied with regard to

27    

28    analysis, the Court is also skeptical that the "claims or defenses of the representative parties" in
this case "are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).

United States District Court
Northern District of California

Plaintiffs' constitutional claims because "Plaintiffs' claims against the Risk Tier System and the prioritization of medical and disability exemptions are against the County's Policy—which applied to every member of the class in the same way." Dkt. No. 125 at 8. Likewise, the Court found that the FEHA and Title VII claims also evinced the necessary commonality because "every member of the class received the same accommodation under the Policy—they were put on leave and offered assistance finding positions in low-or intermediate-risk roles." *Id.* at 9–10.

In other words, the Court's certification decision was based upon a misunderstanding about the underlying facts that has been corrected through the Parties' respective summary judgment motions. As the County aptly puts it: the "basic premise" upon which the Court relied at class certification was that all County employees granted religious exemptions whose positions were categorized as "high-risk" for COVID-19 transmission were placed on unpaid leave upon being granted their exemptions. *See* Mot. at 7. Now, on a more developed record, it is clear that that is *not* what happened. Instead, the County communicated to its employees that individuals whose roles were categorized as high-risk would not be able to continue working in that same role if they did not become vaccinated. *See* Byrd Decl., Ex. 2. Although the one-page document laying out the Risk Tier System, *id.*, stated that the County could "reasonably accommodate [individuals in high-risk roles] through providing them a temporary leave of absence, during which the County w[ould] assist them in seeking reassignment or transfer to a lower- or intermediate-risk position," *id.*, the County's communications to those individuals who were provisionally granted exemptions make clear that unpaid administrative leave would only be imposed if the individual was unable to move to a different position and/or to use leave banks. As one such letter stated:

> [T]he County cannot safely accommodate you in your current role. The Department will now meet with you to determine whether there is a reasonable accommodation . . . such as a reassignment or transfer to a lower-risk position, or an unpaid leave of absence. . . . Unless you can be placed in a new position in the Department before November 1, 2021, you will be placed on administrative leave effective November 1, 2021. You may apply your applicable leave banks . . . to this leave of absence, after which your leave will be unpaid. If you are able to be reassigned to an alternate position while you are on administrative leave, you will return to paid status.
>
> If the Department is unable to reassign or accommodate you in a lower-risk position, you will be referred to the Equal Opportunity Division (EOD) for potential placement elsewhere in the County to an open position for which you meet the minimum qualifications.

United States District Court
Northern District of California

1  Byrd Decl., Ex. 11 at 1.  Thus, class members were given advance warning that an unpaid leave of

2  absence might commence if (1) they remained unvaccinated, (2) they were unable to be

3  transferred to a new position within their department, (3) they were unable to find a position in

4  another department, and (4) they did not have or choose to use leave banks to continue receiving

5  pay while seeking an alternate placement.  At the same time, class members were invited to

6  immediately engage with their departments in order to begin the accommodation process.

7        Crucially, the Court agrees with Defendant that Plaintiffs' "letter-receipt" theory—i.e., that

8  the County's letters setting out next steps constituted "threats"—is unpersuasive.  First, as

9  discussed in the preceding paragraph, the Court finds that Plaintiff's theory does not fairly

10  characterize the communication sent by the County.  Second, there is simply no evidence that

11  most class members actually experienced coercion or duress with regard to their decision to

12  become vaccinated, so Plaintiffs' theory fails for lack of proof as it pertains to class certification

13  only.

14        In the absence of this letter-receipt theory, and in light of the fact that nearly half of the

15  class members never actually went on leave, the Court must revisit each of the certified questions

16  in order to ascertain whether commonality still exists.  Those five certified questions include:

17  1. Whether Defendants violated Plaintiffs' right to free exercise and
equal protection of the law by prioritizing medical exemptions
18     over religious exemptions in high-risk settings;

19  2. Whether Defendants' Risk Tier System violated the Free Exercise
Clause and Equal Protection Clause because it relegated Plaintiffs
20     and the Class members to unpaid leave but allowed some
unvaccinated or non-boosted employees to continue to work;

21  3. Whether the County's religious exemption and/or
accommodation procedure was either non-neutral or not generally
22     applicable such that it constitutes an individualized assessment
under [*Fulton v. City of Philadelphia*, 593 U.S. 522 (2021)], and
23     is thereby subject to strict scrutiny;

24  4. Whether Defendants provided Individual Plaintiffs and the Class
members with reasonable accommodation as required under
FEHA and Title VII; and

25  5. Whether Defendants violated the Establishment Clause by
demonstrating hostility towards religion.

26  The Court will consider each question in turn.

27  **1.  First Certified Question**

28        The first certified question is "Whether Defendants violated Plaintiffs' right to free

United States District Court
Northern District of California

1   exercise and equal protection of the law by prioritizing medical exemptions over religious

2   exemptions in high-risk settings." On this first question, the County argues that "individualized

3   inquiries are required . . . because . . . few (if any) Plaintiffs can even allege injury." Mot at 9.

4   Plaintiffs respond that this first question "generates a common answer" because "each of these

5   Class members claims a valid injury," referring to their arguments that the class members were

6   injured by the coercion they allegedly experienced upon receipt of the County's communications

7   letting them know that they could not continue in their positions unvaccinated. Opp. at 18.

8          On this first question, the Court concludes that the commonality requirement is not met.

9   Over half of the County employees included in the class as presently certified (1) never took leave,

10  in some cases because they chose to get vaccinated rather than continue to pursue their requested

11  exemptions, (2) received an alternative placement, (3) went on leave for an unrelated reason, or

12  (4) declined to seek an accommodation through the proffered procedures, meaning that they could

13  not have been injured by any priority given in accommodations placements to those who received

14  medical- or disability-related exemptions. *See* Volk Decl. ¶ 12; Quon Decl. ¶ 5; Anderson Decl.,

15  Ex. 33 ("Doyle Decl.") ¶ 7 (noting that, at a time when 138 County personnel in high-risk roles

16  were on leave, approximately 30 of those individuals "were on a leave (such as family, medical or

17  other personal leave) unrelated to their vaccination status"); *id.* ¶ 14 (noting that "80% of the

18  personnel placed in alternate roles had religious exemptions). Again, Plaintiffs have not submitted

19  evidence showing that those individuals felt that the County's policies burdened any sincerely held

20  beliefs, and Plaintiffs cannot meet their burdens to demonstrate standing and commonality by

21  simply urging the Court to *assume* that all (or most) class members were injured due to feeling

22  "coerced." Instead, quite contrary to Plaintiffs' argument that it is susceptible to a common

23  answer, the question of whether the County violated any individual Plaintiff's free exercise or

24  equal protection rights must be resolved on a case-by-case basis.

25          **2.   Second Certified Question**

26          The second certified question is "Whether Defendants' Risk Tier System violated the Free

27  Exercise Clause and Equal Protection Clause because it relegated Plaintiffs and the Class members

28  to unpaid leave but allowed some unvaccinated or non-boosted employees to continue to work."

13

As Plaintiffs concede, Opp. at 19, the second certified question is no longer relevant to this decertification motion in light of the fact that the Court has already granted Defendant's Motion for Summary Judgment as to Plaintiffs' Free Exercise and Equal Protection claims related to the County's Risk Tier System.  Dkt. No. 178 at 27.

### 3.  Third Certified Question

The third certified question is "Whether the County's religious exemption and/or accommodation procedure was either non-neutral or not generally applicable such that it constitutes an individualized assessment under [*Fulton v. City of Philadelphia*, 593 U.S. 522 (2021)], and is thereby subject to strict scrutiny."  On this third question, Defendant argues that it involves a "preliminary legal determination that would not resolve a single claim of a single class member" and that "the majority of class members have no standing to even seek this preliminary determination."  Mot. at 10.  In response, Plaintiffs argue that this question is answered in the same way "with respect to every member of the class" and, when considered in combination with the other Free Exercise and Equal Protection claims, it is likely to "drive the resolution of the litigation."  Opp. at 19.

The County correctly notes on Reply, Reply at 11, that the Court has already resolved the question of which level of scrutiny applies to Plaintiffs' Free Exercise and Equal Protection claims.  Dkt. No. 178 at 23.  As demonstrated by the Court's determination at summary judgment, it is a common legal question shared by all class members with standing.  However, since the relevant legal issue has already been decided, the fact that the third certified question meets the commonality requirement does not weigh heavily in favor of maintaining the proceeding as a class action.

### 4.  Fourth Certified Question

The fourth certified question is "Whether Defendants provided Individual Plaintiffs and the Class members with reasonable accommodation as required under FEHA and Title VII."  On the fourth question, the County argues that "class members had diverse experiences with the County's accommodations," including that many members of the class did not require accommodations at all.  Mot. at 10.  Moreover, "[a]ssessing whether the accommodations provided to these employees

14

United States District Court
Northern District of California

1    were reasonable involves quintessentially fact-specific, individualized inquiries that cannot be

2    resolved in one stroke."  *Id.* (citing *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir.

3    1999)).  In opposition, Plaintiffs argue that the commonality requirement is met because "the

4    accommodation provided in the Policy is unreasonable" and was "applicable to all personnel."

5    Opp. at 19–20.

6            On this question, Plaintiffs are mistaken in suggesting that whether the provided

7    accommodations were reasonable is a "shared legal issue amongst" the class members.  *See id.* at

8    20.  For Plaintiffs' Title VII and FEHA claims, liability is determined based on a burden-shifting

9    analysis.  *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023).

10   "To plead a *prima facie* case of failure to accommodate religion under Title VII and FEHA, a

11   plaintiff must allege . . . that she holds 'a bona fide religious belief' that conflicts with an

12   employment requirement."  *Id.* (citation omitted).  She must also show that she "informed [her]

13   employer of the belief and conflict," and "the employer discharged, threatened, or otherwise

14   subjected [her] to an adverse employment action because of [her] inability to fulfill the job

15   requirement."  *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004) (citation

16   omitted).  If the employee successfully sets out a *prima facie* case, "the burden shifts to the

17   employer to show 'either that it initiated good faith efforts to accommodate reasonably the

18   employee's religious practices or that it could not reasonably accommodate the employee without

19   undue hardship.'"  *Bolden-Hardge*, 63 F.4th at 1224 (citation omitted); *Peterson*, 358 F.3d at 606

20   (citation omitted).  "Undue hardship" means that "the burden of granting an accommodation

21   would result in substantial increased costs in relation to the conduct of its particular business."

22   *Groff v. DeJoy*, 600 U.S. 447, 470 (2023) (citation omitted).

23           As the Court originally understood it, all class members were subjected to the same

24   allegedly adverse employment action: they were placed on indefinite unpaid leave when granted

25   their religious exemptions.  If that had been true, Plaintiffs might have stated a classwide *prima

26   facie* case of failure to accommodate.  *See Steenmeyer v. Boeing Co.*, 92 F. Supp. 3d 1024, 1031

27   (W.D. Wash. 2015) (explaining that just because unpaid leave can sometimes be a reasonable

28   accommodation "does not mean that it cannot also be an adverse action, particularly where the

1   employee is placed on unpaid leave involuntarily"); *Dawson v. Akal Sec. Inc.*, 660 F. App'x 504,

2   506 (9th Cir. 2016).  But it turned out not to be true.  What actually happened was that the County

3   communicated the next steps to those individuals who were provisionally granted exemptions,

4   including how to seek transfers or alternate placements, and simultaneously invited them to

5   engage in discussions with their Departments regarding potential accommodations.  *See* Byrd

6   Decl., Ex. 11 at 1.  After that, nearly half of the class never actually went on leave, and 309 class

7   members never sought alternative placements through the procedures laid out by the County.

8   Volk Decl. ¶ 12; Quon Decl. ¶ 5.

9        As previously discussed, *supra* section III.C, the Court does not agree that *mere receipt* of

10  the County's communication amounted to a "threat" of adverse action.  Thus, while Plaintiffs are

11  correct that a "threat" is enough to establish a *prima facie* case under their Title VII and FEHA

12  claims, *see Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993), no such threat has been

13  shown here.  Plaintiffs' cases do not persuade the Court otherwise.  First, in *Gage v. Mayo Clinic*,

14  707 F. Supp. 3d 870 (D. Ariz. 2023), the court expressly declined to address whether the Plaintiff

15  had sufficiently pleaded adverse action (or a threat of adverse action), because the Defendant did

16  not dispute that element of the claim.  *Id.* at 879.  In *Zimmerman v. PeaceHealth*, 701 F. Supp. 3d

17  1099 (W.D. Wash. 2023), the Plaintiffs alleged that they were actually "*placed* on unpaid

18  administrative leave," not that they were "threatened" with unpaid administrative leave.  *Id.* at

19  1109.  Next, footnote number five in *Equal Employment Opportunity Commission v. Townley*

20  *Engineering & Manufacturing Company*, 859 F.2d 610 (9th Cir. 1988), merely recites the rule that

21  "[t]he threat of discharge (or of other adverse employment practices) is a sufficient penalty" to

22  state a *prima facie* case.  *Id.* at 614 n.5 (citing *Burns v. Southern Pac. Transp. Co.*, 589 F.2d 403,

23  405 (9th Cir. 1978), *cert. denied*, 439 U.S. 1072 (1979)).  The case does not further elaborate on

24  what constitutes a "threat," since the defendant in that case did not contest that the plaintiff had

25  established a *prima facie* case.  *Id.* at 614.  The same is true in *Opuku-Boateng v. State of*

26  *California*, 95 F.3d 1461 (9th Cir. 1996), *as amended* (Nov. 19, 1996).  *Id.* at 1467 & n.9.

27       The closest analogy is Plaintiffs' final case.  There, the plaintiff clearly alleged that (1) he

28  told his supervisor he objected to performing abortion care duties, (2) his supervisor responded by

United States District Court
Northern District of California

United States District Court
Northern District of California

telling the plaintiff that he would not consider the plaintiff's religious beliefs in setting assignments, and (3) his supervisor stated that he "would refuse to change [the plaintiff's] assignment" in response to the plaintiff's asserted religious concerns.  *See Rodriguez v. City of Chicago*, No. 95-cv-5371, 1996 WL 22964, at *3 (N.D. Ill. Jan. 12, 1996).  Based on those allegations, the court concluded that the plaintiff "reasonably could have inferred that he would be disciplined for his refusal to comply with [the supervisor's] assignment."  *Id.*  Yet in that case, the employer's position was firm and served to end the conversation.  *See id.*  Here, in contrast, the County's communications to exempted employees provided options and served to initiate discussions regarding possible accommodations.  In other words, the *Rodriguez* case illustrates that the point at which a County employee was actually placed on indefinite unpaid administrative leave—or told that they would be placed on indefinite unpaid administrative leave because no other option would be considered—could qualify as an adverse action or a threat of adverse action. But the initial email from the County laying out next steps does not.

Since that message itself does not constitute "adverse action," and since Plaintiffs have not submitted evidence of the reason(s) why some people chose to vaccinate rather than pursue their exemption request further, Plaintiffs cannot plausibly argue that any adverse action was taken toward those class members who never took leave.  Indeed, it appears likely that no *prima facie* case can be stated for a large portion of the class.  More importantly for purposes of this motion, an individualized inquiry is necessary to discern whether a given class member suffered a qualifying adverse action.

For example, for any County employee who went on leave—paid or unpaid—for some reason *other than* the requested religious accommodation, no *prima facie* case has been stated because the allegedly adverse action (the leave) was not "because of" the requested religious accommodation.  *See Peterson*, 358 F.3d at 606; *Heller*, 8 F.3d at 1439 (noting that the third step of the *prima facie* analysis was met where employee was "discharged *because of* his refusal to comply with the employment requirements" (emphasis added)).

For any County employee who went on paid or unpaid leave while seeking a transfer or a new position, the trier of fact will need to engage in an individualized inquiry regarding whether

United States District Court
Northern District of California

the leave was an "adverse action" or whether the employee agreed that temporary leave was an appropriate accommodation.  Courts have concluded that—under appropriate circumstances— unpaid leave (or leave that consumes leave bank time) is not necessarily an "adverse action."  *See, e.g.*, *Perata v. City & Cnty. of San Francisco*, No. 21-cv-02819, 2023 WL 4537695, at *16 (N.D. Cal. July 13, 2023) ("Plaintiff points to no caselaw indicating that an employee's decision to go on leave constitutes an adverse action by an employer and does not point the Court to evidence for a reasonable jury to find Plaintiff was forced to take leave akin to a constructive discharge."); *Bezzina v. United Airlines, Inc.*, No. 22-55293, 2023 WL 6389397, at *2 (9th Cir. Oct. 2, 2023) (mem.) ("The question of whether placing Bezzina on unpaid leave was an accommodation, or instead, an actionable adverse action, turns on that same, unresolved fact dispute."); *Gallagher v. Hawaii Symphony Orchestra*, No. 23-cv-00395, 2024 WL 1331799, at *9 (D. Haw. Mar. 27, 2024) ("There might be some situations where unpaid leave could itself constitute a reasonable accommodation." (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70 (1986))).

Employees who unwillingly went on an extended unpaid leave are, of course, differently situated.[2]  Those class members might be able to state a *prima facie* case of failure to accommodate.  But then the burden shifts, and the trier of fact must move to the next set of individualized, fact-intensive questions: Did the County initiate good-faith efforts to accommodate the individual in question?  *See Bolden-Hardge*, 63 F.4th at 1224.  For the employee's specific position, would permitting the individual to continue working unvaccinated "result in substantial increased costs in relation to the conduct of [the County's] particular business"?  *Groff*, 600 U.S. at 470.  (Since class members were employed in widely varied positions across multiple departments, the hardship analysis will necessarily need to be tailored to the individual employee and the position that they held.)  Did that individual participate in the County's accommodation efforts in good faith, or did they stonewall the County's offers of anything other than their current position? *Am. Postal Workers Union, San Francisco Loc. v. Postmaster Gen.*, 781 F.2d 772, 777

---

[2] It appears that the representative Plaintiffs likely *were* unwillingly subjected to extended unpaid leave.  However, given that 205 class members *never went on leave at all*, Volk Decl. ¶ 12, the Court reiterates its concern that the named Plaintiffs are not typical.

United States District Court
Northern District of California

(9th Cir. 1986) ("[A] reasonable accommodation need not be on the employee's terms only."). And for any County employee who received a transfer or reassignment, the trier of fact will then need to engage in a detailed, fact-specific analysis of how the new position compared to the previous one, in order to determine whether there was a material impact to the employee's pay or benefits. *Id.* at 776–77 ("Where an employer proposes an accommodation which effectively eliminates the religious conflict faced by a particular employee, however, the inquiry under Title VII reduces to whether the accommodation reasonably preserves the affected employee's employment status.").

Each component of this burden-shifting analysis is relevant to a determination of the County's FEHA and Title VII liability to the plaintiff in question. For that reason, this is not a case in which the class members share a common injury that might be hastened to a resolution through class treatment of those claims.

### 5. Fifth Certified Question

The fifth certified question is "Whether Defendants violated the Establishment Clause by demonstrating hostility towards religion." As to this question, Defendant argues that "Plaintiffs have not articulated a viable claim under the Establishment Clause, much less explained how they can maintain this case as a class action." Mot. at 11. Plaintiffs respond that this is a "merits argument" that is "not relevant to decertification." Opp. at 20.

It remains to be seen whether Plaintiffs can prove their Establishment Clause claim. Only Defendant moved for summary judgment on that claim, and neither side effectively addressed the governing Establishment Clause standard. *See* Dkt. No. 178 at 25. "To determine whether government action violates the Establishment Clause," courts consider the Clause's "original meaning and history." *Hunter v. U.S. Dep't of Educ.*, 115 F.4th 955, 964–65 (9th Cir. 2024) (quoting *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 536 (2022)). "Any practice that was 'accepted by the Framers and has withstood the critical scrutiny of time and political change' does not violate the Establishment Clause." *Id.* (quoting *Town of Greece v. Galloway*, 572 U.S. 565, 577 (2014)). In the Amended Complaint, Plaintiffs appear to allege that the County's specific actions taken toward its employees who sought exemptions and accommodations "demonstrated

United States District Court
Northern District of California

1  hostility toward religion." *See* Dkt. No. 55 ¶ 88.  However, as the evidence at summary

2  judgment—and submitted as part of the briefing on the present motion—reveals, the County's

3  interactions with class members varied.  *See, e.g.*, Anderson Decl., Ex. 2 ("Ortega Decl.") ¶¶ 10–

4  17 (discussing interactions with Plaintiff Davis); Menzies Decl. No. 1 ¶¶ 9–21 (discussing

5  interactions with Plaintiff Ramirez); Anderson Decl., Ex. 6 ("Fisk Decl.") ¶¶ 4–11 (discussing

6  interactions with class member Melanie Nguyen); Anderson Decl., Ex. 7 ("Grumbos Decl.") ¶¶ 4–

7  15 & Sub-Exs. 1–8 (discussing interactions with class members James Luna and Adam Valle).

8  Accordingly, determining whether the County's conduct with respect to a given class member

9  would have been accepted by the Framers and has since withstood the test of time will require an

10  individualized analysis that negates a finding of commonality on this question.

11                                              \*\*\*

12      Based on the foregoing analysis, the Court concludes that the first, fourth, and fifth

13  certified questions fail to meet the commonality requirement.  The second and third certified

14  questions meet the commonality requirement.  However, neither justifies maintaining class

15  certification going forward, because the second question has already been resolved in favor of the

16  County at summary judgment, and the third question is a preliminary legal determination that will

17  not further "drive the resolution of the litigation."  *Dukes*, 564 U.S. at 350.

18      **D.  Showing Under Rule 23(b)**

19      Regarding Rule 23(b), the Court's discussion can be brief.  Although the Parties did not

20  expressly address Rule 23(b) in their briefing on this motion, predominance concerns were

21  implicit in Defendant's briefing regarding "ascertainability."  *See* Mot. at 7–8, 11–12.  Indeed, it

22  has become apparent that this is not a case in which "the questions of law or fact common to class

23  members predominate over any questions affecting only individual members," and where "a class

24  action is superior to other available methods for fairly and efficiently adjudicating the

25  controversy."  Fed. R. Civ. P. 23(b)(3).

26      "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

27  cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S.

28  591, 623 (1997).  In order to meet this requirement, "questions of law or fact common to class

members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). As the Ninth Circuit has recently explained, "[i]ndividual questions require each class member 'to present evidence that varies from member to member.'" *Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1222 (9th Cir. 2024). Common questions, on the other hand, "can be answered by 'the same evidence . . . for each member . . . [or] the issue is susceptible to generalized, class-wide proof.'" *Id.* (alterations in original) (quoting *Tyson Foods*, 577 U.S. at 453). To establish that the predominance requirement is met, a plaintiff must be able to show, by a preponderance of the evidence, that "class issues predominate" and that "the common question[s] relate[] to the central issue[s]" in the class claims. *Id.* (citations omitted). On the other hand, the party challenging class certification is entitled to "provide sufficient evidence that the individualized issues bar recovery on at least some claims, thus raising the spectre of class-member-by-class-member adjudication of the issue." *Id.* (quoting *Van v. LLR, Inc.*, 61 F.4th 1053, 1067 (9th Cir. 2023)). "[T]he predominance criterion is far more demanding" than the commonality requirement under Rule 23(a). *Anchem Prods., Inc.*, 521 U.S. at 624.

Here, the Court has already found that commonality is not met on all but one of the certified questions that remain in play. *Supra* section III.C. And now that the Court better understands the facts on the ground at the time of the events underlying this litigation, the Court recognizes that it is "questions affecting only individual members" of the class that predominate in this case. *Amchem Prods., Inc.*, 521 U.S. at 622. The determination of whether the County is liable on any of Plaintiffs' remaining claims will rely on an analysis of the Parties' conduct and interactions throughout the accommodations process on an employee-by-employee basis, as well as on case-by-case consideration of the historical treatment of the County's conduct for Establishment Clause purposes. These highly individualized issues of alleged discrimination will without a doubt require "class-member-by-class-member adjudication." *Miles*, 89 F.4th at 1222. Accordingly, this is not a case in which the requirements of Rule 23(b)(3) are met.

***

In sum, upon the more developed record now before the Court, it is clear that Plaintiffs are unable to make the showing under either Rule 23(a) or Rule 23(b) that is required to proceed in the

United States District Court
Northern District of California

action on a class basis.  Further, "[w]hile the court has the power to modify [] class definitions," *Mazur v. eBay Inc.*, 257 F.R.D. 563, 568 (N.D. Cal. 2009), the Court declines to do so here.  In light of the highly varied experiences of the class members and the fact that all but one of the still-live certified questions fails to meet the commonality requirement, the Court sees no reason to rewrite the class definition at this juncture.  Accordingly, the Motion for Class Decertification is GRANTED and the class is DECERTIFIED.

### E.  Article III Standing of Plaintiff UnifySCC

"[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  Since "[t]he party invoking federal jurisdiction[] bears the burden of establishing" the elements of Article III standing, a plaintiff must be able to demonstrate regarding its claims (1) an "injury in fact" that is (2) "fairly traceable to the challenged conduct of the defendant," and (3) likely to be "redressed by a favorable judicial decision."  *Spokeo*, 578 U.S. at 338 (citing *Lujan*, 504 U.S. at 560–61); *Iten v. Los Angeles*, 81 F.4th 979, 984 (9th Cir. 2023).  "[O]rganizations may have standing 'to sue on their own behalf for injuries they have sustained,'" if they can satisfy the injury in fact, causation, and redressability requirements.  *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 393–94 (2024) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982)).

At the summary judgment hearing, the Court advised the Parties to address UnifySCC's standing in light of *Arizona Alliance for Retired Americans v. Mayes*, 117 F.4th 1165 (9th Cir. 2024), and the Supreme Court's decision in *Food and Drug Administration v. Alliance for Hippocratic Medicine,* 602 U.S. 367 (2024), in the decertification motion.  Responding to that request, Defendant argues that UnifySCC has not suffered an injury sufficient to establish Article III standing and that it lacks "representational" standing because it cannot meet the test set out in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977).  Mot. at 14–16.  In their Opposition brief, Plaintiffs state that, "while UnifySCC had standing at the inception of the case because it sought declaratory and injunctive relief, Plaintiffs concede it no longer has standing because those claims for prospective relief have been mooted."  Opp. at 23.  Accordingly, "Plaintiffs stipulate to the dismissal of UnifySCC as a plaintiff."  *Id.*  UnifySCC is therefore

1    dismissed from the case.

2    **IV.    ORDER**

3           For the foregoing reasons, IT IS HEREBY ORDERED that the Motion for Class

4    Decertification (Dkt. No. 176) is GRANTED.  The Class is DECERTIFIED.  Plaintiff UnifySCC

5    is DISMISSED.  Plaintiffs Tom Davis, Maria Ramirez, and Elizabeth Baluyut may each proceed

6    on an individual basis.

7

8           **IT IS SO ORDERED.**

9

10   Dated:  May 21, 2025

11   _____

12   BETH LABSON FREEMAN
     United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28