**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MARIA RAMIREZ, et al., | Case No. 22-cv-01019-BLF |
| Plaintiffs, | |
| v. | **ORDER REGARDING MOTIONS *IN LIMINE*** |
| SANTA CLARA COUNTY, | [Re: ECF Nos. 239, 240, 241, 242, 243, |
| Defendant. | 249, 250] |

Before the Court are Plaintiffs Tom Davis, Maria Ramirez, and Betsy Baluyut's two motions *in limine* ("MILs"), *see* ECF Nos. 249, 250, and Defendant Santa Clara County's five MILS, *see* ECF Nos. 239, 240, 241, 242, 243. The Court held the Final Pretrial Conference on April 9, 2026, and issued oral rulings on the Parties' MILs. ECF No. 283; *see also* ECF No. 287 ("Tr."). The Court subsequently issued orders approving and adopting the Parties' Joint Pretrial Statement, *see* ECF No. 285, and setting trial schedule and procedures, *see* ECF No. 286. For the reasons stated by the Court on the record at the hearing and set forth below, the Court rules on the Parties' MILs as follows.

## I.   BACKGROUND

This lawsuit concerns the County of Santa Clara's (the "County") response to the COVID-19 pandemic, which included imposing a requirement on County employees to either become vaccinated against the virus or obtain an exemption from vaccination. On August 5, 2021, the County issued a policy requiring all employees to receive the COVID-19 vaccine by September 30, 2021. Declaration of Jeffrey V. Smith, ECF No. 221-1 ("Smith Decl.") ¶¶ 9–10 & Ex. 2. The County provided exemptions for sincerely held religious belief, practice, or observance. Smith Decl. Ex. 2; *see also* Declaration of Rachele R. Byrd, ECF No. 224-1 ("Byrd

United States District Court
Northern District of California

Decl.") ¶ 2 & Ex. 1.

Plaintiffs are County employees who objected to the vaccines on religious grounds and were granted exemptions from the vaccine requirement. Byrd Decl. Ex. 2 ¶ 3, Ex. 3 ¶ 3, Ex. 4 ¶ 3. But they were not permitted to continue in-person work in their assigned high-risk job settings and were instead placed on administrative leave. Byrd Decl. Ex. 2 ¶ 3, Ex. 3 ¶ 3, Ex. 4 ¶ 3; Smith Decl. ¶ 15. This lawsuit was filed on February 18, 2022, challenging the County's vaccine mandate and associated conduct. ECF No. 1. On September 27, 2022, the County rescinded the vaccination requirement for all County employees; at that point, County employees could return to their work positions regardless of risk categorization. *See* Smith Decl. ¶ 23 & Ex. 6.

## II.    DISCUSSION

### A.    Plaintiffs' Motions *in Limine*

#### 1.    MIL No. 1 to Exclude Evidence, Argument, or Testimony Concerning Plaintiff Tom Davis's Tax Returns for 2022–2024

In their MIL No. 1, Plaintiffs move to exclude evidence or argument based upon Mr. Davis's tax returns for the years 2022, 2023, and 2024 on the grounds that they are irrelevant and carry a substantial risk of prejudice. ECF No. 249. In response, the County contends that the tax returns will be offered "for a straightforward evidentiary purpose—to rebut Davis's claim of emotional distress based on alleged financial hardship." ECF No. 263 at 2. According to the County, Mr. Davis cannot simultaneously exclude evidence bearing on his financial condition and claim emotional distress based on his financial condition.

Under Federal Rule of Evidence ("FRE") 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FRE 401. FRE 402 provides that "relevant evidence is admissible unless another rule or federal law provides otherwise, and that irrelevant evidence is inadmissible." *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019); *accord* FRE 402 (providing that relevant evidence is admissible unless precluded by the United States Constitution, a federal statute, the Federal Rules of Evidence, or a rule prescribed by the United States Supreme Court). FRE 401's "basic standard of relevance . . . is a liberal one."

*Crawford*, 944 F.3d at 1077 (alteration in original) (quoting *Daubert*, 509 U.S. at 587). FRE 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FRE 403; *see also United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001).

Mr. Davis's financial status during each year at issue is relevant to his claim for emotional distress flowing from financial hardship. *See, e.g.*, Plaintiffs' Third Set of Supplemental Interrogatory Responses, ECF No. 263-2 at 5 ("As a result of losing his job, Mr. Davis was required to borrow money from family members and go into debt. Defendant's actions caused Mr. Davis substantial anxiety and fear stemming from financial instability and uncertainty about future employment."). However, Plaintiffs argue that disclosing the tax returns themselves would be prejudicial based on the taxable income Mr. Davis declared and the refund that he received. ECF No. 249 at 3–5. Plaintiffs contend that Mr. Davis's tax strategy—rather than his claims— would go on trial. *Id.* Mr. Davis's tax strategy is unusual and might be controversial to jurors. As such, the tax returns may influence the jury and distract them from the relevant issue of Mr. Davis's net spendable income after taxes. On this basis, the Court agrees with Plaintiffs that the probative value of the tax returns is substantially outweighed by the risk of prejudice. Accordingly, Plaintiffs' MIL No. 1 is GRANTED.

Nonetheless, the County points out that due to his tax practices, Mr. Davis's gross income does not accurately portray his financial condition because jurors may infer that he made typical tax payments. ECF No. 263 at 4. Thus, because Mr. Davis's financial condition is at issue, the County is entitled to present evidence of Mr. Davis's net spendable income after taxes for each of the years relevant to his claims. The County's expert may state this value based on his reviews of Mr. Davis's income, tax refunds, and other financial documents without revealing the content of the tax returns or the details of his claimed deductions. The Court also advises Plaintiffs that if Mr. Davis opens the door to the issue of his after-tax income, the Court may reassess the admissibility of his tax returns.

United States District Court
Northern District of California

3

United States District Court
Northern District of California

### 2. MIL No. 2 to Exclude Opinions by the County's Damages Expert Concerning Plaintiffs' Emotional Distress Damages

In their MIL No. 2, Plaintiffs move to preclude Defendant's damages expert, Karl Erik Volk, M.A., from offering opinions or characterizations at trial concerning Plaintiffs' emotional distress damages or what their financial documents might say about their emotional distress damages. ECF No. 250. Plaintiffs contend that Mr. Volk's testimony will not help the jury understand the financial documents or assess Plaintiffs' emotional distress damages. Plaintiffs further argue that Mr. Volk lacks expertise in the area of emotional distress. In opposition, the County urges that Mr. Volk, an expert in economics, finance, and accounting, has properly applied his expertise and will help the jury understand Plaintiffs' financial picture. ECF No. 262. Mr. Volk is an Executive Vice President at an economic consulting firm. ECF No. 263-4 ("Volk Rep.") ¶ 1. He has an M.A. in Economics from the University of San Francisco and a B.S. in Business Administration from the University of California at Berkeley. *Id.* He was retained by the County to evaluate Plaintiffs' claims of economic loss. *Id.* ¶ 3.

FRE 702 provides that a qualified expert may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FRE 702.

The Supreme Court's cases addressing the admissibility of expert testimony make clear that the district court must play a gatekeeping role, ensuring that any expert opinion admitted is both relevant and reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *General Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). However, so long as an expert's methodology is sound and the expert's opinions satisfy the requirements of FRE 702, underlying factual disputes and how much weight to accord the expert's opinion are questions for the jury. *See Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).

On December 1, 2023, the Judicial Conference's amendments to Rule 702 went into effect, "clarif[ying]" that expert testimony may be admitted only if the court determines "that it is more

4

United States District Court
Northern District of California

likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702, Advisory Committee's Note to 2023 Amendment. The amendment makes clear that a court must first find by a preponderance of the evidence that the expert's basis and methodology are sufficient. Only once that threshold has been met are further challenges to the expert's reliability or their conclusions considered questions of weight, which are left to the jury.

As explained above, Plaintiffs have put their financial condition at issue by alleging emotional distress resulting from financial hardship. *See Valdez v. Travelers Indem. Co. of Conn.*, No. 12-cv-04307-SBA (KAW), 2013 WL 3989583, at *4 (N.D. Cal. Aug. 2, 2013) ("Courts have found that when emotional distress claims are alleged to be caused by financial loss, financial information is not only relevant but nonprivileged."). The County is offering Mr. Volk's testimony to rebut Plaintiffs' theory that their financial instability while on unpaid leave caused emotional distress, not to opine as to whether Plaintiffs were emotionally distressed. The Court finds that Mr. Volk's evaluation of Plaintiffs' economic circumstances falls squarely within his area of expertise. *See* Volk Deposition, ECF No. 251-3 at 23:19–23 ("I do get called upon, on a pretty regular basis, to respond to economic reports that purport to put a value on pain and suffering and what would generally be considered to be noneconomic losses.").

To the extent Plaintiffs contend that Mr. Volk's opinions are unnecessary because Plaintiffs' financial documents are "straightforward, non-technical, and plain English[,]" ECF No. 250 at 3, the Court disagrees. Mr. Volk will be offered to analyze and summarize thousands of pages of financial records, an analysis that, as the County correctly argues, "requires his expertise in forensic economics and accounting." ECF No. 262 at 4. Plaintiffs charge that Mr. Volk "is simply acting as though he were a juror" by drawing "conclusions about Plaintiffs' financial condition from the documents." ECF No. 250 at 3. The Court is unpersuaded. While Mr. Volk's work might involve "some 'simple math calculations'" or other work that "'a juror may be able to do,' 'it would be unreasonable to expect jurors to analyze' all these records." *Int'l Swimming League, Ltd. v. World Aquatics*, No. 18-cv-07394-JSC, 2025 WL 3257200, at *7 (N.D. Cal. Nov. 21, 2025) (quoting *Perez v. Rash Curtis & Assocs.*, No. 16-cv-03396-YGR,

2019 WL 1491694, at *4 (N.D. Cal. Apr. 4, 2019)).

Mr. Volk's testimony is relevant, helpful for a jury, and within the scope of his expertise. Plaintiffs' MIL No. 2 is accordingly DENIED.

### B.      The County's Motions *in Limine*

#### 1.      MIL No. 1 to Exclude Evidence That the County Violated the Free Exercise and Equal Protection Clauses

In its MIL No. 1, the County moves to exclude evidence or argument that the County violated the Free Exercise and Equal Protection Clauses of the U.S. Constitution, based on Plaintiffs' allegation that the County gave employees with medical exemptions to the County's August 5, 2021, COVID-19 vaccination requirement preferential treatment in job transfers.  ECF No. 239.  According to the County, discovery has shown that Plaintiffs lack admissible evidence demonstrating that they were injured by any preferential treatment and thus lack standing. Plaintiffs respond that the County's MIL No. 1 is actually "an inappropriate second motion for summary judgment disguised as a motion *in limine*."  ECF No. 265 at 1.  Plaintiffs further contend that they have Article III standing because they were not provided with job placement assistance from the County equal to that offered to employees with secular exemptions to the vaccine requirement.

Subject-matter jurisdiction is always before the Court.  Fed. R. Civ. P. 12(h)(3).  Thus, while this issue is raised now for the first time in this litigation, and long past the last day to hear summary judgment (when it was as ripe as it is now), the Court will consider the merits of the County's procedurally improper motion.

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  The plaintiff bears the burden of establishing that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*; *see also FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231 (1990).  An injury in fact must be "'concrete' to ensure that it is 'real and not abstract,' and 'particularized' so that it 'affects the plaintiff in a personal and individual way' as opposed to a

6

'generalized grievance.'" *Kumar v. Koester*, 131 F.4th 746, 751–52 (9th Cir. 2025) (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (internal alteration omitted)).

According to the County, Plaintiffs lack standing because they have not identified any job or other accommodation that they did not receive due to preferential treatment. ECF No. 239 at 3 (citing Plaintiffs' Responses and Objections to the County's Third Set of Interrogatories, ECF No. 239-1, Ex. 1 at 5). The County also points out that Ms. Ramirez did not even apply for other jobs. *Id.* at 4 (citing Deposition of Ms. Ramirez, ECF No. 239-1, Ex. 2 at 22:4–12, 23:18–24:12). Plaintiffs urge that the County's argument is beside the point because they were injured by having been denied the opportunity to compete for jobs on an equal basis. ECF No. 265 at 3–5.

The Court agrees with Plaintiffs. In *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993), the plaintiffs challenged an ordinance that gave preferential treatment to minority businesses in the award of city contracts. *See id.* at 658. In finding that the plaintiffs had standing, the Supreme Court explained that, where "the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing." *Id.* at 666. Instead, a plaintiff "need only demonstrate that [he] is able and ready to bid on contracts and that a discriminatory policy prevents [him] from doing so on an equal basis." *Id.*; *see also Gratz v. Bollinger,* 539 U.S. 244, 262 (2003) (holding that plaintiff prospective college student had standing to challenge a university's use of race for admissions because he was denied the opportunity to compete on an equal basis). Here, Plaintiffs persuasively argue that they have alleged that the County erected a barrier, like the one in *City of Jacksonville*, that made it relatively more difficult for employees with religious vaccine exemptions to be placed into alternate jobs. *See* ECF No. 265 at 4–5. Indeed, the County affirmatively stated that "those with provisionally accepted disability/medical exemptions may be entitled to priority consideration for vacant positions." November 3, 2021, Email to County Employees, ECF No. 239-1, Ex. 5 at 1. Furthermore, to the extent the County insists that Ms. Ramirez's failure to apply for other jobs deprives her of Article III standing, the County

conflates its obligation to engage with the accommodations process with the injury in fact requirement.

At the hearing, the County argued that *City of Jacksonville* and *Gratz* are inapposite because they apply the standard for claims for prospective relief, rather than claims for damages. *See* Tr. at 60:2–62:19. Having neglected to cite what the County identifies as the correct legal standard in its MIL No. 1, the County invoked *Texas v. Lesage*, 528 U.S. 18 (467), which explains that, where, as here, "there is no allegation of an ongoing or imminent constitutional violation to support a claim for forward-looking relief, the government's conclusive demonstration that it would have made the same decision absent the alleged discrimination precludes any finding of liability." *Id.* at 21. Although *Lesage* requires more than the "able and ready" element in *City of Jacksonville*, the distance between *Lesage* and *City of Jacksonville* is shorter than the County argued. While *Lesage* addresses the relevant legal standard governing claims for retrospective relief, it does not compel a different result on the record before the Court. The County has not shown that Plaintiffs will be unable to demonstrate that the challenged policies and practices "affected [them] personally or that it impeded [their] ability to compete for . . . work on an equal basis." *Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1185 (9th Cir. 2012). Nor has the County made a "conclusive demonstration that it would have made the same decision[s] absent the alleged discrimination." *Lesage*, 528 U.S. at 21.

Accordingly, the County's MIL No. 1 is DENIED without prejudice to renewal in connection with a Rule 50 motion.

### 2. MIL No. 2 to Exclude Evidence That the County Violated the Establishment Clause

In its MIL No. 2, the County moves to exclude evidence or argument that the County violated the Establishment Clause because Plaintiffs do not have admissible evidence that they were concretely injured by any violation and therefore lack standing. ECF No. 240. In opposition, Plaintiffs contend that this motion—which attempts to exclude a claim—is a motion for summary judgment rather than a motion *in limine*. ECF No. 266. On the merits, Plaintiffs assert that they will offer evidence at trial demonstrating that they have standing.

8

While the Court agrees with Plaintiffs that this motion is improper, it will consider the merits of the County's jurisdictional arguments. The Establishment Clause prohibits governments from making any "law respecting an establishment of religion." U.S. Const. amend. I. Accordingly, "one religious denomination cannot be officially preferred over another." *Kumar*, 131 F.4th at 754 (quoting *Larson v. Valente*, 456 U.S. 228, 244 (1982)). For the purposes of Article III standing, "Establishment Clause injury is often 'spiritual or psychological' as a result of a government action that is not neutral toward a religion." *Id.* at 755 (quoting *Cath. League for Religious & Civil Rights v. City & Cnty. of San Francisco*, 624 F.3d 1043, 1050 (9th Cir. 2010) (en banc)).

The County first argues that Plaintiffs cannot show any pecuniary loss due to an Establishment Clause violation. As Plaintiffs correctly explain, *see* ECF No. 266 at 4, the County confuses damages with injury. To demonstrate standing for their Establishment Clause claim, Plaintiffs do not necessarily need to show that they suffered a monetary harm. *See Kumar*, 131 F.4th at 755. Next, the County contends that Plaintiffs cannot show that they suffered any spiritual or psychological injury due to an Establishment Clause violation. As it did at summary judgment, the County "offer[s] evidence that Plaintiffs[] . . . admitted that they have not experienced hostility to their religion." ECF No. 178 at 26. The County also cites evidence that Ms. Baluyut and Mr. Davis were not aware of preferential treatment given to employees with secular exemptions to the vaccine requirement. ECF No. 240 at 4 (citing Deposition of Ms. Baluyut, ECF No. 240-1, Ex. 4, at 56:17–23; Deposition of Mr. Davis, ECF No. 240-1, Ex. 3 at 40:13–41:7). These depositions are not sufficient to foreclose the possibility that Plaintiffs can submit evidence at trial showing that they suffered a "spiritual or psychological" injury. *Kumar*, 131 F.4th at 755. As discussed above, it appears that Plaintiffs may be able to prove at trial that they suffered an injury in fact arising from the lack of an equal opportunity to compete for jobs.

The County's MIL No. 2 is DENIED without prejudice to renewing its arguments in connection with a Rule 50 motion.

United States District Court
Northern District of California

United States District Court
Northern District of California

### 3. MIL No. 3 to Exclude Portions of the Opinions of Plaintiffs' Medical Expert Dr. Ram Duriseti

In its MIL No. 3, the County moves to exclude the opinions of Dr. Ram Duriseti regarding (1) his personal political and philosophical opinions and (2) possible reasonable accommodations for Plaintiffs that Plaintiffs did not disclose during fact discovery in their interrogatory responses. ECF No. 241. Dr. Duriseti is Plaintiffs' expert and has prepared two reports regarding the relationship between the County's vaccine policies and Plaintiffs' religious beliefs. He offers opinions about available reasonable accommodations. *See* Expert Report of Dr. Duriseti, ECF No. 241-1, Ex. 2 ("Duriseti Rep."); Supplemental Expert Report of Dr. Duriseti, ECF No. 241-1, Ex. 3 ("Duriseti Supp. Rep."). Dr. Duriseti is a clinical Associate Professor of Emergency Medicine at the Stanford University School of Medicine and a practicing Board Certified Emergency Physician. Duriseti Rep. ¶ 1. He also has a Ph.D. in Operations Research. *Id.*

#### a. Dr. Duriseti's "Personal" Opinions

First, the County seeks to exclude Dr. Duriseti's opinions to the extent they exceed his expertise in medicine and operations research and veer into his political and philosophical preferences. ECF No. 241 at 1–2. In response, Plaintiffs aver that they do not intend to elicit testimony from Dr. Duriseti concerning his "personal opinions." ECF No. 267 at 2.

Because the Parties agree that Dr. Duriseti should not opine on his personal opinions, the Court GRANTS the County's MIL No. 3 as to Dr. Duriseti's "political or philosophical opinions." ECF No. 241 at 4. However, the Court does not pinpoint any paragraphs in Dr. Duriseti's reports that are subject to exclusion.

The County also identifies a lawsuit Dr. Duriseti brought against Stanford Medical Center, alleging that he was unlawfully terminated based on a dispute with Stanford Medical Center about his vaccination status and political views. ECF No. 241 at 1 (citing Dr. Duriseti's Complaint for Damages, ECF No. 241-1, Ex. 1 ¶¶ 1, 20, 22, 24, 35, 45, 68, 76). While the County contends that this lawsuit is relevant to demonstrate bias, the Court agrees with Plaintiffs that any evidence of Dr. Duriseti's personal lawsuit would be a waste of time and excludes evidence related thereto. Nonetheless, the Court notes that the Parties will have some latitude to expose personal biases of witnesses and thus the Stanford Medical Center lawsuit may become relevant to expose bias.

Also, a limiting instruction may be appropriate.

### b. Dr. Duriseti's Testimony About Undisclosed Accommodations

Next, the County moves to exclude Dr. Duriseti's testimony about reasonable accommodations that Plaintiffs did not disclose in their interrogatory responses.  ECF No. 241 at 4–5.  In response, Plaintiffs assert that such opinions are "the essence" of Dr. Duriseti's anticipated testimony and were properly disclosed.  ECF No. 267 at 4–5.  As such, they argue, any failure on the part of Plaintiffs to supplement their interrogatory responses was justified and harmless.

Federal Rule of Civil Procedure 37(c) prohibits a party from using at trial information not properly disclosed under Rule 26(a) "unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Rule 26(e) requires all parties to supplement or correct their initial disclosures, expert disclosures, pretrial disclosures, and responses to discovery requests "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).

During fact discovery, the County asked Plaintiffs to "specifically identify each accommodation that you contend the County should have provided, explain why you believe that accommodation would have been reasonable, and identify all evidence in support of your answer."  Plaintiffs' Responses and Objections to the County's Third Set of Interrogatories, ECF No. 241-1, Ex. 4 at 4.  Ms. Ramirez responded that "she should have been accommodated through testing and masking" or "transferred to the telemetry monitoring room. . . in a room large enough that adequate social distancing could have been maintained."  *Id.* at 5.  Ms. Baluyut responded that "she should have been accommodated through testing and masking," or been "transferred to another role that was not high risk or offered training for other jobs that were not public facing."  *Id.*  Neither Ms. Ramirez nor Ms. Baluyut identified quarantining, social distancing, or other enhanced safety protocols as possible accommodations.  However, in his supplemental expert report—delivered after the close of fact discovery—Dr. Duriseti opined that the County should

United States District Court
Northern District of California

have accommodated the Plaintiffs with, *inter alia*, "a strict policy for Plaintiffs to quarantine when symptomatic, masking, regular testing, social distancing, and enhanced safety protocols such as filtration systems and cleaning protocols in Plaintiffs' workplaces," Duriseti Supp. Rep. ¶ 4(c), and by recognizing "infection acquired immunity," *id.* ¶ 17.

Because such accommodations were not identified during fact discovery, the County argues that it would be unfair for Plaintiffs to present testimony on undisclosed accommodations. The Court agrees. The County's citation to *Proofpoint, Inc. v. Vade Secure, Inc.*, is on point. ECF No. 241 at 5 (citing *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-cv-04238-MMC-RMI, 2021 WL 2197954 (N.D. Cal. June 1, 2021)). In *Proofpoint*, a party's expert witnesses based their rebuttal reports on evidence and theories that had not been disclosed during fact discovery. *See* 2021 WL 2197954, at *7. The court struck those portions of the experts' reports after determining that the non-disclosing party had not established "substantial justification or harmlessness stemming from their failure to disclose this information until it appeared" in the expert reports. *Id.*

Here, as in *Proofpoint*, expert testimony delivered after the close of fact discovery discussed evidence and theories that had not previously been disclosed and Plaintiffs did not timely amend their interrogatory responses as required by Rule 26(e). Plaintiffs nonetheless contend that this failure was justified because Dr. Duriseti's supplemental report was timely delivered and in any case harmless because the County could have examined Dr. Duriseti about the alternative accommodations. ECF No. 267 at 4–5. Plaintiffs' arguments miss the point. The County objects to the lack of fact discovery on the undisclosed accommodations, rather than the lack of opportunity to question Dr. Duriseti further about them. This failure to supplement the interrogatory response in a timely manner has deprived the County of the opportunity to obtain further discovery or other factual support to defeat Plaintiffs' late disclosure.

Because Plaintiffs' failure to amend their interrogatory responses was neither justified nor harmless, the Court GRANTS the County's MIL No. 3 as to testimony regarding undisclosed accommodations. The Court notes that, even if it were not excluding this testimony under Rule 37, Dr. Duriseti's opinions would be subject to exclusion for lack of foundation. Dr. Duriseti was unable to explain how any of these newly disclosed measures would function in the specific

12

United States District Court
Northern District of California

work sites of these Plaintiffs.  *See, e.g.*, Duriseti Deposition, ECF No. 241-1, Ex. 5 at 187:24–188:6 ("Q: At what facilities of the County did Tom Davis work? A: Can we familiarize me with who Tom Davis is and his specific work capacity? Q: Who is Tom Davis? A: I'm asking you that. I've been involved with a lot of these cases.  I'm not going to remember individual names.").

*     *     *

In sum, the County's MIL No. 3 is GRANTED.

### 4.     MIL No. 4 to Exclude Mention of the Preliminary Injunction

In its MIL No. 4, the County moves to exclude mention of or evidence pertaining to the Court's order granting Plaintiffs' motion for a preliminary injunction, *see* ECF No. 44 ("Preliminary Injunction"), on the ground that it would suggest to the jury that the Court has already determined that the County violated the law.  ECF No. 242.  Plaintiffs respond that any possible prejudice from mentioning the Preliminary Injunction is curable with a limiting instruction.  ECF No. 268.

On June 30, 2022, the Court entered a preliminary injunction enjoining the County "from giving to employees whose current positions are in high-risk tiers any priority consideration for vacant County positions based on the type of exemption from the County's vaccine mandate that the employee received."  Preliminary Injunction at 23.  According to the County, learning about the Court's preliminary findings would lead the jury "to determine that the judge has already decided the factual issues and thus the jury need not re-weigh the evidence."  ECF No. 242 at 2 (quoting *Newmark Realty Cap., Inc. v. BGC Partners, Inc.*, No. 16-cv-01702-BLF, 2018 WL 6439133, at *6 (N.D. Cal. Dec. 7, 2018)).  Should the need to discuss the Preliminary Injunction arise, the County suggests "stat[ing] generally that the County ended its policy of giving priority consideration in June 2022 due to 'prior proceedings' during the lawsuit."  *Id.* at 2 (citing *ADT Sec. Servs., Inc. v. Sec. One Int'l, Inc.*, No. 11-cv-05149-YGR, 2013 WL 6701654, at *1 (N.D. Cal. Sept. 9, 2013)).  Plaintiffs argue that the County's suggestion is "incomplete" and "inadequate" in the face of their need to offer evidence regarding the County's response to the Preliminary Injunction.  ECF No. 268 at 3.  They insist that such a "vague and ambiguous reference," is likely to confuse the jury, leading to speculation about the nature of such "prior

13

proceedings." *Id.*

While the findings in the Preliminary Injunction are, of course, preliminary, the jury's learning that the Court has already made factual findings as to key issues in the case is likely to influence the jury's conclusions regarding the evidence. The Court thus agrees with the County that any probative value regarding the fact and nature of the Preliminary Injunction is substantially outweighed by the danger of unfair prejudice and juror confusion. The County's MIL No. 4 is, therefore, GRANTED. If the Parties wish to reference the County's actions in response to the Preliminary Injunction, they may prepare a statement that the Court will read to the jury as follows: "Based on prior proceedings, the County stopped giving exempt employees whose job positions were in high-risk tiers any priority consideration for vacant County positions based on the type of exemption from the County vaccine mandate the employee received." Further, Plaintiffs are advised that they may not argue or otherwise infer that the Court prohibited elimination of the enhanced services previously provided to medically exempt employees. Nothing in the Court's order required or even suggested that the County had to increase benefits to the religious exemption employees to comply with the Preliminary Injunction.

### 5. MIL No. 5 to Exclude Evidence Regarding Employers and Employees That Are Not Parties in This Case

In its MIL No. 5, the County moves to exclude evidence, testimony, and argument regarding: (1) decisions by non-party employers regarding vaccination requirements and accommodations; and (2) requests by non-party employees for exemptions or accommodations from the County's COVID-19 vaccination requirement, including testimony from former members of the decertified class in this lawsuit. ECF No. 243. The County urges that such evidence is irrelevant and any probative value is substantially outweighed by the risk of prejudice. Plaintiffs contend that the County's request is overbroad and each category of information is highly relevant to their claims. ECF No. 269.

Beginning with non-party employers, Plaintiffs contend that they should be permitted to testify about accommodations they were offered by non-party employers. *Id.* at 4–5. They argue that such evidence goes to the reasonableness of the County's decisions with respect to

accommodations and the County's defenses of mitigation and undue hardship. The Court agrees with Plaintiffs that such limited testimony is highly relevant to the issues in this case. While the County protests that the decisions of non-party employers are irrelevant because those employers made decisions on the basis on their own circumstances, that argument goes to weight, not relevance. *See Strandquist v. Wash. State Dep't of Soc. & Health Servs.*, No. 23-cv-05071-TMC, 2025 WL 2458108, at *9 (W.D. Wash Aug. 26, 2025) (explaining that a plaintiff's testimony regarding "his ability to find new employment, and how his religious objection to the vaccine was accommodated in his new employment, has at least some relevance" to damages).

Plaintiffs also intend to call five non-party employees who worked in high-risk jobs and received various accommodations and levels of assistance in seeking alternative job placement. ECF No. 269 at 2–3. Plaintiffs contend that the testimony of these witnesses is relevant to the reasonableness of possible accommodations and disparate treatment between employees who received religious and secular exemptions. The Court agrees. The experiences of these non-party individuals bear directly on the factual disputes at the heart of the claims.

The County avers that even if relevant, non-party employee and employer evidence would waste time, mislead the jury, result in mini-trials, and prejudice the County. ECF No. 243 at 3–4. The Court finds that, based on Plaintiffs' representation of the limited nature of this evidence, any such risks do not substantially outweigh the probative value of the evidence Plaintiffs intend to offer.

Accordingly, the County's MIL No. 5 is DENIED.

**III.   ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Plaintiffs' MIL No. 1 to Exclude Evidence, Argument or Testimony Concerning Plaintiff Tom Davis's Tax Returns for 2022–2024 is GRANTED.

(2) Plaintiffs' MIL No. 2 to Exclude Opinions by Defendant's Damages Expert Concerning Plaintiffs' Emotional Distress Damages is DENIED.

(3) The County's MIL No. 1 to Exclude Evidence That the County Violated the Free Exercise and Equal Protection Clauses is DENIED.

United States District Court
Northern District of California

(4) The County's MIL No. 2 to Exclude Evidence That the County Violated the Establishment Clause is DENIED.

(5) The County's MIL No. 3 to Exclude Portions of the Opinions of Plaintiffs' Expert Dr. Ram Duriseti is GRANTED.

(6) The County's MIL No. 4 to Exclude Mention of the Preliminary Injunction is GRANTED.

(7) The County's MIL No. 5 to Exclude Evidence Regarding Employers and Employees That Are Not Parties in This Case is DENIED.

Dated:  April 14, 2026

_____
BETH LABSON FREEMAN
United States District Judge