ROBERT H. TYLER (179572)
btyler@faith-freedom.com
SAMUEL KANE (*pro hac vice*)
skane@faith-freedom.com
**ADVOCATES FOR FAITH & FREEDOM**
25026 Las Brisas Road
Murrieta, California 92562
Telephone:    (951) 600-2733
Facsimile:    (951) 600-4996

RACHELE R. BYRD (190634)
byrd@whafh.com
STEPHANIE AVILES (350289)
saviles@whafh.com
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA  92101
Telephone:    (619) 239-4599
Facsimile:    (619) 234-4599

MARK C. RIFKIN (*pro hac vice*)
rifkin@whafh.com
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
270 Madison Ave
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| **RAMIREZ**, *et al.*,<br><br>Plaintiffs,<br>vs.<br><br>**COUNTY OF SANTA CLARA**,<br><br>Defendant. | Case No.:  22-cv-01019-BLF<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE:    June 25, 2026<br>TIME:    9:00 a.m.<br>CTRM:  1, 5th Floor<br>JUDGE: Hon. Beth Labson Freeman |

## <u>NOTICE OF MOTION AND MOTION</u>

TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

You are hereby given notice that on June 25, 2026, at 9:00 a.m. in Courtroom 1, 5th Floor of the United States District Court, Northern District of California, San Jose Division, before the Honorable Beth Labson Freeman, Counsel for Plaintiffs Tom Davis, Maria Ramirez, and Elizabeth Baluyut (collectively, "Plaintiffs") in the above-captioned case will move, and hereby do move, for attorneys' fees in the amount of $2,010,695 and costs in the amount of $113,966.31 for a total of $2,124,661.31 pursuant to 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 1988(b), and Rule 54(d)(2) of the Federal Rules of Civil Procedure.

This motion will be based on this notice of motion and motion, memorandum of points and authorities, the declarations, exhibits, prior and concurrent papers filed with the Court, and such further oral argument and evidence that may be presented at the hearing.

DATED:  May 26, 2026

**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**

By:   */s/ Rachele R. Byrd*
RACHELE R. BYRD

RACHELE R. BYRD
byrd@whafh.com
STEPHANIE AVILES
saviles@whafh.com
750 B Street, Suite 1820
San Diego, CA  92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599

ROBERT H. TYLER
btyler@faith-freedom.com
SAMUEL KANE
skane@faith-freedom.com
**ADVOCATES FOR FAITH & FREEDOM**
25026 Las Brisas Road
Murrieta, California 92562
Telephone: (951) 600-2733
Facsimile: (951) 600-4996

MARK C. RIFKIN
rifkin@whafh.com
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
270 Madison Ave

New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114

*Attorneys for Plaintiffs*

## I.    INTRODUCTION AND STATEMENT OF FACTS

Counsel for Plaintiffs Tom Davis, Maria Ramirez, and Elizabeth Baluyut ("Plaintiffs") successfully litigated this case for over four years, including by obtaining a preliminary injunction. The parties settled on the eve of trial, giving Plaintiffs significant monetary relief, replenishment of valuable leave bank time, and allowing for attorneys' fees and costs to be determined by the Court. As the prevailing parties, Plaintiffs are entitled to an award of fees and costs and now seek an award of attorneys' fees of $2,010,695 and costs of $113,966.31, for a total of $2,124,661.31.

The Court is familiar with the facts of this case. On August 5, 2021, the County issued a policy requiring all County personnel to receive the COVID-19 vaccine. The County allowed employees to receive an exemption from the vaccine mandate for medical, disability, or religious reasons. The County also instituted a risk tier system that classified jobs within the County as lower-, intermediate-, or high-risk. While employees who received an exemption could continue to work in lower- or intermediate-risk settings—subject to certain precautions such as masking and testing—employees in jobs the County categorized as high risk were not allowed to return to work while they were unvaccinated. Beginning in mid-October 2021, the County notified unvaccinated employees with approved exemptions performing high-risk jobs that they could not return to their jobs and that the County would place them on unpaid administrative leave.

Plaintiffs were all in jobs that were designated as high risk by the County: Maria Ramirez and Elizabeth Baluyut are nurses who work in two of the County's hospitals and Tom Davis is an HVAC/R worker. Plaintiffs hold sincere religious beliefs that prevent them from receiving a COVID-19 vaccine or booster, and the County granted them religious exemptions. However, it placed them on administrative leave and failed to offer them reasonable accommodation.

Before the Court intervened on June 30, 2022, by issuing a preliminary injunction, the County gave preferential treatment to employees with secular exemptions over those with religious exemptions. The County referred employees with secular exemptions to the Equal Opportunity Division, which assisted them by searching for and directly transferring or reassigning them to a new position, whereas it referred employees with religious exemptions to the VaxJobReview team, which merely told them to update their resumes, identified open positions they may be qualified

for, and told them to apply for the jobs through the County's public-facing website. On June 30, 2022, the Court granted a preliminary injunction preventing the County from giving to employees whose current positions are in high-risk tiers "any priority consideration for vacant County positions based on the type of exemption from the County's vaccine mandate that the employee received." Dkt. No. 44 at 23. The County responded by requiring all unvaccinated employees with exemptions to apply for a new position. Joint Declaration of Rachele R. Byrd and Robert H. Tyler ("Jnt. Decl.") ¶ 8.

## II.    PROCEDURAL HISTORY

### A.    Complaints, Motion and Pre-Trial Filings and Proceedings

On February 18, 2022, Tom Davis, Maria Ramirez, and UnifySCC (together, the "Original Plaintiffs") filed a Complaint against Defendants Sara H. Cody, James Williams, Jeffrey Smith and the County of Santa Clara (together, the "Original Defendants"), alleging claims for: (1) Violation of the Free Exercise Clause of the First Amendment to the United States Constitution, 42 U.S.C. § 1983 ("Free Exercise Clause"); (2) Violation of California's Fair Employment and Housing Act, Cal. Gov't Code § 12940 ("FEHA"); (3) Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983 ("Equal Protection Clause"); and (4) Deprivation of Civil Rights Under 42 U.S.C. § 1983 (*Monell*). Dkt. No. 1.

On April 1, 2022, the Original Plaintiffs filed a motion for a preliminary injunction (Dkt. No. 27), which the Court granted in substantial part on June 30, 2022 (Dkt. No. 44). The Court issued an injunction that "RESTRAINED AND ENJOINED [the County] from giving to employees whose current positions are in high-risk tiers any priority consideration for vacant County positions based on the type of exemption from the County's vaccine mandate that the employee received." *Id*. at 23.

On August 23, 2022, the Original Plaintiffs, joined by Elizabeth Baluyut (together the "FAC Plaintiffs") filed the First Amended Complaint ("FAC") against the Original Defendants, adding class action allegations, Elizabeth Baluyut as a plaintiff, and claims for: (1) Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 200e, *et seq*. ("Title VII"); and (2) Violation of the Establishment Clause of the First Amendment, 42 U.S.C. § 1983 ("Establishment Clause").

Dkt. No. 55. Defendants answered the FAC on September 23, 2022. Dkt. No. 64.

On July 14, 2023, FAC Plaintiffs moved for class certification. *See* Dkt. Nos. 81, 94, 114. On January 29, 2024, the Court granted in part Plaintiffs' motion, certifying a class for liability purposes. Dkt. No. 125.

On July 11, 2024, the FAC Plaintiffs moved for partial summary judgment ("PMSJ"). Dkt. No. 141. On August 8, 2024, Original Defendants filed a combined motion for summary Judgment ("MSJ") and opposition to FAC Plaintiffs' PMSJ (Dkt. No. 143), and on September 6, 2024, FAC Plaintiffs filed a combined opposition to Original Defendants' MSJ and reply in further support of their PMSJ (Dkt. No. 156). On January 15, 2025, the Court issued an order denying FAC Plaintiffs' PMSJ and granting in part and denying in part Original Defendants' MSJ, dismissing only the Free Exercise Clause and Equal Protection Clause claims to the extent they challenged the constitutionality of the risk-tier system (but not to the extent they challenged the preferential treatment of employees with secular exemptions over those with religious exemptions), and dismissing Sara H. Cody, James Williams and Jeffrey Smith as defendants. Dkt. No. 178.

On December 4, 2024, Original Defendants moved to decertify the class. *See* Dkt. Nos. 176, 182, 183. On May 21, 2025, the Court granted the County's motion, decertified the Class and dismissed Plaintiff UnifySCC as a plaintiff. Dkt. No. 194.

On November 24, 2025, Defendant again moved for summary judgment. *See* Dkt. Nos. 220, 224, 225. The Court held a hearing on the motion on January 12, 2026, and on February 23, 2026, the Court granted in part the County's second motion for summary judgment. Dkt. Nos. 231, 234. The Court dismissed Plaintiffs' FEHA claim on immunity grounds and dismissed Plaintiff Davis's Title VII claim for failure to timely exhaust administrative remedies. Dkt. No. 234.

The claims in Plaintiffs' FAC that survived Defendant's two motions for summary judgment are for violations of: (1) the Free Exercise Clause, (2) the Equal Protection Clause, (3) the Establishment Clause, (4) *Monell*, and (5) Title VII.

Trial preparations were nearly complete. On March 26, 2026, the parties filed a joint pretrial conference statement, including exhibits and witness lists (Dkt. No. 253) and several motions in limine, which they opposed on April 2, 2026 (Dkt. Nos. 239-243, 249-250, 262-263,

265-269). Also on April 2, 2026, the parties filed jury materials, including proposed jury instructions (which they amended on April 8, 2026); proposed verdict forms; proposed preliminary statements; and proposed *voir dire* questions. Dkt. Nos. 264, 272-275, 281; *see also* Dkt. Nos. 291-292. The parties attended the final pretrial conference on April 9, 2026, and trial was scheduled to begin on May 18, 2026. All that remained to be done before trial was the charging conference.

### B. Settlement Conferences and Mediation

On October 5, 2022 (Dkt. No. 63), November 1, 2022 (Dkt. No. 70), March 15, 2023 (Dkt. No. 74), May 24, 2023 (Dkt. No. 75), June 2, 2023 (Dkt. No. 79), July 17, 2023 (Dkt. No. 82), August 18, 2023 (Dkt. No. 88), and February 2, 2024 (Dkt. No. 133), the parties participated in settlement conferences with Hon. Susan van Keulen via Zoom and over the telephone. On July 30, 2024, the parties participated in a mediation before JAMS mediator Hon. Irma E. Gonzalez (Ret.) over Zoom. Jnt. Decl. ¶ 24. None of those efforts resulted in a settlement. *Id*.

On October 8, 2025 (Dkt. No. 213), and March 26, 2026 (Dkt. No. 238), the parties participated in in-person settlement conferences with Hon. Susan van Keulen. The parties also exchanged settlement demands and offers and participated in settlement discussions with Judge van Keulen and each other on various occasions over the course of four years. Jnt. Decl. ¶ 25.

After extensive communications with counsel for the parties, Judge van Keulen made a mediator's settlement proposal on May 1, 2026, which both parties accepted on May 5, 2026, less than two weeks before trial was to begin, subject to approval by the County's Board of Supervisors, which was given on May 18, 2026. The parties then appeared before Judge van Keulen on May 6, 2026, to put the settlement on the record. Dkt. No. 298. They are currently working on memorializing the settlement in a written settlement agreement. Jnt. Decl. ¶¶ 12, 26.

### C. Discovery

Over the course of four years, the parties engaged in extensive discovery. Plaintiffs propounded five sets of requests for production of documents, five sets of interrogatories, and two sets of requests for admission. Jnt. Decl. ¶ 27. Defendant produced over 35,000 pages of documents. *Id*. Plaintiffs also responded to: four sets of requests for production of documents pursuant to which they produced 4,785 pages of documents; one set of requests for admissions;

and four sets of interrogatories. *Id*. Plaintiffs' counsel took 13 depositions and defended 12 depositions, including two depositions of each of the Plaintiffs, for a total of 25 depositions. *Id*. The parties also briefed two motions to compel. Dkt. Nos. 134, 233.

**III.    SETTLEMENT TERMS**

The terms of the settlement are as follows: (1) without admission of liability or wrongdoing, the County will make a lump sum payment to the three Plaintiffs in the amount of $120,000, to be allocated among the Plaintiffs, as full payment for all liability claims; (2) upon receipt of payment, Plaintiffs will release the County from all claims, known or unknown, related to this action; (3) the County will also fully restore the Plaintiffs' disputed leave-bank time, valued at a total of approximately $72,782.85 (*see* Jnt. Decl. ¶¶ 11, 13 & Ex. A; Plaintiffs' Declarations, filed herewith); and (4) the Plaintiffs will file this motion for attorneys' fees and expenses, and Plaintiffs will receive fees and expenses between two confidential amounts (which the parties agreed not to reveal to the Court).

**IV.    ARGUMENT**

**A.    Attorneys' Fees Are Available to Plaintiffs as the Prevailing Party**

Federal Rule of Civil Procedure 54(d)(2) allows a prevailing party to make a claim for attorneys' fees and related nontaxable expenses when authorized by statute. Both Title VII and 42 U.S.C. § 1988(b) authorize a prevailing party to receive attorneys' fees. *See* 42 U.S.C. § 2000e-5(k); 42 U.S.C. § 1988(b). The standard for awarding attorneys' fees and costs under Section 1988(b) is identical to the Title VII standard. *See Mitchell v. Off. of Los Angeles Cnty. Superintendent of Schs.*, 805 F.2d 844, 847 (9th Cir. 1986).

"[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, . . . or comparable relief through a consent decree or settlement . . . ." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (citations omitted). *See also Jankey v. Poop Deck*, 537 F.3d 1122, 1130 (9th Cir. 2080) (plaintiff was prevailing party where "[t]he settlement agreement . . . both authorized judicial enforcement of its terms and expressly referred resolution of the issue of attorney fees to the district court.").

Plaintiffs obtained a preliminary injunction and have now recovered a substantial monetary payment and restoration of significant leave-bank time. Therefore, Plaintiffs are the prevailing party. *See Williams v. Alioto*, 625 F.2d 845, 847 (9th Cir. 1980) (having won the preliminary injunction, the plaintiffs were prevailing parties); *Barrios v. California Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002) ("[A] plaintiff 'prevails' when he or she enters into a legally enforceable settlement agreement against the defendant."). *See also id*. at 1137 (where plaintiff "achieved the 'primary relief sought,' namely, money damages [of $10,000] and the right to continue with his on–field baseball coaching," he was the prevailing party entitled to attorneys' fees.). Because Plaintiffs are undoubtedly prevailing parties, the settlement permits them to recover attorneys' fees from Defendant.

**B.    Plaintiffs' Fee Request is Reasonable**

Calculating a reasonable fee award is a two-step process. First, the Court must calculate the "lodestar figure" by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "[The] calculation of fees for prevailing civil rights plaintiffs is to be the same as in traditional fee arrangements and . . . all reasonable time spent is to be compensated." *Suzuki v. Yuen*, 678 F.2d 761, 764 (9th Cir. 1982). Furthermore, "Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization." *Blum v. Stenson*, 465 U.S. 886, 894 (1984),

A "strong presumption" exists that the lodestar figure represents a "reasonable fee," and therefore, it should only be enhanced or reduced in "rare and exceptional cases." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (internal quotations omitted). As a second step, after making the lodestar computation, "the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation." *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996) (referring to *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976)). Plaintiffs do not seek an enhancement of their lodestar figure, and they have already excluded hours that were spent on

class issues and on this fee motion. Any further reduction would be unwarranted.

### 1.    The Number of Hours Plaintiffs' Counsel Spent on the Litigation is Reasonable

The time and labor expended by Plaintiffs' counsel litigating this action was appropriate and reasonable. To achieve the settlement benefits Plaintiffs' counsel were required to, among other things: (1) investigate the facts and file two complaints; (2) successfully move for a preliminary injunction; (3) engage in several years of discovery; (4) move for and defend motions for summary judgment; (5) prepare for and participate in 11 settlement conferences and a mediation and prepare and respond to numerous settlement demands/offers; and (6) prepare for a jury trial. Jnt. Decl. ¶¶ 15-30 & Exs. B-C. In all, Plaintiffs' counsel spent a total of 3,309 hours successfully litigating this action over a span of more than four years.

Plaintiffs are submitting with this motion their detailed time records, redacted to protect attorney work product and privileged information, which demonstrate that the number of hours spent on this litigation was reasonable. Jnt. Decl. Exs. B-C.[1] Plaintiffs' counsel have removed from their lodestar figure the  hours they spent litigating class certification, including investigating and adding class claims to the complaint, preparing their motion for class certification and reply brief in support of same, defending the depositions of witnesses who submitted declarations in support of class certification (even though their testimony was also sometimes cited in merits briefing), working with and defending the deposition of their class certification damages expert, Keith Mendez, giving notice to the class, and opposing Defendant's motion to decertify the class. *See Hensley*, 46 U.S. at 437 ("The applicant should exercise 'billing judgment' with respect to hours worked"); Jnt. Decl. ¶ 31. Therefore, the lodestar represents time they would have incurred even if this case had never been a proposed or certified class action.

Plaintiffs' counsel's lodestar also does not include time spent on this fee motion, or the time they will spend on the reply brief, or at the hearing on the motion (Jnt. Decl. ¶ 32), even

---

[1]    Plaintiffs will submit with their reply, as instructed by the Court, a chart summarizing the hours expended on the major tasks in the case, and will give particular granularity to any major tasks that are in dispute. Dkt. No. 303.

though "time spent by counsel in establishing the right to a fee award is compensable." *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992). Therefore, the hours Plaintiffs' counsel have included in support of this fee motion are more than reasonable. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (The court generally defers to the prevailing lawyer's professional judgment as to how much time the case required—"after all, he won, and might not have, had he been more of a slacker.").

### 2.      Plaintiffs' Counsel's Rates are Within Prevailing Market Rates

Plaintiffs' counsel's hourly rates "are 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014) (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008)). The "relevant community is the forum in which the district court sits." *Id.* (quoting *Camacho*, 523 F.3d at 979).

Wolf Haldenstein's hourly rates range from $945 to $1,250 for partners (who have 29 to 41 years of experience), $395 to $675 for associates with three to 15 years of experience, Of Counsel with 26 years of experience, $235 to $395 for paralegals with between six and 28 years of experience, and $250 for a law clerk. Jnt. Decl. ¶ 34. Advocates' hourly rates range from $400 to $750 for attorneys with between four and 31 years of experience, $300 for paralegals with 23 and 29 years of experience, and $200 for a law clerk. Jnt. Decl. ¶ 36. These rates are well within prevailing market rates for attorneys with similar skill and experience practicing within the Northern District of California. In *Johnson v. City of San Jose*, No. 5:21-CV-01849-BLF, 2025 WL 2374004, at *21 (N.D. Cal. Aug. 15, 2025), this Court recently determined that the following rates were appropriate for civil rights attorneys and paralegals in the Northern District of California: $1200/hour for a civil rights attorney with over fifty years of experience, $500/hour for an associate a with three or four years of experience, and $400/hour for a paralegal with approximately ten years of experience. In arriving at this determination, the Court relied upon the following cases cited by the plaintiffs: *Human Rights Def. Ctr. v. Cnty. of Napa*, No. 20-cv-01296, 2021 WL 1176640, at *11 (N.D. Cal. Mar. 28, 2021) (approving—five years ago—hourly rates of $1100 for a founding partner with over forty years of experience; $950 for an attorney with about

40 years of experience; $625 for an attorney with about 10 years of experience; $650 for an attorney with about 20 years of experience; and $260 and $350 for paralegals with 10 and 30 years of experience, respectively); *Andrews v. Equinox Holdings, Inc*., 570 F. Supp. 3d 803, 807–08 (N.D. Cal. 2021) (approving five years ago hourly rates of $1,250 for an attorney with 59 years of experience, $875 for an attorney with 24 years of experience, $600 for an attorney with 11 years of experience, and $350 for an attorney with three years of experience, and paralegal rates of $240 and $275); *Lashbrook v. City of San Jose*, No. 20-cv-01236 (N.D. Cal. filed Sept. 2, 2020) (awarding between $600 and $750 for attorneys with between ten and fifteen years of experience). Plaintiffs' counsel's rates are generally within or close to these ranges.

Finally, Plaintiffs' use of current rates is justified to "compensate for the delay in receiving payment." *Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991); *see also Missouri v. Jenkins*, 491 U.S. 274 (1989).

### 3.    Plaintiffs' Success Warrants the Requested Fee

"The extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley*, 461 U.S. at 440. The settlement provides substantial relief to the Plaintiffs in the form of money damages and replenishment of all of their leave bank time, and Plaintiffs previously obtained a significant preliminary injunction. Furthermore, there is ***no proportionality requirement*** for fee awards under § 1988. While Plaintiffs seek more in attorneys' fees than the amount of Plaintiffs' monetary recovery, "the Supreme Court has interpreted section 1988 so that prevailing plaintiffs' lawyers recover a reasonable hourly fee for all hours reasonably worked on a case . . . ***even if plaintiffs' monetary recovery falls substantially below the attorneys' fees***." *Quesada v. Thomason*, 850 F.2d 537, 542 (9th Cir 1988) (citations omitted, emphasis added). *See*, *e.g.*, *City of Riverside v. Rivera*, 477 U.S. 561, 564–65 (1986) (affirming award of more than $245,000 in fees where plaintiff recovered only $33,350); *Bridges v. Eastman Kodak Co*., 102 F.3d 56, 57-58 (2d Cir. 1996) (award of $753,202.99 where plaintiffs recovered only $117,429.27).

Furthermore, the dismissal of Plaintiffs' FEHA claim does not warrant a further reduction of Plaintiffs' lodestar because the FEHA and Title VII claims relied on the exact same law and

facts, and where a successful plaintiff "presents different claims for relief that involve a common core of facts or are based on related legal theories, the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis." *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) (cleaned up). Moreover, while the Court dismissed Mr. Davis's Title VII claim for failure to timely exhaust administrative remedies, his time within which to appeal had not yet run when the case settled, and the claim is therefore reasonably included within the settlement. Also, all three Plaintiffs' Title VII claims share a common core of facts, and Ms. Ramirez's and Ms. Baluyut's Title VII claims were proceeding to trial. *Id.*, 565 F.3d at 1103. Finally, while the Court granted Defendant summary judgment on parts of Plaintiffs' Free Exercise and Equal Protection claims, in *Hensley*, the Court rejected "'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon,'" reasoning that "[s]uch a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." 461 U.S. at 435 n. 11. Therefore, Plaintiffs' counsel's lodestar should not be further reduced.

**C.    Plaintiffs' Costs and Expenses are Reasonable**

"It is well-established law that attorneys' fees awards can include reimbursement for litigation expenses which are normally billed to fee-paying clients." *Robinson v. Delgado*, No. 1:02-CV-01538-NJV, 2011 WL 672628, at *7 (N.D. Cal. Feb. 17, 2011). *See also Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986).

Plaintiffs' counsel have incurred $113,966.31 in unreimbursed expenses of the type normally billed to fee-paying clients. *See* Jnt. Decl. ¶ 39. Plaintiffs have omitted expenses incurred on tasks related to class certification, i.e., the depositions of Gina Donnelly, Keith Mendez, James Luna, and Adam Valle, or the costs of giving notice to the class. Jnt. Decl. ¶ 42. Plaintiffs therefore request the Court include reimbursement for $113,966.31 in costs in the fee award.

**V.    CONCLUSION**

For all of the reasons stated above, the Court should award Plaintiffs $2,124,661.31 in attorneys' fees and costs.

DATED: May 26, 2026

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By:  */s/ Rachele R. Byrd*
RACHELE R. BYRD

RACHELE R. BYRD
byrd@whafh.com
STEPHANIE AVILES
saviles@whafh.com
750 B Street, Suite 1820
San Diego, CA  92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599

ROBERT H. TYLER
btyler@faith-freedom.com
SAMUEL KANE
skane@faith-freedom.com
**ADVOCATES FOR FAITH & FREEDOM**
25026 Las Brisas Road
Murrieta, California 92562
Telephone: (951) 600-2733
Facsimile: (951) 600-4996

MARK C. RIFKIN (*pro hac vice*)
rifkin@whafh.com
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
270 Madison Ave
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114

*Attorneys for Plaintiffs*